TRACY S. COMBS (California Bar No. 298664)
Email: combst@sec.gov
CASEY R. FRONK (Illinois Bar No. 6296535)
Email: fronkc@sec.gov
SECURITIES AND EXCHANGE COMMISSION
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel: (801) 524-5796
Fax: (801) 524-3558

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br> vs. <br><br> MATTHEW WADE BEASLEY; BEASLEY LAW GROUP PC; JEFFREY J. JUDD; CHRISTOPHER R. HUMPHRIES; J&J CONSULTING SERVICES, INC., an Alaska Corporation; J&J CONSULTING SERVICES, INC., a Nevada Corporation; J AND J PURCHASING LLC; SHANE M. JAGER; JASON M. JONGEWARD; DENNY SEYBERT; and ROLAND TANNER; <br><br> Defendants; <br><br> THE JUDD IRREVOCABLE TRUST; PAJ CONSULTING INC; BJ HOLDINGS LLC; STIRLING CONSULTING, L.L.C.; CJ INVESTMENTS, LLC; JL2 INVESTMENTS, LLC; ROCKING HORSE PROPERTIES, LLC; TRIPLE THREAT BASKETBALL, LLC; ACAC LLC; ANTHONY MICHAEL ALBERTO, JR.; and MONTY CREW LLC; <br><br> Relief Defendants. | Case No.: 2:22-cv-00612-JCM-EJY <br><br> **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTIVE RELIEF** |

1

1  Plaintiff Securities and Exchange Commission (the "SEC") submits this supplemental memorandum of points and authorities in support of the Court's entry of a preliminary injunction against Defendants Matthew W. Beasley; Beasley Law Group PC; Jeffrey J. Judd; Christopher R. Humphries; J&J Consulting Services, Inc., an Alaska Corporation; J&J Consulting Services, Inc., a Nevada Corporation; J and J Purchasing LLC; Shane M. Jager; Jason Jongeward; Denny Seybert; and Roland Tanner (together herein, "Defendants"), and a continuing asset freeze against Defendants and Relief Defendants The Judd Irrevocable Trust; PAJ Consulting Inc.; BJ Holdings LLC; Stirling Consulting, L.L.C.; CJ Investments, LLC; JL2 Investments, LLC; Rocking Horse Properties, LLC; Triple Threat Basketball, LLC; ACAC LLC; Anthony M. Alberto, Jr.; and Monty Crew LLC (together herein, "Relief Defendants").

As discussed at length in the SEC's *ex parte* motion for a temporary restraining order and other equitable relief (Dkt. No. 2), bank records and witness testimony obtained in the SEC's investigation confirm that investors have invested millions of dollars in Defendants' "purchase agreement" investment scheme, based on false and misleading promises (both orally and in writing) that their investments would generate annual returns for investors of 50 percent from litigation finance arrangements with attorneys and litigation plaintiffs around the country. In fact, as Defendant Beasley during his March 3, 2022 standoff with the FBI, and as is evidenced by bank records for Beasley's attorney trust ("IOLTA") account (the "Beasley Account") and by supporting declaration of one of the same attorneys who was purportedly generating profits for the scheme, there was no network of attorneys or plaintiffs generating profits for investors, and investor money was instead spent making payments to earlier investors and promoters and supporting Defendants' lavish lifestyles.

I. **THE EVIDENCE SUPPORTS PRELIMINARY INJUNCTIVE RELIEF.**

The evidence presented in the SEC's motion for a temporary restraining order, by itself, is sufficient to support the entry of a preliminary injunction, in the form attached hereto as **Exhibit A**, extending the temporary injunctive relief and asset freeze in the Court's April 13, 2022 Temporary Restraining Order and Orders (1) Freezing Assets; (2) Requiring Accountings; (3) Prohibiting the Destruction of Documents; and (4) Granting Expedited Discovery; and (5)

Order to Show Cause re Preliminary Injunction entered by the Court on April 13, 2022 (the "Temporary Restraining Order") (Dkt. No. 3.)  A plaintiff seeking a preliminary injunction must "demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *SEC v. Banc de Binary Ltd.*, 964 F. Supp. 2d 1229, 1232 (D. Nev. 2013), quoting *Stormans, Inc. v. Selecky*, 586 F. 3d 1109, 1127 (9th Cir. 2009); *see Winter v. NRDC*, 555 U.S. 7, 20 (2008).  Each of these factors is satisfied here.

*First*, the SEC has provided a *prima facie* case that each of the Defendants violated the federal securities laws, as discussed at length in the SEC's TRO Motion:

- Each of the Defendants violated the registration provisions of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e(a), (c)] by offering and selling securities (the litigation finance "Purchase Agreements") without a registration statement as to those securities and without a valid exception to such registration.[1]  Section 5 is a strict liability offense, and thus Defendants' state of mind does not provide any exception to Section 5's registration requirements.[2]
- Defendants Judd, Humphries, Jager, Jongeward, Seybert, and Tanner violated the broker registration provisions of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)] by each soliciting at least dozens of investors to invest in the "Purchase

---

[1] *See Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 124 (2d Cir. 1998) (quoting *In re Command Credit Corp.*, No. 3-8674, 1995 SEC LEXIS 989, at *2 (S.E.C. Apr. 19, 1995)) ("The elements of [an] action for violation of Section 5 are (1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication and the mails in connection with the offer or sale.")

[2] *See Aaron v. SEC*, 446 U.S. 680, 714 n.5 (1980); *SEC v. Parkersburg Wireless Ltd. Liab. Co.*, 991 F. Supp. 6 at 9 ("whether [defendant] was an unwitting participant in this complex scheme [is] of no moment").

3

Agreements" and by being paid for that solicitation in the form of transaction-based compensation, all without being registered as a broker or being associated with a registered broker.[3]  As with Section 5, Section 15(a)(1) is a strict liability statute, and proof of Defendants' state of mind is not required.[4]

- Defendants Beasley, Beasley Law Group PC, Judd, the J&J Entities, and Humphries violated the antifraud provisions of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)(1)] by, in the offer and sale of the "Purchase Agreements," employing devices and schemes to defraud, receiving money or property by means of untrue statements of material fact and omissions, and engaging in transactions, practices, and courses of business which operated as a fraud and deceit.  As established in the evidence submitted in and attached to the Declaration of Joni Ostler (attached to the TRO Motion as Exhibit C), and the Supplemental Declaration of Joni Ostler, attached hereto as **Exhibit B**)[5], these defendants made misrepresentations and failed to disclose to investors that the money invested was ***not***, as represented, being used to provide loans to plaintiffs and their attorneys in advance of litigation settlements, but instead was being used to pay previous investors in the scheme and to fund Defendants' personal expenses.  Each of the defendants did so with at least severe

---

[3] *See generally SEC v. RMR Asset Mgmt. Co.*, 479 F. Supp. 3d 923, 926 (S.D. Cal. 2020); *SEC v. Feng*, 935 F.3d 721, 731 (9th Cir. 2019).

[4] *See SEC v. Interlink Data Network*, No. 93 3073 R, 1993 WL 603274, *10 (C.D. Cal. Nov. 15, 1993)

[5] These declarations—including any portions of which are hearsay—may be considered by the Court for purposes of the upcoming preliminary injunction hearing.  That is because "[a] district court may . . . consider hearsay in deciding whether to issue a preliminary injunction." *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (citing *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc)).

recklessness (with respect to violations of 17(a)(1)) and with negligence (with respect to violations of Sections 17(a)(2) and (a)(3)).[6]

- Defendants Beasley, Beasley Law Group PC, Judd, the J&J Entities, and Humphries also violated the antifraud provisions of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5] by, with scienter, employing devices, schemes, and artifices to defraud; making untrue statements of material fact and omissions; and engaging in acts, practices, and course of business which operated as a fraud and deceit, in connection with the purchase and sale of the "Purchase Agreements."  There can be no doubt that, among other things, these defendants' misrepresentation of the basic elements of their purported investment scheme—such as the names of the litigation attorneys involved in generating profits for the scheme—while spending investor funds on personal expenses, establishes knowing or reckless conduct sufficient to violate Section 10(b) and Rule 10b-5.[7]  Likewise, these defendants' involvement in what Beasley admitted was a "Ponzi scheme"—which is established in the Declaration of Amir Salimi, attached as Exhibit D to the TRO Motion, and the Supplemental Declaration of Amir Salimi (attached hereto as **Exhibit C**) is *prima facie* evidence of scienter.[8]

---

[6] *See Aaron*, 446 at 701–02 (violations of Securities Act § 17(a)(1) require scienter, while claims under Securities Act §§ 17(a)(2) and 17(a)(3) only require negligence).

[7] *See, e.g., Lowry v. SEC*, 340 F.3d 501, 505 (8th Cir. 2003) (the fact that a principal spends investor funds on personal expenses establishes the requisite state of mind for committing securities fraud).

[8] Where defendants operate a Ponzi scheme, the "question of intent to defraud is not debatable." *Conroy v. Shott*, 363 F.2d 90, 92 (6th Cir. 1966); *see also In re Agricultural Research and Tech. Grp., Inc.*, 916 F.2d 528, 535 (9th Cir. 1990) ("debtor's actual intent to hinder, delay or defraud its creditors may be inferred from the mere existence of a Ponzi scheme").

***Second***, the evidence submitted herein and in support of the TRO Motion establishes the irreparable harm necessary to support a preliminary injunction, that the balance of the equities tips in favor of the SEC, and that an injunction is in the public interest. The SEC appears "not as an ordinary litigant, but as a statutory guardian charged with safeguarding the public interest in enforcing the securities laws." *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975). This enforcement action is brought in the public interest, and thus, the Court's "equitable powers assume an even broader and more flexible character than when only a private controversy is at stake." *FSLIC v. Sahni*, 868 F.2d 1096, 1097 (9th Cir. 1989) (quoting *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982)). As discussed in the TRO Motion, Defendants' years-long fraudulent scheme and repeated violations of the securities laws—with funds being solicited from investors from at least January 1, 2017 up until Beasley's March 3, 2022 standoff with the FBI—is strong evidence that Defendants' violations will be repeated absent preliminary injunctive relief. *See SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980); *SEC v. United Financial Group, Inc.*, 474 F.2d 354, 358–59 (9th Cir. 1973). And since that March 3, 2022 standoff, Defendants—and most especially Judd—have attempted to dissipate the millions of dollars of investor money they raised from the scheme. The preliminary relief sought will ensure that Defendants do not continue to violate the securities laws and dissipate funds that the SEC seeks to recover, in the public interest, for the benefit of the defrauded investors.

## II. THE EVIDENCE SUPPORTS AN ASSET FREEZE.

The evidence submitted in support of the TRO Motion and herein is also sufficient to support a continued freeze of Defendants' and Relief Defendants' assets. The Court's equitable powers include the authority to freeze assets of both parties and nonparties to prevent the dissipation of assets that may be available for the benefit of investor victims. *See SEC v. Hickey*, 322 F.3d 1123, 1131 (9th Cir. 2003); *SEC v. Int'l Swiss Invest. Corp.*, 895 F.2d 1272, 1276 (9th Cir. 1990). "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009). Here, the bank account records from Beasley's IOLTA Account—the primary hub for funds invested in the scheme—show that of the

6

approximately $490 million in funds that flowed into the account, only approximately $4 million remain; with the bulk of the other funds being sent to bank accounts associated with Defendants and Relief Defendants (and then used in many cases to purchase luxury real property and personal property).  Without an asset freeze, it is highly likely that any investor money remaining in Defendants' and Relief Defendants' accounts will be spent or otherwise dissipated long before a final judgment in this action.[9]

\*\*\*

Thus, for the reasons stated herein, and for the reasons stated in the SEC's *Ex Parte* Motion for a Temporary Restraining Order, the SEC respectfully requests that the Court enter a preliminary injunction order and asset freeze in the form attached hereto as **Exhibit A**.

DATED this 19th day of April, 2022.

    /s/ Casey R. Fronk  
Tracy S. Combs  
Casey R. Fronk  
Attorney for Plaintiff  
SECURITIES AND EXCHANGE COMMISSION

---

[9] While Defendants and Relief Defendants may argue that the Court should entertain global carve-outs to the proposed asset freeze for living expenses and other exigencies, the language of the proposed freeze provides a consistent process by which the Court may consider living expenses requests on a case-by-case basis, by providing "allowance for necessary and reasonable living expenses to be granted only upon good cause shown by application to the Court with notice and an opportunity for the Commission to be heard." (*See* Ex. A at § VII, *see also* TRO Order § IX.)  The SEC submits that this procedure should be the standard by which the Court considers asset freeze carve-outs in the future.