ROLAND TANNER
PRO SE
1168 Sparta Crest Street
Henderson, NV 89052
rolandstanner@gmail.com
714-335-7602

```
_____ FILED        _____ RECEIVED
_____ ENTERED      _____ SERVED ON
              COUNSEL/PARTIES OF RECORD

         APR 20 2022

    CLERK US DISTRICT COURT
       DISTRICT OF NEVADA
BY: _____ DEPUTY
```

# UNITED STATES DISTRICT COURT

# NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 2:22-cv-00612 |
| Plaintiff, | DEFENDANT ROLAND TANNERS OPPOSTION TO THE REQUEST TO FREEZE ASSETS, PRELIMINARY INJUCTION, TEMPORARY RESTRAINING ORDER |
| vs. | |
| | DEFENDANTS ROLAND TANNERS REQUEST FOR LEAVE TO FILE HIS RESPONSE ON APRIL 20, 2022 |
| MATTHEW WADE BEASLEY; BEASLEY LAW GROUP PC; JEFFREY J. JUDD; CHRISTOPHER R. HUMPHRIES; J&J CONSULTING SERVICES, INC., an Alaska Corporation; J&J CONSULTING SERVICES, INC., a Nevada Corporation; J AND J PURCHASING LLC; SHANE M. JAGER; JASON M. JONGEWARD; DENNY SEYBERT; and ROLAND TANNER; | |

1

| | |
|---|---|
| 1 | Defendants, |
| 2 | |
| 3 | THE JUDD IRREVOCABLE TRUST; PAJ CONSULTING INC; BJ HOLDINGS LLC; STIRLING CONSULTING, L.L.C.; CJ INVESTMENTS, LLC; JL2 INVESTMENTS, LLC; ROCKING HORSE PROPERTIES, LLC; TRIPLE THREAT BASKETBALL, LLC; ACAC LLC; ANTHONY MICHAEL ALBERTO, JR.; and MONTY CREW LLC; |
| 11 | Relief Defendants. |

## REQUEST FOR LEAVE TO FILE OF ONE ADDITONAL DAY

Mr. Tanner requests that the Court grant him leave to file this response from April 19, 2022 to April 20, 2022 as he is appearing Pro Se at this time and does not have access to electronic filing. Mr. Tanner is seeking counsel but given the extremely limited time and the asset freeze he has been unable to obtain an Nevada based attorney within the window of just three business days. Mr. Tanner has attempted to reply to the SEC's moving papers in a reasonable time but given the overwhelming demands he is asking the Court to accept his objections concerning the asset freeze at this time. Mr. Tanner is seeking to find an attorney going forward but needed more than the three busienss days he was given.

## INTRODUCTION

The SEC has made a request of this Court to freeze all assets and impose upon Roland Tanner immediate discovery orders and a preliminary injunction without demonstrating that Mr. Tanner has done anything more than be tangentially connected to the scam perpetuated by Mr. Beasley. The sole basis of the SEC's claim appears to be the assertion that because they have alleged that he sold securities in violation of 15 U.S.C. 15(a)(1) all of Mr. Tanner's assets should be frozen, he should be subjected to extreme discovery demands, and a preliminary injunction. In order to accomplish this, they have substituted credible evidence (if any) against Mr. Tanner specifically, by simply using the term "defendants" as a method of lumping together Mr. Tanner into every action of everyone else within their moving papers.

The basic accusation of the SEC against Tanner seems to be that because Mr. Beasley created a Ponzi scheme, and pulled people into that scheme, anyone involved, no matter the level of participation, must somehow be as sinister and devious as Mr. Beasley and therefore should be place under extraordinary and onerous limitations i.e., the freezing of all assets and the ability of Mr. Tanner to perform even the most basic of life's activities. They do this without producing a single shred of evidence suggesting that the 65-year-old retiree is sudden planning the mass migration of his limited assets to unknown locations beyond the reach of this Court. Furthermore, they make zero indications of how much Mr. Tanner received for his alleged involvement nor how much he personally lost to the Beasley scam. Instead, they seek a blanket request to control every aspect of Mr. Tanner's financial actives and immediate action without time to properly gather and submit to their requests.

Mr. Tanner is asking this court to:

1. Reject the SEC request for an asset freeze.
2. Deny the request for a Preliminary Injunction and Temporary Restraining Order.

or

3. In the alternative, to grant a modified Order which freezes substantial assets and grants Mr. Tanner a reasonable time to respond.

Mr. Tanner does not object to the SEC request for an Order as set forth in Section VII (sale of any security), nor Section XII (destruction of documents). Mr. Tanner requests that the expedited discovery request be reasonable and grant a minimum of 10 day notice for depositions and a reasonable schedulable for all other productions.

This opposition is based upon these papers and any arguments made at the time of the hearing.

### OPPOSTION TO THE REQUEST TO FREEZE ASSETS OF ROLAND TANNER AND INJUCTION

The power to freeze assets and the guidelines employed by the Court are long-standing powers which Mr. Tanner does not dispute. In their most basic form, the Court can consider the following when determining a request by the SEC to freeze assets:

1. The likelihood of success on the merits.
2. The likelihood of dissipation of claimed assets or the inability to recover monetary damages if relief is not granted.[1]

---

[1] *Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009)*

4

3. The disadvantages and possible deleterious effects of a freeze as weighed against the considerations indicating the need for such relief.[2]

4. A concern that the defendant will dissipate the assets within the defendant's control or will transfer the assets beyond the jurisdiction of the United States.[3]

5. The injunction should not be overly broad noting that the Court has wide discretion and latitude in determining the scope of such an injunction.[4]

## CLAIMS OF SUCCESS ON THE MERITS

The SEC, in its complaint, alleges that Mr. Tanner "solicited dozens of investors to invest in the purchase agreements and received transaction-based compensation in return" and "that Tanner worked "under Jager" soliciting investments in the purchase agreements." The complaint goes on to suggest that Tanner raised "over $50 million" but makes no mention of how much, if any, of that money was ever under the control or even received by Tanner. In fact, all indications are that at worst Mr. Tanner acted as an unregistered broker or dealer who directed potential investors to Beasley and in exchanged received a fee for services. No mention in any of the SEC's paperwork indicates how much money Mr. Tanner ever received for his work.

The primary point of the SEC is that because Mr. Tanner is not a licensed broker or dealer that they are sure to win on the merits.[5] Assuming for a moment this may be true, what they fail to indicate to the Court is what

---

[2] *F.T.C. v. Evans Prod. Co.*, 775 F.2d 1084, 1088 (9th Cir. 1985)

*S.E.C. v. Manor Nursing Centers, Inc.*, 458 F.2d 1082,1105(2d Cir.1972) Noted as instructive.)

[3] *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988)

[4] *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 641 (9th Cir. 2004)

[5] *Please note that the do not claim him to be a part of the fraud in terms of scienter.*

they would win. Liability is only one variable in ones bid for success on the merits, the other is the damages. Given the state of the law under Liu v. SEC[6] demonstrating success of a financial victory requires more than just a showing that Mr. Tanner may have liability. In the instant matter the SEC gives the Court no credible evidence nor even an indication of what they would gain should they prevail. They simply want to freeze everything, throw Mr. Tanner's life into a full upheaval, and then figure it out some undisclosed time in the future.

## LIKELIHOOD OF DISSIPATION OR INABILITY TO RECOVER

The purpose of an asset freeze is to assure the Court that the target individual will not suddenly dissipate, destroy, convert, or transfer assets out of the reach of the Court. A party seeking an asset freeze must show the likelihood of dissipation of the claimed assets, or an inability to recover monetary damages if the relief is not granted.[7] Mr. Tanner would like to be able to debate the evidence put forward by the SEC that he will dissipate assets but in the enormity of the SEC's moving papers Tanner could not find any evidence of what will be dissipated, how he plans to make such a dissipation, past indicators that he has done anything to dissipate assets, nor any evidence of even the slightest hint of maleficence by Tanner with any of his assets. The summation of the SEC claims is that he somehow might, in an undisclosed manner, sudden abscond with all his assets beyond the reach of the Court.

Mr. Tanner and his wife Alison are retirees who live on fixed income. Mr. Tanner is 65, has no criminal history, did not formulate or create any portion of the Beasley Scheme, and invested millions of his own money which is now lost.

---

[6] *Liu v. SEC*, 140 S. Ct. 1936, 207 L. Ed. 2d 401 (2020)

[7] *See, e.g., Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003).

There is no indication of a lavish lifestyle or excessive spending by Tanner. In what form of this sudden dissipation of assets will occur he could not even venture a guess.

## BALANCING THE NEED FOR A FREEZE AGAINST THE EFFECTS ON MR. TANNER

In all cases the Court should balance the need for a freeze against the effects on Mr. Tanner. It is a clear concession of any logical thinking person that one goal of recovery in litigation should be the ability to pay once liability and damages have been determined. However, an asset freeze is an extreme measure that takes all that a person has, in every form, and tells them that they can literally do nothing. They cannot pay the mortgage or health insurance. They cannot pay car insurance, food costs, electricity, heating, or for daily expenses. They are placed at immediate risk of credit problems, the creation of debts, the inability to pay taxes, and much more. In order to take such draconian measures this Court should at least be given an indication of why such extreme measure should be instituted against Mr. Tanner. The SEC's exceedingly limited information, about why a freeze is needed against Mr. Tanner, fails to meet this standard. When measured against its potential damage to Mr. and Mrs. Tanner and the total devastation it will create, the balance weighs in the favor of denying such a complete freeze.

## DESTROYING, SELLING, OR TRANSFERING ASSETS BEYOND THE REACH OF THE COURT

The SCE bears the burden to show that Mr. Tanner is a risk for asset destruction, selling, or transferring assets beyond the reach of this Court or overseas. On this point the SEC has once again failed to present even the scantest information suggesting that Mr. Tanner has plans or abilities to suddenly transfer his assets. Upon this point they fail.

## THE COURT HAS BROAD LATITUDE IN DETERMING A SOLUTION

Mr. Tanner's net worth is the result of a life's honest labor. At the current moment he owns a home, where he has lived for seven years, with an estimated value of $1,260,000.00 (1168 Sparta Crest, Henderson NV). It is under contract for this amount and was due to close on April 15, 2022. The net proceeds would have been approximately $868,000.00. The SEC was informaed of this sale. Additionally, Mr. Tanner was preparing to move into a home that was being renovated. The estimated value of that home is approximately $2,600,000.00 (23 Dry Brook Trail, Henderson, NV). The debt on that home is zero. Mr. Tanner proposes that the Court could order these homes to be frozen assets and that Mr. Tanner not be permitted to sell or transfer those assets absent a Court Order. This would ensure that approximately $3,468,000.00 of Mr. Tanner's assets were frozen and unable to be transferred or dissipated. By all accounts, this amount appears to be more than enough to satisfy any judgement the SEC could claim. (Although it is again noted that the SEC has made no indication of what it claims are the potential damages that could be assigned to Mr. Tanner.) This type of resolution would, on balance, preserve assets and not create a total and undue disruption of the life of Mr. Tanner.[8] (See Exhibit 1)

## OTHER RELIEF

The SEC has made claims for other forms of relief which include an order for accounting, expedited discovery, a prohibition on the destruction of documents, and limitations to Mr. Tanners ability to sell securities. Mr. Tanner does not object to an accounting nor a reasonable expedited discovery requirement. He does not object to preserving all documents nor any prohibitions of selling securities of any type.

---

[8] *Mr. Tanner has additional assets which have been given to the SEC in their recent demand.*

Mr. Tanner submits that the SEC has failed to show why an expedited discovery schedule should be required as there is no real risk of a loss of information at this point. However, in the spirit of reasonableness, Mr. Tanner simply requests that he be given a reasonable time of 30 days to accomplish this request. Primarily, this is to ensure that there is no privilege, nor in the extreme, some type of fifth amendment issues. Mr. Tanner has not committed any criminal violation, but prudence requires the analysis be accomplished prior to the turning over of any documents or making of any statements. Furthermore, it is always easy to make a demand, but the responses often require significantly more time to complete than the demand. Mr. Tanner only seeks a reasonable schedule to accomplish the discovery demand. Mr. Tanner asks this Court to set a schedule that allows him to obtain the required information, organize the accounting, verify its accurateness, produce required documents and comport with the Court's order. There is no desire to avoid discovery only a desire to be able to reasonably accomplish what is required. On the issue of depositions, Mr. Tanner asks the Court to grant a reasonable 10 days' notice of a deposition as opposed to the extreme demand of two days.

Dated: April 19, 2022

Roland Tanner
Pro Se

# EXHIBIT 1

This home is presented as a comparison. It is across the street from my home and is the same moake and model but does not have a view.



# Closing Disclosure

**Closing Information**
Date Issued: 04/11/2022
Closing Date: 04/14/2022
Disbursement Date: 04/14/2022
Settlement Agent: Lawyers Title of Nevada, Inc
File #: 31220308
Property: 1168 Sparta Crest Street
Henderson, NV 89052
Sale Price: $1,260,000

**Transaction Information**
Buyer: Wolfgang Fischer and Mi Yoon
Seller: The Tanner Family Trust dated March 20, 2015
1168 Sparta Crest Street
Henderson, NV 89052

## Summaries of Transactions

### SELLER'S TRANSACTION

| | | |
|---|---|---|
| **M. Due to Seller at Closing** | | **$1,261,414.25** |
| 01 Sale Price of Property | | $1,260,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | | |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| **Adjustments for Items Paid by Seller in Advance** | | |
| 09 City/Town Taxes | | |
| 10 County Taxes | 04/14/22 to 07/01/22 | $1,360.81 |
| 11 Assessments | | |
| 12 | | |
| 13 HOA Dues | 04/14/22-04/30/22 | $43.63 |
| 14 HOA Dues-Buyer Debit/Credit Seller | | |
| 15 Trash Service | 04/14/22-05/01/22 | $9.81 |
| 16 Sewer Service | | |
| **N. Due from Seller at Closing** | | **$392,782.25** |
| 01 Excess Deposit | | |
| 02 Closing Costs Paid at Closing (J) | | $67,721.68 |
| 03 Existing Loan(s) Assumed or Taken Subject to | | |
| 04 Payoff of First Mortgage Loan to Evergreen Home Loan | | $322,841.07 |
| 05 Payoff of Second Mortgage Loan | | |
| 06 | | |
| 07 Title Insurance Premium Adjustment | | $2,219.50 |
| 08 Seller Credit | | |
| 09 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| **Adjustments for Items Unpaid by Seller** | | |
| 14 City/Town Taxes | | |
| 15 County Taxes | | |
| 16 Assessments | | |
| 17 | | |
| 18 | | |
| 19 | | |

**CALCULATION**

| | |
|---|---|
| Total Due to Seller at Closing (M) | $1,261,414.25 |
| Total Due from Seller at Closing (N) | -$392,782.25 |
| Cash ☐ From ☒ To Seller | $868,632.00 |

## Contact Information

**REAL ESTATE BROKER (B)**
Name: AM REALTY
Address: 5940 S. Rainbow Blvd
Las Vegas, NV 89118
NV License ID:
Contact: Tammy Truong
Contact NV License ID: B.0058706
Email: info@amrealtyvegas.com
Phone: (702)518-2151

**REAL ESTATE BROKER (S)**
Name: Realty One Group, Inc.
Address: 2831 St Rose Pkwy #100
Henderson, NV 89052
NV License ID:
Contact: Linda Lee
Contact NV License ID: S.0070638
Email: lindalee1721@gmail.com
Phone: (702)898-7575

**SETTLEMENT AGENT**
Name: Lawyers Title of Nevada, Inc
Address: 10801 W Charleston Blvd
Suite 225
Las Vegas, NV 89135
NV License ID: 3644
Contact: Maria Maneva
Contact NV License ID: 970908
Email: maria.maneva@ltic.com
Phone: 702-693-5110

## Confirm Receipt

The Tanner Family Trust dated March 20, 2015
BY: _/s/_
Roland Tanner, trustee

BY: _/s/ Alison Tanner_
Alison Tanner, trustee
Date: 4/11/22

CLOSING DISCLOSURE

Page 1 of 2 04/11/22 12:27 PM

12