TRACY S. COMBS (California Bar No. 298664)
Email: combst@sec.gov
CASEY R. FRONK (Illinois Bar No. 6296535)
Email: fronkc@sec.gov
SECURITIES AND EXCHANGE COMMISSION
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel: (801) 524-5796
Fax: (801) 524-3558

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 2:22-cv-00612-JCM-EJY |
| Plaintiff, | **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION TO APPOINT RECEIVER AND RELATED RELIEF** |
| vs. | |
| MATTHEW WADE BEASLEY; BEASLEY LAW GROUP PC; JEFFREY J. JUDD; CHRISTOPHER R. HUMPHRIES; J&J CONSULTING SERVICES, INC., an Alaska Corporation; J&J CONSULTING SERVICES, INC., a Nevada Corporation; J AND J PURCHASING LLC; SHANE M. JAGER; JASON M. JONGEWARD; DENNY SEYBERT; and ROLAND TANNER; | |
| Defendants; | |
| THE JUDD IRREVOCABLE TRUST; PAJ CONSULTING INC; BJ HOLDINGS LLC; STIRLING CONSULTING, L.L.C.; CJ INVESTMENTS, LLC; JL2 INVESTMENTS, LLC; ROCKING HORSE PROPERTIES, LLC; TRIPLE THREAT BASKETBALL, LLC; ACAC LLC; ANTHONY MICHAEL ALBERTO, JR.; and MONTY CREW LLC; | |
| Relief Defendants. | |

Plaintiff Securities and Exchange Commission (the "SEC") submits this motion, and following memorandum of points and authorities in support of its motion, to appoint a permanent equity receiver in this action, and for related relief.  On April 21, 2022, the Court entered a preliminary injunction preventing dissipation of, among other things, real and personal property owned and controlled by Defendants and Relief Defendants.  A receiver is appropriate here to address the preservation and disposition of those and the other assets that are the product of Defendants' offering fraud, administer those assets, and prevent asset devaluation and waste.

## FACTUAL BACKGROUND

### I.   DEFENDANTS' FRAUDULENT OFFERING SCHEME

As detailed in the SEC's *ex parte* motion for a temporary restraining order and other equitable relief (Dkt. No. 2),[1] bank records and witness testimony obtained in the SEC's investigation confirm that investors provided hundreds of millions of dollars to Defendants through Defendants' "purchase agreement" investment scheme.  Investors, when investing in these securities, relied on certain Defendants' false and misleading representations (both orally and in writing) that their investments would generate annual returns of at least 50 percent from litigation finance arrangements with attorneys and litigation plaintiffs around the country.  But in fact, as Defendant Beasley admitted during his March 3, 2022 standoff with the FBI, and as is evidenced by bank records for Beasley's attorney trust account (the "Beasley IOLTA"), there was no network of attorneys or plaintiffs generating profits for investors, and investor money was instead spent making Ponzi-type payments to earlier investors and promoters, and supporting Defendants' lavish lifestyles.

---

[1] In the interest of efficiency, the SEC adopts by reference its Statement of Facts set forth in its *Ex Parte* Motion for Entry of Temporary Restraining Order and memorandum of points and authorities in support of that motion (Dkt. No. 2, Dkt. No. 2-1 at 3–9), along with the additional evidence set forth in its Supplemental Memorandum in Support of Preliminary Injunctive Relief (Dkt. No. 21), and sets forth herein only those facts pertinent to the appointment of a receiver.

## II.     DEFENDANTS' AND RELIEF DEFENDANTS' ASSETS.

As described in the Declaration of Amir Salimi, attached in support of the SEC's motion for a temporary restraining order, the bank records from the Beasley IOLTA—one of the main hubs for the fraudulent scheme—show that over the relevant period, approximately $490 million in funds flowed into the account.  (*See* Dkt. No. 2-8, Salimi Decl. ¶ 11.)  Of that amount, the vast majority (which appear to be investor funds), were disbursed into bank accounts owned and controlled by Defendants and Relief Defendants, such that as of March 2022, only approximately $4 million remained in the Beasley IOLTA.  (*Id.* ¶ 13.)  Further analysis of the Beasley IOLTA (and certain of the accounts receiving funds from the IOLTA) indicate that a significant amount of these disbursed funds were used by Defendants and Relief Defendants to purchase real estate, personal property (including luxury vehicles and a private plane), and even cryptocurrency.  (*See generally id.*, *see also* Dkt. No. 24, Supp. Salimi Decl. ¶¶ 7–9.)  The SEC's analysis is ongoing, but in the meantime the accountings and budgets filed by Defendants, and provided to the SEC, reveal that Defendants and Relief Defendants are in possession of significant real property and personal property assets.  (*See*, *e.g.*, Dkt. Nos. 13, 53, 60.)  This includes real estate in Nevada, Utah, and California, luxury vehicles, and ongoing business concerns.

The receiver appointed in a state court action brought by Mark Murphy (an investor in and purported accountant for the scheme) has also identified a number of real property assets held by Defendants, including, among many other things, a Hawker 900 jet, undeveloped land and homes located in Las Vegas, Henderson, Lake Tahoe, and Mount Charleston; automobiles, recreational vehicles, a boat, jet skis, and a golf cart; and what the state court receiver describes as "additional assets too numerous to list."  (Dkt. No. 49 at 4–5.)  Moreover, Defendant Judd, who appears (based on the SEC's current analysis of the Beasley IOLTA) to have received at least $314 million in investor funds from the scheme, has refused to disclose his current assets, instead asserting his Fifth Amendment right against self-incrimination.  (*See* Dkt. No. 9.)

Besides the assets held by Defendants and Relief Defendants, it is likely that a number of third parties currently hold investor funds and/or assets purchased with investor funds.  The state court receiver has described "what the receiver believes to be fraudulent transfers to third-parties

who do not believe they are subject to any court's order," (Dkt. No. 49 at 5), and the bank account records indicate that a significant amount of the invested funds were likely used to make Ponzi-type payments to earlier investors.  (*See* Dkt. No. 2-8, Salimi Decl. ¶ 15.)  Indeed, the bank accounts associated with Defendant Judd alone show numerous payments to trust accounts in the name of apparent family members, and to other yet-unidentified accounts potentially held by third parties.  And other records suggest some Defendants may have been using business entities they owned or controlled to launder funds obtained in the investment scheme.

## ARGUMENT

Here, given the numerous and varied assets of Defendants and Relief Defendants (many still yet to be identified), and the importance of preserving and marshaling those assets for the benefit of the investor victims, the Court should appoint a permanent equity receiver.  The Court has broad discretion, pursuant to its general equity powers, to order ancillary relief—including the appointment of a receiver—to effectuate the purpose of the federal securities laws, to preserve assets, and to ensure wrongdoers do not profit from unlawful conduct.  *SEC v. United Fin. Grp., Inc.*, 474 F.2d 354, 358–59 (9th Cir. 1973) ("[Where a *prima facie* case of fraud has been established] [t]he district court has broad powers and wide discretion to frame the scope of appropriate equitable relief."); *see also SEC v. Wencke*, 622 F.2d 1363, 1365 (9th Cir. 1980); *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005).

### I.       A RECEIVER IS APPROPRIATE AND NECESSARY IN THESE CIRCUMSTANCES.

Courts look to several factors in determining whether to appoint a receiver, including the necessity of marshaling and preserving the assets and clarifying the financial affairs of entities owned or controlled by defendants.  *See Wencke*, 622 F.2d at 1372.  Other courts in SEC cases have also considered factors including "proper distribution of investor funds" and "protection of

the investors." *See*, *e.g.*, *SEC v. Credit First Fund*, 2006 WL 4729240, *15 (C.D. Cal. Feb. 13, 2006); *SEC v. Fifth Ave. Coach Lines, Inc.*, 289 F. Supp. 3, 42 (S.D.N.Y. 1968).[2]

Here, the evidence provided in support of the SEC's motion for a temporary restraining order and for preliminary injunctive relief establishes a *prima facie* case that Defendants engaged in a fraudulent scheme. The Court may appoint a receiver on such showing, and should not permit "those who were enjoined from fraudulent misconduct to continue in control of [the defendant's] affairs." *SEC v. Keller Corp.*, 323 F.2d 397, 403 (7th Cir. 1963); *see also SEC v. Current Fin. Servs.*, 783 F. Supp. 1441, 1443 (D.D.C. 1992); *SEC v. Manor Nursing Ctrs. Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972). As set forth above, a receiver is also necessary in this case as many of Defendants' assets consist of real and personal property that cannot be easily preserved awaiting final judgment; certain Defendants have declined to disclose what assets they are currently holding; and there may well be numerous third parties not currently subject to the Court's asset freeze that are holding funds or assets that rightly belong to the hundreds of defrauded investor victims in this scheme. Because Defendants are unlikely to have sufficient assets to satisfy the full value of any judgment obtained in this case, any loss, dissipation or devaluation of Defendants or Relief Defendants' assets would irreparably harm the investors and

---

[2] A receiver may be appointed over assets held by, for the benefit of, or under the control of an individual defendant, as well as over a corporate entity. *See*, *e.g.*, *SEC v. Stanford, et al.*, No. 09-CV-0298 (N.D. Tex. Feb. 17, 2009) (appointing receiver to oversee assets owned or controlled jointly or individually by business entities and individual defendants); *see also In re Sanctuary Belize Litigation*, 408 F. Supp. 3d, 650, 663 (D. Md. 2019) (ordering receiver to take exclusive custody, control, and possession of all assets held by or for the benefit of individual defendants that the receiver values at $1,000 or more); *FTC v. Business Card Experts, Inc.*, 2007 WL 1266636 at *8 (Apr. 27, 2007) (ordering transfer of assets to receiver held individually or jointly by any individual defendant, for the benefit of any individual defendant, or that are under the direct or indirect control of any individual defendant).

prevent the SEC from obtaining meaningful remedies to punish unlawful conduct and deter future violations of the federal securities laws.[3]

As such, the SEC moves to appoint a receiver as to only Defendants and those Relief Defendants that the SEC currently believes to have significant real or personal property assets that could be devalued or wasted in the absence of a receivership.  The SEC does not now propose to appoint a receiver over Relief Defendants PAJ Consulting Inc; Stirling Consulting, L.L.C.; CJ Investments, LLC; JL2 Investments, LLC; Rocking Horse Properties, LLC; Triple Threat Basketball, LLC; ACAC LLC; Anthony Michael Alberto; or Monty Crew LLC, as the SEC believes the Court's preliminary injunction and asset freeze is sufficient to preserve the known assets of those Relief Defendants.  To the extent additional information obtained by the SEC indicates that a receiver is necessary as to any of these Relief Defendants, the SEC may move to amend any receivership order to include those Relief Defendants.

## II.   APPOINTING A RECEIVER OVER THE TWO CHAPTER 11 DEBTORS IS ALSO APPROPRIATE.

On March 17, 2022, certain investors filed involuntary petitions under Chapter 11 of the Bankruptcy Code against Defendants J & J Consulting Services, Inc. and J and J Purchasing, LLC (collectively, the "J&J Entities") in the U.S. Bankruptcy Court for the District of Nevada.[4] The receiver's appointment here should include the J&J Entities, so that the receiver may properly marshal, preserve and administer all assets relating to the fraudulent scheme.  Although the J&J Entities are in bankruptcy, the receiver will be able to manage the J&J Entities while in

---

[3] Here, a receiver will also be necessary to aid in pursuing an efficient collection and distribution of assets to the hundreds of yet to be identified investor victims of Defendants' scheme, some of whom are now proceeding independently in investor suits to recover available assets.

[4] The cases are *In re J & J Consulting Services, Inc.*, Case No. 22-10942-mkn (Bankr. D. Nev.) and *In re J and J Purchasing, LLC*, Case No. 22-10943-mkn (Bankr. D. Nev.).  On May 2, 2022, the bankruptcy court entered orders for relief in both involuntary cases, converting the proceedings to formal Chapter 11 cases.

bankruptcy as debtors in possession.  *Adams v. Marwil (In re Bayou Group, LLC)*, 564 F.3d 541, 548 (2nd Cir. 2009) (receiver given corporate authority to manage defendant entity in appointment order is authorized to serve in capacity as debtor in possession in defendant's chapter 11 bankruptcy).  Including the two J&J Entities within the scope of the receiver's overall appointment will maximize efficiencies by entrusting all assets to the management and control of a single fiduciary subject to the Court's supervision.

Appointment of a receiver over entities in bankruptcy is done routinely, and is not precluded by an automatic stay.  For example, in *S.E.C. v. First Financial Group of Texas*, the Fifth Circuit upheld the jurisdiction of the district court to appoint a receiver to take control of a debtor's assets (so as to safeguard the bankruptcy estate from dismemberment and dissipation) and held that pending involuntary bankruptcy proceedings were not an impediment to the receiver's appointment.  *Id*. at 439.  Reviewing the legislative history behind Section 362, the court determined that "an "act to obtain possession" as set forth in the automatic stay provision was not intended to include the judicial appointment of a receiver pursuant to a governmental unit's enforcement of its police or regulatory powers (and the transfer of possession of the violator's property to the receiver in order that he may perform his duty to maintain the status quo)." *Id*.  Other courts have held likewise.[5]

---

[5] *See, e.g.*, *S.E.C. v. Wolfson*, 309 B.R. 612, 620 (D. Utah 2004) (Bankruptcy Code's regulatory exception to the automatic stay permitted district court to appoint a receiver in SEC civil fraud action against Chapter 11 debtor); *S.E.C. v. Morriss*, Case No. 4:12-cv-00080, 2012 WL 2154903 (E.D. Mo. June 13, 2012)(receiver appointed and assets frozen after Chapter 11 filing); *S.E.C. v. Tyler*, Case No. 3:02-CV-0282, 2002 WL 32538418 at *7 (N.D. Tex. Feb. 21, 2002) (same); *Cf. CFTC v. Co Petro Marketing Group, Inc.*, 700 F.2d 1279, 1285 (9th Cir. 1983) (affirming district court's jurisdiction to enforce its preliminary injunction to compel debtor to return money to a receiver even after filing of bankruptcy petition since it was to enforce police and regulatory powers of CFTC and therefore the order was excepted from the automatic stay under the "police or regulatory exception"); *S.E.C. v. Elmas Trading Corp.*, 620 F. Supp. 231,

That Defendant Judd has selected a Chief Restructuring Officer ("CRO") for the J&J Entities should not prevent the appointment of a receiver in this Court over those entities.  As noted, district courts have appointed receivers over entities also subject to bankruptcy proceedings to ensure the preservation of assets.  Appointing a receiver for the J&J Entities will provide for uniformity in administration of all entities by a single fiduciary who is subject to the supervision and jurisdiction of this Court.  In addition, the circumstances giving rise to the appointment of the CRO, Mr. Kravitz, creates significant uncertainty about his independence.  Among other things, Kravitz was appointed by Defendant Judd—who has refused to disclose any assets and instead has asserted the Fifth Amendment in response to the SEC's discovery requests and the ordered accounting—and Judd further took the position in the bankruptcy that he would consent (on behalf of the J&J Entities) to the Chapter 11 only if Mr. Kravitz served as CRO.  Since his appointment, the CRO has acted in this Court to oppose the SEC's motion for a preliminary injunction, arguing that the Court should not impose any injunction on the J&J Entities' ability to continue to promote and sell the fraudulent investments at issue in this case, and that the Court should release the entities' frozen assets to pay his own fees of $50,000 per month.  Given these circumstances, a receiver is necessary to ensure that the assets of the J&J Entities are not diminished or dissipated by the CRO's apparent conflicts of interest.  Moreover, a receiver is critical here to determine how and whether the bankruptcy cases should proceed, the most cost effective way of utilizing the bankruptcy case, whether there is any need for a CRO where a Ponzi scheme has occurred, and how best to maximize asset recovery for all defrauded investors.  Consequently, appointment of a receiver over the entities in Chapter 11 is necessary to protect investors.

Thus, the SEC seeks appointment of a receiver over the Chapter 11 entities, and further requests that the employment of the CRO and any other officers, directors, managers, or other

241 (D. Nev. 1985), *aff'd,* 805 F.2d 1039 (9th Cir. 1986) (exception to the automatic stay provisions found in U.S.C. § 362(b)(4) enabled district court to properly rule on receiver's motion to include debtor corporation in the receivership).

employees of the Chapter 11 entities are terminated, such that the receiver may evaluate the bankruptcy cases for the J&J Entities and determine the most efficient path forward for those cases during the course of the receivership.  Further, the proposed receivership order provides that all persons other than the receiver are barred from commencing additional bankruptcy proceedings against the receivership defendants, and that all other ancillary proceedings as to the relief defendants are stayed until further order of the Court.

### III.      THE SEC RECOMMENDS GEOFF WINKLER AS RECEIVER.

The SEC recommends that Mr. Geoff Winkler, of American Fiduciary Services, be appointed as receiver in this action.  Attached as Exhibit 2 is a summary of Mr. Winkler's experience and qualifications and the qualifications of his firm.

Mr. Winkler sent the information attached as Exhibit 2 to the SEC at request of counsel for the SEC in this action, who solicited this information in conformity with internal SEC procedures for selecting candidates to recommend for appointment by federal district courts as receivers in SEC actions.  The SEC obtained proposals from two other qualified receiver candidates and evaluated all three proposals before selecting Mr. Winkler as its recommended candidate for receiver in this action.  If the Court desires, the SEC will provide information regarding these or other candidates.

The SEC is recommending Mr. Winkler for several reasons.  Mr. Winkler is an experienced receiver who has also served as a receiver in other, similar actions, including by leading a receivership team in an SEC action against a large operator of retirement care facilities in 34 states that was accused of defrauding over 12,000 investors and creditors for over $2 billion.  His firm, American Fiduciary Services, has an office in Las Vegas, and is well-positioned to preserve and marshal real property and personal property assets located in Nevada and the surrounding states.  In addition, American Fiduciary Services has on staff certified public accountants, forensic accountants, and sufficient staff to trace funds, determine the value of real and personal property, and assist with determining how to maximize the value of assets.  In the SEC's experience, it is more economical to have a receiver that has such capabilities (here, including corporate accounting, forensic accounting, case administration, claims administration,

asset valuation, investor communication and internet technology) in-house, in contrast to a receiver that would need to hire, for example, an outside or separate forensic accounting firm or other professionals to perform necessary receivership duties.  Moreover, Mr. Winkler and his firm have agreed to discount their rates by an additional 15 percent for this matter.  That is, Mr. Winkler's regular hourly rate, as stated in the attached information, is normally $595 per hour; but he has agreed to discount his rate to $340 per hour for this matter, which is reasonable, particularly in view of his substantial prior experience working as a receiver in Ponzi-type matters.

## **CONCLUSION**

Thus, for the reasons stated herein, the SEC respectfully requests that the Court appoint Mr. Geoff Winkler as Receiver in this action, and enter the proposed order, attached hereto as Exhibit 1, providing Mr. Winkler the power to marshal and preserve the assets of Defendants and Relief Defendants, and providing related relief associated with Mr. Winkler's appointment as Receiver.

DATED this 3rd day of May, 2022.

    _/s/ Casey R. Fronk_____
Tracy S. Combs
Casey R. Fronk
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of May, 2022, I caused the **PLAINTIFF**

**SECURITIES AND EXCHANGE COMMISSION'S MOTION TO APPOINT RECEIVER**

**AND RELATED RELIEF** to be served to all parties entitled to service through the Court's

ECF system and to the following individuals by the means indicated below:

*By U.S. Mail, first class, postage prepaid, to:*

Matthew Wade Beasley
Nevada Southern Detention Center
2190 East Mesquite Avenue
Pahrump, NV 89060

BJ Holdings LLC
c/o Beasley Law Group PC, c/o Matthew Wade Beasley
Nevada Southern Detention Center
2190 East Mesquite Avenue
Pahrump, NV 89060

The Judd Irrevocable Trust
c/o Trustee Matthew Wade Beasley
Nevada Southern Detention Center
2190 East Mesquite Avenue
Pahrump, NV 89060

Jason M. Jongeward and JL2 Investments, LLC
███████████████
Washington, UT ███████

Rocking Horse Properties, LLC
2176 Skyline Heights Lane
Henderson, NC  89052

PAJ Consulting, Inc
21371 Estepa Cir.
Huntington Beach CA  92648

Triple Threat Basketball, LLC
c/o Warren Rosegreen
████████████████
Henderson, NV ███████

Anthony Michael Alberto, Jr. and Monty Crew, LLC

██████████████

Philadelphia, PA ████████

The Judd Irrevocable Trust
c/o Jeffrey Judd

██████████████

Henderson, NV ████████

**_By email to the following:_**

Dyke Huish
Huish Law Firm
huishlaw@mac.com
  _Counsel for Roland Tanner_

Daniel Hill
Snow, Christensen & Martineau, P.C.
DDH@scmlaw.com
  _Counsel for ACAC LLC_

_/s/ Casey R. Fronk_
Casey R. Fronk