TRACY S. COMBS (California Bar No. 298664)
Email: combst@sec.gov
CASEY R. FRONK (Illinois Bar No. 6296535)
Email: fronkc@sec.gov
JONI OSTLER (Utah Bar No. 9607)
Email: ostlerj@sec.gov
SECURITIES AND EXCHANGE COMMISSION
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel: (801) 524-5796
Fax: (801) 524-3558

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>    vs.<br><br>MATTHEW WADE BEASLEY; BEASLEY LAW GROUP PC; JEFFREY J. JUDD; CHRISTOPHER R. HUMPHRIES; J&J CONSULTING SERVICES, INC., an Alaska Corporation; J&J CONSULTING SERVICES, INC., a Nevada Corporation; J AND J PURCHASING LLC; SHANE M. JAGER; JASON M. JONGEWARD; DENNY SEYBERT; and ROLAND TANNER;<br><br>        Defendants;<br><br>THE JUDD IRREVOCABLE TRUST; PAJ CONSULTING INC; BJ HOLDINGS LLC; STIRLING CONSULTING, L.L.C.; CJ INVESTMENTS, LLC; JL2 INVESTMENTS, LLC; ROCKING HORSE PROPERTIES, LLC; TRIPLE THREAT BASKETBALL, LLC; ACAC LLC; ANTHONY MICHAEL ALBERTO, JR.; and MONTY CREW LLC;<br><br>        Relief Defendants. | Case No.: 2:22-cv-00612-JCM-EJY<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S REPLY IN SUPPORT OF MOTION TO APPOINT RECEIVER AND RELATED RELIEF** |

1

Plaintiff Securities and Exchange Commission (the "SEC") herein replies to the oppositions filed by Defendant Jeffrey Judd ("Judd") (Dkt. No. 78), Defendants J&J Consulting Services, Inc. (a Nevada corporation) and J and J Purchasing, LLC (together, the "J&J Defendants") (Dkt. No. 79[1]) and Defendant Shane Jager ("Jager") (Dkt. No. 82) to the SEC's motion to appoint a receiver and for related relief (Dkt. No. 67). No defendant raises any viable legal argument as to the SEC's requested relief, and the facts of this case strongly support the appointment of a receiver with authority to prevent dissipation of all Defendants' assets, many of which are currently at risk of depreciation, theft, damage, and neglect.

## INTRODUCTION

The SEC is asking the Court to appoint a receiver because there are tens of millions of dollars in assets that, while frozen, are still subject to being significantly devalued by theft, damage, and neglect during the pendency of the SEC's action. (*See* Dkt. No. 67, Mot. at 3–4; *see generally* Dkt. No. 2-8, Salimi Decl.) Those assets ultimately may be available to help repay investors a portion of their losses.

The SEC proposes that Geoffrey Winkler, of American Fiduciary Services, be appointed as receiver and corporate officer for five corporate defendants and relief defendants, including the two J&J Defendants. In addition, the SEC proposes that Mr. Winkler be appointed receiver to take control over the Beasley Law Group (IOLTA) trust account, and the personal assets of seven individual defendants, including Judd and Jager. The SEC also anticipates that the proposed receivership may need to be expanded to the extent additional individuals and entities are made parties to this action.

Because all of the receivership entities and assets are part of the same underlying fraudulent scheme, the SEC believes that the appointment of one receiver, for all entities, will be in the best interests of the investor victims, by ensuring that matters are administered in a uniform fashion subject to the jurisdiction and oversight of the Court. However, Judd, along

---

[1] Certain creditors in the pending Chapter 11 bankruptcy proceeding also filed a joinder in the J&J Defendants' opposition. (Dkt. No. 80).

with the recently-appointed Chief Restructuring Officer ("CRO") of the J&J Defendants, strongly oppose Mr. Winkler being appointed to manage those two entities. They contend that this Court should allow the two J&J Defendants to be separately managed by the CRO, in a different case, in a different court.

The SEC cannot conceive of any possible benefit to investors in having the two J&J Defendants managed by a separate, and substantially more costly, team of professionals. The CRO of the J&J Defendants earns a $50,000 flat fee each month he is employed. The CRO's firm, Province LLC, will earn substantially more fees from additional professionals charging rates of up to $1,000 per hour. Moreover, the firm employed as bankruptcy counsel for the J&J Defendants – Garman Turner Gordon, LLP ("GTG") – will bill its attorneys at standard/non-discounted rates of up to $850 per hour. In contrast, because of the significant public service interests in this case, Mr. Winkler will discount his hourly rate from $595 to $340 (a 43% discount), and other professionals in his firm will discount their rates by 23%-36%, with no rate higher than $310 per hour. Mr. Winkler's proposed receivership counsel also has agreed to significantly discount rates, with no rate exceeding $480 per hour.

Further, the SEC is deeply concerned that, if allowed to remain in control of the J&J Defendants, the CRO and GTG will take actions that at best will substantially duplicate and, at worst, will greatly interfere with, the receiver's duties. Over the past month, the CRO and GTG have issued several dozen subpoenas, filed a lawsuit, and substituted as plaintiff in another, all with the apparent goal of recovering assets that presently are, or likely will become, part of the receivership estate. The CRO and GTG fail to explain how their continued management of the J&J Defendants would benefit the overall receivership process. To the contrary, based on statements in the J&J Defendants' Response (*see* Dkt. No. 79 at p. 15, line 22 – p. 16, line 14), it is apparent that their plan is to take control over all of the receivership assets and administer everything in the bankruptcy. The fact that the CRO's plan is strongly endorsed by Judd himself (*see* Dkt. No. 78 at pp. 16–19), whom the SEC alleges was a major participant in the fraud, is even more troubling. In the end, denying the receiver motion with respect to the two J&J

Defendants will result in a significantly more costly, less efficient, and more contentious, process for the victims of this fraud.

In their Responses, neither Judd nor the J&J Defendants cite a single case holding that the appointment of a receiver, with corporate management powers over a Chapter 11 debtor, violates the automatic stay.  Without any such authority, they offer a collection of theories as to why this Court should be the first to rule that the requested relief is not excepted from the automatic stay under Section 362(b)(4).  Those arguments lack merit, and should not prevent this Court from granting relief that no doubt will best protect investor interests.  Likewise, Defendant Judd's and Jager's unsupported claims that they are best suited to administer their own assets is irrelevant, where the SEC's proposed relief contains safeguards to ensure that the Court will have oversight over the receiver's decisions regarding the Defendants' assets.

## ARGUMENT

I. **DEFENDANTS RAISE NO LEGAL IMPEDIMENT TO THE SEC'S REQUESTED RELIEF.**

    A. **Appointing Mr. Winkler to Manage the J&J Defendants Is Not an Impermissible Collateral Attack on the Bankruptcy Court's Order Approving the CRO's Employment.**

Judd and the J&J Defendants argue that this Court's appointment of Mr. Winkler, to manage the J&J Defendants, would constitute an impermissible collateral attack on a prior Bankruptcy Court order.[2]  This argument relies on a mischaracterization of the prior order and a disregard for the context in which it was entered.  More fundamentally, nothing about the CRO's employment deprives this Court of its equitable jurisdiction and inherent authority to fashion appropriate remedies and relief in this action.

---

[2] The bankruptcy cases are *In re J & J Consulting Services, Inc.*, Case No. 22-10942-mkn (Bankr. D. Nev.) and *In re J and J Purchasing, LLC*, Case No. 22-10943-mkn (Bankr. D. Nev.) which are being jointly administered under BK-22-10942-MKN (herein, "Bankruptcy Case").

4

Several creditors commenced the bankruptcy case by filing involuntary Chapter 11 petitions against the J&J Defendants. Shortly thereafter, the petitioning creditors filed a motion for the appointment of a Chapter 11 trustee for "cause." The "cause" alleged was the fraud and dishonesty by Judd based on his alleged role in running the J&J Defendants as a Ponzi scheme.[3]

Prior to the trustee hearing, which would have produced evidence by the petitioning creditors of his role in the fraud, Judd, as sole director of the J&J Defendants, executed a *Written Consent* appointing Peter Kravitz as CRO to take over control of the entities.[4] Judd also entered into an employment agreement for the J&J Defendants to hire Kravitz as CRO, agreeing to pay him a salary of $50,000 per month.[5] Significantly, Judd took the position that he would consent to orders for relief in the bankruptcy case, but only if Kravitz was allowed to serve as CRO.

Kravitz then filed an emergency application for approval of his employment agreement, which was supported by the petitioning creditors.[6] The Bankruptcy Court approved Kravitz's employment, in large part because of the resulting entry of orders for relief against the J&J Defendants:

> The Court believes that under the circumstances, especially since there is the commitment to immediately agree to entry of an order for relief, that the particular relief, if you will, provides additional protections by the way of the automatic stay, specifically preventing the debtor – the debtors themselves from attempting to use property out of the ordinary course of business. This additional layer of protection I believe dovetails over the protection that was otherwise granted by Judge Mahan and the TRO that will expire a week from today, unless extended at the preliminary injunction hearing held on April 21. This is an additional protection beyond which – what may exist in connection with the [state court] receivership as well.

---

[3] *See* Bankruptcy Case, ECF No. 6

[4] Bankruptcy Case, ECF No. 13, Exh. 1

[5] Bankruptcy Case, ECF No. 14, Exh. 1

[6] Bankruptcy Case, ECF No. 13

(*See* Bankruptcy Case, April 15, 2022 Transcript, p. 39, line 15 – p. 40, line 1).[7] Thus, the "best interests" finding by the Bankruptcy Court, that the J&J Defendants tout as so compelling in their opposition, had nothing to do with any special traits or qualifications of the CRO. Rather, it was the fact that Judd had conditioned entry of the orders for relief upon approval of the CRO's employment that appears to have swayed the Bankruptcy Court.

Moreover, the Bankruptcy Court's order did nothing more than authorize the J&J Defendants to enter into an employment contract with the CRO. In fact, in the underlying application, the J&J Defendants stated that court approval of the contract was not required, but was being sought only "as a sign of its good faith, and in an abundance of caution….."[8] The J&J Defendants sought approval of the employment contract under Section 363(b)(1) of the Bankruptcy Code, which allows a debtor to use estate property if "it is an appropriate exercise of the debtor's business judgment."[9] Thus, the Bankruptcy Court's order was only a determination that the J&J Defendants' decision to enter into the employment contract was within their business judgment. That decision in no way restricts this Court's authority to appoint Mr. Winkler to aid in the administration of this proceeding.

Judd and the J&J Defendants both contend that if the SEC desires to replace the CRO with a new manager for the J&J Defendants, then the SEC should ask the Bankruptcy Court to appoint a trustee. First, this contention ignores the fact that the SEC is permitted to prosecute this action as part of the SEC's policy and regulatory powers to enforce, and seek redress for violations of, the federal securities laws. Second, because an independent person is needed to manage the estates and assets of more than just the J&J Defendants, pursuing a trustee over those entities alone would not achieve the goal of having a single person uniformly and efficiently administer this process under the oversight and jurisdiction of this Court. *Cf. SEC v. Hardy*, 803

---

[7] The J&J Defendants did not include these pages of the hearing transcript in their supporting Exhibit (Dkt. No. 79-6, Exh. F), but the relevant pages are available at Dkt. No. 43-1.

[8] Bankruptcy Case, ECF No. 13, at p.12, lines 1-2.

[9] Id. at p. 12, lines 17-18 (citations omitted)

F.2d 1034, 1037 (9th Cir. 1986) ("The basis for broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions.").

### B. The Receiver Motion Does Not Violate the Automatic Stay in the J&J Defendants' Bankruptcy.

The Defendants do not contest that this Court has jurisdiction to determine whether the SEC's receiver motion is excepted from the automatic stay, which is established law. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1107 (9th Cir. 2005) ("We therefore hold, in accordance with established law, that a district court has jurisdiction to decide whether the automatic stay applies to a proceeding pending before it, over which it would otherwise have jurisdiction."). The J&J Defendants further acknowledge that the only act by the SEC that is subject to the automatic stay is the enforcement of a money judgment. (*See* Dkt. No. 79 at 17.) Here, the SEC has no money judgment against the J&J Defendants, so there is nothing the SEC could presently enforce in violation of the automatic stay.

The J&J Defendants, however, argue that the Receiver Motion is an "impermissible **preparatory** step to collect on the SEC's **anticipated** judgment on its disgorgement and civil penalty claims." (*Id*. at 18 (emphasis added).) As support, they incorrectly characterize the receiver's role as one to liquidate the debtors' assets for satisfaction of the SEC's claims. (*See id*. at 19.) Nothing in the SEC's proposed receivership order supports this reading, and it ignores the fact that a receiver appointed in an SEC enforcement action is an independent fiduciary and an agent **for the Court**, not the SEC. *See SEC v. Champion-Cain,* Case No. 3:19-cv-01628-LAB-AHG, 2021 WL 5882599 at *1 (S.D. Cal. Dec. 13, 2021) ("The Receiver is the Court's agent for 'promoting orderly and efficient administration of' the Receivership Entities' assets 'for the benefit of creditors.'") (*citing SEC v. Hardy*, 803 F.2d at 1038). Further, when quoting the relevant provisions of the proposed order addressing the receiver's authority to sell assets and pay creditor claims, the J&J Defendants omit the key phrase "[u]pon appropriate order of the Court." That is, the order merely provides that the receiver may seek Court permission to sell property, *if appropriate*. (*See* Dkt. No. 67-2, Proposed Order at ¶ 38.)

Likewise, the SEC's pursuit of monetary judgments in this action does not mean that, by requesting the appointment of a receiver to protect assets, the SEC is enforcing a money judgment or pursuing a pecuniary interest. In *SEC v. Rind*, 991 F.2d 1486 (9th Cir. 1993), the Ninth Circuit recognized the public purpose of disgorgement orders entered in SEC enforcement cases: "[b]y deterring violations of the securities laws, disgorgement actions further the Commission's public policy mission of protecting investors and safeguarding the integrity of the markets." *Id.* at 1491. The Ninth Circuit explained that this view remains true even though disgorged funds may be returned to defrauded investors. *Id.* at 1191–92 ("Although the Commission at times may use the disgorged proceeds to compensate injured victims, this does not detract from the public nature of Commission enforcement actions: 'the touchstone remains the fact that public policies are served and the public interest is advanced by the litigation.'") (*quoting Dole v. Local 427, Int'l Union of Elec. Workers*, 894 F.2d 607, 612 (3rd Cir. 1990)). Defendants' argument that the SEC is improperly pursuing a pecuniary interest by seeking a monetary judgment would contradict this nearly thirty years of unbroken Ninth Circuit precedent.

The J&J Defendants also suggest that the government violates the automatic stay whenever the government action conflicts with the control of the *res* or property of the bankruptcy estate. (*See* Dkt. No. 79, at 19, 21.) The cases they cite in support, however, rely on authority that pre-dates the 1998 amendment to the "police and regulatory power" stay exception. The amendment made clear that the police and regulatory power exception allows governmental acts to obtain possession or control of bankruptcy estate property. *SEC. v. Wolfson*, 309 B.R. 612, 618 (D. Utah. 2004) ("In 1998, Congress amended section 362(b)(4) to make clear that governmental police and regulatory actions are excepted from section 362(a)(3) of the Bankruptcy Code, which stays 'any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.'") (citation omitted). Thus, while the SEC is stayed from enforcing a money judgment against estate property as a collection measure, seeking a receiver and corporate manager to take control and possession of estate property properly falls within the scope of Section 362(b)(4).

### C. If Appointed, Mr. Winkler Will Report to the Court on the Best Plan with Respect to the Bankruptcy Process.

In addition, the SEC's proposed receivership order does not usurp the Bankruptcy Court of any of its authority or jurisdiction over the J&J Defendants, nor make any predetermination as to the disposition of their Chapter 11 cases. To the contrary, the proposed order requires Mr. Winkler, within 30 days of his appointment, to "report to this Court as to whether the Bankruptcy Cases should continue in Chapter 11, or be converted to Chapter 7, dismissed or suspended during the course of this receivership." (*See* Dkt. No. 67-2, Proposed Order at ¶ 47.) The proposed order also allows Mr. Winkler to seek authorization to file bankruptcy petitions for additional receivership entities, as necessary or appropriate. (*See id*. at ¶ 48.) Mr. Winkler is experienced with both bankruptcy and receivership law, and will be able to properly analyze the issues involved.

Mr. Winkler will be in the best position to determine the proper disposition of the bankruptcy cases because, unlike the CRO and GTG, he has no direct financial stake in the outcome of that decision. Whereas the CRO and GTG must have the bankruptcy cases continue in order to maintain their lucrative employment contracts, Mr. Winkler's compensation will not be tied to whether the bankruptcy cases continue.

Judd and the J&J Defendants both assert that this Court should defer to the bankruptcy proceedings because the bankruptcy process is preferred by courts to an equity receivership. They fail to note, however, that the present bankruptcy only involves the two J&J Defendants and none of the other entities or individuals involved in this action. Moreover, as just explained, nothing in the proposed order terminates the bankruptcy or prefers receivership over bankruptcy. Rather, it allows Mr. Winkler (who, unlike the CRO and GTG, has no financial stake in the outcome) to analyze and provide a report to the Court with recommendations about the best path forward. This independent assessment also will be beneficial, considering the extent to which Mr. Judd – a central player in the underlying scheme – has steadfastly supported the CRO's management of the J&J Defendants as part of the Chapter 11 process.

### D. The Proposed Order Does Not Violate Section 105(b) of the Bankruptcy Code.

Finally, there is no merit to Judd and the J&J Defendants' argument that the SEC's proposed receivership violates Section 105(b) of the Bankruptcy Code. Section 105(b) prohibits a court from appointing a receiver in a bankruptcy case. *See* 11 U.S.C. §105(b). The SEC's proposed receivership order, however, contemplates that Mr. Winkler would be appointed in two capacities, one as receiver and the other "as the sole and exclusive officer, director and managing member of each of the J&J Receivership Defendants." (Dkt. No. 67-2, Proposed Order at ¶ 4.) It is in this latter ***corporate*** capacity that the order would authorize Mr. Winkler to manage the J&J Defendants. (*Id.* at ¶ 46, ("the Receiver, as sole and exclusive officer, director and managing member, of [the J&J Defendants] shall possess sole and exclusive authority and control….).) Where a district court appoints an independent person to serve as both receiver and as a corporate officer, that person, as corporate officer, may manage the corporation as debtor in possession in a Chapter 11 case. *See In re Bayou Group, LLC*, 564 F.3d 541, 548 (2nd Cir. 2009) (explaining that when receiver order in Ponzi scheme case appoints individual with "two hats" – one as receiver and one as sole and exclusive managing member – the managing member role allows individual to manage Chapter 11 debtor in possession). Thus, if the Court appoints Mr. Winkler to manage the J&J Defendants in a corporate capacity, Section 105(b) will not be implicated.

## II. THE FACTS AND CIRCUMSTANCES OF THIS CASE SUPPORT THE ENTRY OF THE SEC'S PROPOSED RECEIVERSHIP ORDER.

Both Judd and Jager tangentially challenge the Court's entry of a preliminary injunctive order, claiming (once again, in Judd's case) that only Defendant Beasley engaged in "fraud" and that each of those Defendants should be entitled to continue to manage their assets. (*See* Dkt. No. 78 at 12–13; Dkt. No. 2–3.) Jager also argues that he is "best suited to dispose of the real property" in his possession because "[h]e has been a Las Vegas realtor for the past 20 years," and that the SEC is asking for a "heavy handed" receivership order that, he suggests, would be counterproductive as to his assets. (Dkt. No. 82 at 3–4.) These arguments, however,

misapprehend both the facts of this case and the safeguards inherent in the SEC's proposed order.

***First***, as discussed at length in the SEC's prior motion for temporary restraining order and supplemental memorandum in support of a preliminary injunction, the requested relief is appropriate and necessary here regardless of whether any particular defendant engaged in "fraud"—which Judd appears to conflate solely with a knowing violation of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)]. In addition to violations of Section 10(b)—which violation requires only "reckless" conduct and which "is not debatable" where, as here, Judd operated a Ponzi scheme,[10] the SEC has also alleged violations of Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)(1)], Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e(a), (c)], and Section 15(a)(1) of the Exchange Act [[15 U.S.C.§ 78o(a)(1)]—the latter two of which are strict liability offenses. The fact remains, and no Defendant has seriously challenged, that the compensation Defendants received for soliciting investors into this scheme, and the hundreds of millions of dollars of investor funds that flowed through the scheme, are not properly those of the Defendants to hold or spend. Thus, whether any particular Defendant knew the operation in which they were involved was a Ponzi scheme has no relation to whether a receiver is necessary to marshal and preserve the numerous luxury assets that were purchased with illegally-obtained investor funds.

***Second***, the SEC is not proposing a "heavy handed" or draconian receivership order. Instead, the SEC's proposed order contains important safeguards to ensure proper Court oversight of the receivership process. And to Judd's and Jager's specific concern about asset sales, any proposed sale of receivership assets requires a further "appropriate order of the Court." (*See* Dkt. No. 67-2, Proposed Order at ¶ 38.) The conversations between SEC counsel and Defendants' counsel in negotiating stipulations as to living expenses revealed that there are real

---

[10] *Conroy v. Shott*, 363 F.2d 90, 92 (6th Cir. 1966); *see also In re Agricultural Research and Tech. Grp., Inc.*, 916 F.2d 528, 535 (9th Cir. 1990) ("debtor's actual intent to hinder, delay or defraud its creditors may be inferred from the mere existence of a Ponzi scheme")

11

and personal property assets that certain Defendants would like to sell to avoid or reduce continuing mortgage or maintenance costs.  The receiver will be able to work with those Defendants regarding potential sales, and will not sell or dispose of property without further Court order.  Nothing in the proposed order deprives Defendants of providing input into the best course of action regarding the numerous property assets at issue here.

## **CONCLUSION**

Thus, for the reasons stated herein and in its motion and memorandum in support of motion, the SEC respectfully requests that the Court appoint Mr. Geoff Winkler as Receiver in this action, and enter the proposed order, attached hereto as Exhibit 1, providing Mr. Winkler the power to marshal and preserve the assets of Defendants and Relief Defendants, determining the inapplicability of the automatic stay, and providing related relief associated with Mr. Winkler's appointment as Receiver.

DATED this 24th day of May, 2022.

*/s/ Casey R. Fronk*
Tracy S. Combs
Casey R. Fronk
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of May, 2022, I caused the **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S REPLY IN SUPPORT OF MOTION TO APPOINT RECEIVER AND RELATED RELIEF** to be served to all parties entitled to service through the Court's ECF system and to the following individuals by the means indicated below:

*By U.S. Mail, first class, postage prepaid, to:*

Matthew Wade Beasley
Nevada Southern Detention Center
2190 East Mesquite Avenue
Pahrump, NV 89060

BJ Holdings LLC
c/o Beasley Law Group PC, c/o Matthew Wade Beasley
Nevada Southern Detention Center
2190 East Mesquite Avenue
Pahrump, NV 89060

The Judd Irrevocable Trust
c/o Trustee Matthew Wade Beasley
Nevada Southern Detention Center
2190 East Mesquite Avenue
Pahrump, NV 89060

Jason M. Jongeward and JL2 Investments, LLC
▇▇▇▇▇▇▇▇▇
Washington, UT ▇▇▇▇

PAJ Consulting, Inc
21371 Estepa Cir.
Huntington Beach CA 92648

Triple Threat Basketball, LLC
c/o Warren Rosegreen
▇▇▇▇▇▇▇▇▇▇▇▇▇▇.
Henderson, NV ▇▇▇▇

The Judd Irrevocable Trust
c/o Jeffrey Judd
▇▇▇▇▇▇▇▇▇▇▇
Henderson, NV ▇▇▇▇

***By email to the following:***

Anthony Michael Alberto, Jr. and Monty Crew, LLC
███████@icloud.com

Dyke Huish
Huish Law Firm
huishlaw@mac.com
    *Counsel for Roland Tanner*

Daniel Hill
Snow, Christensen & Martineau, P.C.
DDH@scmlaw.com
    *Counsel for ACAC LLC*

                                               */s/ Casey R. Fronk*
                                               Casey R. Fronk