Jarrod L. Rickard, Esq., Bar No. 10203
Email: jlr@skrlawyers.com
Katie L. Cannata, Esq., Bar No. 14848
Email: klc@skrlawyers.com
SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone:  (702) 835-6803
Facsimile:   (702) 920-8669

DAVID R. ZARO (admitted *pro hac vice*)
E-Mail:  dzaro@allenmatkins.com
JOSHUA A. DEL CASTILLO (admitted *pro hac vice*)
E-Mail: jdelcastillo@allenmatkins.com
MATTHEW D. PHAM (admitted *pro hac vice*)
E-Mail: mpham@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone:  (213) 622-5555
Fax:  (213) 620-8816

*Proposed Attorneys for Receiver Geoff Winkler*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW WADE BEASLEY, *et al.*,<br><br>Defendants,<br><br>THE JUDD IRREVOCABLE TRUST, *et al.*,<br><br>Relief Defendants. | Case No. 2:22-cv-00612-CDS-EJY<br><br>**[HEARING REQUESTED]**<br><br>**PETITION OF RECEIVER, GEOFF WINKLER, FOR ORDER AUTHORIZING AND APPROVING GENERAL PROCEDURES FOR SALE OF PERSONAL PROPERTY OUT OF RECEIVERSHIP; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Declaration of Receiver, Geoff Winkler and [Proposed] Order submitted concurrently herewith]** |

In accordance with Local Rule 66-5 and this Court's June 3, 2022 Order Appointing Receiver (the "Appointment Order") [ECF No. 88], Geoff Winkler (the "Receiver"), the Court-appointed receiver for J&J Consulting Services, Inc., an Alaska corporation; J&J Consulting Services, Inc., a Nevada corporation; J and J Purchasing LLC; The Judd Irrevocable Trust; and BJ Holdings LLC, and over the Wells Fargo Interest on Lawyers' Trust Account ending in 5598 and held in the name of Beasley Law Group PC, along with the personal assets of Matthew Wade Beasley; Jeffrey J. Judd; Christopher R. Humphries; Shane M. Jager; Jason M. Jongeward; Denny Seybert; and Roland Tanner (all, collectively, the "Receivership Defendants") hereby petitions this Court for an order approving the general sales procedures proposed here in connection with the Receiver's contemplated sale of certain personal property assets, including luxury and other vehicles, stocks and other equity investments, cryptocurrency, and miscellaneous items of personal property, along with a 2008 Hawker 900XP private aircraft (the "Aircraft").  The personal property and the Aircraft proposed to be sold by the Receiver were obtained by or will be turned over to the Receiver in accordance with the Appointment Order, and are subject to the Receiver's exclusive authority and control, as detailed further in the following Memorandum of Points and Authorities and concurrently filed Declaration of Geoff Winkler.

///
///
///
///
///
///
///
///
///
///
///

1       This petition is based on this Court's Appointment Order, which authorizes the Receiver to

2  assume exclusive authority and control over, and sell, the assets of the Receivership Defendants, as

3  well as the attached Memorandum of Points and Authorities, the concurrently filed Declaration of

4  Geoff Winkler, and the documents and pleadings already on file in this action, and upon such further

5  oral and documentary evidence as may be presented at any hearing on the Receiver's petition.

6       DATED this 5th day of July, 2022.

SEMENZA KIRCHER RICKARD

*/s/ Jarrod L. Rickard*
Jarrod L. Rickard, Esq., Bar No. 10203
Katie L. Cannata, Esq., Bar No. 14848
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO (admitted *pro hac vice*)
JOSHUA A. DEL CASTILLO(admitted *pro hac vice*)
MATTHEW D. PHAM (admitted *pro hac vice*)
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543

*Proposed Attorneys for Receiver Geoff Winkler*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION.**

By this petition, and in accordance with Section VIII of the Appointment Order, the Receiver requests that he be authorized to sell certain personal property of the Receivership Defendants, described further below, in accordance with the procedures set forth herein.  As discussed in greater detail, below, the Receiver believes it is necessary and appropriate to commence the marketing and sale of certain personal property assets at this time, in order to raise funds for the benefit of the receivership estate (the "Estate") and its creditors.

Based on the information presently available to the Receiver, and given the nature and apparent value of the personal property assets already obtained by or turned over to the Receiver – along with those assets still to be recovered – the Receiver believes that the sales of these assets could generate significant recoveries for the benefit of the Estate and its creditors.  Accordingly, the Receiver respectfully request that this Court enter an order authorizing him to market and sell these assets, along with the Aircraft, in accordance with the procedures described herein.

**II.    STATEMENT OF RELEVANT FACTS.**

**A.    The Receiver's Appointment And Authority And Control Over Receivership Assets.**

The above-entitled action was commenced by the United States Securities and Exchange Commission (the "Commission") on April 12, 2022.  (See ECF No. 1.)  On May 3, 2022, the Commission petitioned this Court for the appointment of a receiver, based upon its allegations that Defendant Matthew Wade Beasley, Jeffrey J. Judd, and others had engaged in a fraudulent securities sales scheme bearing the hallmarks of a Ponzi investment scheme.  (See, e.g., ECF No. 67.)

The Court entered its Appointment Order on June 3, 2022, vesting the Receiver with exclusive authority and control over all Defendants J&J Consulting Services, Inc., J&J Consulting Services, Inc., J and J Purchasing LLC, The Judd Irrevocable Trust, and BJ Holdings LLC, and over the assets of Defendants Matthew Wade Beasley, Jeffrey J. Judd, Christopher R. Humphries, Shane M. Jager, Jason M. Jongeward, Denny Seybert, and Roland Tanner.  (See ECF No. 88.)  Among other things, the Appointment Order:  (1) vested the Receiver with control over the assets of the

Receivership Defendants (collectively, "Receivership Assets"); (2) directed all parties in possession of Receivership Assets to transfer such assets to the Receiver; and (3) authorized the Receiver, "[u]nder appropriate order of the Court," to "take all necessary and reasonable actions to cause the sale … of all real or personal property in the … Estate … on terms and in the manner the Receiver deems most beneficial to the … Estate[.]"  (Id. at ¶¶ 15-17, 38.)

The Receiver has been steadfastly pursuing his duties and obligations under the Appointment Order since his appointment, including with respect to securing the turnover of Receivership Assets, including certain personal property of the Receivership Defendants.   (See concurrently filed Declaration of Geoff Winkler ["Winkler Decl."] ¶ 2.)  Since the entry of the Appointment Order, the Receiver has obtained or secured the turnover (or commitment to turn over) of the following personal property assets, not including the Aircraft:

| Item / Object | Last 4 Digits of Serial/ID Number/VIN | Estimated Market Value |
|---|---|---|
| 2022 Rolls Royce Cullinan SUV | 9734 | $575,000 - 650,000 |
| 2021 Chevrolet Tahoe | 0007 | $60,000 - 70,000 |
| 2021 Jeep Wrangler | 4836 | $39,000 - 43,000 |
| 2020 Spartan Dutch Star K2 (luxury motor home) | 8506 | $640,000 - 750,000 |
| 2020 Chevrolet Silverado | 1321 | $40,0000 - 45,000 |
| 2019 Cadillac Escalade | 8903 | $85,000 - 100,000 |
| Coinbase Cryptocurrency Accounts | N/A | Variable (estimated at between $500,000 and $1 million) |

(Winker Decl. ¶ 3.)

///

Pursuant to the terms of the Appointment Order, the Receiver also assumed authority and control over the Aircraft, which is titled in the name of Receivership Defendant BJ Holdings, LLC and presently stored at Harry Reid International Airport, in Las Vegas, Nevada.  (Winkler Decl. ¶ 4.)

The Aircraft's relevant information is as follows:

| Item / Object | ID Number | Estimated Market Value |
|:---:|:---:|:---:|
| 2008 Hawker 900XP | N900XG | $5,500,000 |

The Receiver has performed an initial inspection of the Aircraft, and conferred with Cirrus Aviation, the entity presently charged with operating the Aircraft, to confirm that the Aircraft is presently being leased out for private charters.  (Id.)  In addition, the Receiver has obtained an April 2022 Certified Aircraft Appraisal (the "Appraisal") conducted by Bloom Business Jets Inc., an experienced, Colorado-based aircraft acquisitions, marketing, and appraisal company.  (Id.)  Based on the Appraisal, the Receiver believes the value of the Aircraft, in its present condition, to be approximately $5.5 million.  (Id., Ex. A.)

**B.      The Receiver's Contemplated Sales.**

These personal property assets, along with the Aircraft and any personal property recovered by or turned over to the Receiver after the filing of this petition, in accordance and in compliance with the Appointment Order (collectively, the "Personal Property Assets") constitute Receivership Assets under the terms of the Appointment Order.  The Receiver has determined, in his reasonable business judgment, that it is appropriate to market and sell the Personal Property Assets for the benefit of the Estate and its creditors.  (Winkler Decl. ¶ 5.)  The Receiver is confident that, because the markets for the Personal Property Assets are generally well-established, and market values verifiable, direct-to-purchaser, arms-length sales, or auctions, where appropriate, are likely to yield market-appropriate prices for each of the Personal Property Assets to be sold.  (Id.)  In the Receiver's business judgment, however, it would be impracticable – and costly – to seek Court approval each time he proposes to sell one of the Personal Property Assets.  (Id.)

Notably, time is of the essence with respect to many of the Receiver's contemplated sales of Personal Property Assets.  A number of these assets – including but not limited to the Aircraft and exotic or high-end automobiles, including the 2022 Rolls Royce SUV – are expensive to store, maintain, and insure.  (Winkler Decl. ¶ 6.)  Moreover, their long-term storage increases the risk of loss to the receivership, whether by depreciation, damage, or theft.  (<u>Id.</u>)  In addition, market conditions for some of these assets may deteriorate as interest rates rise and consumer confidence and spending weaken.  (<u>Id.</u>)  Accordingly, the Receiver believes, in his reasonable business judgment, that sales should commence as soon as practicable.  (<u>Id.</u>)

The Receiver proposes to undertake the marketing and sale of the Personal Property Assets and the Aircraft in accordance with the procedures proposed below.

III.   **PROPOSED SALES PROCEDURES.**

As noted above, the Personal Property Assets vary in nature and value, ranging from unique and high-value luxury and exotic automobiles to more commonplace mid-market automobiles to stock and other equity investments, to say nothing of the Aircraft.  (Winkler Decl. ¶¶ 3, 4.)  While, in the Receiver's experience, there are well-established markets for all of the Personal Property Assets, the Receiver may need to market and sell different assets in different ways in order to realize the highest and best prices.  (<u>Id.</u> at ¶ 7.)  For instance, the sale of the Aircraft, the Rolls Royce SUV, or another highly valuable Personal Property Asset may result in a higher recovery for the Estate if marketed, in a targeted manner, to the unique subset of buyers with the interest and means to purchase such items, as opposed to being sold at auction with other, less valuable items of an entirely different nature.  Likewise, investments not traded in traditional markets, and for which investment-specific knowledge and due diligence would be required, would be unlikely to yield an appropriate price at auction.  Indeed, cryptocurrency trades only in specialized markets; an auction would not be appropriate for liquidating cryptocurrency assets.  Accordingly, some flexibility in the manner and timing by which the Personal Property Assets are sold is appropriate.  The Receiver therefore proposes to undertake the following procedures in connection with his anticipated sales of the Personal Property Assets, as he deems appropriate, on an asset-by-asset basis:

## A.    Governing Principles.

With respect to each Personal Property Asset (or category of asset, for substantially similar items) that the Receiver determines should be sold, with the exception of the Aircraft (discussed below), the Receiver and his staff will conduct a review of the forums available for the marketing and sale of that asset, determine which forum is likely to yield the highest and best price for the Estate, and thereafter developing a marketing and sale plan for that asset (or category of asset). Generally speaking, Personal Property Assets are likely to be sold via:  (1) direct sales to purchasers, after arms-length negotiations; (2) public auction; (3) traditional exchanges or trading desks (for publicly traded investments for which an established, public market exists).  However, given the potentially unusual nature of some of the Personal Property Assets (e.g., where an asset is unique and consequently difficult to market or value, an asset is not publicly traded [e.g. private stock or similar equity holdings]; or otherwise), the Receiver may be required to employ alternative means of marketing and selling such assets, in accordance with his reasonable business judgment.

## B.    Direct-To-Buyer And One-Off Sales.

Certain Personal Property Assets, including but not limited to exotic or specialty vehicles, valuable artwork, and high-end jewelry, watches, and other personalty may be most appropriate for direct-to-buyer sales, where the assets are marketed to the unique class of prospective purchasers with the means to complete a purchase.  For these assets, the Receiver would, in consultation with his professionals, identify appropriate forums through which to market the assets, engage in arms-length negotiations with prospective buyers, and complete a sale to those buyers who make what he determines, in his reasonable business judgment, to be the highest and best offer for the asset(s).

Likewise, for Personal Property assets, critically including cryptocurrency, that trade on restricted or exclusive platforms, the Receiver anticipates completing sales of those assets via those platforms.  With respect to cryptocurrency assets specifically, the Receiver will monitor the fluctuating value of the accounts in issue and execute a sale (liquidation) when he determines, in his reasonable business judgment, that a sale is appropriate given market conditions and the cryptocurrency's volatility.

### C.   Public Auctions.

Many of the Personal Property Assets are of the type which the Receiver believes can be sold successfully at public auction, including, but not limited to, non-exotic or specialty vehicles. To that end, the Receiver anticipates engaging the services of an experienced auctioneer to undertake the marketing and sale of most of the Personal Property Assets, via a single or periodic public auctions, to be conducted online or in-person, as he deems appropriate for the assets to be sold.

To that end, the Receiver proposes to solicited and reviewed multiple proposals from qualified auctioneers, and thereafter select and engage the services of that auctioneer (the "Auctioneer") whose experience and engagement terms he determines to be of greatest benefit to the Estate.  Upon the engagement of his Auctioneer, the Receiver will determine, in consultation with the Auctioneer, what sort of auction (on-line, as opposed to in-person; pre-registration required/not required; etc.) is most appropriate for the Personal Property Assets to be sold, and most likely to yield the best and highest results for the Estate.  Thereafter, the Receiver, via the Auctioneer, will publicize and undertake one or more auctions, on a schedule and on such terms as the Receiver determines appropriate for the marketing and sale of all assets to be sold at auction, in order to sell Personal Property Assets.

### D.   Proposed Sale Of The Aircraft.

Among the Personal Property Assets, the Aircraft is unique.  First, among the Personal Property Assets identified by the Receiver as of the date of this petition, the Aircraft is by far the most valuable.  (Winkler Decl. ¶ 8.)  Moreover, it comes with the highest level of risk – from a value standpoint – to the receivership; the Aircraft requires expensive service, storage, and insurance, and damage to or loss of the Aircraft would represent a significant loss of value to the Estate.  (Id.) Accordingly, and in order to best protect against the possibility of loss, and to realize the value of the Aircraft as soon as possible for the benefit of the Estate and its creditors, the Receiver recommends selling the Aircraft, via an arms-length transaction, to an open-market buyer.  (Id.)

As noted above, the Receiver has obtained the Appraisal, which estimates the Aircraft's value at approximately $5.5 million.[1]   (Winkler Decl. ¶ 4, Ex. A.)   The Receiver has already received one bona-fide, unsolicited offer to purchase the Aircraft at that price.   (Id. at ¶ 8.)   The Receiver is therefore confident that, in the near term, he can negotiate and consummate the sale of the Aircraft at a price entirely consistent with its market value, for the benefit of the Estate and its creditors.   (Id.)   Accordingly, the Receiver requests that the Court authorize him to pursue discussions with any interested parties, enter into a purchase and sale agreement for the Aircraft with that buyer whom the Receiver determines, in his reasonable business judgment, has made the highest and best – or otherwise most appropriate – offer to purchase the Aircraft, and thereafter complete the sale of the Aircraft to that buyer, without further order of the Court.   (Id.)

**E.      Subsequent Requests And Reports To The Court.**

In order to ensure that the Court and all interested parties remain apprised of the Receiver's progress in selling the Personal Property Assets, and in accordance with Paragraph 56 of the Appointment Order, the Receiver will include in his interim reporting a summary of his marketing and sale efforts for all Personal Property Assets at issue in a given reporting period, as well as those Personal Property Asset sales consummated during the applicable reporting period.

**IV.    ARGUMENT.**

**A.      The Court Has The Authority To Approve The Receiver's Proposed Sales Procedures And To Authorize The Sales Of The Personal Property Assets In Accordance Therewith.**

A court sitting in equity, and having authority over a receivership *res*, is vested with wide discretion to order the sale of property out of receivership.  See, e.g., SEC v. Elliott, 953 F.2d 1560, 1566 (11th Cir. 1992) (describing the Court's broad powers and wide discretion to determine relief in an equity receivership).  "The power of sale necessarily follows the power to take possession and control of and to preserve property."  SEC v. Am. Capital Invs., Inc., 98 F.3d 1133, 1144 (9th Cir.

---

[1]      Based on his review of presently available materials, the Receiver believes there are secured liens against the Aircraft totaling approximately $2 million, meaning a sale at a market-appropriate price of approximately $5.5 million would yield net proceeds of roughly $3.5 million, after the payment of the debt secured by the Aircraft.

1   1996) (abrogated on other grounds by <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83 (1998))

2   (citing 2 Ralph Ewing Clark, <u>Treatise on Law & Practice of Receivers</u> § 482 (3d ed. 1992) (citing

3   <u>First Nat'l Bank v. Shedd</u>, 121 U.S. 74, 87 (1887)).  "When a court of equity orders property in its

4   custody to be sold, the court itself as vendor confirms the title in the purchaser."  2 Ralph Ewing

5   Clark, <u>Treatise on Law and Practice of Receivers</u> § 487.

6       Generally, when a court-appointed receiver is involved, the receiver, as agent for the

7   appointing court, may conduct the sale of the receivership property.  <u>Blakely Airport Joint Venture</u>

8   <u>II v. Fed. Sav. and Loan Ins. Corp.</u>, 678 F. Supp. 154, 156 (N.D. Tex. 1988).  A receiver's sale

9   conveys "good" equitable title, enforced by an injunction against the owner and against parties to

10  the suit.  <u>See</u> 2 Ralph Ewing Clark, <u>Treatise on Law and Practice of Receivers</u> §§ 342, 344, 482(a),

11  487, 489, 491 (3d ed. 1992).

12      "In authorizing the sale of property by receivers, courts of equity are vested with broad

13  discretion as to price and terms."  <u>Gockstetter v. Williams</u>, 9 F.2d 354, 357 (9th Cir. 1925).

14  Moreover, in the fiduciary context, courts are deferential to the business judgment of bankruptcy

15  trustees, receivers, and similar estate custodians.  <u>See</u>, <u>e.g.</u>, <u>Bennett v. Williams</u>, 892 F.2d 822, 824

16  (9th Cir. 1989) ("[W]e are deferential to the business management decisions of a bankruptcy

17  trustee."); <u>Sw. Media, Inc. v. Rau</u>, 708 F.2d 419, 425 (9th Cir. 1983) ("The decision concerning the

18  form of … [estate administration] … rested within the business judgment of the trustee."); <u>In re</u>

19  <u>Thinking Machs. Corp.</u>, 182 B.R. 365, 368 (D. Mass. 1995) ("The application of the business

20  judgment rule … and the high degree of deference usually afforded purely economic decisions of

21  trustees, makes court refusal unlikely.") (rev'd on other grounds, <u>In re Thinking Machs. Corp.</u>, 67

22  F.3d 1021 (1st Cir. 1995)).

23      The Receiver's proposed sales procedures for the Personal Property Assets, including the

24  Aircraft, are consistent with the aims of the receivership, and well within the Court's discretion to

25  approve.  Accordingly, the Receiver respectfully requests that the Court approve the sales

26  procedures and authorize the Receiver to undertake the sales of the Personal Property Assets in

27  connection therewith.

28

**B.      Appraisals And Public Sales Are Unnecessary Here.**

28 U.S.C. § 2004 provides that "[a]ny personalty sold under any order or decree of any court of the United States shall be sold in accordance with section 2001 of this title, ***unless the court orders otherwise***." (emphasis added.)  28 U.S.C. § 2001, in turn, which requires a seller to satisfy certain appraisal and public sale requirements, is applicable only to real property, not personal property.

Even were 28 U.S.C. § 2001 somehow to apply to the Personal Property Assets, this Court would be empowered to modify the terms of sale because "[t]he statute on its face vests the court with discretion in directing the terms and conditions of the public sale." <u>Keybank Nat'l Ass'n v. Perkins Rowe Assocs., LLC</u>, 2012 U.S. Dist. LEXIS 157828, *4 (M.D. La. Nov. 2, 2012); <u>see also U.S. v. Little</u>, 2008 U.S. Dist. LEXIS 93467, *4-5 (E.D. Cal. June 30, 2008) (finding that "[t]he Court has broad discretion in setting the terms and conditions of a sale under 28 U.S.C. § 2001."); <u>U.S. v. Heasley</u>, 283 F.2d 422 (8th Cir. 1960) (finding that in the context of 28 U.S.C. § 2001(b), "the matter of confirming a judicial sale rests in the sound judicial discretion of the trial court ….").

Here, the nature of the Personal Property Assets is such that the markets for them are well-established and routinized, meaning that arms-length sales negotiated in the open market, or public actions, where appropriate, are likely to yield market-appropriate prices.  This is true even in unique cases like the Aircraft, where the Receiver has already received one offer to purchase the Aircraft at 100% of its appraised value.  Moreover, as noted above, the Receiver's proposed sales procedures are intended to ensure that the sale of each of the Personal Property Assets occurs in the context of an appropriate forum, best suited to the nature of each of the assets, and most likely to result in offers from qualified buyers genuinely consistent with the asset being sold.  Accordingly, the Receiver respectfully submits that the additional sales requirements established in 28 U.S.C. § 2001 – which, again, need apply only in the context of real property sales, and even then are subject to modification – are unnecessary here.

**V.      <u>CONCLUSION.</u>**

For the foregoing reasons, the Receiver respectfully requests that this Court enter an order: authorizing and approving the general sales procedures proposed here in connection with the

1  Receiver's contemplated sale of certain personal property assets, including luxury and other

2  vehicles, stocks and other equity investments, cryptocurrency, and miscellaneous items of personal

3  property, and the Aircraft.

4       DATED this 5th day of July, 2022.

5                                          SEMENZA KIRCHER RICKARD

6

7                                          /s/ Jarrod L. Rickard
                                           Jarrod L. Rickard, Esq., Bar No. 10203
8                                          Katie L. Cannata, Esq., Bar No. 14848
                                           10161 Park Run Drive, Suite 150
9                                          Las Vegas, Nevada 89145

10                                         ALLEN MATKINS LECK GAMBLE
                                             MALLORY & NATSIS LLP
11                                         DAVID R. ZARO (admitted *pro hac vice*)
                                           JOSHUA A. DEL CASTILLO(admitted *pro hac vice*)
12                                         MATTHEW D. PHAM (admitted *pro hac vice*)
                                           865 South Figueroa Street, Suite 2800
13                                         Los Angeles, California 90017-2543

14
                                           *Proposed Attorneys for Receiver Geoff Winkler*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I am employed by the law firm of Semenza Kircher Rickard. in Clark County. I am over the age of 18 and not a party to this action. The business address is 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145.

On the 5th day of July 2022, I served the document(s), described as:

**PETITION OF RECEIVER, GEOFF WINKLER, FOR ORDER AUTHORIZING AND APPROVING GENERAL PROCEDURES FOR SALE OF PERSONAL PROPERTY OUT OF RECEIVERSHIP; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

☒   by serving the ☐ original ☒ a true copy of the above and foregoing via:

☒  a.  **CM/ECF System** to the following registered e-mail addresses:

Casey R. Fronk, FronkC@sec.gov, #slro-docket@sec.gov

Charles La Bella, charles.labella@usdoj.gov, maria.nunez-simental@usdoj.gov

Daniel D. Hill, ddh@scmlaw.com

Garrett T Ogata, court@gtogata.com

Gregory E Garman, ggarman@gtg.legal, bknotices@gtg.legal

Jason Hicks, hicksja@gtlaw.com, escobargaddie@gtlaw.com, geoff@americanfiduciaryservices.com, lvlitdock@gtlaw.com

Jonathan D. Blum, jblum@wileypetersenlaw.com, cdugenia@wileypetersenlaw.com, cpascal@wileypetersenlaw.com

Joni Ostler, ostlerj@sec.gov

Joseph G. Went, jgwent@hollandhart.com, blschroeder@hollandhart.com, Intaketeam@hollandhart.com

Kara B. Hendricks, hendricksk@gtlaw.com, escobargaddie@gtlaw.com, flintza@gtlaw.com, lvlitdock@gtlaw.com, neyc@gtlaw.com, rabeb@gtlaw.com, sheffieldm@gtlaw.com

Keely Ann Perdue, keely@christiansenlaw.com, lit@christiansenlaw.com

Kevin N. Anderson, kanderson@fabianvancott.com, amontoya@fabianvancott.com, mdonohoo@fabianvancott.com, sburdash@fabianvancott.com

Kyle A. Ewing, ewingk@gtlaw.com, flintza@gtlaw.com, LVLitDock@GTLAW.com

Lance A Maningo, lance@maningolaw.com, kelly@maningolaw.com,
    yasmin@maningolaw.com

Maria A. Gall, gallm@ballardspahr.com, crawforda@ballardspahr.com,
    LitDocket_West@ballardspahr.com, lvdocket@ballardspahr.com

Michael D. Rawlins, mrawlins@smithshapiro.com, jbidwell@smithshapiro.com

Peter S. Christiansen, pete@christiansenlaw.com, ab@christiansenlaw.com,
    chandi@christiansenlaw.com, hvasquez@christiansenlaw.com,
    jcrain@christiansenlaw.com, keely@christiansenlaw.com, kworks@christiansenlaw.com,
    tterry@christiansenlaw.com, wbarrett@christiansenlaw.com

Robert R. Kinas, rkinas@swlaw.com, credd@swlaw.com, docket_las@swlaw.com,
    jmath@swlaw.com, mfull@swlaw.com, nkanute@swlaw.com, sdugan@swlaw.com

Samuel A Schwartz, saschwartz@nvfirm.com, ecf@nvfirm.com

T. Louis Palazzo, louis@palazzolawfirm.com, celina@palazzolawfirm.com,
    miriam@palazzolawfirm.com, office@palazzolawfirm.com

Tracy S. Combs, combst@sec.gov, #slro-docket@sec.gov

Trevor Waite, twaite@fabianvancott.com, amontoya@fabianvancott.com

☐ b. **BY U.S. MAIL.** I deposited such envelope in the mail at Las Vegas, Nevada. The envelope(s) were mailed with postage thereon fully prepaid. I am readily familiar with Semenza Kircher Rickard's practice of collection and processing correspondence for mailing. Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at Las Vegas, Nevada in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

☐ c. **BY PERSONAL SERVICE.**

☐ d. **BY DIRECT EMAIL.**

☐ e. **BY FACSIMILE TRANSMISSION.**

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Olivia A. Kelly*
An Employee of Semenza Kircher Rickard

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4873-8004-2535.1                    -15-