1  Jarrod L. Rickard, Bar No. 10203
   jlr@skrlawyers.com
2  Katie L. Cannata, Bar No. 14848
   klc@skrlawyers.com
3  SEMENZA KIRCHER RICKARD
4  10161 Park Run Drive, Suite 150
   Las Vegas, Nevada 89145
5  Telephone:  (702) 835-6803
   Facsimile:   (702) 920-8669
6
7  David R. Zaro (admitted *pro hac vice*)
   dzaro@allenmatkins.com
8  Joshua A. del Castillo (admitted *pro hac vice*)
   jdelcastillo@allenmatkins.com
9  Matthew D. Pham (admitted *pro hac vice*)
   mpham@allenmatkins.com
10 ALLEN MATKINS LECK GAMBLE
     MALLORY & NATSIS LLP
11 865 South Figueroa Street, Suite 2800
12 Los Angeles, California 90017-2543
   Telephone:  (213) 622-5555
13 Facsimile:   (213) 620-8816
14 *Proposed Attorneys for Receiver Geoff Winkler*

15              **UNITED STATES DISTRICT COURT**

16                   **DISTRICT OF NEVADA**

17 SECURITIES AND EXCHANGE                    Case No. 2:22-cv-00612-CDS-EJY
18 COMMISSION,
                                              **HEARING REQUESTED**
19              Plaintiff,
                                              **RECEIVER'S PETITION FOR ORDER**
20       vs.                                  **APPROVING PROCEDURES FOR SALES**
                                              **OF REAL PROPERTY OUT OF**
21 MATTHEW WADE BEASLEY, *et al.*,            **RECEIVERSHIP**

22              Defendants,                   **[Declaration of Geoff Winkler and [Proposed]**
                                              **Order submitted concurrently herewith]**
23 THE JUDD IRREVOCABLE TRUST, *et al.*,
24
25              Relief Defendants.

26

27 / / /

28

Geoff Winkler (the "Receiver"), the Court-appointed receiver pursuant to the *Order Appointing Receiver* (the "Appointment Order") entered on June 3, 2022, ECF No. 88, hereby petitions (the "Motion") this Court for an order approving certain real property sale procedures, as set forth herein, which procedures the Receiver proposes to follow in this action (the "Proposed Procedures") in connection with his anticipated sales of real properties to be turned over to him by the Receivership Defendants.[1]

The Motion is based on the grounds that the Proposed Procedures (a) satisfy the requirements of 28 U.S.C. §§ 2001–2002, which apply to a receiver's sales of real property; (b) are consistent with industry customs and standards; (c) allow all Receivership Assets to be appropriately marketed to solicit the highest and best offers; and (d) provide an efficient sale process that will assist in maximizing the recovery for the benefit of the receivership estate established in the above-entitled action (the "Receivership Estate" or "Estate").

This Motion is based on the concurrently submitted Memorandum of Points and Authorities and Declaration of Geoff Winkler in support of this Motion; the files and records in this action; such additional authority and argument as may be presented in any reply in support of this Motion; and such other matters of which this Court may take judicial notice.

---

[1] Pursuant to the Appointment Order, the Receiver was appointed as the receiver (a) for defendant J & J Consulting Services, Inc., an Alaska corporation, defendant J & J Consulting Services, Inc., a Nevada corporation, defendant J and J Purchasing LLC, relief defendant The Judd Irrevocable Trust, and relief defendant BJ Holdings LLC (collectively, the "Entity Defendants"); (b) over the Wells Fargo Interest on Lawyers' Trust Account ending in 5598 (the "Beasley IOLTA") in the name of defendant Beasley Law Group PC ("Beasley Law Group"); and (c) over the assets (the "Individual Assets") of defendants Matthew Wade Beasley, Jeffrey J. Judd, Christopher R. Humphries, Shane M. Jager, Jason M. Jongeward, Denny Seybert, and Roland Tanner (collectively, the "Individual Defendants") (the Entity Defendants, Beasley Law Group, and the Individual Defendants are collectively referred to herein as the "Receivership Defendants" and individually as a "Receivership Defendant").  The receivership estate (the "Receivership Estate" or "Estate") is comprised of the estates of the Receivership Entities, the Beasley IOLTA, and the Individual Assets (the assets of the Receivership Estate are collectively referred to herein as the "Receivership Assets" or "Assets" and individually as a "Receivership Asset" or "Asset").

1    Dated:  July 18, 2022                          SEMENZA KIRCHER RICKARD

2
                                                   */s/ Jarrod L. Rickard*
3                                                  Jarrod L. Rickard, Bar No. 10203
                                                   Katie L. Cannata, Bar No. 14848
4                                                  10161 Park Run Drive, Suite 150
                                                   Las Vegas, Nevada 89145
5
6                                                  ALLEN MATKINS LECK GAMBLE
                                                      MALLORY & NATSIS LLP
7                                                  David R. Zaro (admitted *pro hac vice*)
                                                   Joshua A. del Castillo (admitted *pro hac vice*)
8                                                  Matthew D. Pham (admitted *pro hac vice*)
                                                   865 South Figueroa Street, Suite 2800
9                                                  Los Angeles, California 90017-2543

10
                                                   *Proposed Attorneys for Receiver Geoff Winkler*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Pursuant to the Court's *Order Appointing Receiver* (again, the "<u>Appointment Order</u>"), entered on June 3, 2022, ECF. No. 88, Geoff Winkler, the Court-appointed receiver (again, the "<u>Receiver</u>"),[2] was ordered to "locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real or personal property in the Receivership Estate …"  (*See* Appointment Order at ¶ 38.)

In the interests of judicial efficiency and economy, the Receiver proposes that the below procedures (again, the "<u>Proposed Procedures</u>") be employed for most future sales of real property turned over to the Receiver, or over which the Receiver has authority and control pursuant to the Appointment Order, as assets of the Estate.  The Proposed Procedures will enable the Receiver to, in many instances, avoid the cost associated with voluminous, individualized motions for the sale of each individual real property asset, and instead to follow a uniform set of Court-approved procedures, while minimizing the cost of his efforts to the receivership and the Estate.  As addressed below, the Proposed Procedures (a) satisfy the requirements of 28 U.S.C. §§ 2001–2002 for sales of real property; (b) are consistent with industry customs and standards; (c) allow all Receivership Assets to be appropriately marketed to identify the highest and best offers; and (d) provide an efficient sale process that will assist in maximizing the recovery from the Receivership Estate's assets.  Accordingly, the Receiver requests approval of the Proposed Procedures.

---

[2]    As noted above, the Receiver was appointed as the receiver (a) for defendant J & J Consulting Services, Inc., an Alaska corporation, defendant J & J Consulting Services, Inc., a Nevada corporation, defendant J and J Purchasing LLC, relief defendant The Judd Irrevocable Trust, and relief defendant BJ Holdings LLC (collectively, the "<u>Entity Defendants</u>"); (b) over the Wells Fargo Interest on Lawyers' Trust Account ending in 5598 (the "<u>Beasley IOLTA</u>") in the name of defendant Beasley Law Group PC ("<u>Beasley Law Group</u>"); and (c) over the assets (the "<u>Individual Assets</u>") of defendants Matthew Wade Beasley, Jeffrey J. Judd, Christopher R. Humphries, Shane M. Jager, Jason M. Jongeward, Denny Seybert, and Roland Tanner (collectively, the "<u>Individual Defendants</u>") (the Entity Defendants, Beasley Law Group, and the Individual Defendants are collectively referred to herein as the "<u>Receivership Defendants</u>" and individually as a "<u>Receivership Defendant</u>").  The receivership estate (the "<u>Receivership Estate</u>" or "<u>Estate</u>") is comprised of the estates of the Receivership Entities, the Beasley IOLTA, and the Individual Assets (the assets of the Receivership Estate are collectively referred to herein as the "<u>Receivership Assets</u>" or "<u>Assets</u>" and individually as a "<u>Receivership Asset</u>" or "<u>Asset</u>").

## I.    PROPOSED REAL PROPERTY SALES PROCEDURES

For sales of most of the real properties included in the Receivership Estate[3], the Receiver proposes to follow the publication and public sale requirements of 28 U.S.C. §§ 2001–2002.  The properties are and/or will be listed with and marketed by qualified, licensed real estate brokers.[4] The properties will be sold on an "as is-where is" basis, unless otherwise agreed by the Receiver, in his sole discretion.  The brokers will conduct a customary and appropriate process of recommending a list price, publicly marketing the property, providing access for site inspections, soliciting offers, and negotiating with prospective purchasers, where appropriate, to obtain the highest and best offer.

### A.    Sales Of Residential Real Property.

The Receiver proposes to administer the sale of residential properties in one of three ways: (1) via arms-length, negotiated sales to buyers; (2) via auction; or (3) for properties where unique circumstances militate in favor of expedited sales procedures, via stipulation of all relevant parties to waive the requirements of 28 U.S.C. § 2001(a) and (b), which apply to the sale of real property out of receivership, and to approve the sales of those properties on an expedited basis.

For negotiated sales, after (a) an offer is received, negotiated, and determined to be in the best interests of the Receivership Estate; (b) the buyer's ability to complete the transaction has been verified; (c) a purchase and sale agreement is signed and earnest money deposited into escrow; and (d) the buyer has removed all contingencies (thereby putting their earnest money deposit at risk if they fail to complete the transaction[5]), the Receiver will file a noticed motion for Court approval of the sale, subject to overbid.  The Receiver will publish notice of the sale in a newspaper of general

---

[3]    As of the date of this Motion, the Receiver has identified as many as forty-nine (49) real properties that may fall within the ambit of the turnover provisions of the Appointment Order. The Receiver will request that each Receivership Defendant holding title to such a property assign the property to the Receiver, via quitclaim deed or other appropriate instrument.  In the event that any Receivership Defendants decline to assign the subject properties, in contravention of the Appointment Order, the Receiver will file appropriate motions to compel the turnover of those properties.

[4]    The Receiver will interview and assess brokers before determining the listing broker.

[5]    If the buyer is unable to close because they fail to win the auction or the Court does not approve the sale, the buyer's earnest money deposit will be returned to them.

1  circulation in the area in which the property is located for three (3) consecutive weeks. The notice

2  will state the deadline and requirements for submitting a qualified overbid.

3       In the event that the Receiver determines that certain residential properties are better sold

4  via public auction, the process will be substantially similar, save the arms-length negotiation with

5  an initial contemplated purchaser. Instead, the Receiver will file a noticed motion for Court approval

6  of the public auction of any appropriate residential property(ies), after which he will publish notice

7  of the sale in a newspaper of general circulation in the area in which the property is located for three

8  (3) consecutive weeks. The notice will state the deadline and requirements for participating in the

9  auction, along with the date and time of the auction. Once the auction is completed, the Receiver

10  will petition for orders approving sales to the winning bidders.

11       As to those properties whose unique circumstances merit alternative, procedures, in the

12  Receiver's business judgment, the Receiver proposes to pursue the stipulation procedures addressed

13  in subsection "D", below.

14       **B.**     **Sales Of Commercial Real Property.**

15       For commercial properties, the process may vary slightly. As is customary in commercial

16  transactions, upon execution of a confidentiality agreement and access agreement, the Receiver or

17  his broker will make available certain due diligence materials (including a form purchase and sale

18  agreement) for buyer review. Depending on the marketing prospects of the property, the Receiver,

19  in consultation with the broker, may set a "Call for Offers" date or may wait for offers to be received

20  (similar to the marketing process for a residential property).

21       In a Call for Offers scenario, once (a) prospective buyers have completed their due diligence

22  and removed all contingencies (thereby putting their earnest money deposit at risk if they fail to

23  complete the transaction[6]); (b) the buyer's ability to complete the transaction is verified; and

24  (c) purchase and sale agreements have been submitted for review prior to the Call for Offers

25  deadline, the Receiver will review all submitted agreements and select the highest and best offer.

26  Thereafter, the Receiver will notify all prospective buyers of the highest and best offer, will qualify

27

28    [6]  Similarly, if the buyer is unable to close because they fail to win the auction or the Court does not approve the sale, the buyer's earnest money deposit will be returned to them.

1    prospective overbidders (as applicable), and, upon deposit of the earnest money into escrow by the

2    proposed buyer, the Receiver will file a noticed motion seeking Court approval of the sale, subject

3    to overbid.  The Receiver will publish notice of the sale in a newspaper of general circulation in the

4    area in which the property is located for three (3) consecutive weeks.  The notice will state the

5    deadline and requirements for submitting a qualified overbid.

6        If, instead of a Call for Offers deadline, the Receiver determines  that it would be better to

7    wait for offers, the process will be materially similar to the arms-length residential sale process,

8    except that commercial property customary confidentiality agreements and access agreements will

9    still be required before due diligence information is made available to prospective buyers.

10        **C.    Overbids And Auctions.**

11        In all real property sale scenarios, if a qualified overbid is received on or before the published

12    deadline and the proposed buyer (with highest and best offer) or another qualified bidder is prepared

13    to continue to bid, the Receiver will (a) notice to the Court that an auction will be conducted; and

14    (b) invite all qualified bidders to said auction.  Such invitation and notice to the Court will include

15    auction instructions for the qualified bidders.  At the conclusion of the auction, the Receiver will

16    file a notice of the highest/winning (and, if applicable, backup) bid[7], along with an amended

17    proposed order seeking approval of the sale to the highest/winning (and if applicable, backup)

18    bidder.

19        If no qualified overbids are received on or before the published deadline, the Receiver will

20    advise the Court and seek approval of the sale to the original proposed buyer.  The Receiver will

21    also seek authority to pay the commission for the real estate broker (including the buyer's broker)

22    from the sale proceeds.

23

24

25

26    _____

27    [7]    In the event that multiple qualified overbids are received, the Receiver may ask the Court to
       approve the highest/winning bid *and* the next highest/backup bid such that if the highest/winning

28    bidder fails to close the sale, the Receiver may proceed to close the sale with the backup bidder
       without delay.

**D.    Unique Sales And Stipulations To Expedite.**

In certain circumstances, the Receiver may be required to undertake procedures to expedite the purchase and sale of a given real property, most often in instances where a property is unique or has drawn market-appropriate offers of severely limited duration.  In circumstances where the Receiver determines that expedited procedures are required, and that strict satisfaction of the general procedures described herein would endanger the consummation of sale that would result in significant benefits to the Estate if completed on an expedited basis, the Receiver may seek to stipulate with the plaintiff Securities and Exchange Commission (the "Commission") and the Receivership Defendant(s) who held pre-receivership title to that property, in order to approve an expedited sale, as detailed further below.

**II.    ARGUMENT**

**A.    The Proposed Procedures Comply with Relevant Law.**

The Proposed Procedures are reasonable, consistent with the statutory requirements for the sale of real property out of receivership, and should be approved by the Court.

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws.  Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980) (emphasis added).  The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir 1986).  As the appointment of a receiver is authorized by the broad equitable powers of the court, any distribution of assets must also be done equitably and fairly. *See SEC v. Elliot*, 953 F.2d 1560, 1569 (11th Cir. 1992).

District courts have the broad power of a court of equity to determine the appropriate action in the administration and supervision of an equity receivership. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005).  The Ninth Circuit explained,

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. The basis for this broad deference to the

1
2
3

> district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions. A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.

4  *Id.* (citations omitted); *see also CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999)

5  ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold

6  reasonable procedures instituted by the district court that serve th[e] purpose' of orderly and efficient

7  administration of the receivership for the benefit of creditors.").  Accordingly, this Court has broad

8  discretion in the administration of the Receivership Estate and the disposition of Receivership

9  Assets.

10          **B.      The Court's Authority to Approve Sales.**

11          It is widely accepted that a court of equity having custody and control of property has power

12  to order a sale of the same in its discretion.  *See, e.g.*, *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir.

13  1992) (holding the district court has broad powers and wide discretion to determine relief in an

14  equity receivership).  "The power of sale necessarily follows the power to take possession and

15  control of and to preserve property."  *SEC v. Am. Capital Invest., Inc.*, 98 F.3d 1133, 1144 (9th Cir.

16  1996) (citing 2 Ralph Ewing Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)

17  (hereinafter "Treatise on Law & Practice of Receivers") (citing *First Nat'l Bank v. Shedd*, 121 U.S.

18  74, 87 (1887))), *abrogated on other grounds by Steel Co. v. Citizens for a  Better Env't*, 523 U.S. 83

19  (1998).  "When a court of equity orders property in its custody to be sold, the court itself as vendor

20  confirms the title in the purchaser."  Treatise on Law & Practice of Receivers § 487.

21          "A court of equity, under proper circumstances, has the power to order a receiver to sell

22  property free and clear of all encumbrances."  *Miners' Bank of Wilkes-Barre v. Acker*, 66 F.2d 850,

23  853 (2d Cir. 1933); *see also* Treatise on Law & Practice of Receivers § 500.  To that end, a federal

24  court is not limited or deprived of any of its equity powers by state statute.  *Beet Growers Sugar Co.

25  v. Columbia Trust Co.*, 3 F.2d 755, 757 (9th Cir. 1925) (holding state statute allowing time to redeem

26  property after a foreclosure sale not applicable in a receivership sale).

27          Generally, when a court-appointed receiver is involved, the receiver, as agent for the court,

28  should conduct the sale of the receivership property.  *Blakely Airport Joint Venture II v. Fed. Sav.*

1   *& Loan Ins. Corp.*, 678 F. Supp. 154, 156 (N.D. Tex. 1988). The receiver's sale conveys "good"

2   equitable title enforced by an injunction against the owner and against parties to the suit. *See*

3   Treatise on Law & Practice of Receivers §§ 342, 344, 482(a), 487, 489, 491. "In authorizing the

4   sale of property by receivers, courts of equity are vested with broad discretion as to price and terms."

5   *Gockstetter v. Williams*, 9 F.2d 354, 357 (9th Cir. 1925).

6        **C.**      **The Proposed Procedures Comply With 28 U.S.C. § 2001.**

7        Specific requirements are imposed by 28 U.S.C. § 2001 for public sales of real property

8   under subsection (a) and specific requirements for private sales of real property under

9   subsection (b). Although both involve significant cost and delay, the cost and delay of a public sale

10   are significantly less than those for a private sale. *SEC v. Goldfarb*, No. 11-C-00938-WHA, 2013

11   WL 4504271, at *2 (N.D. Cal. Aug. 21, 2013) ("Section 2001 sets out two possible courses of action:

12   (1) property may be sold in public sale; or (2) property may be sold in a private sale, provided that

13   three separate appraisals have been conducted, the terms are published in a circulated newspaper

14   ten days prior to sale, and the sale price is no less than two-thirds of the valued price."). Therefore,

15   by proceeding under § 2001(a), the Receivership Estate can avoid the significant costs and delay of

16   (a) the Court having to appoint three disinterested appraisers, and (b) obtaining three appraisals from

17   such appraisers.

18        The requirements of a public sale under § 2001(a) are that notice of the sale be published as

19   proscribed by § 2002 and a public auction be held at the courthouse "as the court directs." 28 U.S.C.

20   § 2001(a); *SEC v. Capital Cove Bancorp LLC*, No. SA-15-CV-980-JLS, 2015 U.S. Dist. LEXIS

21   174856, at *13 (C.D. Cal. 2015); *SEC v. Kirkland*, No. 6:06-CV-183-ORL-28KRS, 2007 U.S. Dist.

22   LEXIS 45353, at *5 (M.D. Fla. 2007). In terms of publication of notice, § 2002 provides,

23

24       A public sale of realty or interest therein under any order, judgment or decree of any court of the United States shall not be made without notice published once a

25       week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the

26       United States wherein the realty is situated.

27       If such realty is situated in more than one county, state, district or circuit, such notice shall be published in one or more of the counties, states, or districts wherein

28       it is situated, as the court directs. The notice shall be substantially in such form and

contain such description of the property by reference or otherwise as the court approves. The court may direct that the publication be made in other newspapers.

This section shall not apply to sales and proceedings under Title 11 or by receivers or conservators of banks appointed by the Comptroller of the Currency.

The notice of sale is sufficient if it describes the property and the time, place, and terms of sale. *Breeding Motor Freight Lines, Inc. v. Reconstruction Fin. Corp.*, 172 F.2d 416, 422 (10th Cir. 1949). The Court may limit the auction to qualified bidders, who "(i) submit to the Receiver … in writing a bona fide and binding offer to purchase the [property]; and (ii) demonstrate … to the satisfaction of the Receiver, that it has the current ability to consummate the purchase of the [property] per the agreed terms." *Regions Bank v. Egyptian Concrete Co.*, No. 4:09-CV-1260 CAS, 2009 WL 4431133, at *3 (E.D. Mo. Dec. 1, 2009).

The Proposed Procedures require that all real property will be listed with a licensed broker and shown to interested parties. The Proposed Procedures further require that all real property sold will be subject to overbid to further ensure the highest and best price is obtained. In other words, the Proposed Procedures are tailored specifically to satisfy the Receiver's obligations under §§ 2001 and 2002, and to maximize the prices obtained for any real property sold out of receivership.

**D.    Stipulations To Waive The Requirements Of 28 U.S.C. § 2001(a) And (B) Are Occasionally Appropriate, And Necessary.**

As noted above, on occasion, the Receiver may identify a real property whose contemplated sale must take place on an expedited basis, often in a manner that requires a waiver of certain of the requirements imposed by 28 U.S.C. § 2001, *et seq*. As a general rule, while <u>courts</u> cannot waive these requirements, they can be waived by stipulation of the <u>parties</u>. *See, e.g., National Bank v. Najero, Inc.*, 2014 WL 5473054, *1 (E.D. Mich. Oct. 27, 2014) ("Although the court cannot waive the requirements of § 2001(b), the requirements can be waived by the parties"). Prior to the submission of the instant Motion, the Receiver conferred with the Commission, which indicated its amenability to such stipulations, on a property-by-property basis, where the Receiver could demonstrate that such a waiver was warranted. (*See* concurrently submitted Declaration of Geoff Winkler at ¶ 2.) Of course, the Receiver will also require the agreement of the particular Receivership Defendant(s) whose interests are potentially implicated by the sale of a particular

1  property, and the will request such agreement in those instances where he determines, in his

2  reasonable business judgment, that such a stipulation is warranted.  (*Id.*)

## III.  **CONCLUSION**

4        The Receiver requests approval of these procedures for sales of real property assets included

5  in the receivership estate as (a) satisfying the requirements of 28 U.S.C. §§ 2001–2002 for sales of

6  real property; (b) consistent with industry customs and standards; (c) allowing all Receivership

7  Assets to be appropriately marketed to identify the highest and best offers; and (d) providing an

8  efficient sale process that will assist in maximizing the recovery from the Receivership Estate's

9  assets.

10  Dated:  July 18, 2022                             SEMENZA KIRCHER RICKARD

11                                                             */s/ Jarrod L. Rickard*
                                                            _____
12                                                             Jarrod L. Rickard, Bar No. 10203
                                                             Katie L. Cannata, Bar No. 14848
13                                                             10161 Park Run Drive, Suite 150
                                                             Las Vegas, Nevada 89145
14
15                                                             ALLEN MATKINS LECK GAMBLE
                                                                MALLORY & NATSIS LLP
16                                                             David R. Zaro (admitted *pro hac vice*)
                                                             Joshua A. del Castillo (admitted *pro hac vice*)
17                                                             Matthew D. Pham (admitted *pro hac vice*)
                                                             865 South Figueroa Street, Suite 2800
18                                                             Los Angeles, California 90017-2543
19
20                                                             *Proposed Attorneys for Receiver Geoff Winkler*

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I am employed by the law firm of Semenza Kircher Rickard. in Clark County. I am over the age of 18 and not a party to this action. The business address is 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145.

On the 18th day of July 2022, I served the document(s), described as:

**RECEIVER'S PETITION FOR ORDER APPROVING PROCEDURES FOR SALES OF REAL PROPERTY OUT OF RECEIVERSHIP**
**[Declaration of Geoff Winkler and [Proposed] Order submitted concurrently herewith]**

☒   by serving the ☐ original ☒ a true copy of the above and foregoing via:

☒  a.  **CM/ECF System** to the following registered e-mail addresses:

Garrett T Ogata, court@gtogata.com

Gregory E Garman, ggarman@gtg.legal, bknotices@gtg.legal

Kara B. Hendricks, hendricksk@gtlaw.com, escobargaddie@gtlaw.com, flintza@gtlaw.com, lvlitdock@gtlaw.com, neyc@gtlaw.com, rabeb@gtlaw.com, sheffieldm@gtlaw.com

Kevin N. Anderson, kanderson@fabianvancott.com, amontoya@fabianvancott.com, mdonohoo@fabianvancott.com, sburdash@fabianvancott.com

Lance A Maningo, lance@maningolaw.com, kelly@maningolaw.com, yasmin@maningolaw.com

Michael D. Rawlins, mrawlins@smithshapiro.com, jbidwell@smithshapiro.com

Peter S. Christiansen, pete@christiansenlaw.com, ab@christiansenlaw.com, chandi@christiansenlaw.com, hvasquez@christiansenlaw.com, jcrain@christiansenlaw.com, keely@christiansenlaw.com, kworks@christiansenlaw.com, tterry@christiansenlaw.com, wbarrett@christiansenlaw.com

T. Louis Palazzo, louis@palazzolawfirm.com, celina@palazzolawfirm.com, miriam@palazzolawfirm.com, office@palazzolawfirm.com

Jonathan D. Blum, jblum@wileypetersenlaw.com, cdugenia@wileypetersenlaw.com, cpascal@wileypetersenlaw.com

Charles La Bella, charles.labella@usdoj.gov, maria.nunez-simental@usdoj.gov

Samuel A Schwartz, saschwartz@nvfirm.com, ecf@nvfirm.com

Jason Hicks, hicksja@gtlaw.com, escobargaddie@gtlaw.com, geoff@americanfiduciaryservices.com, lvlitdock@gtlaw.com

1  Trevor Waite, twaite@fabianvancott.com, amontoya@fabianvancott.com

2  Kyle A. Ewing, ewingk@gtlaw.com, LVLitDock@GTLAW.com, flintza@gtlaw.com

3  Maria A. Gall, gallm@ballardspahr.com, LitDocket_West@ballardspahr.com,
4  crawforda@ballardspahr.com, lvdocket@ballardspahr.com

5  Keely Ann Perdue, keely@christiansenlaw.com, lit@christiansenlaw.com

6  Casey R. Fronk, FronkC@sec.gov, #slro-docket@sec.gov

7  Tracy S. Combs, combst@sec.gov, #slro-docket@sec.gov

8  Joseph G. Went, jgwent@hollandhart.com, Intaketeam@hollandhart.com,
9  blschroeder@hollandhart.com

10  Joni Ostler, ostlerj@sec.gov

11  Daniel D. Hill, ddh@scmlaw.com

12  ☐ b.  **BY U.S. MAIL.** I deposited such envelope in the mail at Las Vegas, Nevada. The
13  envelope(s) were mailed with postage thereon fully prepaid. I am readily familiar with
14  Semenza Kircher Rickard's practice of collection and processing correspondence for
   mailing. Under that practice, documents are deposited with the U.S. Postal Service on the
15  same day which is stated in the proof of service, with postage fully prepaid at Las Vegas,
   Nevada in the ordinary course of business. I am aware that on motion of party served,
16  service is presumed invalid if the postal cancellation date or postage meter date is more than
17  one day after the date stated in this proof of service.

18  ☐ c.  **BY PERSONAL SERVICE.**

19  ☐ d.  **BY DIRECT EMAIL.**

20  ☐ e.  **BY FACSIMILE TRANSMISSION.**

21  I declare under penalty of perjury that the foregoing is true and correct.

23  */s/ Olivia A. Kelly*
   An Employee of Semenza Kircher Rickard