PETER S. CHRISTIANSEN, ESQ. (#5254)
pete@christiansenlaw.com
KENDELEE L. WORKS, ESQ. (#9611)
kworks@christiansenlaw.com
KEELY P. CHIPPOLETTI, ESQ. (#13931)
keely@christiansenlaw.com
CHRISTIANSEN TRIAL LAWYERS
710 S. 7th Street, Suite B
Las Vegas, Nevada 89101
Telephone:    (702) 240-7979
Facsimile:    (866) 412-6992

*Attorneys for Defendant Christopher R. Humphries*
*and Relief Defendant CJ Investments, LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | CASE NO.:    2:22-cv-00612 |
| Plaintiff, | |
| v. | **DEFENDANT CHRISTOPHER HUMPHRIES AND RELIEF DEFENDANT CJ INVESTMENTS, LLC'S MOTION FOR RELEASE OF FUNDS FOR ATTORNEY'S FEES** |
| MATTHEW WADE BEASLEY; BEASLEY LAW GROUP PC; JEFFREY J. JUDD; CHRISTOPHER R. HUMPHRIES; J&J CONSULTING SERVICES, INC., an Alaska Corporation; J&J CONSULTING SERVICE, INC., a Nevada Corporation; J AND J PURCHASING, LLC; SHANE M. JAGER; JASON M. JONEGARD; DENNY SEYBERT; and RONALD TANNER, | |
| Defendants, | |
| THE JUDD IRREVOCABLE TRUST; PAJ CONSULTING INC; BJ HOLDINGS LLC; STIRLING CONSULTING, L.L.C.; CJ INVESTMENTS, LLC; JL2 INVESTMENTS, LLC; ROCKING HORSE PROPERTIES, LLC; TRIPLE THREAT BASKETBALL, LLC; ACAC LLC; ANTHONY MICHAEL ALBERTO, JR.; and MONTY CREW LLC; | |
| Relief Defendants | |

Defendant Christopher R. Humphries ("Chris" or "Mr. Humphries"), and Relief Defendant CJ Investments, LLC, (collectively, the "Humphries Defendants") by and through Peter S. Christiansen, Esq., Kendelee L. Works, Esq., and Keely P. Chippoletti, Esq., of Christiansen Trial Lawyers, their Counsel of Record, hereby move the Court to approve payment of $132,359.22 in attorney's fees and costs already incurred to date, which is currently held in Christiansen Trial Lawyers' IOLTA account, and to allow release of an additional $250,000.00 of seized/frozen funds in order to pay for attorney's fees and costs to be incurred moving forward in both the instant matter and the companion criminal investigation until an indictment is issued.

## DECLARATION OF KENDELEE L. WORKS, ESQ.
## IN SUPPORT OF MOTION FOR RELEASE OF FUNDS FOR ATTORNEY'S FEES

I, KENDELEE L. WORKS, ESQ., declare and state as follows:

1.    I am an attorney licensed to practice law in the State of Nevada and am counsel for Defendant Christopher Humphries and Relief Defendant CJ Investments, LLC. I am admitted to practice in the United States District Court, District of Nevada.

2.    I make this declaration based on my own personal knowledge of the case and, if called as a witness, could competently testify thereto.

3.    On July 12, 2022, pursuant to LR IA 1-3(f)/LR 26-6, Peter S. Christiansen, Esq. and I, spoke with the Receiver and Counsel for the Receiver, Kara Hendricks, Esq., telephonically, regarding Mr. Humphries' request for approval to pay his attorney's fees. At that time, we agreed to provide the Receiver and his counsel with a summary of attorney's fees and costs incurred to date with a breakdown of the time periods in which such fees were incurred. That summary was emailed to Ms. Hendricks and the Receiver on July 15, 2022.  A copy is attached hereto for reference as **Exhibit A**.

4.    On July 20, 2022, Ms. Hendricks responded to my July 15, 2022 email and confirmed the Receiver would consent to allow Christiansen Trial Lawyers ("CTL") to keep in its trust, $132,359.22, which is the amount of attorneys fees and costs already incurred, pending this Court's decision on the instant motion.  She further instructed CTL to transfer $17,640.78 to the Receiver.  That is the balance of the $150,000.00 retainer that CTL received prior to the SEC

filing the instant complaint.  Per the Receiver's instructions, CTL wired $17,640.78 to the Receiver's account.

5.      I declare under penalty of perjury under the laws of the United States and the State of Nevada that the foregoing is true and correct.

Executed this 29th day of July, 2022.



KENDELEE L. WORKS, ESQ.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

This action arises from allegations that Mr. Humphries, along with the other Defendants, engaged in a "long-running fraudulent offering of securities."  Amended Compl. at ¶ 1.[1]  The SEC generally lumps Mr. Humphries into its five fraud based claims for relief asserting: 1) Violations of Section 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)]; 2) Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)(1)]; 3)Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5[17 C.F.R. § 240.10B-5]; and 4) Violations of Sections 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)]; and 5) Equitable Disgorgement.

### A.  The Execution of FBI Warrants and Subsequent Asset-Freeze.

On March 3, 2022, the FBI executed search warrants at the residences of Matthew Beasley, Esq., Jeffrey Judd and Chris and Jessica Humphries.  Amended Compl. at ¶ 6.  In relevant part, the FBI sought records of securities or investment contracts marketed, sold or contemplated to be marketed or sold by Judd, Humphries, J&J Consulting, J&J Investments, J&J

---

[1] On June 24, 2022, the Humphries Defendants filed a motion to dismiss the SEC's Complaint pursuant to FRCP 9(b), asserting the SEC has failed to plead fraud with the requisite particularity. ECF No. 112.  Rather than oppose, the SEC then filed an Amended Complaint.  ECF No. 118. The Amended Complaint added allegations against Mr. Humphries but still failed to plead its fraud-based claims with sufficient particularity.  Accordingly, on July 27, 2022, the Humphries Defendants moved to dismiss the Amended Complaint (ECF No. 199), to which the SEC's opposition is due August 10, 2022.

Purchasing (collectively J&J"). Both Chris and Jessica Humphries were present at the time of the execution of a warrant at their home in Huntington Beach, California. Unlike Mr. Beasley who engaged in a violent hours-long stand-off with the FBI, the Humphries were cooperative and compliant with law enforcement. *See generally id.* On March 6, 2022, Mr. Humphries sought counsel and on March 8, 2022, he paid Christiansen Trial Lawyers ("CTL") a $150,000.00 retainer for his criminal defense. *See* Decl. of Peter S. Christiansen, Esq., attached hereto as **Exhibit B**.

At the time of that search, both Chris and Jessica Humphries had their iPhones and laptops seized. The FBI has retained custody of Mr. Humphries' electronic devices but the U.S. Attorney's Office for the District of Nevada, did agree to provide his counsel with two drives containing what the FBI represents to be mirror images of both his iPhone and laptop. *Id*. Mr. Humphries, through counsel, has retained HOLO Litigation Services to document and maintain the chain of custody and also to search the images for documents that would be relevant to the parallel criminal and civil investigations. *Id*.

Subsequent to the FBI's seizure of the Humphries' electronic devices and prior to the entry of the Temporary Restraining Order ("TRO") in this case, counsel for the Humphries was coordinating with SEC Counsel to begin a rolling production of documents responsive to its subpoenas. *Id*. In the interim, the U.S. Attorney's office served Mr. Humphries with additional subpoenas related to the criminal investigation. *Id*. It is undisputed that Mr. Humphries is a target of the federal investigation and thus, he informed Counsel for the SEC that he would need to delay any production of documents in order to assess issues associated with his criminal exposure and/or the assertion of his 5th Amendment right to be free from self-incrimination. *Id.*

Counsel for the Humphries received no further communication until being alerted of the TRO the SEC obtained ex-parte on April 13, 2022, freezing all of the Defendants' assets, including all funds and assets in any bank, depository, or brokerage account, all certificates of deposits, and all other funds or assets, which were held in the name of, for the benefit of, or over which account authority is held by any Defendant or Relief Defendant. On April 21, 2022, without hearing evidence or allowing Defendants to cross-examine the SEC's witnesses, District Judge

1    Mahan issued a Preliminary Injunction which provided that, *inter alia*, the asset freeze imposed

2    by the TRO continued in full force and effect, and that all funds and assets would remain frozen

3    until a final disposition of the action.

4                    **B.  There is No Evidence Mr. Humphries Had Any Knowledge of the Fraud.**

5            The SEC fails entirely to demonstrate that Mr. Humphries had any actual knowledge of

6    the allegedly fraudulent "Ponzi Scheme."   Although the SEC would have the Court believe

7    Nevada attorney, Matthew Beasley, admitted, during a stand-off with the FBI, that ***all*** Defendants

8    were involved with a multi-million-dollar Ponzi Scheme, Mr. Beasley made no such admission.

9    In what is at best, a glaring omission, and at worst, a blatant misrepresentation, the SEC tellingly

10   failed to inform the Court that contrary to a blanket confession implicating all Defendants, Mr.

11   Beasley repeatedly informed an FBI negotiator that he ***ALONE***, orchestrated and was the

12   mastermind behind the so-called scheme.[2]   Although in support of its request for a preliminary

13   injunction the SEC attached hundreds of pages of exhibits, including the transcript of Mr.

14   Beasley's confession, it materially mischaracterized Mr. Beasley's poignant dying declaration,

15   stating on page 1 of its application:

16            As Defendant Beasley confessed during a highly publicized March 3, 2022 standoff
17            with the FBI, ***Defendants***—who since 2016 obtained millions of dollars from
             numerous investors, purportedly for a "purchase agreement" litigation finance
18            investment business—were in fact, running a "Ponzi Scheme."

19   SEC Memorandum of Points and Authorities in Support of TRO, Document 2-1 at 1:7-10

20   (emphasis added).  Over the course of its 27-page application for TRO, not once did the SEC

21   inform the Court that Mr. Beasley repeatedly affirmed to the FBI he was the ***only*** individual with

22   knowledge the subject investments were a fraud—further specifying Mr. Humphries did not

23   know. Particularly relevant, Mr. Beasley affirmed the following:

24            MR. BEASLEY: Nobody else was involved in the scheme.

25
26            FBI AGENT ADAM: Nobody else was involved.

27   _____

28   [2]*See* Beasley Transcript, *et. seq.*

5

1    MR. BEASLEY: Nobody even knew.  Nobody even knew.

2    FBI AGENT ADAM: Nobody even knew what?

3    MR. BEASLEY: That I was running a Ponzi scheme.

4    FBI AGENT ADAM: Okay, a Ponzi scheme.

5    MR. BEASLEY: They didn't know.

6

7    FBI AGENT ADAM: Who didn't know Matthew?

8    MR. BEASLEY: They had no idea.  If they did, they would have called you

9    guys.
     …

10   FBI AGENT ADAM: Ok so the FBI was at some other people's houses

11   today to talk to them about maybe something you're involved in.

12   MR. BEASLEY:  They did search warrants today.  They did search warrants

13   today.

14   FBI AGENT ADAM: Okay.  They did a search warrant today and you

15   might have some involvement in it.

16   Mr. Beasley: They – they knew nothing.  ***I lied to them.  I ran the entire***

17   ***thing and the only thing these individuals did wrong is believe me, that was it.***
     ***They knew nothing.***  They believed that I was a good person…

18   *See* Beasley Transcript attached to SEC's Memorandum of Points and Authorities in Support of

19   Ex Parte Application for TRO, Document 2-5, page 22 of 337 (transcript pp. 6-7) (emphasis

20   added).  Mr. Beasley goes on to reiterate that he alone had sole knowledge the subject investments

21   were a so-called Ponzi scheme no less than ten times, even identifying Mr. Humphries by name

22   and specifying that Mr. Humphries and other of the named Defendants knew nothing.  *Id* at p. 21

23   of 337 (transcript p. 4); p. 23 of 337 (transcript pp. 12-13); p. 24 of 337 (transcript p. 16); p. 27

24   of 337 (transcript pp. 27 and 29); p. 41 of 337 (transcript pp. 14-16); 42 of 337 (transcript p. 21);

25   p. 46 of 337 (transcript p. 34).

26   Despite the ongoing parallel criminal investigation and search and seizure of so-called

27   evidence, the SEC's Amended Complaint herein demonstrates a paucity of factual allegations

28   specific to Mr. Humphries.  Although it is alleged that he "promoted the investment to people at

his gym and church, as well as through friends and family," the Amended Complaint is devoid of any allegation specifically identifying any such persons. *See generally* Amended Compl., ECF No. 118; *see also* ECF No. 118 at ¶ 48. The SEC's Amended Complaint attempts to remedy its earlier deficiencies by pointing to general representations Mr. Humphries purportedly made to "his investors," but it again fails to name any particular investor and provides only general timeframes as to when the so-called misrepresentations were made. *See generally* Compl. on file herein, ECF No. 1; *see also* ECF No. 118, Amended Compl. at ¶ ¶ 48-51, 54, and 60-61. The SEC has still not provided any specific dates or times, much less the manner or place in which the purported communication(s) occurred. *Id.*

The crucial missing details required by Rule 9(b) pertains to **how** Mr. Humphries allegedly knew and **when** he allegedly knew the investment program was a Ponzi scheme. The only direct allegation about knowledge of the fraud by Mr. Humphries appears in paragraph 68 where the SEC summarily avers that "Humphries also knew or was reckless in not knowing that the purchase agreement investment scheme was a fraud. Humphries was at least aware of indicia that the tort settlements at issue in the investment were fictitious but nonetheless acted to hide that fact from investors." *See* ECF 1 at ¶ 55; *see* ECF 118 at ¶ 68. While the SEC makes detailed assertions as to both Judd and Beasley's knowledge that the scheme was a fraud, the SEC fails to do so with regard to Mr. Humphries.

The only other allegation in the 28-page Amended Complaint regarding Humphries' alleged knowledge is pleaded in paragraph 69 where the SEC alleges, ***on information and belief***, that certain undefined information made its way back to Humphries. Specifically, the SEC alleges that "Over the years despite being told not to do so, several attorneys contacted the investors on the purchase agreements and the attorneys denied having such clients or entering the purchase agreements. ***On information and belief***, this information made its way back to the promoters, including Humphries, and ultimately Judd himself." *Id. at* ¶ 69 (emphasis added). No date is alleged. No detail is alleged. Clearly, the SEC possesses no direct evidence against Mr. Humphries. The Amended Complaint is silent as to how or when or through whom such "information" made its way back to Mr. Humphries. The SEC has unfairly included the

1   Humphries Defendants in this case without having plead the basics of Rule 9(b) as against him.

2   To date, the SEC has not put forth any evidence of any actual knowledge by Mr. Humphries.

3   **C.  Attorney's Fees and Costs Incurred to Date.**

4   On March 6, 2022, Mr. Humphries engaged the law firm of CTL to represent him in the

5   pending federal criminal investigation. On March 8, 2022, Mr. Humphries paid CTL an initial

6   retainer of $150,000.00, of which CTL currently holds $132,359.22 in trust. CTL's representation

7   of Mr. Humphries carried over to the instant matter in April of 2022, after being notified of the

8   issuance of the ex-parte TRO.

9   In total, CTL has incurred **$133,359.22** in fees and costs for Mr. Humphries' defense in

10  both the SEC and parallel criminal investigation – all of which remains unpaid.  The table below

11  shows a breakdown of when those fees and costs were incurred in relation to the Preliminary

12  Injunction issued in this matter on April 21, 2022.[3]

| | Criminal Matter | SEC Matter |
|---|---|---|
| Costs through 4/21/22 | $9,769.26 | 0 |
| Attorney's fees through 4/21/22 | $23,505.00 | $47,115.00 |
| **Total through 4/21/22** | **$33,274.26** | **$47,115.00** |
| Costs since 4/22/22 | $581.25 | $698.71 |
| Attorney's fees since 4/22/22 | $3,010.00 | $48,680.00 |
| **Total since 4/22/22** | **$3,591.25** | **$49,378.71** |
| **TOTAL** | **$36,865.51** | **$96,493.71** |

18  Notably, CTL's fees pale in comparison to those incurred by other firms representing similarly

19  situated defendants, which demonstrates the reasonableness of Mr. Humphries' request.   In

20  particular, attorney Peter S. Christiansen billed at a rate of $850 per hour, which is his standard

21  hourly rate for cases of this nature. *See* **Exhibit B**, Decl. of Peter S. Christiansen, Esq. Attorney

22  Kendelee L. Works billed at a rate of $450 per hour, which is less than her typical hourly rate on

23  similar matters. *Id*. Attorney Keely P. Chippoletti billed at a rate of $450 per hour, which is her

24  normal hourly rate.  *Id.*  These fees include time spent conducting hours of document review,

25  opposing the SEC's Motion for Preliminary Injunction, engaging in discussions with counsel for

---

28  [3] *See* **Exhibit B**, Decl. of Peter S. Christiansen, Esq.

the SEC and the US Attorney's office as well as numerous client meetings in order to sufficiently prepare for such tasks. *Id*.

While the criminal investigation has been at somewhat of a lull during the last couple months, CTL anticipates the work required on that side of the matter is likely to increase exponentially in the near future. The asset freeze has significantly impacted Mr. Humphries' ability to defend against the allegations in this lawsuit and the companion criminal investigation. Without question, Mr. Humphries is a target of the criminal investigation underway by the U.S. Attorney's Office for the District of Nevada. If indicted and convicted, Mr. Humphries could face a lengthy loss of freedom, making this matter of utmost import.

Because his property was seized attendant to the criminal investigation, Mr. Humphries is also incurring fees to pay an electronic discovery company (HOLO) to assist with accessing and compiling documents relevant to the instant matter and the criminal investigation. *See* **Exhibit B**, Decl. of Peter S. Christiansen, Esq. As a preliminary matter, electronic document searches to hone in on relevant documents have hit on thousands of documents. *Id*. The instant matter has been pending for just 3 months and already has hundreds of docket entries. Accordingly, this case has proven to be, and the criminal prosecution will inevitably be, very document intensive. Thus, in addition to having to retain representation for the instant SEC case, Mr. Humphries necessitates the release of funds to pay defense counsel to secure his due process rights with respect to the criminal investigation and any ensuing prosecution. Therefore, Mr. Humphries requests the Court approve payment of $133,359.22 in attorney's fees and costs already incurred to date and also allow release of additional seized/frozen funds in order to pay for attorney's fees and costs to be incurred moving forward.

## II. LEGAL ARGUMENT

### A. THE COURT SHOULD APPROVE PAYMENT TO CTL IN THE AMOUNT OF $80,389.26 FOR ATTORNEY'S FEES AND COSTS INCURRED THROUGH APRIL 21, 2022, THE DATE OF THE PRELIMINARY INJUNCTION.

CTL currently holds in trust $132,359.22 received from Mr. Humphries as a retainer for legal services related to the pending criminal investigation. These funds were received by CTL

more than a month before the SEC filed its Complaint in this matter. Through July 15, 2022, CTL has incurred $133,359.22[4] in fees and costs for Mr. Humphries' defense in both the SEC and parallel criminal investigation – all of which remains unpaid.

Under Nevada law, an attorney has a lien on a client's property in the possession of the attorney for the value of the services which the attorney has rendered for the client. *See*, *e.g.*, *Fredianelli v. Fine Carman Price*, 133 Nev. 586, 589, 402 P.3d 1254, 1256 (2017) (quoting NRS 18.015(4)(b)). Accordingly, CTL has a statutory lien in the amount of $133,359.22 for services rendered on behalf of Mr. Humphries.

Of the $133,359.22 in fees and costs incurred through July 15, 2022, $80,389.26 was incurred through April 21, 2022, the date the preliminary injunction was entered. Thus, these funds do not represent property of Mr. Humphries which is subject to the Receivership Order because they were earned pursuant to CTL's contractual agreement with Mr. Humphries, prior to entry of the injunction and certainly prior to the Receiver's appointment. As such, Mr. Humphries requests this Court approve payment of $80,389.26 in attorney's fees and costs already incurred.

**B. THE COURT SHOULD RELEASE ADDITIONAL FUNDS TO PERMIT MR. HUMPHRIES TO PAY DEFENSE COUNSEL TO SECURE HIS DUE PROCESS RIGHTS WITH RESPECT TO THE INSTANT MATTER AND THE CRIMINAL INVESTIGATION.**

Mr. Humphries further requests this Court approve payment of $52,969.96 (the balance of CTL's fees and costs incurred from April 22 through July 15) and allow release of an additional $250,000.00 of seized/frozen funds in order to pay for attorney's fees and costs to be incurred moving forward in both the instant matter and the companion criminal investigation until an indictment is issued.

The release of funds for attorney's fees lies within the discretion of the Court. *See United States v. Monsanto*, 491 U.S. 600, 615-16 (1989). The lack of availability of other funds and the fact that the defendants have not yet been found liable for the alleged wrongdoing are

---

[4] There was a $1,000.00 addition error in CTL's July 15, 2022, email to the Receiver. CTL had actually incurred $133,359.22 (not $132,359.22) in fees and costs through that date. However, CTL retained in trust only the $132,359.22.

considerations courts have evaluated when determining whether to release funds for attorney's fees. *Commodity Futures Trading v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) ("Discretion must be exercised by the district court in light of the fact that wrongdoing is not yet proved when the application for attorney fees is made."). Even in cases where there is "considerable evidence" to support allegations of wrongdoing, "the court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves." *FSLIC v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987). Rather, in instances where a defendant cannot pay defense counsel from funds that are not subject to a freeze, "some allowance must be made" to permit the payment of defense fees from the frozen assets. *Id.* A district court may impose limits in certain circumstances, such as setting a cap on the total sum which may be withdrawn for the payment of fees. *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 348 (9th Cir. 1989) (citing *Dixon*, 835 F.2d at 564-65). But except in the most extreme cases, defendants should not be left without the ability to secure counsel for their defense.

It is without dispute Mr. Humphries is a target of the parallel criminal investigation, implicating his Sixth Amendment right to counsel. The Sixth Amendment right to counsel guarantees more than the mere presence of a lawyer at a criminal trial—it protects, among other things, an individual's right to choose the lawyer he desires. *Wheat v. United States*, 486 U.S. 153, 159 (1988). "Although a court may impose an asset freeze in a civil case, notwithstanding a companion criminal case, these circumstances dictate that the court pay particular attention to the defendant's Fifth and Sixth Amendment rights." *SEC v. Coates*, No. 94-cv-5361, 1994 WL 455558, at *3 (S.D.N.Y. Aug. 23, 1994).

*In SEC v. Coates*, the defendant in a civil enforcement action brought by the SEC was also named as a defendant in a parallel criminal action. The defendant moved to release certain assets subject to a preliminary injunction to retain an attorney in the criminal proceeding. *Id.* at *3. The court held that the factors considered in *Monsanto* for criminal cases applied equally in a SEC civil enforcement action and, therefore, assets should continue to be restrained if traceable to criminal activity but, if not, could be released to permit a criminal defendant to retain the counsel of his or her choice. *Id.* Particularly significant here, the *Coates* court found that because

1  the freezing of defendant's assets may hinder his ability to obtain counsel of choice in the related

2  criminal case, the asset freeze order could not continue through trial "in the absence of an

3  adversary hearing as to whether, 1) the SEC has established a prime facie case of securities laws

4  violations, and ) the SEC has made a showing that the frozen assets are traceable to fraud." *Id.* at

5  *3.

6      In determining whether to release funds for attorney's fees, courts consider a variety of

7  factors, including: the availability of other funds; the availability of funds sufficient to satisfy any

8  disgorgement remedy; the likelihood of success on the merits; the balance of equities; and the

9  reasonableness of the fee request. *See World Wide Factors*, 882 F.2d at 348; *Noble Metals*, 67

10  F.3d at 775; *FTC v. Consumer Def.*, LLC, No. 2:18-CV-30 JCM (PAL), 2018 WL 2972927, at

11  *4 (D. Nev. May 4, 2018); *FTC v. Affordable Media*, 179 F.3d 1228, 1233 (9th Cir. 1999)

12  (quoting *FTC v. Warner Comm'ns, Inc.*, 742 F.2d 1156, 1159 (9th Cir. 1984); *FTC v. Johnson*,

13  No. 2:10-CV-02203-MMD-GWF, 2015 WL 9243920, at *2 (D. Nev. Dec. 17, 2015).

14      A release of funds for Mr. Humphries to pay for attorney's fees is warranted here. The

15  allegations in this case are serious. Mr. Humphries is not only facing a significant loss of property,

16  but also a loss of freedom in light of the parallel criminal investigation. All of Mr. Humphries'

17  assets are frozen regardless of origin. Mr. Humphries has no other funds available to pay his

18  attorneys. If Mr. Humphries is denied access to additional seized/frozen funds to pay his

19  attorney's fees, he will have no opportunity to defend himself. Such a result would effectively

20  deny him due process to which he is entitled under the Fifth Amendment.

21      With respect to the availability of funds sufficient to satisfy any disgorgement remedy,

22  the Ninth Circuit has held:

23          [I]f, out of concern for preserving funds for ultimate distribution to defrauded
            customers, the district court wishes to limit the amount by which the frozen funds

24          may be invaded for payment of attorney fees, it should set a maximum total sum
            which may be withdrawn or it should establish the minimum size to which the

25          otherwise frozen assets may be reduced based upon appropriate findings.

26  *World Wide Factors*, 882 F.3d at 348. The SEC alleges Mr. Humphries received compensation

27  for bringing in new investors and raising additional money from existing investors. Amended

28

12

1  Compl. at ¶ 52. The SEC further alleges Mr. Humphries began promoting the investments in

2  August 2019 and that he claimed to make $250,000.00 every three months. *Id*. at ¶¶ 48, 52. Based

3  on the SEC's own allegations, from August 2019 to March 3, 2022 (the date of the FBI raid), the

4  most Mr. Humphries would have received would be $2,500,000.00. Mr. Humphries' list of assets

5  filed under seal demonstrates he has more than sufficient assets to satisfy this potential

6  disgorgement remedy attributable to him. *See* **Exhibit B**, Decl. of Peter S. Christiansen, Esq.

7      In *Liu v. Sec. & Exch. Comm'n*, 140 S.Ct. 1936, 207 L. Ed. 2d 401(2020), the Supreme

8  Court limited the SEC's authority to seek disgorgement to obtaining not all revenue from the

9  purported misconduct, but only "the net profits from wrongdoing, that is, 'the gain made upon

10  any business or investment, when both the receipts and payments are taken into the account.'"

11  *Id*. at 1945 (citing *Rubber Co. v. Goodyear*, 76 U.S. 788 (1870)).  *Liu* held that "courts must

12  deduct legitimate expenses before ordering disgorgement," and that "a rule to the contrary that

13  'make[s] no allowance for the cost and expense of conducting [a] business would be 'inconsistent

14  with the ordinary principles and practice of courts of chancery.'"  *Id*. at 1950 (citing *Tilghman v.

15  Proctor*, 125 U.S. 136, 145–146 (1888)).  The Supreme Court used this formulation to ensure that

16  disgorgement sought by the SEC is not tantamount to a penalty.  *See id*. (citing *Livingston v.

17  Woodworth*, 56 U.S. 546, 559-60 (1853) (limiting disgorgement to "actual gains and profits" to

18  avoid "convert[ing] a court of equity into an instrument of punishment for simple torts")). Here,

19  the SEC has conceded *Liu* is controlling as to disgorgement.

20      Nevertheless, even if the Court finds that Mr. Humphries does not have sufficient assets

21  to cover the entire potential disgorgement, the Ninth Circuit has acknowledged there may be cases

22  wherein a fees application should not be denied on that basis alone.  Indeed, in *Noble Metals Int'l*,

23  the Ninth Circuit expressly noted that it did not intend to "…intimate that attorney fee applications

24  may always be denied where the assets are insufficient to cover the claims. Discretion must be

25  exercised by the district court in light of the fact that wrongdoing it not yet proved." 67 F.3d at

26  775.   This Court should find the SEC's case against Mr. Humphries to be one such instance.

27  More specifically, even after amending its Complaint in response to Mr. Humphries' first motion

28  to dismiss, the SEC has fallen woefully short of providing anything but a general averment "on

CHRISTIANSEN
— TRIAL LAWYERS —

1   information and belief," that Mr. Humphries had knowledge of the fraud.  Because the SEC has

2   not yet sufficiently alleged, ***much less proven*** any wrongdoing or knowledge on the part of Mr.

3   Humphries, but has nevertheless frozen the entirety of his assets and his wife's (who is not a

4   named defendant), this Court should find that the balance of equities tips in favor of releasing

5   funds to allow the Humphries Defendants to pay counsel for their defense in this case and the

6   parallel criminal matter.  At a minimum, pursuant to *Coates*, a case on which the SEC relies, this

7   Court should hold an adversary proceeding and require the SEC to make a prime facie case of

8   fraud against Mr. Humphries sufficient to justify the continued freeze on the entirety of his assets

9   such that he will be left without the means to pay counsel.

10   **III.    CONCLUSION**

11        In light of the foregoing facts, law and analysis, Mr. Humphries respectfully requests the

12   Court approve payment of $132,359.22 in attorney's fees and costs already incurred through July

13   15, which is currently held in Christiansen Trial Lawyers' IOLTA account, and allow release of

14   $250,000.00 in additional seized/frozen funds in order to pay for attorney's fees and costs to be

15   incurred moving forward in both the instant matter and the companion criminal investigation until

16   an indictment is issued.

17        Dated this 29th day of July, 2022.

18                                    CHRISTIANSEN TRIAL LAWYERS

19

20                          By_____

21                              PETER S. CHRISTIANSEN, ESQ.
                               KENDELEE L. WORKS, ESQ.

22                              KEELY P. CHIPPOLETTI, ESQ.
                               *Attorneys for Defendant*

23                              *Christopher R. Humphries and Relief*
                               *Defendant CJ Investments, LLC*

24

25

26

27

28





## CERTIFICATE OF SERVICE

Pursuant to FRCP 5 and LR-5.1, I certify that I am an employee of CHRISTIANSEN TRIAL LAWYERS, and that on this 29th day of July, 2022, I caused the foregoing document entitled **DEFENDANT CHRISTOPHER HUMPHRIES AND RELIEF DEFENDANT CJ INVESTMENTS, LLC'S MOTION FOR RELEASE OF FUNDS FOR ATTORNEY'S FEES** to be filed and served via the Court's CM/ECF electronic filing system upon all registered parties and their counsel.

An employee of Christiansen Trial Lawyers

15

# EXHIBIT A

# EXHIBIT A



**From:** hendricksk@gtlaw.com
**Subject:** RE: Humphries: attorneys fees and costs request
**Date:** July 20, 2022 at 4:33 PM
**To:** kworks@christiansenlaw.com,  geoff@americanfiduciaryservices.com
**Cc:** pete@christiansenlaw.com,  jcrain@christiansenlaw.com,  PJohnston@foley.com,  keely@christiansenlaw.com

Kendelee,

As we discussed, the Receiver is not in a position to approve the payment of attorney's fees.

Please immediately turnover the **$17,640.78** balance to the Receiver.  To facilitate the same, I have attached wire instructions for the account established by the Receiver.  In regard to the of **$132,359.22** in attorney's fees and costs that you represent has been incurred to date, please file a motion within the next 7 days seeking Court approval for your firm to retain the same.  To be clear, the Receiver is not agreeing that you are entitled to keep the $132,359.22, but will consent to the funds remaining in your trust account until a decision is made by the Judge.

Best,
Kara

**Kara Hendricks**
Shareholder

T 702.938.6856

---

**From:** Kendelee Works <kworks@christiansenlaw.com>
**Sent:** Friday, July 15, 2022 4:55 PM
**To:** Geoff Winkler <geoff@americanfiduciaryservices.com>; Hendricks, Kara (Shld-LV-LT) <hendricksk@gtlaw.com>
**Cc:** Peter S. Christiansen <pete@christiansenlaw.com>; Jonathan Crain <jcrain@christiansenlaw.com>; Johnston, Pam <PJohnston@foley.com>; Keely Perdue <keely@christiansenlaw.com>
**Subject:** Humphries: attorneys fees and costs request

**\*EXTERNAL TO GT\***

Geoff/Kara,

As discussed earlier this week, below are the total fees and costs our firm has incurred (broken down between both the SEC matter and the criminal investigation by dates incurred):

**Criminal:**
Costs incurred through 4/21/22 (date of entry of Preliminary Injunction): $9,769.26 (HOLO Discovery and separate Investigative services);
Atty fees incurred through 4/21/22: $23,505
Total criminal fees and costs through 4/21/22: **$32,274.26**

**SEC:**
Atty fees incurred through 4/21/22: **$47,115.00**

**Criminal:**
Costs incurred since 4/22/22 to date: $581.25
<u>Atty fees incurred since 4/22/22 to date: $3,010.00</u>
Total criminal fees and costs since 4/22/22: **$3,591.25**

**SEC:**
Costs incurred since 4/22/22 to date: $698.71
<u>Atty fees incurred since 4/22/22 to date: $48,680.00</u>
Total SEC fees and costs since 4/22/22: **$49,378.71**

In total, we have incurred **$132,359.22** in fees and costs for Mr. Humphries' defense in both the SEC and parallel criminal investigation - all of which remains unpaid. Additionally, Mrs. Humphries, whose assets were also entirely frozen despite that she has never been named as a defendant or relief defendant, has also incurred in excess of $25,000 in attorneys fees. Notably, our fees pale in comparison to those incurred by other firms representing similarly situated defendants. While the criminal investigation has been at somewhat of a lull during the last couple months, we have every reason to anticipate the work required on that side of the matter is likely to increase exponentially in the near future. Accordingly, we ask that the receiver approve payment of $132,359.22 in attorney's fees and costs already incurred to date and also allow us to continue holding the $17,640.78 balance that would remain in trust after payment of the past fees and costs. We will then make a motion to the court for the release of additional seized/frozen funds in order to pay for attorneys fees and costs to be incurred moving forward.

Please let us know your position on this request at your earliest convenience. We are, of course, happy to provide any additional non-privileged information or documentation you may need. In the event that the receiver declines all of a portion of this request, we can have our motion for the payment of attorney's fees and costs on file within 7 business days of any such rejection.

Your time and consideration are appreciated.

Kendelee L. Works, Esq.
Christiansen Trial Lawyers
710 South 7th Street, Suite B
Las Vegas, NV 89101
Phone (702) 240-7979
Fax (866) 412-6992
www.christiansenlaw.com



This email is intended only For the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and/or exempt from disclosure under applicable law.  If the reader of this email is not the intended recipient, or the employee or agent responsible for delivering the email to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.



JJ Consulting – Genera...ns.pdf

# EXHIBIT B

# EXHIBIT B

**DECLARATION OF PETER S. CHRISTIANSEN, ESQ.
IN SUPPORT OF DEFENDANT CHRISTOPHER HUMPHRIES AND
RELIEF DEFENDANT CJ INVESTMENTS, LLC'S
MOTION FOR RELEASE OF FUNDS FOR ATTORNEY'S FEES**

I, PETER S. CHRISTIANSEN, ESQ., declare and state as follows:

1.      I am an attorney licensed to practice law in the State of Nevada and am counsel for Defendant Christopher R. Humphries and Relief Defendant CJ Investments, LLC, of which Christopher R. Humphries is a managing member. I am admitted to practice in the United States District Court, District of Nevada.

2.      I make this declaration based on my own personal knowledge of the case and, if called as a witness, could competently testify thereto.

3.      On March 3, 2022, the FBI executed search warrants at the residences of Matthew Beasley, Esq., Jeffrey Judd, and Mr. Humphries.  In relevant part, the FBI sought records of securities or investment contracts marketed, sold or contemplated to be marketed or sold by Judd, Humphries, and J&J Consulting, J&J Investments, and J&J Purchasing (collectively J&J").

4.      At the time of that search, both Mr. Humphries and his wife, Jessica Humphries, had their iPhones and laptops seized.

5.      On or about March 6, 2022, Mr. Humphries sought counsel and on March 8, 2022, he paid Christiansen Trial Lawyers ("CTL") a $150,000.00 retainer for his criminal defense.

6.      The FBI has retained custody of Mr. Humphries' electronic devices, but the U.S. Attorney's Office with the District of Nevada did provide CTL with two drives containing what the FBI represents to be mirror images of both his iPhone and laptop. Mr. Humphries, through CTL, has retained HOLO Litigation Services (an electronic discovery company) to document and maintain the chain of custody and also to search the images for documents that would be relevant to the parallel criminal and civil investigations.

7.      Mr. Humphries is incurring fees to pay HOLO to assist with accessing and compiling documents relevant to the instant matter and the criminal investigation. Electronic document searches to hone in on relevant documents have hit on thousands of documents.

8. Subsequent to the FBI's seizure of the Humphries' electronic devices and prior to the entry of the Temporary Restraining Order ("TRO") in this case, CTL was coordinating with SEC Counsel to begin a rolling production of documents responsive to its subpoenas.

9. In the interim, the U.S. Attorney's office served Mr. Humphries with additional subpoenas related to the criminal investigation.

10. It is undisputed that Mr. Humphries is a target of the federal investigation and thus, CTL informed Counsel for the SEC that Mr. Humphries would need to delay any production of documents in order to assess issues associated with his criminal exposure and/or the assertion of his 5th Amendment right to be free from self-incrimination.

11. CTL received no further communication until being alerted of the TRO the SEC obtained ex-parte on April 13, 2022.

12. CTL has incurred $133,359.22 in fees and costs through July 15, 2022, for Mr. Humphries' defense in both the SEC and parallel criminal investigation, all of which remains unpaid.

13. Of the $133,359.22 in fees and costs incurred, $80,389.26 was incurred through April 21, 2022, the date the preliminary injunction was entered; $52,969.96 was incurred from April 22 through July 15, 2022.

14. I billed Mr. Humphries at a rate of $850 per hour, which is my standard hourly rate for cases of this nature. Attorney Kendelee L. Works billed at a rate of $450 per hour, which is less than her typical hourly rate on similar matter. Attorney Keely P. Chippoletti billed at a rate of $450 per hour, which is her normal hourly rate.

15. CTL's fees include time spent conducting hours of document review, opposing the SEC's Motion for Preliminary Injunction, engaging in discussions with counsel for the SEC and the US Attorney's office as well as numerous client meetings in order to sufficiently prepare for such tasks.

16. Upon information and belief, an estimated calculation of Mr. Humphries' total assets exceeds $8M.

2

1        17.     I declare under penalty of perjury under the laws of the United States and the State

2  of Nevada that the foregoing is true and correct.

3        Executed this 29th day of July, 2022.

4

5                             PETER S. CHRISTIANSEN, ESQ.



3