UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Securities and Exchange Commission,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Matthew Wade Beasley, et al.,<br><br>　　　　　　　Defendants,<br><br>The Judd Irrevocable Trust, *et al.*,<br><br>　　　　　　　Relief Defendants. | Case No. 2:22-cv-00612-CDS-EJY<br><br>**Order** |

　　　The United States Securities and Exchange Commission ("SEC") brought this action against Defendants Matthew Beasley, Jeffrey Judd, and others, alleging they violated the Securities Act and the Exchange Act. *See generally* ECF Nos. 1, 118. Before the Court are two pending motions filed by two separate firms seeking payment for legal services provided to Defendant Judd. ECF Nos. 142, 164. The SEC and Receiver Geoff Winkler oppose the motions for attorney fees. ECF Nos. 180, 183, 198, 200. In its opposition to the motions, the Receiver also asks this Court to fully enforce the asset freeze and turnover order entered on June 3, 2022. *See, e.g.*, ECF No. 183 at 3-4. For the reasons set forth herein, the Court denies in part and grants in part Fabian VanCott's motion (ECF No. 142), denies Oberheiden, P.C.'s motion (ECF No. 164), and grants the Receiver's request to enforce the asset freeze and turnover order (ECF No. 88).

I.      Relevant Procedural History

On April 13, 2022, the Court entered a Temporary Restraining Order (TRO), an asset freeze and accounting order, and related relief. ECF No. 3. Thereafter, on April 21, 2022, the Court issued a preliminary injunction, asset freeze, and other equitable relief ("the Injunction Order") against Defendants Matthew W. Beasley; Beasley Law Group PC; Jeffrey J. Judd; Christopher R. Humphries; J&J Consulting Services, Inc., an Alaska Corporation; J&J Consulting Services, Inc., a Nevada Corporation; J and J Purchasing LLC; Shane M. Jager; Jason Jongeward; Denny Seybert; and Roland Tanner ("Defendants"). ECF No. 56. The Court issued the Injunction Order after finding that the Defendants, directly and/or indirectly, engaged in the violations alleged in the Complaint (ECF No. 1), that there was a reasonable likelihood that those violations would be repeated unless restrained and enjoined by the Court, and that the Defendants had the ability to dissipate, conceal or transfer from the jurisdiction of this Court assets that could be subject to an order of disgorgement or an order to pay a civil monetary penalty in this action. *Id.*

On June 3, 2022, the Court granted Plaintiff's motion to appoint a receiver in this action (ECF No. 67). ECF No. 88. The Receivership Order set forth a plan for the preservation of assets. In order to accomplish that plan, the Receivership Order provides that "[t]his Court hereby takes exclusive jurisdiction and possession of the personal assets, of whatever kind and wherever situated, of the following Defendants: Matthew Wade Beasley; Jeffrey J. Judd; Christopher R. Humphries; Shane M. Jager; Jason M. Jongeward; Denny Seybert; and Roland Tanner (collectively, the 'Individual Receivership Defendants', and together with the J&J Receivership Defendants and the Beasley IOLTA, the 'Receivership Defendants')." ECF No. 88 at 3, ¶3.

Further, the Receivership Order provides that "[t]he trustees, directors, officers, managers, employees, investment advisors, accountants, **attorneys,** and other agents of the J&J Receivership Defendants **shall have no authority with respect to the J&J Receivership Defendants' operations or assets**, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume control of the J&J Receivership Defendants' assets and any affiliated entities owned or controlled by the J&J Receivership Defendants and shall pursue and preserve all of their claims." *Id.* at 4, ¶6 (emphasis added). Finally, the Receivership Order provides states **"[a]ll persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver"** (the "Turnover Provision"). ECF No. 88 at 8, ¶ 15 (emphasis added).

After the Receivership Order was issued, Mr. Nick Oberheiden, Esq. filed a Certified Statement, pursuant to Paragraph 17C of the Appointment Order, in which he advised the Court that Oberheiden, P.C. was holding $2,425,000.00 in trust for Judd's representation in all criminal investigations or actions to which Judd may be a party. ECF No. 97. Prior to filing the Motion, Oberheiden partially complied with the Receivership Order turnover demand by transferring $2,053,377.51 to the Receiver. ECF No. 111.

On July 6, 2022, Kevin Anderson, Esq., filed a motion for attorney's fees, or in the alternative, a motion to withdraw on behalf of Defendant Judd. ECF No. 142. Like Oberheiden, Mr. Anderson and his firm partially complied with the Receivership Order, providing just over $400,000 to the Receiver, while retaining $345,378.73. The SEC and Receiver oppose the motion for attorney's fees, and the Receiver's opposition includes a request for the Court to direct Mr. Andersons' law firm, Fabian VanCott, to fully comply with the Receivership Order (ECF No. 88). *See generally* ECF Nos. 180 (SEC), 183 (Receiver).

On July 13, 2022, attorney Nick Oberheiden filed a Motion to Retain Earned Fees and Expenses on behalf of his law firm and non-party Oberheiden P.C. ECF No. 164. Mr. Oberheiden's motion seeks to retain $371,622.40 in funds subject to the Receivership Order. *See generally id.* The SEC and Receiver oppose the motion, and the Receiver's opposition includes a request for the Court to direct Mr. Oberheiden to fully comply with the Receivership Order (ECF No. 88). *See generally* ECF Nos. 198 (SEC), 200 (Receiver).

II. **Legal Standard**

This court has discretion to forbid or limit payment of attorney's fees out of frozen assets. *See FSLIC v. Ferm*, 909 F.2d 372, 375 (9th Cir. 1990) (approving limitation on attorney's fees); *CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995); *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989) ("Courts regularly have frozen assets and denied attorney fees or limited the amount for attorney fees."). That discretion is derived from Supreme Court precedent establishing that a district court may restrain a defendant from using disputed funds to pay for attorney's fees before a final judgment on the merits has been rendered. *United States v. Monsanto*, 491 U.S. 600, 615 (1989). These decisions are rooted in recognition of "the importance of preserving the integrity of disputed assets to ensure that such assets are not squandered by one party to the potential detriment of another." *Ferm*, 909 F.2d at 374.

There is a distinction between the right to counsel in civil and criminal cases. In the criminal context, the Supreme Court has held that the Sixth Amendment grants a defendant "a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932). Denial of the qualified right to counsel of choice is reversible error. *United States v. Ray*, 731 F.2d 1361, 1365 (9th Cir. 1984). The "fair opportunity" for a defendant to secure counsel of choice has limits, however. *Luis v. United States*, 578 U.S. 5, 11 (2016). While pretrial restraint of legitimate,

untainted assets needed to retain counsel of choice violates the Sixth Amendment, the forfeiture or restraint of illicit proceeds or other assets utilized to facilitate criminal activity does not. *See Luis*, 578 U.S. at 5; *Monsanto*, 491 U.S. at 600. "A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney even if those funds are the only way that the defendant will be able to retain the attorney of his choice." *Caplin & Drysdale*, 491 U.S. 617, 626 (1989). Thus, for criminal actions, where a defendant makes a sufficient threshold showing that seized assets are needed to pay for his counsel of choice, the Fifth and Sixth Amendments require the court to conduct a post-seizure, adversary hearing. *See Monsanto*, 491 U.S. at 600; *see also United States v. Kaley*, 571 U.S. 320 (2014).

Generally, there is not right to counsel in a civil case. *See Turner v. Rogers*, 564 U.S. 431 (2011) (discussing that cases concerning the right to counsel in civil cases have found a presumption of such a right "only" in cases involving incarceration, but that the same right does not extend to all civil cases); *United States v. Sardone*, 94 F.3d 1233, 1236 (9th Cir. 1996) (collecting cases) ("[I]t is well-established that there is generally no constitutional right to counsel in civil cases."). Thus, limiting a defendant's use of frozen funds for attorney's fees does not "arbitrarily interfere with a defendant's fair opportunity to retain counsel," nor does it offend the Fifth or Sixth Amendments. *Fed. Sav. & Loan Ins. Corp. v. Ferm*, 909 F.2d 372, 375 (9th Cir. 1990) (quoting *Monsanto*, 491 U.S. at 616).

Although a district court may completely bar the use of any frozen assets to pay attorney's fees of a defendant, the more common approach is to allow access to some portion of those assets to be used for specific needs of the defendant. *See, e.g., FTC v. Inc21.com Corp.*, 475 Fed. Appx. 106, 110 (9th Cir. 2012) (district court reasonably restricted access to frozen funds to pay attorney's fees when limiting access to "reasonable sums"); *FTC v. Osborne*, 69 F.3d 543 (9th Cir. 1995) (unpublished table decision) (district court properly placed $15,000 ceiling for attorney's

fees). Other circuits have adopted a similar approach. *See, e.g., FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1032 (7th Cir. 1988) (upholding district court's "cap" on payment of counsel from frozen assets).

In determining whether to unfreeze assets for the payment of attorney's fees in civil cases, a court is to consider both the likelihood of success on the merits of the claims brought by the governmental agency bringing the enforcement action *and* balance the equities. *FTC v. Affordable Media*, 179 F.3d 1228, 1233 (9th Cir. 1999) (emphasis added) (quoting *FTC v. Warner Comm'ns, Inc.*, 742 F.2d 1156, 1159 (9th Cir. 1984)). In its determination, the court balances the public equities versus private interests. "[P]ublic interests are generally entitled to stronger consideration than private interests." *FTC v. Merch. Servs. Direct, LLC*, 2013 WL 4094394, at *2 (E.D. Wash. Aug. 13, 2013) (internal citation omitted); *see also World Wide Factors*, 882 F.2d at 347 ("[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight."). Public equities include, but are not limited to, the economic effects and pro-competitive advantages for consumers, as well as effective relief for the governmental agency *World Wide Factors*, 882 F.2d at 347. In addition, in balancing the equities, the Court should consider the availability of assets for consumer redress, the reasonableness of the fee request, whether defense counsel was aware of the possibility that fees might be denied or limited, and the defendant's access to alternative assets are all relevant factors. *See Noble Metals*, 67 F.3d at 775; *World Wide Factors*, 882 F.2d at 348; *FTC v. Johnson*, 2015 WL 9243920, at *2 (D. Nev. Dec. 17, 2015).

**III.    Discussion**

While the motions seek similar relief, the Court addresses each motion separately because there are distinctions between the arguments raised by each motion.

### A. Fabian VanCott's Motion for Attorney's Fees, or in the alternative, Motion to Withdraw (ECF No. 142)

Attorney Kevin Anderson, on behalf of his firm Fabian VanCott, has filed a motion for attorney's fees, seeking $329,160.50 in fees and $16,218.23 in incurred costs (totaling $345,378.73). ECF No. 142 at 16. The motion asserts that the SEC has "refused to negotiate" for retention or return of certain funds for Judd's living expenses and attorney's fees. *Id.* at 12. To support this argument, Mr. Anderson filed a declaration (ECF No. 142-1), and provided the court with an *ex parte*, composite exhibit consisting of email exchanges between attorneys involved in this case and internal reports of costs and services charged by Fabian VanCott.[1] If the motion for fees is not granted, Mr. Anderson and Fabian VanCott seek withdrawal from the case. *See generally* ECF No. 142.

The SEC and the Receiver in this action oppose the motion for attorneys for similar reasons. In sum, they both assert that the there is no right to counsel in civil enforcement actions and further that this Court should not release any funds for attorney's fees because Judd has not provided sufficient information to show that the funds are not untainted. *See generally* ECF Nos. 180 (SEC), 183 (Receiver). The Receiver further argues that Fabian VanCott's refusal to return the $345,378.73 in funds is in direct violation of the asset freeze imposed by the Temporary Restraining Order and Preliminary Injunction (ECF No. 56) and Receivership Order (ECF No. 88), that incorporates a turnover order, issued by District Court Judge James C. Mahan on June 3, 2022. ECF No. 183 at 6-7. The Receiver also argues that the turnover order should be enforced, noting that Judd has failed to provide this Court with any valid reason to modify the Asset

---

[1] It is unclear why this information was provided to the court for in camera review instead of being filed on CM/ECF. Accordingly, in conjunction with this order, the court also issues an order should cause why this exhibit should not be electronically filed with personal identifying and confidential attorney-client work product redacted.

Freeze to permit Judd to use the Receivership Funds for his own defense.[2] As set forth in the Receiver's opposition, Judd placed $750,000 into Fabian VanCott's IOLTA account for Judd's representation in multiple lawsuits. ECF No. 183 at 5. There is no dispute that prior to the filing of the instant motion, the Receiver and his counsel have had numerous communications with Fabian VanCott regarding the $750,000 in funds deposited into the IOLTA account. There is also no dispute that to date the Receiver has received $404,621.27 from Fabian VanCott, but despite Judge Mahan's orders, the firm has retained the remainder and seeks to be renumerated from the remaining $345,378.73.

This Court agrees with the SEC and the Receiver and finds that Judd has failed to establish that the funds Fabian VanCott seeks to retain and use to pay its attorney's fees are untainted. Contrary to the arguments set forth in VanCott's motion, once the SEC has met its preliminary showing that the assets in question can be traced to fraud,[3] the burden of establishing whether the funds are tainted or untainted falls squarely on Judd. *See SEC v. Santillo*, 2018 WL 3392881, at *4 (S.D.N.Y. July 11, 2018) (stating that in a civil action, including enforcement actions brought by the SEC, a "defendant must establish that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established"); *SEC v. Private Equity Management Group, Inc.*, 2009 WL 2058247, at *2–3 (C.D. Cal. July 9, 2009) (noting that the SEC had made the necessary preliminary showing that funds were tainted and explaining "it is now up to [defendant] to demonstrate that the assets he possesses are untainted by the fraud"). The only

---

[2] At a hearing on July 25, 2022, Mr. Anderson improperly attempted to orally re-litigate the Judge Mahan's freeze and turnover orders without filing a motion for reconsideration. That attempt was denied.

[3] The SEC has met its burden, which resulted in the granting of the Temporary Restraining Order and Preliminary Injunction, entered by Judge Mahan. Out of an abundance of caution, I conducted an independent review of the evidence provided by the SEC and found that the SEC made the proper, requisite showings warranting issuances of the original TRO and PI.

evidence before the Court regarding the source of the funds retained by Fabian VanCott is an affidavit filed by Defendant's attorney, Kevin Anderson.

This Court is steadfastly concerned with fairness and it "has an obligation to ensure the equitable distribution of receivership assets." *SEC v. BIC Real Est. Dev. Corp.*, 2017 WL 2463854, at *7 (E.D. Cal. June 7, 2017). The information provided by Fabian VanCott lacks critical information for this Court's to evaluate fairness and further to meet its obligation of ensuring equitable distribution of receivership assets. While the firm provides some information regarding what they believe to be the value of Judd's financials before involvement in the Beasley scheme, there is *no* information before the Court regarding if those funds or assets were used to invest or further the scheme. A review of the information also provided to SEC reveals the same critical omission. This information is critical because if the pre-scheme assets or monies were used to invest in, or further the scheme, then they are tainted. Further, Mr. Anderson's declaration alone is insufficient to establish that the funds he seeks to release are untainted.

Finally, Judd's assertion that the SEC has refused to negotiate for living expenses and attorney's fees for him is contradicted by Mr. Anderson's declaration and *ex parte* exhibit submitted to the Court. The SEC has made specific requests to all defendants to show proof that untainted funds would be used for attorney's fees and costs. S*ee* ECF No. 142-1 at ¶17. The emails in the *ex parte* exhibit compilation reveal the SEC's attempt to work with Mr. Anderson to come to an agreement for living expenses for Judd. Intermingled in those communications is the lack of compliance by Mr. Anderson and Fabian VanCott in failing to return the full $750,000 in funds to the SEC as required by the Receivership Order. The Receivership Order directs **"[a]ll persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver"** (the "Turnover Provision"). ECF No. 88 at 8, ¶ 15 (emphasis added). There is no exception included for funds transferred to

Judd's attorneys before the Receivership Order was entered. Full compliance with the Receivership Order is required by Judge Mahan's Order. It would frustrate the purpose of equity receiverships, which are designed "to promote orderly and efficient administration of the estate by the district court for the benefit of creditors," *S.E.C. v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986), if individuals alleged to have violated the Securities Act and the Exchange Act could avoid Court orders requiring the freezing or turnover of assets by simply moving them into a trust or other account held by their attorney.

Fabian VanCott fails to meet its burden of demonstrating the at-issue fund are untainted. Consequently, the Court DENIES the motion seeking attorney's fees (ECF No. 142) without prejudice. The Court further orders Mr. Anderson and his firm, Fabian VanCott, to fully comply with the temporary restraining order (ECF No. 3), the preliminary injunction (ECF No. 56), and the Receivership Order (ECF No. 88) issued by Judge Mahan.

As alternative relief, Fabian VanCott seeks leave to withdraw from representing Mr. Judd pursuant to Nevada Rule of Professional Conduct 1.16. Neither the SEC nor the Receiver take a position on this request. Having considered the information before the Court, Fabian VanCott's motion to withdraw is GRANTED.

B.   Oberheiden P.C.'s Motion for Attorney's Fees (ECF No. 164)

On July 13, 2022, attorney Nick Oberheiden filed a motion to retain earned fees and expenses. ECF No. 164. Mr. Oberheiden moves this Court for fees incurred by him and his first while representing Judd regarding potential criminal matters. *Id.* at 2. Like Fabian VanCott, Mr. Oberheiden's firm received funds from Defendant Judd before the TRO, the PI, and the Receivership Order were entered in this action. *See generally id.* Also like Fabian VanCott, the Oberheiden firm has turned over some, but not all, of the funds received from Judd to the Receiver. *Id.* Oberheiden directly argues that the funds earned and expenses paid by Oberheiden

P.C. prior to the issuance of TRO and PI do not represent property of Judd that the Receiver is obligated to marshal and preserve. *Id.* at 5, ¶8. The funds sum to $371,622.40: $360,000.00 in earned fees for legal services provided, plus an additional $11,622.40 of out-of-pocket expenses. *Id.* at 2, ¶2. The firm has also maintained additional funds for services provided in May and June 2022. *Id.* Mr. Oberheiden asserts that he and his law firm performed "due diligence to ensure that the funds it initially received from Mr. Judd were lawfully obtained," noting that due diligence included an investigation by several former federal agents, compliance with DOJ's Asset Forfeiture Manual, and Judd's own statements that the funds were lawful. *Id.* at 3-5.

      Both the SEC and the Receiver oppose Oberheiden's motion. *See generally* ECF Nos. 198 (SEC), 200 (Receiver). In sum, both opposing parties assert that Oberheiden has not provided sufficient information or a set forth a proper factual basis to show that the funds at issue are untainted. In its opposition, the Receiver also asks this Court to fully enforce the asset freeze and turnover provisions of the Receivership Order. *See generally* ECF No. 200.

      As a threshold matter, the Court notes that it would evaluate Oberheiden's motion differently than Fabian VanCott's because Oberheiden declares that its funds are intended for the purpose of Judd's criminal defense. As noted *supra*, p. 4, there is a difference in the legal standard with respect to attorney's fees between civil and criminal actions. But no party has advised or demonstrated that Judd is currently subject to any criminal proceedings. Thus, the only information before the Court is that Judd is subject to a series of civil actions. With that in mind, the Court evaluates the Oberheiden motion and finds that it suffers the same fatal flaw as the Fabian VanCott motion – it lacks sufficient evidence to warrant granting the relief sought therein.

. . .

While the Court accepts that Oberheiden is an officer of the Court, his representations alone are insufficient to allow this Court to properly evaluate whether the funds at issue are tainted. Oberheiden further cannot allege compliance with the Department of Justice's Asset Forfeiture manual and U.S. Attorney's manual without (1) placing those manuals before this Court; (2) description of the specific steps they took, (3) how those steps complied with the manuals, or (4) explanation as to why Mr. Oberheiden, who is neither a DOJ employee nor a U.S. Attorney, should rely upon those manuals. Last, in consideration of the length and depth of the alleged Ponzi scheme, the Court approaches representation from Judd with caution. Simply stated, the Court is not persuaded by Oberheiden's motion.

Consequently, Mr. Oberheiden has failed to meet his burden and the Court DENIES his motion for attorney's fees (ECF No. 164) without prejudice. The Court further orders Mr. Oberheiden and his firm to fully comply with the temporary restraining order (ECF No. 3), and the preliminary injunction (ECF No. 56), and the Receivership Order (ECF No. 88), issued by Judge Mahan .

### IV.     CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that Fabian VanCott's motion for attorney's fees, or alternatively for leave to withdraw (ECF No. 142) is DENIED in part and GRANTED in part.

IT IS FURTHER ORDERED that Fabian VanCott's motion for attorney's fees (ECF No. 142) is DENIED.

IT IS FURTHER ORDERED that Kevin Anderson, Esq., shall show cause why the submit *ex parte* submission in support of the Motion for Attorney's Fees should not be filed as an exhibit, subject to redaction in accordance with the local rules and attorney-work product privilege **no later than August 24, 2022.**

IT IS FURTHER ORDERED that Fabian VanCott's motion for leave to withdraw from representation of Defendant Jeffrey Judd (ECF No. 142) is GRANTED.

IT IS FURTHER ORDERED that Oberheiden, P.C.'s motion to retain earned fees and expenses (ECF No. 164) is DENIED.

IT IS SO ORDERED.

DATED this August 5, 2022.

_____
Cristina D. Silva
United States District Judge