UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Securities and Exchange Commission,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>Christopher Humphries, *et al.*,<br><br>　　　　　　Defendants,<br><br>CJ Investments, LLC, *et al.*,<br><br>　　　　　　Relief Defendants. | Case No. 2:22-cv-00612-CDS-EJY<br><br>**Order Denying Defendant's<br>Motion for Release of Funds**<br><br>[ECF No. 209] |

　　　The United States Securities and Exchange Commission (SEC) brought this action against defendants Matthew Beasley, Jeffrey Judd, Christopher Humphries, and others, alleging that they violated the Securities Act and the Exchange Act. *See generally* ECF Nos. 1, 118. Humphries and relief defendant CJ Investments, LLC move to release funds for attorney's fees. ECF No. 209. Both the SEC and Receiver Geoff Winkler oppose the motion. *See generally* SEC Response, ECF No. 254; Receiver Response, ECF No. 255. In opposing the motion, the Receiver also asks this court to fully enforce the asset-freeze-and-turnover order entered on June 3, 2022. ECF No. 255 at 5 (stating that the court should "deny Humphries' request and require the turnover of the Receivership Funds" held by Humphries' counsel). For the reasons set forth herein, I deny the defendants' motion (ECF No. 209) and grant the Receiver's request to enforce the asset-freeze-and-turnover order.

I.  Relevant background information

   a.  *The instant motion*

The SEC brought this action in April 2022. Prior to the initiation of this case, Humphries and CJ Investments retained the Christiansen Trial Lawyers (CTL) law firm and paid them a retainer of $150,000. ECF No. 209 at 8. CTL has retained $132,359.22[1] of that retainer in trust for attorney's fees earned through July 15, 2022, and turned over the remaining $17,640.78 to Receiver Geoff Winkler. *Id.* at 3–4. The defendants now request permission to retain the $132,359.22 from the already-paid retainer and for the release of an additional $250,000 from seized and frozen assets for attorney's fees. *See generally* ECF No. 209. The defendants also request that I conduct an adversary proceeding to require the SEC to make a prima facie case of fraud against Humphries. ECF No. 209 at 14.

   b.  *This court's prior orders and the court-appointed receivership*

On April 13, 2022, the court entered a temporary restraining order enjoining defendants from further sales of securities, establishing an asset-freeze-and-accounting order and related relief. ECF No. 3. Thereafter, on April 21, 2022, the court issued a preliminary injunction, asset freeze, and other equitable relief ("the injunction order") against Defendants Matthew W. Beasley; Beasley Law Group PC; Jeffrey J. Judd; **Christopher R. Humphries**; J&J Consulting Services, Inc., an Alaska corporation; J&J Consulting Services, Inc., a Nevada corporation; J and J Purchasing LLC; Shane M. Jager; Jason Jongeward; Denny Seybert; and Roland Tanner (the "initial defendants"). ECF No. 56 at 2 (emphasis added). The court issued the injunction order after finding that the initial defendants, directly or indirectly, engaged in the violations alleged in the complaint (ECF No. 1), that there was a reasonable likelihood that those violations would be repeated unless restrained and enjoined by the court, and that both the initial defendants and relief defendants (including CJ Investments,

---

[1] Counsel for Humphries represents that $130,000 is actually less than the amount of costs and fees incurred. ECF No. 209 at 10 n.4.

2

LLC), had the ability to dissipate, conceal, or transfer from the jurisdiction of this court assets that could be subject to an order of disgorgement or an order to pay a civil monetary penalty in this action. *Id.* at 2–3.

On June 3, 2022, the court granted the SEC's motion to appoint a receiver in this action ECF Nos. 67, 88. The receivership order set forth a plan for the preservation of assets. In order to accomplish that plan, the receivership order provides that **"[t]his [c]ourt hereby takes exclusive jurisdiction and possession of the personal assets, of whatever kind and wherever situated**, of the following [d]efendants: Matthew Wade Beasley; Jeffrey J. Judd; **Christopher R. Humphries**; Shane M. Jager; Jason M. Jongeward; Denny Seybert; and Roland Tanner (as set forth in the Order, collectively the 'Individual Receivership Defendants', and together with the J&J Receivership Defendants and the Beasley IOLTA, the 'Receivership Defendants')." ECF No. 88 at 3, ¶ 3 (emphasis added).

Further, the receivership order provides that "[t]he trustees, directors, officers, managers, employees, investment advisors, accountants, **attorneys,** and other agents of the J&J Receivership Defendants **shall have no authority with respect to the J&J Receivership Defendants' operations or assets**, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume control of the J&J Receivership Defendants' assets and any affiliated entities owned or controlled by the J&J Receivership Defendants and shall pursue and preserve all of their claims." *Id.* at 4, ¶ 6 (emphasis added). Finally, the receivership order provides states **"[a]ll persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver"** (the "Turnover Provision"). ECF No. 88 at 8, ¶ 15 (emphasis added).

## II. Legal framework

This court has discretion to forbid or limit payment of attorney's fees out of frozen assets. *See FSLIC v. Ferm*, 909 F.2d 372, 375 (9th Cir. 1990) (approving limitation on attorney's fees); *CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995); *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989) ("Courts regularly have frozen assets and denied attorney fees or limited the amount for attorney fees."). That discretion is derived from United States Supreme Court precedent establishing that a district court may restrain a defendant from using disputed funds to pay attorney's fees before a final judgment on the merits has been rendered. *United States v. Monsanto*, 491 U.S. 600, 615 (1989). These decisions are rooted in recognition of "the importance of preserving the integrity of disputed assets to ensure that such assets are not squandered by one party to the potential detriment of another." *FSLIC*, 909 F.2d at 374.

There is a distinction between the right to counsel in civil and criminal cases. In the criminal context, the Supreme Court has held that the Sixth Amendment grants a defendant "a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932). Denial of the qualified right to counsel of choice is reversible error. *United States v. Ray*, 731 F.2d 1361, 1365 (9th Cir. 1984). The "fair opportunity" for a defendant to secure counsel of choice has limits, however. *Luis v. United States*, 578 U.S. 5, 11 (2016). While pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment, the forfeiture or restraint of illicit proceeds or other assets utilized to facilitate criminal activity does not. *See id.* at 5; *Monsanto*, 491 U.S. at 600. "A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney even if those funds are the only way that the defendant will be able to retain the attorney of his choice." *Caplin & Drysdale*, 491 U.S. 617, 626 (1989). Thus, in criminal actions, when a defendant makes a sufficient threshold showing that seized assets are needed to pay for his counsel of choice, the Fifth and Sixth Amendments require the court to conduct a post-seizure,

4

adversary hearing. *See Monsanto*, 491 U.S. at 600; *see also United States v. Kaley*, 571 U.S. 320 (2014).

Civil cases are different from criminal ones; there is not right to counsel in a civil case. *See Turner v. Rogers*, 564 U.S. 431 (2011) (discussing that cases concerning the right to counsel in civil cases have found a presumption of such a right "only" in cases involving incarceration, but that the same right does not extend to all civil cases); *United States v. Sardone*, 94 F.3d 1233, 1236 (9th Cir. 1996) (collecting cases) ("[I]t is well-established that there is generally no constitutional right to counsel in civil cases."). Limiting a defendant's use of frozen funds for attorney's fees does not "arbitrarily interfere with a defendant's fair opportunity to retain counsel," nor does it offend the Fifth or Sixth Amendments. *FSLIC*, 909 F.2d at 375 (quoting *Monsanto*, 491 U.S. at 616).

Although a district court may completely bar the use of any frozen assets to pay a defendant's attorney's fees, the more common approach is to allow access to some portion of those assets to be used for specific needs of the defendant. *See, e.g., FTC v. Inc21.com Corp.*, 475 Fed. Appx. 106, 110 (9th Cir. 2012) (district court reasonably restricted access to frozen funds to pay attorney's fees when limiting access to "reasonable sums"); *FTC v. Osborne*, 69 F.3d 543 (9th Cir. 1995) (unpublished table decision) (district court properly set $15,000 ceiling for attorney's fees). Other circuits have adopted a similar approach. *See, e.g., FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1032 (7th Cir. 1988) (upholding district court's "cap" on payment of counsel from frozen assets).

In determining whether to unfreeze assets for the payment of attorney's fees in civil cases, a court must consider both the likelihood of success on the merits of the claims brought by the governmental agency bringing the enforcement action *and* balance the equities. *FTC v. Affordable Media*, 179 F.3d 1228, 1233 (9th Cir. 1999) (emphasis added) (quoting *FTC v. Warner Comm'ns, Inc.*, 742 F.2d 1156, 1159 (9th Cir. 1984)). In its determination, the court balances the public equities versus private Interests. "[P]ublic interests are generally entitled to stronger consideration than private interests." *FTC v. Merch. Servs. Direct, LLC*, 2013 WL 4094394, at *2 (E.D. Wash. Aug. 13, 2013)

(internal citation omitted); *see also World Wide Factors*, 882 F.2d at 347 ("[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight."). Public equities include, but are not limited to, the economic effects and pro-competitive advantages for consumers, as well as effective relief for the governmental agency. *World Wide Factors*, 882 F.2d at 347. In addition, when balancing the equities, courts should consider the availability of assets for consumer redress, the reasonableness of the fee request, whether defense counsel was aware of the possibility that fees might be denied or limited, and the defendant's access to alternative assets. *See Noble Metals*, 67 F.3d at 775; *World Wide Factors*, 882 F.2d at 348; *FTC v. Johnson*, 2015 WL 9243920, at *2 (D. Nev. Dec. 17, 2015).

### III. Discussion

The SEC and the Receiver in this action oppose the motion for attorney's fees for similar reasons. In sum, they both assert that there is no right to counsel in civil enforcement actions and further that this court should not release any funds for attorney's fees because the defendants have not provided sufficient information to show that the funds are not untainted. *See generally* ECF Nos. 254, 255. They conclude that allowing CTL to retain funds, returning funds to CTL, and the release of any additional funds to CTL are all unwarranted. *Id.* The SEC and Receiver argue that Humphries does not allege that the funds he seeks to retain or release are untainted, nor does he demonstrate that the funds have not been comingled with the funds tied to the Ponzi scheme alleged in this action. ECF Nos. 254 at 7 n.3; 255 at 11. Further, both oppositions argue that the defendants' request for another adversarial proceeding concerning demonstration of a prima facie case against Humphries is unwarranted considering Judge Mahan's and my findings. ECF No. 254 at 4–5; ECF No. 255 at 5–8. Finally, the SEC and Receiver also argue that Humphries' representation that he has sufficient funds to satisfy any disgorgement remedy, standing alone, is wholly insufficient without proof that "any such assets are untainted or that they have not been commingled." ECF Nos. 254 at 8–9; 255 at 15–16.

The Receiver further contends that CTL's refusal to provide him the funds from the pre-paid retainer fee directly violates the asset freeze imposed by the temporary restraining order and preliminary injunction (ECF No. 56) and receivership order (ECF No. 88). The Receiver also argues that the turnover order should be enforced, noting that that the defendants have failed to provide this court with any valid reason to modify the asset freeze to permit them to use the receivership funds for their own defense. ECF No. 255 at 11–13. The Receiver also urges that the request for additional funds for a potential criminal action is improper given that the right to counsel does not attach until a prosecution has commenced, which, to date, has not happened. *Id.* at 14 n.6.

I agree with the SEC and the Receiver and find that the defendants have failed to establish that the funds CTL seeks to retain as payment for attorney's fees are untainted. I find unpersuasive the defendants' arguments that the SEC has presented no evidence to establish that Humphries had any knowledge of the fraudulent Ponzi scheme. This argument focuses solely on direct evidence and does not account for circumstantial evidence.[2] Further, the defendants' request to conduct an adversarial proceeding to challenge the allegations against Humphries[3] and issuance of the preliminary injunction and asset freeze order is procedurally improper. Their request is essentially a motion for reconsideration, which has not been properly filed and is not pending before the court. If the defendants seek reconsideration of the previously issued court order, a motion should be filed setting forth the basis for reconsideration in accordance with Local Rule 59-1.

Further, as noted during the September 7, 2022, hearing in this case, I am willing to assess requests for the release of funds for attorney's fees, but the parties must follow the orders of the

---

[2] Juries are routinely instructed that "[e]vidence may be direct or circumstantial. . . . The law makes no distinction between the weight to be given to either direct or circumstantial evidence." 9th Cir. Model Civil Jury Instruction 1.12. *See also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003).

[3] I note that there is no information before me or evidence in the motion which demonstrates that the defendants were denied the opportunity to challenge the evidence against them during the preliminary-injunction hearing.

court and meet their burdens in establishing and/or identifying the source of any and all funds in question. Like the two other motions for attorney's fees that I have already addressed, *see* ECF No. 235, the information provided by the defendants lacks critical information for me to evaluate the fairness of disbursing funds and for me to ensure equitable distribution of receivership assets. Instead, the defendants argue that the assets have been frozen "regardless of [their] origin" without providing information about the origin or source of the assets. ECF No. 209 at 12. Any challenges to the origin of any frozen assets should be directed to the Receiver, and any unresolved challenges should be raised with the court. There is no exception included for funds transferred to Humphries' attorneys before the receivership order[4] was entered. Nor is there an exception to the defendants' obligation to demonstrate that the assets at issue are not tainted. Full compliance with the receivership order is required. Lack of compliance with the court's orders frustrates the purpose of equity receiverships, which are designed "to promote orderly and efficient administration of the estate by the district court for the benefit of creditors," *S.E.C. v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). If individuals alleged to have violated the Securities Act and the Exchange Act could avoid court orders requiring the freezing or turnover of assets by simply moving them into a trust or other account held by their attorney, then the court would not be able to recompensate victims of those securities or exchange violations.

       That said, an inability to demonstrate that the funds are not tainted does not equate to an automatic denial of any motion for attorney's fees. As CTL argues, "[d]iscretion must be exercised by the district court in light of the fact that wrongdoing is not yet proved when the application for attorney fees is made." *CFTC*, 67 F.3d at 775. But the court must have information regarding the funds sought to be used for attorney's fees in order to properly exercise its discretion. Lack of

---

[4] The receivership order directs "[a]ll persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver" (the "Turnover Provision"). ECF No. 88 at 8, ¶ 15.

compliance with the court's turnover orders also frustrates my ability to fully consider and apply the *World Wide* factors. Here, the SEC met its preliminary showing that the assets in question can be traced to fraud;[5] thus the burden of establishing whether the funds are tainted or untainted fall squarely on Humphries and CJ Investments. *See SEC v. Santillo*, 2018 WL 3392881, at *4 (S.D.N.Y. July 11, 2018) (stating that in a civil action, including enforcement actions brought by the SEC, a "defendant must establish that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established"); *SEC v. Private Equity Management Group, Inc.*, 2009 WL 2058247, at *2–3 (C.D. Cal. July 9, 2009) (noting that the SEC had made the necessary preliminary showing that funds were tainted and explaining "it is now up to [defendant] to demonstrate that the assets he possesses are untainted by the fraud"). The defendants have not met that burden here. So I deny the motion seeking attorney's fees (ECF No. 209) without prejudice. I further order CTL to fully comply with the temporary restraining order (ECF No. 3), the preliminary injunction (ECF No. 56), and the receivership order (ECF No. 88) issued by Judge Mahan.

## IV.  CONCLUSION

IT IS HEREBY ORDERED that Christopher Humphries and CJ Investments, LLC's motion for attorney's fees **[ECF No. 209] is DENIED** without prejudice.

_____
Cristina D. Silva
United States District Judge

DATED: September 27, 2022

---

[5] As previously noted by the court, the SEC has met its burden, which resulted in Judge Mahan's granting of the temporary restraining order and preliminary injunction. Out of an abundance of caution, I conducted an independent review of the evidence provided by the SEC and found that the SEC made the proper, requisite showings warranting issuances of the original TRO and PI.