Jarrod L. Rickard, Bar No. 10203
   jlr@skrlawyers.com
Katie L. Cannata, Bar No. 14848
   klc@skrlawyers.com
SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone:  (702) 835-6803
Facsimile:  (702) 920-8669

David R. Zaro (admitted *pro hac vice*)
   dzaro@allenmatkins.com
Joshua A. del Castillo (admitted *pro hac vice*)
   jdelcastillo@allenmatkins.com
Matthew D. Pham (admitted *pro hac vice*)
   mpham@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Telephone:  (213) 622-5555
Facsimile:  (213) 620-8816

Kara B. Hendricks, Bar No. 07743
   hendricksk@gtlaw.com
Jason K. Hicks, Bar No. 13149
   hicksja@gtlaw.com
Kyle A. Ewing, Bar No. 014051
   ewingk@gtlaw.com
GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada  89135
Telephone:  (702) 792-3773
Facsimile:  (702) 792-9002

*Attorneys for Receiver Geoff Winkler*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

          vs.

MATTHEW WADE BEASLEY, *et al.*,

                    Defendants,

THE JUDD IRREVOCABLE TRUST, *et al.*,

                    Relief Defendants.

Case No. 2:22-cv-00612-CDS-EJY

**STIPULATION AND ORDER APPROVING
AND AUTHORIZING RECEIVER'S SALE
AND CONVEYANCE OF AIRCRAFT TO
PURCHASER**

[ECF No. 322]

/ / /

/ / /

/ / /

**STIPULATION AND ORDER**

The following Stipulation and Order Approving and Authorizing Receiver's Sale and Conveyance of Aircraft to Purchaser (the "Stipulation and Order") is made by and between Geoff Winkler (the "Receiver"), the Court-appointed receiver in the above-entitled action, and the Plaintiff Securities and Exchange Commission (the "Commission"), by and through their respective representatives, and with respect to the following facts:

A.      The Receiver was appointed in the above-entitled action on June 3, 2022 pursuant to this Court's Order Appointing Receiver [ECF No. 88], which was amended on July 28, 2022 [ECF No. 207] (collectively, the "Appointment Order");

B.      Among other things, the Appointment Order vested the Receiver with exclusive authority and control over the assets of the entities placed into receivership, including BJ Holdings LLC, and charged the Receiver with marshaling and undertaking the disposition of assets for the benefit of the receivership estate;

C.      Among the assets of the receivership estate is the aircraft described as a Hawker Beechcraft Corp. model Hawker 900XP (described on the International Registry as HAWKER BEECHCRAFT CORPORATION model HAWKER 900XP) aircraft bearing manufacturer's serial number HA-0072 and United States Registrations Number N900XG, together with two (2) Honeywell model TFE731-50R (described on the International Registry as HONEYWELL MODEL TFE731 Series) aircraft engines bearing manufacturer's serial numbers 122248 and 122247 (collectively, the "Aircraft");

D.      On June 5, 2022, the Receiver filed his Motion for Order Authorizing and Approving General Procedures for Sale of Personal Property out of Receivership (the "Sale Procedures Motion") [ECF No. 137] which, among other things, requested authority from the Court to market and sell the Aircraft in accordance with the procedures described therein;

E.      The Court entered an order granting the Sale Procedures Motion on July 11, 2022 [ECF No. 146].  Thereafter, the Receiver solicited multiple rounds of bidding for the aircraft in the open market, ultimately determining, in his reasonable business judgment that the offer presented collectively by Kingston Aviation, LLC, an Idaho limited liability company, and Sansone Aviation,

1  LLC, a Nevada limited liability company (collectively, the "Buyer") represented the highest and

2  best offer to purchase the Aircraft;

3     F.  The Buyer's offer for the Aircraft is valued at, in the aggregate, more than

4  $5.1 million.  A true and correct copy of the Private Aircraft Purchase and Sale Agreement (the

5  "Aircraft PSA"), entered into between the Receiver and the Buyer with respect to the Aircraft, is

6  attached hereto as **Exhibit 1**.  The Receiver has determined, in his reasonable business judgment

7  and after considering those factors he deems relevant to the value of the Aircraft, that the Buyer's

8  offer is consistent with the market value of the Aircraft;

9     G.  The Buyer has indicated that, in order to close its purchase of the Aircraft, and to

10  ensure title can be properly conveyed, and the Aircraft appropriately registered with the United

11  States Federal Aviation Administration Aircraft Registry (the "FAA Registry") and the International

12  Registry, that an additional order specifically approving the Receiver's proposed sale of the Aircraft

13  pursuant to the Aircraft PSA, and authorizing the Receiver to convey title to the Aircraft to the

14  Buyer in a manner that would permit its registration with the FAA Registry and the International

15  Registry, will be required.  Specifically, the Buyer advises that an order will be required in

16  connection with the Bill of Sale (the "Bill of Sale") required under the Aircraft PSA to ensure that

17  it may be made of record with the FAA Registry and permit the sale to be registered with the

18  International Registry; and

19     H.  Accordingly, and to facilitate the prompt sale of the Aircraft to the Buyer in

20  accordance with the terms of the Aircraft PSA, the Receiver and the Commission have entered into

21  this Stipulation in order to secure the following relief:

22             **STIPULATION AND AGREEMENT**

23     The Receiver and the Commission stipulate and agree as follows:

24     1.  The Aircraft PSA, inclusive of the Bill of Sale, is approved, and the parties thereto

25  are authorized to perform their respective obligations thereunder;

26     2.  As evidenced by the Bill of Sale, the Aircraft shall be conveyed to the Buyer free and

27  clear of all liens, claims, encumbrances, and rights of others.  Conveyance of the Aircraft to the

28  Buyer shall be deemed effective as of the date of the Bill of Sale;

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

3.      Any and all other liens, claims, encumbrances, rights and interests existing as of the date of the conveyance of the Aircraft, with respect to the Aircraft, are extinguished, released and terminated, and shall attach, as permitted by law, exclusively to the proceeds from the sale of the Aircraft to the Buyer;

4.      All federal, state, and local governmental agencies or departments, including the FAA Registry and any other governmental unit where documents relating to title and security interests in aircraft and related property may be recorded, are hereby authorized and may accept for filing and recording this Stipulation and Order, along with any and all documents and instruments necessary and appropriate to consummate the sale of the Aircraft to the Buyer;

5.      Upon issuance of the Bill of Sale, the Buyer shall be entitled to immediate possession of the Aircraft.  Any individual or entity currently in possession of the Aircraft, or any part thereof, shall immediately transfer possession of such Aircraft, or any part thereof, to the Buyer or any agent, representative, or designee of the Buyer;

6.      The Receiver or the Buyer (each an "Authorized Party") is hereby authorized and empowered to file this Stipulation and Order with the FAA Registry and register a contract of sale with the International Registry (a "Contract of Sale").  Any and all filing and/or recording officers, including the filing or recording officer(s) of the FAA Registry and/or the International Registry, are authorized to accept, file and record this Stipulation and Order and the Contract of Sale, as applicable, and all other instruments evidencing the transfer of the Aircraft to the Buyer; and

7.      Any Authorized Party is hereby authorized and empowered to execute any agreements or documents, or take such other action, as may be reasonably necessary to (i) carry out the sale and transfer of the Aircraft to the Buyer free and clear of any liens; and (ii) terminate and discharge any and all liens, claims, encumbrances, rights and interests.  This includes, but is not limited to, executing any instructions, bills of sale, releases, terminations, disclaimers, letters of confirmation of entitlement to act, and International Registry service agreements, as an authorized signatory or attorney in fact for the Receiver, as seller, or any party otherwise asserting liens, claims, encumbrances, rights and interests on the Aircraft.  For the avoidance of doubt, any Authorized Party may execute instruments, documents, instructions or notices necessary to establish or renew

accounts on the International Registry, to change administrator's and/or backup contacts for any Transacting User Entity or Professional User Entity that is party to a registration on the International Registry relating to the Aircraft, to modify or amend any agreements with third parties acting as the administrator or professional user of the Aircraft, and to make or cause to be made any and all registrations necessary to carry out  this Stipulation and Order.  The FAA may accept an this Stipulation and Order as signature authority for an Authorized Party in compliance with the Federal Aviation Regulations.  The signature authority and power of attorney granted herein is irrevocable and shall terminate in five (5) years.  Notwithstanding any language to the contrary herein, the signature authority and power of attorney granted herein shall related exclusively to sale and transfer of the Aircraft to the Buyer.  The Buyer, as an Authorized Party, shall have no power of attorney or signature authority for the Receiver arising from or in connection with any assets of the receivership other than the Aircraft.

**SO STIPULATED.**

Dated:  October 3, 2022

SEMENZA KIRCHER RICKARD

*/s/ Jarrod L. Rickard*

Jarrod L. Rickard, Bar No. 10203
Katie L. Cannata, Bar No. 14848
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
David R. Zaro (admitted *pro hac vice*)
Joshua A. del Castillo (admitted *pro hac vice*)
Matthew D. Pham (admitted *pro hac vice*)
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543

*Attorneys for Receiver Geoff Winkler*

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4879-4530-3605 1

-5-

1  Dated:  October 3, 2022                          SECURITIES AND EXCHANGE
                                                    COMMISSION
2

3                                                   /s/Tracy S. Combs
                                                    Tracy S. Combs, CA Bar No. 298664
4                                                   Casey R. Fronk, IL Bar No. 6296535
                                                    351 South West Temple, Suite 6.100
5                                                   Salt Lake City, Utah 84101

6                                                   *Attorneys for Plaintiff Securities and Exchange
                                                    Commission*
7

8  **IT IS SO ORDERED.**

9

10
   Dated:   October 4, 2022
11                                                  _____
                                                    Hon. Cristina D. Silva
12                                                  Judge, United States District Court

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# EXHIBIT 1

DocuSign Envelope ID: 3E4C715C-00DC-4FBA-8E43-81EAE697C6CC

## PRIVATE AIRCRAFT PURCHASE AND SALE AGREEMENT

This PRIVATE AIRCRAFT PURCHASE AND SALE AGREEMENT (this "**Agreement**") is made as of September 28, 2022 (the "**Effective Date**"), by and between GEOFF WINKLER, solely in his capacity as the Court-appointed receiver (the "**Receiver**") in the United States District Court, District of Nevada (the "**Court**") action styled *SEC v. Beasley, et al.*, Case No. 2:22-cv-00612 (the "**Receivership Case**"), and Kingston Aviation, LLC, an Idaho limited liability company and Sansone Aviation, LLC, a Nevada limited liability company (collectively, the "**Buyer**"), on the terms and conditions hereinafter set forth. The Receiver and Buyer are occasionally referred to collectively herein as the "**Parties**" and individually as a "**Party**".

### ARTICLE 1

### PURCHASE AND SALE

1.1      In accordance with that certain Order Appointing Receiver (the "**Appointment Order**") entered by the Court on June 3, 2022 in the Receivership Action, a copy of which has been provided to Buyer, the Receiver has been appointed as the receiver for J&J Consulting Services, Inc., an Alaska corporation; J&J Consulting Services, Inc., a Nevada corporation; J and J Purchasing LLC; The Judd Irrevocable Trust; and BJ Holdings LLC, and over the Wells Fargo Interest on Lawyers' Trust Account ending in 5598 and held in the name of Beasley Law Group PC, along with the personal assets of Matthew Wade Beasley; Jeffrey J. Judd; Christopher R. Humphries; Shane M. Jager; Jason M. Jongeward; Denny Seybert; and Roland Tanner (collectively, the "**Receivership Defendants**").[1] Subject to Court Approval (as detailed and defined below), Buyer desires to purchase from the Receiver and the Receiver desires to sell to Buyer, subject to the terms of this Agreement, the Aircraft, as defined and described below. The term "**Seller**" as used in this Agreement shall mean the Receiver in connection with the Sale of the Aircraft to Buyer.

1.2.      For the purposes of this Agreement, the "**Aircraft**" shall mean and include in its present "AS-IS", "WHERE-IS" condition, all of Seller's right, title and interest in and to that certain aircraft defined as follows:

- "**Aircraft**" means, collectively, the Airframe, the Engines, Ancillary Items, the Parts, APU and the Aircraft Documents;

- "**Aircraft Documents**" means a current and valid United States Standard Airworthiness Certificate, and all logbooks, manuals, maintenance and inspection records, yellow tags, wiring diagrams, and other technical documentation pertaining to the Airframe and any Engine that is in Seller's possession;

---

[1]      Buyer acknowledges that the Appointment Order has been amended to add additional defendants over whose assets the Receiver enjoys authority and control, but whose assets do not include the Aircraft, as herein defined.

DocuSign Envelope ID: 3E4C715C-00DC-4FBA-8E43-81EAE697C6CC

- **"Airframe"** means that certain 2008 Hawker Beechcraft Corp Hawker 900XP aircraft, bearing manufacturer's serial number HA-0072, and Federal Aviation Administration registration number N900XG, together with any and all parts incorporated or installed in or attached thereto or otherwise in Seller's possession;

- **"Ancillary Items"** means all engine covers, loose equipment, and other equipment of whatever nature that is associated with the Airframe and the Engines;

- **"APU"** means the Honeywell GTCP 36-150(W) serial number P1090 auxiliary power unit, together with all parts currently incorporated or installed on, attached to, or furnished with, the APU, or which have been removed from the APU but belong thereto; and

- **"Engines"** means two (2) Honeywell model TFE731-50R series engines bearing manufacturer's serial numbers 122247 and 122248 (described on the International Registry as Honeywell model TFE731 Series bearing manufacturer's serial numbers P122247 and P122248) together with any and all parts incorporated or installed in or attached thereto or otherwise in Seller's possession.

## ARTICLE 2

## PURCHASE PRICE

2.1     **Purchase Price.** The purchase price for the aircraft shall be FIVE MILLION and NO/100 DOLLARS ($5,000,000.00) (the "**Purchase Price**").

2.2     **Payment of the Purchase Price.** Buyer shall pay the Purchase Price to Seller as follows:

(a)     Not later than five (5) business days after the Effective Date, Buyer shall deliver to Insured Aircraft Title Service, LLC, located at 21 E. Main St. Oklahoma City, Oklahoma, Attn: Kim Thompson ("**Escrow Agent**"), in cash, certified or bank cashier's check, or by a confirmed Federal Reserve wire transfer of funds, an amount equal to the Purchase Price (with $100,000 of the Purchase Price being the "**Earnest Money Deposit**").  Concurrently with the expiration of the Aircraft Inspection Period (as such term is defined, below, and as such date may be extended on the written agreement of the Parties), and subject to Section 3.3, below, the Earnest Money Deposit shall become nonrefundable to Buyer, but credited against the Purchase Price at Closing pursuant to Section 3.3, below, except in the event: (i) of Seller's default under this Agreement, as set forth in Section 10.1, below; (ii) the Court fails to approve the sale of the Aircraft to Buyer; or (iii) this Agreement otherwise expressly provides for the Earnest Money Deposit to be refunded to Buyer.

(b)     On or before the Closing Date, Buyer shall deliver to Escrow Agent by a confirmed Federal Reserve wire transfer of funds, an amount equal to the balance of the Purchase Price and any and all other amounts payable by Buyer pursuant to this Agreement. TIME IS OF THE ESSENCE as to this and all other dates and deadlines referenced in this Agreement.

DocuSign Envelope ID: 3E4C715C-00DC-4FBA-8E43-81EAE697C6CC

2.3    **Maintenance and Revenue.**  Notwithstanding anything to the contrary in this Agreement, at Closing (as defined below), the Seller shall be entitled to retain all maintenance and revenue reserves then existing and derived from or in connection with the Aircraft, provided, however, that, at closing, Seller shall give a credit to Buyer in the amount of $50,000.00 against the Purchase Price.

2.4    In addition to the credit described in Section 2.3, above, at Closing, Seller shall give a credit to Buyer, in an amount to be reported in an accounting provided by Seller to Buyer and Escrow Agent at least one (1) day prior to Closing, representing all Net Revenues generated and paid from the charter of the Aircraft for the period from August 26, 2022 through the Closing Date.  For the purpose of this Section 2.4, **"Net Revenues"** shall mean those revenues generated from the charter of the Aircraft, after the payment of management, storage, and operations costs, which operations costs include, but are not limited to the cost of fuel, payments to flight personnel, and other ordinary maintenance and expenses arising from or in connection with the operation of the Aircraft.

## ARTICLE 3

## PRE-PURCHASE INSPECTION; PRE-CLOSING

3.1    **Pre-Purchase Inspection.**  Buyer acknowledges that is has been offered an opportunity to perform a pre-purchase inspection (the **"Inspection"**) of the Aircraft to be completed within fifteen (15) days after the Effective Date (the **"Aircraft Inspection Period"**) at Harry Reid International Airport.  **Buyer acknowledges that it has waived its right to the Inspection.**  The Parties acknowledge there is deferred maintenance on the right-hand thrust reverser and that this maintenance will be completed by the Seller, at Seller's cost and expense, prior to Closing.  The Parties further acknowledge, and Buyer affirms, that, in addition to the aforementioned right-hand thrust reverser deferred maintenance, the Aircraft is coming due for maintenance on its landing gear actuators, for which certain parts are on back order.  Accordingly, Buyer acknowledges and affirms that Seller shall have no obligation to, nor shall incur any payment obligation in connection with, any landing gear actuator maintenance for the Aircraft, which maintenance shall occur, if at all, after Closing and at Buyer's sole and exclusive expense.



**Buyer's initials**

3.2    **Waiver of Inspection.**  If Buyer does not perform or have the Inspection referenced in sub-Paragraph 3.1, above, before the end of the Aircraft Inspection Period, then Buyer shall be deemed to have waived his/her/its right to such Inspection.  **Notwithstanding, the foregoing, Buyer acknowledges that it has waived its right to the Inspection.**



**Buyer's initials**

DocuSign Envelope ID: 3E4C715C-00DC-4FBA-8E43-81EAE697C6CC

3.3     Buyer shall have three (3) business days after the end of the Aircraft Inspection Period to notify Seller that he/she/they will not purchase the Aircraft, in writing.  Upon receipt of such notice, this Agreement shall be deemed terminated, and Seller shall instruct Escrow Agent to return to Buyer, within two (2) business days, all payments made by Buyer, including the Earnest Money Deposit.  In the event that Buyer fails to provide written notice to Seller of his/her/its election not to purchase the Aircraft within three (3) business days after the end of the Aircraft Inspection Period, but thereafter notifies seller of his/her/its election not to purchase the Aircraft, this Agreement shall be deemed terminated, but the Earnest Money Deposit shall be non-refundable to Buyer.  Notwithstanding anything to the contrary herein, if Buyer shall have waived his/her/its right to the Inspection, the Earnest Money Deposit shall be non-refundable to Buyer under any circumstances.

3.4     **FAA and International Registry Matters.**  Seller shall reasonably cooperate with Buyer to perfect title to the Aircraft on both the Federal Aviation Administration ("**FAA**") Civil Aviation Registry as well as the International Registry of Mobile Assets established pursuant to the Cape Town Treaty.  Buyer, at its sole cost and through its counsel, has retained McAfee Taft as FAA counsel for this matter and Seller shall reasonably cooperate with Buyer to facilitate Buyer's registration of the Aircraft in accordance with directions from FAA counsel. The order authorizing and confirming the sale of the Aircraft from Seller to Buyer ("**Order of Sale**") shall include any language recommended by FAA counsel to perfect title, and a certified copy of the order will be sent to Escrow Agent for filing on the Closing Date.

# ARTICLE 4
## COURT APPROVAL AND CLOSING

4.1     The Closing of the purchase and sale of the Aircraft shall be consummated in accordance with the provisions of this Article 4.

4.2     **Court Approval.**  The Closing of the purchase and sale of the Aircraft shall be conditioned upon an order of the Court approving the Receiver's request for authority to sell the Aircraft pursuant to this Agreement ("Court Approval"), as authorized by the entry of the Order of Sale.  Seller shall provide a certified copy of the Order of Sale to Escrow Agent for filing with the FAA on or before the Closing Date.

4.3     **Closing Date.**  The transaction memorialized by this Agreement shall close (the "**Closing**") no later than three (3) business days after the later of delivery of the Order of Sale to Escrow Agent or the delivery of the Aircraft at the Delivery Location (the "**Closing Date**").

4.4     **Aircraft Delivery.**  At the date and time of the Closing, determined in accordance with Section 4.3, above, the Parties shall perform the following actions, all of which shall collectively constitute the Closing:

4.4.1     Seller shall deliver the Aircraft to Buyer at a mutually acceptable airport in Arizona ("**Delivery Location**");

4.4.2     Buyer shall accept delivery of the Aircraft from Seller at the Delivery Location and Buyer's representatives shall execute the Delivery Receipt in the form of Exhibit A

DocuSign Envelope ID: 3E4C715C-00DC-4FBA-8E43-81EAE697C6CC

to this Agreement (except that the time of delivery shall remain blank until Escrow Agent advises of the time of recording of the FAA Bill of Sale in the FAA Civil Aviation Registry) and transmit, via electronic mail, the fully executed Delivery Receipt to Escrow Agent or, alternatively, pre-position the executed Delivery Receipt with Escrow Agent prior to Closing;

4.4.3   Buyer shall instruct Escrow Agent to register an international ownership interest in the Aircraft in favor of Buyer; and to release to Seller the Purchase Price; and

4.4.4   Seller shall instruct the Escrow Agent to date and file the FAA Bill of Sale in the FAA Civil Aviation Registry; to consent on behalf of Seller to Buyer's registration with the International Registry of an international interest in the Aircraft. Title and risk of loss or damage to the Aircraft shall pass to Buyer at the time of delivery.  The Aircraft will be delivered to Buyer in its present condition, normal wear and tear excepted.

## ARTICLE 5

## REPRESENTATIONS AND WARRANTIES OF BUYER

5.1   **Representations and Warranties of Buyer.**  Buyer represents and warrants as follows:

(a)   **Authority.**  The execution and delivery of this Agreement, and the consummation of the transaction contemplated hereby, have been duly authorized and approved by all requisite action of Buyer, and no other authorizations or approvals, whether governmental bodies or otherwise, will be necessary in order to enable Buyer to enter into or to comply with the terms of this Agreement.

(b)   **Binding Effect of Documents.**  This agreement and any other documents to be executed by Buyer hereunder, upon execution and delivery thereof by Buyer, will have been duly entered into by Buyer, and will constitute legal, valid and binding obligations of Buyer.  Neither this Agreement nor anything provided to be done under this Agreement violates or shall violate any contract, document, understanding, agreement, or instrument to which Buyer is a party or by which it is bound.

(c)   **No Pending or Threatened Litigation.**  No pending or threatened litigation exists which if determined adversely would restrain the consummation of the transaction contemplated by this Agreement or would declare illegal, invalid or non-binding any of Buyer's obligations or covenants to Seller.

(d)   **Survival of Buyer's Representations and Warranties.**  All warranties and representations of Buyer set forth in this Agreement shall survive for a period of six (6) months following the Closing Date.

## ARTICLE 6

## INTENTIONALLY OMITTED

DocuSign Envelope ID: 3E4C715C-00DC-4FBA-8E43-81EAE697C6CC

## ARTICLE 7
## "AS IS" SALE

7.1    **Independent Investigation.**  Buyer shall have independently investigated, analyzed and appraised the value and condition of the Aircraft without relying on any representations of any kind (whether oral or written, express or implied) made by Seller to Buyer.  Buyer is purchasing the Aircraft in its "AS IS, WHERE IS" condition as of the Effective Date, solely in reliance upon Buyer's own Inspection and evaluation thereof and without any representation or warranty by Seller as to the condition of the Aircraft.

7.2    **AS-IS Purchase; No Side Agreements or Representations.**  Buyer acknowledges and agrees that Buyer has independently and personally inspected, or will independently and personally inspect the Aircraft and, if Buyer does not timely exercise its termination rights as provided for herein, Buyer shall be deemed to have elected to go forward with the purchase of the Aircraft on the basis of such personal examinations and inspections as Buyer has deemed appropriate to make.  Buyer agrees that AS A MATERIAL INDUCEMENT TO THE EXECUTION AND DELIVERY OF THIS AGREEMENT BY SELLER, BUYER IS PURCHASING THE AIRCRAFT IN AN "AS IS" AND "WHERE IS" PHYSICAL CONDITION AND IN AN" AS IS" STATE OF REPAIR, WITH ALL FAULTS.  No person acting on behalf of Seller is authorized to make, and by execution hereof Buyer acknowledges and agrees that, except as specifically provided in this Agreement, Seller has not made, does not make, and  specifically negates and disclaims any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of and to, concerning or with respect to the value and condition of the Aircraft, including, but not limited to its airworthiness, state of repair, or safe operation.

7.3    **Management of Aircraft.**  The Parties acknowledge that Aircraft is managed and currently on the Part 135 certificate with Great Western Air, LLC dba Cirrus Aviation.  Seller shall be responsible to settle its account with Great Western Air, LLC and, if there any funds owed to Great Western Air, LLC for the period of time prior to the Closing Date, then those amounts shall not become the responsibility of Buyer.  Similarly, deposits, operating funds, or funds on account with Great Western Air, LLC paid by Seller shall remain the property of Seller.  This provision shall survive Closing.

7.4    **NO LIABILITY TO RECEIVER.**  WITHOUT LIMITATION OF THE FOREGOING, AS AN ESSENTIAL INDUCEMENT TO RECEIVER TO ENTER INTO THIS AGREEMENT, AND AS PART OF THE DETERMINATION OF THE CONSIDERATION GIVEN HEREUNDER, BUYER ACKNOWLEDGES, UNDERSTANDS AND AGREES AS FOLLOWS:

(a)    BUYER ACKNOWLEDGES AND AGREES THAT RECEIVER IS ENTERING INTO THIS AGREEMENT SOLELY IN CONNECTION WITH HIS OR HER DUTIES AS RECEIVER PURSUANT TO THE APPOINTMENT ORDER.  IN NO EVENT SHALL RECEIVER BE LIABLE FOR ANY ERROR OF JUDGMENT OR ACT DONE BY RECEIVER, OR BE OTHERWISE RESPONSIBLE OR ACCOUNTABLE UNDER ANY CIRCUMSTANCE WHATSOEVER, EXCEPT IF THE RESULT OF RECEIVER'S GROSS

DocuSign Envelope ID: 3E4C715C-00DC-4FBA-8E43-81EAE697C6CC

NEGLIGENCE OR INTENTIONAL MISCONDUCT.  RECEIVER SHALL NOT BE PERSONALLY LIABLE IN CONNECTION WITH ANY DUTIES PERFORMED BY RECEIVER PURSUANT TO THE APPOINTMENT ORDER OR ANY ORDER APPROVING AND AUTHORIZING THE PERFORMANCE OF THIS AGREEMENT.

(b)    NO PROVISION OF THIS AGREEMENT SHALL OPERATE TO PLACE ANY OBLIGATION OR LIABILITY FOR THE CONTROL, CARE, MANAGEMENT OR REPAIR OF THE AIRCRAFT UPON RECEIVER NOR SHALL IT OPERATE TO MAKE RECEIVER RESPONSIBLE OR LIABLE FOR ANY DANGEROUS OR DEFECTIVE CONDITION OF THE AIRCRAFT OR FOR ANY NEGLIGENCE IN MANAGEMENT, UPKEEP, REPAIR OR CONTROL OF THE AIRCRAFT RESULTING IN LOSS OR INJURY OR DEATH TO ANY PERSON.

(c)    The provisions of this Article 7 shall survive the Closing indefinitely or until the maximum extent allowed under applicable laws.

## ARTICLE 8

## RELEASE AND INDEMNITY

8.1    **Release.**  To the maximum extent permitted by law, Buyer, on behalf of itself and its past, present and future agents, representatives, partners, shareholders, principals, attorneys, affiliates, parent corporations, subsidiaries, officers, directors, employees, predecessors, successors, heirs and executors and assigns (collectively, **"Buyer's Parties"**), hereby releases and forever discharges Seller, and Seller's past, present and future agents (including Receiver), representatives, partners, attorneys', shareholders, principals, affiliates, parent corporations, subsidiaries, officers, directors, employees, predecessors, successors, heirs, executors and assigns (collectively, **"Indemnitees"**), from and against all claims, rights, remedies, recourse or other basis for recovery, legal or administrative proceedings, losses, liabilities, damages, penalties, fines, liens, judgments, costs or expenses whatsoever (including, without limitation, attorneys' fees and costs) (**"Claims"**), whether direct or indirect, known or unknown, foreseen, whether before or after the Closing Date, including without limitation any loss, damage, injury, illness, death or other claim attributable to:  (a)the use of the Aircraft or any part thereof; (b) a defect in the design or construction of the Aircraft or the physical condition of the Aircraft; (c) any act, omission or representation of Buyer or any of Buyer's Parties; (d) a violation or alleged violation by any Indemnitee, Buyer, or Buyer's Parties of any law now or hereinafter enacted; (e) the design, construction, engineering or other work with respect to the Aircraft provided or performed by or caused by or attributable to any Indemnitee, Buyer or Buyer's Parties, whether before or after the Closing Date; (f) any other cause whatsoever in connection with Buyer's use of the Aircraft or Buyer's performance under the Agreement or any of the instruments executed and delivered at Closing in connection herewith; (g) any breach by Buyer in the performance of its obligations under this Agreement or the other instruments executed and delivered at Closing in connection herewith; or (h) the application of the principles of strict liability in connection with the Aircraft (collectively, **"Released Claims"**).  Notwithstanding the foregoing, the Buyer shall not be required to or be deemed to have waived any Claims against any particular Indemnitee from an event which arises from a pre-existing relationship or claim between the Buyer and such Indemnitee.

DocuSign Envelope ID: 3E4C715C-00DC-4FBA-8E43-81EAE697C6CC



**Buyer's initials**

8.2     **Survival.**  The provisions of this Article 8 shall survive the Closing indefinitely or until the maximum extent allowed under applicable laws.

## ARTICLE 9

### DISPUTE RESOLUTION

9.1     **Court Trial.**  Each party to this Agreement hereby expressly waives any right to trial by jury with respect to any claim, demand, action or cause of action (a) arising under this Agreement, including, without limitation, any present or future modification thereof, or (b) in any way connected with or related or incidental to the dealings of the Parties hereto or any of them with respect to this Agreement (as now or hereafter modified) or any other instrument, document or agreement executed or delivered in connection herewith, or the transactions related hereto or thereto, in each case whether such claim, demand, action or cause of action is now existing or hereafter arising, and whether sounding in contract or tort or otherwise; and each party hereby agrees and consents that any such claim, demand or cause of action shall be decided by court trial without a jury, and that any party to this Agreement may file an original counterpart or a copy of this section with any court as written evidence of the consent of the parties hereto to the waiver of any right they might otherwise have to trial by jury.  The Parties shall be entitled to recover only their actual damages, and no party shall be entitled to recover any consequential damages, punitive damages, or any other damages that are not actual damages.

9.2     **Venue.**  Any action shall be commenced and maintained in the Court.  The Parties irrevocably consent to jurisdiction and venue in such Court and agree not to seek transfer or removal of any action commenced in accordance with the terms of this Article 9.

## ARTICLE 10

### DEFAULT BY BUYER

10.1     **DEFAULT BY BUYER.**  UPON DEFAULT BY BUYER WHICH IS NOT CURED AFTER SEVEN (7) DAYS FOLLOWING TRANSMITTAL OF A WRITTEN NOTICE OF DEFAULT TO BUYER, SELLER SHALL BE ENTITLED TO TERMINATE THIS AGREEMENT UPON WRITTEN NOTICE TO BUYER.  IN SUCH EVENT, THE EARNEST MONEY DEPOSIT TO SHALL BE NON-REFUNDABLE TO BUYER, AND SELLER SHALL BE ENTITLED TO RECEIVE AND RETAIN THE EARNEST MONEY DEPOSIT AS LIQUIDATED DAMAGES AND, EXCEPT FOR BUYER'S INDEMNITY AND OTHER SPECIFIC OBLIGATIONS REFERRED TO HEREIN WHICH MAY BE ENFORCED BY SELLER, NEITHER PARTY SHALL HAVE ANY FURTHER RIGHTS OR OBLIGATIONS HEREUNDER.  IN THE EVENT THE CLOSING DOES NOT OCCUR BECAUSE OF BUYER'S DEFAULT, BUYER AND SELLER AGREE THAT IT WOULD BE IMPRACTICABLE AND EXTREMELY DIFFICULT TO ESTIMATE THE DAMAGES SUFFERED BY SELLER AS A RESULT OF BUYER'S FAILURE TO COMPLETE THE PURCHASE OF THE AIRCRAFT PURSUANT TO THIS AGREEMENT, AND THAT UNDER THE CIRCUMSTANCES EXISTING AS OF THE EFFECTIVE DATE, THE

DocuSign Envelope ID: 3E4C715C-00DC-4FBA-8E43-81EAE697C6CC

LIQUIDATED DAMAGES PROVIDED FOR IN THIS SECTION REPRESENT A REASONABLE ESTIMATE OF THE DAMAGES WHICH SELLER WILL INCUR AS A RESULT OF SUCH DEFAULT; PROVIDED, HOWEVER, THAT THIS PROVISION SHALL NOT:  (A) LIMIT SELLER'S RIGHT TO RECEIVE REIMBURSEMENT FOR ATTORNEYS' FEES; (B) WAIVE OR AFFECT BUYER'S INDEMNITY OBLIGATIONS AND SELLER'S RIGHTS TO SUCH INDEMNITY; OR (C) WAIVE OR AFFECT BUYER'S OBLIGATIONS TO RETURN OR PROVIDE TO SELLER DOCUMENTS, REPORTS OR OTHER INFORMATION PROVIDED TO OR PREPARED BY OR FOR BUYER PURSUANT TO APPLICABLE PROVISIONS OF THIS AGREEMENT.  THEREFORE, BUYER AND SELLER DO HEREBY AGREE THAT AS OF THE EFFECTIVE DATE, A REASONABLE ESTIMATE OF THE TOTAL NET DETRIMENT THAT SELLER WOULD SUFFER IN THE EVENT THAT BUYER DEFAULTS AND FAILS TO COMPLETE THE PURCHASE OF THE AIRCRAFT IS AN AMOUNT EQUAL TO THE EARNEST MONEY DEPOSIT (WHICH INCLUDES ANY ACCRUED INTEREST THEREON).  SAID AMOUNT SHALL BE THE FULL, AGREED AND LIQUIDATED DAMAGES FOR THE BREACH OF THIS AGREEMENT BY BUYER.



Buyer's initials

Seller's initials

## ARTICLE 11

## MISCELLANEOUS PROVISIONS

11.1     **Notices.**  All notices, demands, requests and other communications required or permitted hereunder shall be in writing, and shall be (a) personally delivered with a written receipt of delivery; (b) sent by a nationally-recognized overnight delivery service requiring a written acknowledgement of receipt or providing a certification of delivery or attempted delivery; (c) sent by certified or registered mail, return receipt requested; (d) sent by confirmed facsimile transmission with an original copy thereof transmitted to the recipient by one of the means described in subsections (a) through (c) no later than three (3) business days thereafter; or (e) transmitted by electronic mail, provided that a transmission error or similar message reflecting a failure of delivery is not received by the sender.  All notices shall be deemed effective when actually delivered as documented in a delivery receipt; provided, however, that if the notice was sent by overnight courier or mail as aforesaid and is affirmatively refused or cannot be delivered during customary business hours by reason of the absence of a signatory to acknowledge receipt, or by reason of a change of address with respect to which the addressor did not have either knowledge or written notice delivered in accordance with this paragraph, then the first attempted delivery shall be deemed to constitute delivery.  Each party shall be entitled to change its address for notices from time to time by delivering to the other party notice thereof in

DocuSign Envelope ID: 3E4C715C-00DD-4FBA-8E43-81EAE697C6CC

the manner herein provided for the delivery of notices.  All notices shall be sent to the addressee at its address set forth following its name below:

**To Seller/Receiver:**
Geoff Winkler, Receiver
715 NW Hoyt Street #4346
Portland, Oregon 97208
E-mail:  geoff@americanfiduciaryservices.com
Telephone:  (855) 880-0100

With a copy to:

Allen Matkins Leck Gamble Mallory & Natsis LLP
ATTN:  J. del Castillo
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017
Email: jdelcastillo@allenmatkins.com
Facsimile:  (213) 620-8816


**To Buyer:**
Kingston Aviation, Inc.
477 Shoup Avenue, Suite 207
Idaho Falls, ID 83402
Attn: David Kingston
Email: dkingston@kingstoncorp.com

Sansone Aviation, Inc.
2580 St. Rose Pkwy., Suite 125
Henderson, NV 89074
Attn: Roland Sansone
Email: roland@sansonecompanies.com; johnd@sansonecompanies.com

With copies of Notice (which shall not constitute notice) to
amanda@soaraviationlaw.com

11.2    **Assignment.**  Buyer shall not assign this Agreement without obtaining Seller's prior written consent, which counsel may be withheld by Seller in Seller's sole and absolute discretion, for any reason whatsoever.

11.3    **Bankruptcy.**  Buyer agrees that in the event that:  (a) all or substantially all of Buyer's assets are placed in the hands of a receiver or trustee, and such receivership or trusteeship continues for a period of thirty (30) days; (b) Buyer makes an assignment for the benefit of creditors; (c) Buyer is adjudicated a bankruptcy; (d) Buyer institutes any proceeding under any law relating to bankruptcy wherein Buyer seeks to be adjudicated a bankrupt, or to be discharged of its debts, or to effect a plan of liquidation, composition or reorganization; (e) an involuntary proceeding is filed against Buyer under any bankruptcy laws and Buyer consents

DocuSign Envelope ID: 3E4C715C-00DC-4FBA-8E43-81EAE697C6CC

thereto or acquiesces therein by pleading or default or such involuntary proceeding is not dismissed within ninety (90) days; or (f) substantially all of Buyer's assets are attached or seized by judicial order where such seizure is not discharged within thirty (30) days then: (i) Buyer shall be deemed to be in default hereunder, (ii) this Agreement, including without limitation the rights granted herein, shall not become an asset in any of such proceedings; (iii) in addition to all other available remedies it shall be lawful for Seller to declare this Agreement terminated; and (iv) Buyer shall have no further claim on the Aircraft hereunder or otherwise, and no right to return of its Earnest Money Deposit or any other payments or expenses incurred pursuant to this Agreement.

11.4   **Modification.**  This Agreement may not be modified or amended except by a written agreement executed by Seller and Buyer, and only to the extent set forth therein.

11.5   **Attorneys' Fees.**  In the event any legal or equitable action is commenced in connection with the Agreement or the Aircraft, whether in contract or tort, the prevailing party (as determined by the Court) shall be entitled to recover from the losing party all reasonable costs and expenses incurred, including but not limited to reasonable attorneys' fees, in addition to all other relief and remedies to which the prevailing party may be entitles.

11.6   **Successors and Assigns.**  Subject to the limitations on Buyer's rights to assign, this Agreement shall be binding upon, and shall inure to the befit of, the successors and assigns of the Parties.

11.7   **Duplicate Counterparts.**  This Agreement may be executed in duplicate counterparts, all of which together shall constitute a single instrument, and each of which shall be deemed an original of this Agreement for all purposes, notwithstanding that less than all signatures appear on any one counterpart.

11.8   **Section Headings.**  The various section headings in this Agreement are inserted for convenience of reference only, and shall not affect the meaning or interpretation of this Agreement or any provision thereof.

11.9   **Survival of Covenants, Conditions, Terms and Obligations.**  Except as otherwise expressly provided herein, all agreements, conditions, acknowledgments, representations, and other obligations set forth in this Agreement shall merge with the Bill of Sale and shall not survive the Closing.

11.10  **Entire Agreement.**  This Agreement is the entire agreement of Seller and Buyer with respect to the Aircraft, containing all of the terms and conditions to which Seller and Buyer have agreed.  This Agreement supersedes and replaces entirely all previous oral and written understandings, offers, counter-offers, acceptances, if any, of Seller and Buyer respecting the Aircraft.

11.11  **Time.**  Time is of the essence in this Agreement and each and every provision of this Agreement.

DocuSign Envelope ID: 3E4C715C-00DC-4FBA-8E43-81EAE697C6CC

11.12 **Governing Law and Forum.** This Agreement shall be governed, construed and enforced in accordance with the laws of the State of Nevada. The exclusive forum for resolving disputes arising from or relating to this Agreement shall be the Court in the Receivership Case.

11.13 **Severability.** If any term, provision, covenant or condition of this Agreement is found by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of this Agreement shall continue in full force and effect and shall in no way be affected, impaired, or invalidated.

11.14 **Joint Venture.** It is not intended by this Agreement to, and nothing contained in this Agreement shall, create any partnership, joint venture, or other agreement between Buyer and Seller. No term or provision of this Agreement is intended to be, or shall be, for the benefit of any person, firm, organization or corporation not a party hereto, and no such other person, firm, organization or corporation shall have any right or cause of action hereunder.

11.15 **Taxes.** Buyer shall pay any sales or use tax imposed by state or local government(s) which result(s) from the sale of the Aircraft.

IN WITNESS WHEREOF, this Private Aircraft and Sale Agreement is executed and delivered by the Parties as of the Effective Date.

**SELLER:**
GEOFF WINKLER, solely in his capacity as the Court-appointed receiver (the "**Receiver**") in the United States District Court, District of Nevada (the "**Court**") action styled *SEC v. Beasley, et al.*, Case No. 2:22-cv-00612BJ Holdings LLC

By: _____
Print: Geoff Winkler
Title: Receiver

**BUYER:**
Kingston Aviation, LLC

By: _____
DocuSigned by: *David Kingston*
830DE2C9448D416
Print: David Kingston
Title: Member

Sansone Aviation, LLC

By: _____
DocuSigned by: *Neil Sansone*
B5C49DB77FB2441
Print: Neil Sansone
Title: Manager

### Agreement of Escrow Agent

Buyer and Seller hereby appoint Escrow Agent as document holder and stakeholder for the sale and purchase of the Aircraft, and Escrow Agent accepts such appointment for and in consideration of the Escrow Fee. The Parties acknowledge that Escrow Agent is acting as a document holder and stakeholder only, its duties being purely ministerial, at their request and for their convenience, that Escrow Agent shall not be deemed to be the agent or trustee for either of the Parties, and that Escrow Agent shall not be liable to either of the Parties for any act or omission unless it involves willful misconduct or negligence on its part.

DocuSign Envelope ID: 3E4C715C-00DC-4FBA-8E43-81EAE697C6CC

The United States District Court for the District of Nevada shall have exclusive jurisdiction to hear all disputes against the Escrow Agent arising from or in connection with the Agreement, and no other courts shall have any jurisdiction whatsoever in respect of such disputes against the Escrow Agent.  Should a dispute arise between Buyer and Seller relating to the Agreement or any funds or other items which are in the possession of Escrow Agent, then Escrow Agent shall be entitled to interplead any funds or other items in its possession with the United States District Court for the District of Nevada.  The foregoing shall not affect the governing law and jurisdiction provisions contained in Section 11.2 of the Agreement to the extent that any dispute is between only Buyer and Seller and does not involve the Escrow Agent in any manner.

The undersigned does hereby consent to and join in the foregoing Agreement hereby agreeing to act as Escrow Agent in accordance with the provisions of the Agreement applicable to Escrow Agent.

The Escrow Fee shall be paid by Purchaser.

**Escrow Agent:**

**INSURED AIRCRAFT TITLE SERVICE, LLC**

By:_____

Printed Name:  Kim Thompson

Title: Escrow Agent

DocuSign Envelope ID: 3E4C715C-00DC-4FBA-8E43-81EAE697C6CC

# EXHIBIT A

## AIRCRAFT DELIVERY RECEIPT

Pursuant to that certain Aircraft Purchase Agreement (the "Agreement") dated as of the ____ day of September, 2022, by and between Geoff Winkler, solely in his capacity as the Court-appointed receiver (the "Receiver") in the United States District Court, District of Nevada (the "Court") action styled *SEC v. Beasley, et al.*, Case No. 2:22-cv-00612, and by virtue of his position as the Receiver for BJ Holdings LLC ("Seller"), and Kingston Aviation, LLC, an Idaho limited liability company, and Sansone Aviation, LLC, a Nevada limited liability company (collectively, "Buyer"), pertaining to that certain 2008 Hawker Beechcraft Corp Hawker 900XP aircraft, bearing manufacturer's serial number HA-0072, and Federal Aviation Administration registration number N900XG (the "Aircraft"), Buyer hereby acknowledges acceptance of the Aircraft from Seller, at _____ o'clock (am / pm) on the ____ day of _____, 2022, at _____ Airport, in the State of Arizona.  The times on the Aircraft at the time of delivery are as follows:

TOTAL TIME AIRFRAME AT DELIVERY: _____ hours
TOTAL LANDINGS AT DELIVERY: _____ landings
TOTAL TIME ENGINES AT DELIVERY:
        Left Engine: _____ hours
        Right Engine: _____ hours
TOTAL ENGINE CYCLES AT DELIVERY:
        Left Engine: _____ cycles
        Right Engine: _____ cycles


PURCHASER:
Kingston Aviation, LLC



By: _____
    Print:  David Kingston
    Title:  Member



Sansone Aviation, LLC



By: _____
    Print:  Neil Sansone

    Title:  Manager