UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:22-cv-00612-CDS-EJY |
| Plaintiff, | **ORDER** |
| v. | |
| MATTHEW WADE BEASLEY, et al., | |
| Defendants. | |

Pending before the Court is Receiver's Motion to Compel or Alternative Motion for Order to Show Cause Why Kamille Dean ("Ms. Dean") Should Not Be Held in Contempt for Failure to Comply with this Court's Order (the "Motion to Compel"). ECF No. 210. Response to the Motion were due on August 15, 2022.[1] On August 15, 2022, Ms. Dean—a Non-Party—filed three motions in opposition to the Motion to Compel. These include the: (1) Motion to Quash Jurisdiction Over Kamille Dean and Receiver's Motion for Order to Show Cause (the "Motion to Quash") (ECF No. 257); (2) Motion to Strike Receiver's Motion for Order to Show Cause (the "Motion to Strike") (ECF No. 258); and (3) Motion for Leave of Court to File Interpleader Action Under 28 U.S.C Section 959(a) (the "Motion for Interpleader") (ECF No. 259). Ms. Dean separately filed an Objection to the Affidavits of Kara Hendricks and David Zaro submitted by Receiver in support of the Motion to Compel (the "Affidavit Objections").[2] ECF No. 260. Receiver filed an Omnibus Response to Ms. Dean's three Motions and Affidavit Objections. ECF No. 275.[3] The Securities and Exchange Commission (the "SEC") filed a response to Ms. Dean's Motion for Interpleader in which it adopted Receiver's arguments in opposition to all three of Ms. Dean's Motions. ECF No.

---

[1]    Receiver asserts in a Notice of Non-Opposition to the Motion to Compel that under Local Rule 7-2(d), Ms. Dean's failure to adequately respond to the Motion necessarily indicates her consent to the Motion. ECF No. 277 at 2. Local Rule 7-2(d) states in pertinent part that "[t]he failure of an opposing party to file points and authorities in response to any motion … constitutes a consent to the granting of the motion." Ms. Dean, however, has filed three motions (ECF Nos. 257, 258, and 259) directly challenging the relief sought by Receiver. The Court finds Ms. Dean's Motions sufficient response to satisfy Local Rule 7-2(d).

[2]    ECF Nos. 210-2, 210-3.

[3]    A second Omnibus Response was filed as ECF No. 276. Upon review, the second Omnibus Response is identical to the Omnibus Response filed as ECF No. 275.

278.  Ms. Dean filed three replies to Receiver's Omnibus Response, one each in support of her three Motions described above.  ECF Nos. 295, 296, 297.

## I.     RELEVANT BACKGROUND

The instant litigation commenced on April 12, 2022.  ECF No. 1.  The SEC filed suit against multiple Defendants alleging that from at least March 2017 through March 2022 they engaged in a convoluted series of securities offerings underpinning a large Ponzi scheme ensnaring over 600 investors.[4]  *Id.* ¶ 1-3.  The SEC seeks injunctive relief against Defendants under the Securities Acts of 1933 and 1934, as well as equitable disgorgement against all Relief Defendants.[5]  *Id.* ¶¶ 81-90. The case has been quite active since it commenced; however, most of that activity is not addressed here as it is not pertinent to the instant Motions.

Simultaneously with the Complaint, the SEC moved for and was granted a Temporary Restraining Order ("TRO") freezing any and all real and personal property related to the counts alleged against Defendants and Relief Defendants.  ECF No. 3 at 7-14.  Subsequently, the Court granted the SEC's request for a Preliminary Injunction that affirmed the provisions in the TRO related to the asset freeze.  ECF No. 56 at 6.

On June 3, 2022, the Court appointed Geoff Winkler to serve as Receiver "for the purposes of marshaling and preserving all assets of the Defendants and those assets of certain Relief Defendants that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; (c) were fraudulently transferred by the Defendants; and/or (d) may otherwise be includable as assets of the estates of the Defendants …."  ECF No. 88 at 2.[6]  Among other provisions, the Receivership Order mandates the following: (1) "All persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver"; (2) "The Receiver is authorized to take immediate

---

[4]     Defendants are as follows: Matthew Wade Beasley; Beasley Law Group PC; Jeffrey J. Judd; Christopher R. Humphries; J&J Consulting Services, Inc., an Alaska Corporation; J&J Consulting Services, Inc., a Nevada Corporation; J and J Purchasing LLC; Shane M. Jager; Jason M. Jongeward; Denny Seybert; and Roland Tanner.
[5]     15 U.S.C. § 77a et seq.; 15 U.S.C. § 78a et seq.
    Relief Defendants are as follows: The Judd Irrevocable Trust; PAJ Consulting Inc.; BJ Holdings LLC; Stirling Consulting, L.L.C.; CJ Investments, LLC; JL2 Investments, LLC; Rocking Horse Properties, LLC; Triple Threat Basketball, LLC; ACAC LLC; Anthony Michael Alberto, Jr.; and Monty Crew LLC.
[6]     The original order appointing Winkler as Receiver is referred to herein as the "Receivership Order."

1    control of all personal property of the Receivership Defendants ….”; and (3) “[P]ersons or entities

2    which have possession, custody or control of any assets or funds held by, in the name of, or for the

3    benefit of, directly or indirectly, and of the Receivership Defendants … shall … [c]ooperate

4    expeditiously in providing information and transferring funds, assets and accounts to the Receiver

5    or at the direction of the Receiver.”  *Id.* at 8-9.  The Receivership Order was amended on July 28,

6    2022 (the “Amended Receivership Order”).  ECF No. 207.

7    **II.    SUMMARY OF PARTY ARUGMENTS**

8          A.    Receiver's Motion to Compel.

9          Receiver states that Ms. Dean is in possession of $201,060 in Receivership Property and that

10   the Court should grant Receiver's Motion forcing her to turn over this property.[7]  ECF No. 210 at 3.

11   In the alternative, Receiver asks the Court to issue an Order to Show Cause why Ms. Dean should

12   not be held in contempt of the Receivership Order based on her refusal to turn over Receivership

13   Property.  *Id.*

14         Receiver contends Ms. Dean received $250,000 from Jeffrey J. Judd (“Judd”)—a Defendant

15   in the litigation—as a retainer for her legal services.  *Id.*  Shortly after the Receivership Order issued,

16   Ms. Dean received a copy of the Receivership Order and was asked to turn over the $250,000

17   provided by Judd.  *Id.*  Receiver asserts Ms. Dean transferred $48,940 to Receiver and communicated

18   her intent to file a motion seeking permission to keep the balance, $201,060, in her possession.  *Id.*

19   at 4.  To date, Ms. Dean has not filed a motion.  *Id.*  In addition, Receiver contends there were

20   numerous attempts to amicably resolve the issue, including multiple emails exchanged between

21   Receiver's counsel and Ms. Dean, along with several stipulations for extension for Ms. Dean to file

22   her motion.  *Id.* at 5-6.

23         Receiver argues there is an abundance of case law giving the Court authority to enforce

24   compliance with its lawful orders, including, if necessary, a finding of contempt.  Receiver contends

25   a party's failure to comply with the terms of a turnover order is grounds to find that party in contempt.

26   _____

27   [7]      Receivership Property is defined in the Receivership Order as “monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly ….”  ECF No. 88 ¶ 7A.

28

1    *Id.* at 6-7.  Receiver acknowledges that meeting the clear and convincing evidence burden required

2    to hold a party in civil contempt lies with the party moving for contempt.  *Id.* at 7.

3         Receiver insists the terms of the Receivership Order are clear.  *Id.* at 8.  Ms. Dean's receipt

4    of $250,000 from Judd constitutes Receivership Property that must be turned over to Receiver.  *Id.*

5    Receiver alleges Ms. Dean has provided no documentation demonstrating the $201,060 she has yet

6    to turn over was earned in good faith.  *Id.* at 9.  Nor is there any evidence the funds in Ms. Dean's

7    possession were not commingled or tainted with the funds that were part of the alleged Ponzi scheme.

8    *Id.*  Receiver argues the burden is on Ms. Dean, as the party seeking to retain Receivership Property,

9    to establish the funds are untainted, and Ms. Dean has not done so.  *Id.* at 10.

10        As a result of the effort Receiver has undertaken to take possession of funds held by Ms.

11   Dean, the receivership estate has been forced to expend assets and incur costs.  *Id.* at 11.  As such,

12   Receiver argues Ms. Dean should be required to pay attorney's fees and costs associated with

13   bringing this Motion to Compel.  *Id.*

14        B.    Ms. Dean's Motion to Quash.

15         Ms. Dean avers Receiver's Motion to Compel should be denied for several reasons.  Chief

16   among these reasons is that Receiver forfeited jurisdiction over the $201,060 at issue because

17   Receiver violated 28 U.S.C. § 754.  Ms. Dean is an attorney licensed to practice in Arizona,

18   California, Colorado, Minnesota, and Utah.  ECF No. 257 at 6.  Ms. Dean contends that on March

19   25, 2022, six members of the Judd family—including Jeffrey Judd—retained her to aid them in

20   responding to subpoenas issued from the SEC's Utah office.  *Id.*  Ms. Dean asserts that the six Judd

21   family members paid her a $250,000 retainer, which she placed into her Arizona trust account.  *Id.*

22   Under Arizona law, Ms. Dean argues she is required to hold the funds in that trust account as all six

23   members of the Judd family claim to have an interest in the funds.  *Id.*  Ms. Dean further says five

24   Judd family members contend the funds are not the sole property of Jeffrey Judd.  *Id.*  Ms. Dean

25   contends she earned $201,060 of her retainer prior to her becoming aware on June 4, 2022 of

26   Receiver's appointment, which was entered one day prior.  *Id.*  Receiver contacted Ms. Dean on

27   June 9, 2022 and demanded she turn over the entire $250,000 to Receiver lest she be held in civil

28   contempt.  *Id.*  Ms. Dean asserts she responded to Receiver's demands explaining the funds at issue

4

did not belong to Judd—meaning that they were not Receivership Property—and that she had already earned the fees comprising most of the funds held. *Id.* at 7.

Ms. Dean argues Receiver did not follow the statutory duties imposed under 28 U.S.C. § 754. *Id.* As Receiver was appointed in Nevada, he is required under § 754 and Ninth Circuit precedent to, within ten days of appointment, file a copy of the Receivership Order and the Complaint in district courts in which Receivership Property is located. *Id.* If a receiver fails to comply with the statute, then the receiver and the receiver's appointing district court is divested of jurisdiction. *Id.*

In this case, Receiver did not file a copy of the Receivership Order and Complaint in the District of Arizona—where Ms. Dean is located—until August 5, 2022, which was more than two months after Receiver's appointment on June 3, 2022.[8] *Id.* at 7. Ms. Dean argues there was no excuse for this lack of compliance as Receiver became aware of Ms. Dean's presence in Arizona shortly after his appointment. *Id.* Ms. Dean contends Receiver was aware of his lack of jurisdiction over Ms. Dean; nevertheless, he chose to "[engage] in an unprofessional misrepresentation that Ms. Dean must turn over funds ...." *Id.* Ms. Dean argues Receiver's request to the Court is an abuse of the contempt power. *Id.* at 8-9. In addition, Ms. Dean claims that under Arizona law, she is required to hold contested funds in her trust account because her five non-defendant Judd family clients do not wish for her to turn over the remaining $201,060 to Receiver.[9] *Id.* at 9.

Ms. Dean asserts that on March 25, 2022, she entered into a Legal Services Agreement with the six members of the Judd family, including Judd.[10] *Id.* Ms. Dean was retained at a rate of $600 an hour to assist the Judds in responding to subpoenas issued by the SEC's Salt Lake City office. *Id.* at 9-10. Ms. Dean also says that on March 25, 2022 she began communicating with the SEC and working on the proper compliance with the subpoenas. *Id.* at 10. Following the appointment of

---

[8] Ms. Dean states that as a result of Receiver's actions, she has suffered overwhelming prejudice, including extensive costs, detrimental reliance, false demands by the SEC, and damages to her relationship with her clients and attorneys who work for Ms. Dean (as they cannot be paid). *Id.* at 8. Ms. Dean also contends that the friction caused between her clients and her as a result of this saga has caused her emotional distress. *Id.* at 9.

[9] The Arizona Rules of Professional Conduct require a lawyer hold and segregate disputed property and, if the dispute cannot be resolved amicably, file an interpleader action. *Employers Reinsurance Corp. v. GMAC Ins.*, 308 F.Supp.2d 1010, 1016 (D. Ariz. 2004).

[10] Ms. Dean submitted a copy of the Legal Services Agreement and Addendum entered into between Jeffrey Judd, Jennifer Judd, Preston Judd, Khloe Judd, Parker Judd, Kennedy Judd and her firm. ECF No. 257 at 29-35.

1  Receiver, Ms. Dean was contacted by Receiver's counsel who demanded she turn over the $250,000

2  Receiver contends came from Judd.  *Id.* at 11.

3          On June 24, 2022, Ms. Dean provided Receiver a letter describing the nature of her legal

4  arrangement with the Judd family and how she was assured none of the funds were products of

5  illegal activities.[11]  *Id.* at 12-13.[12]  Further, Ms. Dean's letter was adamant that Judd had only a one-

6  sixth interest in the $250,000 retainer and that turning over the total funds received would constitute

7  a breach of her agreement with the Judd family and a violation of her rights in earned fees.  *Id.* at

8  13-14.  However, Ms. Dean conveyed to Receiver that—under protest—she was forwarding $48,940

9  to Receiver in an attempt to resolve Receiver's threats to hold Ms. Dean in contempt of court.  *Id.* at

10  14.

11          Ms. Dean contends that despite her good faith attempts to amicably resolve this matter,

12  Receiver has never identified a basis for the assertion that the money in Ms. Dean's possession is

13  the product of illegal activity, the property of Judd, or unearned fees.  *Id.*  Ms. Dean points to a series

14  of court cases (including a Ninth Circuit case) and secondary sources that stand for the proposition

15  that a Receiver's failure to abide by § 754 effects a divestiture of jurisdiction over the target property

16  in a foreign jurisdiction.[13]  *Id.* at 16-17.  Ms. Dean does not dispute that courts may excuse

17  compliance with § 754 only where compelling reasons exist for Receiver and there is no prejudice

18  to the subject party.  *Id.* at 18.  Ms. Dean acknowledges that a Receiver can still hold jurisdiction

19  over a party if *in personam* jurisdiction exists[14]; however, Ms. Dean contends there is no *in personam*

20  jurisdiction over her because she "has no minimum contacts with this case or in Nevada."  *Id.*  Ms.

21  Dean acknowledges there is a body of case law providing that the ten-day clock under § 754 can be

22  reset if there is an order to reappoint the Receiver.  *Id.* at 19 n.4.  Here, Ms. Dean argues, there was

23

24

25  [11]      The full letter is provided in Ms. Dean's supplemental materials.  *Id.* at 63-66.
    [12]      Ms. Dean asserts that she and fellow professionals performed due diligence to ensure that the funds were legally
26  obtained.  *Id.* at 65.  This due diligence included reliance on the expertise of retired F.B.I., Secret Service, I.R.S. Criminal
    Division, and the Office of the Inspector General agents, who were tasked with reviewing thousands of pages of
27  financials, bank records, and other information to determine if the funds received from the Judd family were from an
    illegal source.  *Id.*
28  [13]      *S.E.C. v. Ross*, 504 F.3d 1130, 1146 (9th Cir. 2007).
    [14]      *United States v. Arizona Fuels Corp.*, 739 F.2d 455, 460 (9th Cir. 1984).

no order reappointing the Receiver; rather, there was an Order Amending the June 3, 2022 Order Appointing Receiver (ECF No. 207). *Id.*

Because of the lack of jurisdiction over Ms. Dean and the funds in her possession, Ms. Dean moves the Court to quash Receiver's Motion to Compel. *Id.* at 19.

C.    Ms. Dean's Motion to Strike.

In addition to the facts summarized above regarding the Motion to Quash, Ms. Dean argues there are multiple reasons to strike Receiver's Motion for an Order to Show Cause and Turnover Order.  Ms. Dean's reasons include: (1) the Notice of Motions does not identify or give notice to Ms. Dean's five non-defendant clients or "join" Ms. Dean, thus depriving the non-defendant Judd family members of their due process rights[15]; (2) Receiver did not give specific and particularized notice to Ms. Dean "of the identity and date of the Order" alleged to be violated, which funds are the subject of turnover, the amount of funds at issue, the basis for Receiver's claim, or whether the contempt request is civil or criminal; (3) Receiver's failure to address that the funds in Ms. Dean's possession were fully earned by Ms. Dean prior to Receiver's appointment; (4) Receiver's attempt to hold summary proceedings to determine the nature and ownership of the funds at issue; (5) Ms. Dean's filing of a Motion for Interpleader (ECF No. 259) in Arizona to determine the ownership of the funds at issue; and (6) Receiver placing Ms. Dean in an impossible situation; that is, the inability to simultaneously abide by the Receiver's and her clients' requests for how to proceed regarding the $201,060 still in her possession.[16]  ECF. No. 258 at 7-8.

Ms. Dean contends Receiver has no evidence that all of the $250,000 came from Judd. *Id.* at 16.  Further, as Judd was one of six individuals who claims ownership of the $250,000, and as

---

[15]    Ms. Dean contends Receiver became aware of her contractual arrangements with the Judd family on June 24, 2022 yet did not provide them with notice or an opportunity to be heard on the Motion to Compel.  ECF No. 258 at 14. The Court is unsure on what basis Ms. Dean makes this argument.  In addition, regarding the seeming assertion made by Ms. Dean that the Judd family was entitled to notice other than through counsel, as well as an opportunity to be heard, she is incorrect.  Receipt of service by a party's attorney is sufficient to satisfy notice requirements under the Federal Rules of Civil Procedure.  *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990).  The filings by Ms. Dean defy the notion that her clients have not been heard.

[16]    Ms. Dean cites case law in Nevada and Arizona demonstrating attorneys with joint clients owe a fiduciary duty to each.  As such, Ms. Dean complains she is unable to comply with Receiver's Order because her five non-defendant clients have a claim on the $201,060 as they are not subjects of the Court's Preliminary Injunction or the Receivership Order.  ECF No. 258 at 13.

1  Ms. Dean has already turned over $48,960 to Receiver—more than a one-sixth share of the
2  $250,000—Judd has no possible claim on the remaining funds.  *Id.*

3        Ms. Dean asserts the statement by Receiver that she admitted to receiving the $250,000 from
4  Judd to hold in trust is patently false.[17]  *Id.*  Ms. Dean cites case law placing the burden of persuasion
5  in a turnover proceeding on Receiver and argues that, although the burden of proof shifts to the party
6  in possession of the disputed assets once Receiver establishes a prima facie case that the assets are
7  receivership property, the ultimate burden of persuasion is on Receiver.  *Id.*  Ms. Deans states the
8  burden must be met by clear and convincing evidence.  *Id.* at 18-19.  Finally, Ms. Dean argues that
9  she was a bona fide purchaser without notice of any potentially fraudulent activity.  *Id.* at 19-20.

10        D.    Ms. Dean's Motion for Interpleader.

11        Ms. Dean asserts that filing an interpleader action in Arizona is necessary because the
12 Receiver seeks to determine the proper ownership of the funds in her Arizona trust account.  ECF
13 No. 259 at 6.  Ms. Dean further argues that a summary proceeding before this Court is jurisdictionally
14 improper, and that to determine ownership of these funds a plenary proceeding is necessary.[18]

15        Arizona rules require Ms. Dean to file an interpleader action whenever there is dispute and
16 conflicting demands to money held in an attorney's trust account.  *Id.* at 9.  Unlike two other
17 attorneys involved with Judd who advised the Court that they were holding funds in trust from him,[19]
18 Ms. Dean denies that the funds she is holding were given to her by Judd.  *Id.* at 10.  Ms. Dean is
19 emphatic that she is not seeking affirmative relief on the merits by filing her request for leave to file
20 an interpleader action in Arizona, and that this motion is not a general appearance and does not
21 subject her to jurisdiction in Nevada.  *Id.* at 13.

22        E.    Ms. Dean's Affidavit Objections.

23        Ms. Dean objects to the affidavits of Kara Hendricks and David Zaro (the "Affidavits")
24 attached as exhibits to and referenced in Receiver's Motion to Compel.  Ms. Dean asserts that the
25 affiants lack personal knowledge and the testimony constitutes hearsay thereby rendering them
26 inadmissible for the purposes of considering Receiver's Motion to Compel.  ECF No. 260 at 2.  Ms.

27
28
---
[17]   ECF No. 210 at 8.
[18]   *Arizona Fuels Corp.*, 739 F.2d at 458-59; *S.E.C. v. Universal Financial*, 760 F.2d 1034, 1037 (9th Cir. 1985).
[19]   *See* ECF No. 235

1    Dean walks through sections of each Affidavit purporting to describe communication between

2    attorneys Hendricks and Zaro and Ms. Dean.  *Id.* at 2-3.  Ms. Dean asserts the Affidavits are unsworn

3    argument of legal counsel in a memorandum and, therefore, not evidence that Ms. Dean should be

4    found in contempt.  *Id.* at 4.

5           F.    Receiver's Omnibus Response.[20]

6           Receiver counters Ms. Dean's core assertion—that Receiver violated the provisions of § 754

7    and therefore forfeited jurisdiction over her and funds in her possession—with two arguments: (1)

8    the ten-day period referenced in the statute is not a bright-line test especially when no prejudice has

9    occurred; and (2) even if the ten-day period were a bright-line test, in this case, with the entry of the

10   Amended Receivership Order, the clock reset and Receiver filed the proper documents in the District

11   of Arizona seven days later.  ECF No. 275 at 11.

12          The Amended Receivership Order was entered on July 28, 2022.  ECF No. 207.  On August

13   5, 2022, Receiver completed the necessary filings in the District of Arizona.  ECF No. 275 at 11.

14   Receiver points to case law from various jurisdictions affirming that the filing of an amended

15   appointment order restarts the ten-day clock.  *Id.* at 12.  In addition, Receiver asserts that even if he

16   failed to timely file under § 754, courts routinely authorize late filings by a receiver where there has

17   been no prejudice to a party emanating from the late registration.  *Id.*  Receiver contends the approach

18   to evaluating § 754 is a pragmatic evaluation of all the facts, not a bright-line test.  *Id.* at 13.

19          Receiver also disputes Ms. Dean's assertion that the Court lacks personal jurisdiction over

20   her.  *Id.*  Ms. Dean received funds from a Nevada attorney to represent a Nevada client and she hired

21   separate Nevada counsel to assist her in the same.  *Id.*  In addition, Ms. Dean is similarly situated to

22   other attorneys who turned over funds provided by Judd, including the attorney who wired Ms. Dean

23   the $250,000 in the first place.  *Id.*  Receiver contends these acts are sufficient to allow the District

24   of Nevada to exercise personal jurisdiction over Ms. Dean and the funds in her trust account.  *Id.*

25

26   [20]      The SEC joins in Receiver's arguments made in response to Ms. Dean's various motions.  ECF No. 278 at 2.
     The SEC asserts the Motion for Interpleader is an attempt to evade the Court's previous ruling regarding the use of
27   presumed investor funds by Judd for attorney's fees.  *Id.*  The SEC further argues that it is Ms. Dean's burden to prove
     that the funds in her possession are untainted and that her failure to do so requires the denial of her Motion for
28   Interpleader.  *Id.*

1    Receiver asserts that Ms. Dean's description of the great prejudice she has suffered—even if

2    true—is outweighed by the common understanding that those who commit securities fraud cannot

3    retain the fruits of that fraud to hire counsel. *Id.* at 14-15. Moreover, Receiver states he has evidence

4    that another of Ms. Dean's key assertions—that she was retained by six members of the Judd family

5    and not just one—is untrue. *Id.* at 6-7. Receiver argues that Ms. Dean received the $250,000 by a

6    wire transfer from an attorney involved in the representation of Judd only.[21] *Id.*

7    Receiver avers that Ms. Dean also tries to improperly shift the burden of proof in this matter

8    as the burden to establish that the property is untainted and has not been commingled is on her—the

9    party seeking to retain receivership property. *Id.* at 17. Regarding the Motion for Interpleader,

10   Receiver argues there is no evidence in the record suggesting that Ms. Dean's clients have a dispute

11   regarding the funds held in her trust account, which moots the need to consider Arizona ethical rules.

12   *Id.* at 18. In addition, Receiver contends that the appointment of equity receivers in federal court

13   grants the appointing court the jurisdiction to decide all questions of the preservation, collection, and

14   distribution of assets. *Id.*

15   In response to Ms. Dean's Affidavit Objections Receiver argues the statements offered by

16   Hendricks and Zaro were not offered to prove where the funds came from; rather, they were offered

17   to authenticate the nature of the correspondence between Receiver's counsel and Ms. Dean in the

18   run up to the instant motions. Receiver contends Federal Rule of Evidence 801(d)(2) provides an

19   opposing party's statement is not hearsay if the testimony repeating the statement is offered against

20   the party who made the statement. Receiver contends that the statements made in the Affidavits are

21   based on personal knowledge and they comprise statements by a party opponent, thereby defeating

22   the claim that the statements constitute hearsay. *Id.* at 10. In addition, Receiver explains that the

23   motion before the Court is one to compel documents and for order to show cause, not a contempt

24   proceeding that can only be initiated by the Court. *Id.* at 10-11. Receiver concludes the analysis of

25   hearsay is not required at this time. *Id.*

26

27

28

[21]    ECF No. 275-1.

G.     Ms. Dean's Reply to Receiver's Omnibus Response.

Ms. Dean reiterates her assertion that Receiver violated § 754, thereby forfeiting jurisdiction over Ms. Dean and the funds at issue.  ECF No. 295 at 2.  According to Ms. Dean, when, as here, a defendant challenges the sufficiency of personal jurisdiction, the plaintiff bears the burden of establishing an exercise of jurisdiction is proper.  *Id.*  Ms. Dean argues Receiver, in his Motion to Compel, failed to meet his burden.  *Id.*

Ms. Dean contends Receiver's reliance on case law standing for the proposition that the § 754 ten-day clock resets upon the issuance of an amended receivership order is misplaced.  *Id.* at 3. Instead, Ms. Dean claims that it is not an amended receivership order that can reset the clock, but a reappointment order.  *Id.*  In addition, even if the clock resets, Ms. Dean argues that Receiver did not comply with § 754 for two reasons: (1) he filed his Motion to Compel on August 1, 2022—four days prior to filing the Complaint and Appointment Order in Arizona; and (2) Receiver did not file the Amended Receivership Order in Arizona; rather, he filed the original Receivership Order.  *Id.* at 4.

Ms. Dean disputes Receiver's assertion that she has minimum contacts with the State of Nevada.  *Id.* at 4-5. She Dean argues that her hiring of Nevada counsel does not qualify as minimum contacts for purposes of establishing general jurisdiction, and disputes whether the attorney referenced in Receiver's omnibus response is a Nevada attorney.  *Id.* at 5.  With respect to specific jurisdiction, Ms. Dean contends that she has conducted no business in Nevada and had no activity or minimum contacts in Nevada related to the controversy at issue.  *Id.* at 6.  Ms. Dean also asserts that Receiver failed to offer any evidence refuting the prejudice that she has suffered.  *Id.* at 8.  Ms. Dean reiterates her position that the burden of proof in a turnover proceeding is at all times on the Receiver and that he must at least establish a *prima facie* case that the property at issue is property of the receivership estate.  *Id.* at 9.

Ms. Dean also disputes Receiver's statement regarding the wiring of the $250,000 to her trust account.[22]  ECF No. 296 at 6.  Ms. Dean argues Receiver offers no evidence as to the source of the funds.  *Id.*  Finally, Ms. Dean argues that she is a bona fide purchaser under Nevada law and that

---

[22]     The statement is attributed to Janeen Isaacson, an attorney with the Nevada law firm of Lipson Neilson.

this status cuts off the prior owner's claims and claims emanating from the prior owner's claims such as those asserted by Receiver.  *Id.* at 7-8.

## III.   DISCUSSION

### A.   The Burden of Proof Falls on Ms. Dean to Demonstrate the Funds in her Possession are not Tainted by the Alleged Ponzi Scheme Orchestrated in Part by Judd.

"The central purpose of an asset freeze is to preserve funds to satisfy a potential disgorgement order."  *Securities and Exchange Commission v. Lee*, Case No. 14-cv-347-LAB-BGS, 2019 WL 4934181, at *6 (S.D. Cal. Oct. 7, 2019).  Further, "[i]t has been specifically recognized that a freeze of assets may be appropriate to assure compensation to those who are victims of a securities fraud."  *S.E.C. v. Current Financial Servs.*, 62 F.Supp.2d 66, 68 (D.D.C. 1999).  It is not the responsibility of the government—or its appointed receiver or trustee—to trace the proceeds of ill-gotten gains to their current or final destinations.  *S.E.C. v. Rosenthal*, 426 Fed.Appx. 1 (2d Cir. 2011).

Despite the above, Ms. Dean contends that many of the cases cited by Receiver are inapplicable because the cases deal with insider trading—as opposed to the instant alleged Ponzi scheme—or because the parties moving to have assets unfrozen were the defendants and not—as Ms. Dean is here—a non-party.[23]  Ms. Dean's arguments lack merit.

First, case law directly contradicts Ms. Dean's assertion that insider trading is in a different category than Ponzi schemes when it comes to how an asset freeze is to be administered.  In *Securities and Exchange Commission v. King*, the SEC sued a family for allegedly defrauding customers through a Ponzi scheme.  Case No. SACV 20-02398JVS, 2021 WL 3598732, at *1 (C.D. Cal. Apr. 27, 2021 (slip copy)).  The court, in referencing *Rosenthal*,[24] denied the family's request for limited relief from the asset freeze because it was not the responsibility of the SEC to trace illicit funds when they had potentially become commingled with other funds not involved in the alleged Ponzi scheme.  *Id.* at *2.  Here, just as in *King*, there is evidence before the Court that the funds in Ms. Dean's possession were comingled and, therefore, are within the scope of the Receivership Order.

---

[23]   ECF No. 295 at 9 n.36.
[24]   *Rosenthal*, 426 Fed.Appx. 1.

Specifically, Receiver provides to the Court a letter from an attorney who was aware of the chain of events involving the funds at issue. ECF No. 275-1 at 2. In that letter, the attorney describes the money changed hands as follows: (1) on October 15, 2021, two wire transfers were received by Michael Lee Peters—an attorney for one or more of the Defendants and/or Receivership Defendants related to Judd—for services rendered; (2) the transfers totaled $2,000,000 and were placed in Mr. Peters' IOLTA account; and (3) on March 30, 2022, $250,000 of that amount was wired to the Kamille Dean, P.C. Arizona IOLTA trust account as a retainer for attorney services. *Id.* at 2-3.

Ms. Dean makes an unpersuasive argument that this evidence is hearsay and fails to identify the source of the funds. The letter clearly states the funds were transferred from Judd or one of the other Defendants/Receivership Defendants to Mr. Peters and then to Ms. Dean. There is no mention of Judd's family members or that the source of funds was other than Defendants or Receivership Defendants. The letter is based on the personal knowledge of an attorney familiar with the chain of events involving the funds at issue. *Id.* Moreover, Ms. Dean provides no evidence of specific allocation of the Judd family's retainer. There is no evidence demonstrating any segregation of the funds among the various Judd family members.

Ms. Dean is also wrong when she argues that her status as a non-party in the litigation renders her immune from the reach of an asset freeze. None of the cases cited by Ms. Dean or, for that matter Receiver, stand for the proposition that only assets in the possession of Defendants and Relief Defendants in a turnover proceeding can be subject to an asset freeze. In fact, the Ninth Circuit has held that "[a] district court may freeze assets when doing so is necessary to preserve the possibility of full relief." *F.T.C. v. Johnson*, 567 Fed.Appx. 512, 514 (9th Cir. 2014), *citing SEC v. Hickey*, 322 F.3d 1123, 1125 (9th Cir.2003) ("[T]he inherent equitable power of a district court allows it to freeze the assets of a nonparty when that nonparty is dominated and controlled by a defendant against whom relief has been obtained in a securities fraud enforcement action."). That possibility is present here as Receiver continues his work marshaling the assets of the receivership estate.

Ms. Dean's letter to Receiver's counsel acknowledges that on March 25, 2022, she entered into an Attorney Client Agreement with six members of the Judd family—including Judd—in exchange for a $250,000 retainer. ECF No. 257 at 64. Ms. Dean letter states that "we had no

knowledge or information regarding this case, and we had no knowledge or information that the $250,000 retainer funds would be part of any illegal proceeds." *Id.* Ms. Dean goes on to claim that $201,060 of that $250,000 retainer was earned prior to Receiver's appointment and the services rendered were by a bona fide seller of services in good faith. *Id.* at 65. According to Ms. Dean, Receiver "stands in the shoes" of Judd's one-sixth share of the $250,000 and does not have any legal interests in the remaining portion of the $250,000 that belong to the non-defendant members of the Judd family. *Id.* at 66.[25]

Ms. Dean submitted no evidence and cites no case law supporting her proposition that the Court should segregate one-sixth of the $250,000 retainer because only one of the six individuals who retained her is named as involved in illegal activity. Nothing about the source of the funds (two accounts, one of which was Judd's) demonstrates only $48,940 came from Judd while the rest of the original $2,000,000 was not comingled with alleged Ponzi scheme funds. Indeed, the Court located no authority for the proposition that the undisputed facts regarding the originating sources of funds from which Ms. Dean's retainer was taken could be presumed to be owned by a defendant only in proportion to the total number of individuals who jointly retains counsel.

Based on the facts before the Court, the undersigned finds the evidence establishes a *prima facie* case that the funds were comingled and Ms. Dean offers no evidence to refute this finding. The reach of Receiver is broad, as spelled out in the Appointment Orders. The Court finds that based on the information presented, the $201,060 in Ms. Dean's Arizona trust account is property of the receivership estate.

B.   Receiver Was Not Divested of Jurisdiction Over the Funds in Ms. Dean's Possession Following the Expiration of the Ten-Day Period Under 28 U.S.C. § 754.

As stated in 28 U.S.C. § 754, receivers appointed in civil actions have the following duties:

A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

---

[25]   Nevertheless, and despite her contentions that Receiver had no right to any of the funds, Ms. Dean wired $48,940 to Receiver, which, to Ms. Dean, represented the amount of funds earned prior to Receiver's appointment, retaining the remainder, 201,060, as received from non-parties. *Id.*

He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.

Such receiver shall, **within ten days after the entry of his order of appointment,** file copies of the complaint and such order of appointment in the district court for each district in which property is located. **The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.**

28 U.S.C. § 754 (emphasis added).

Here, the facts relating to the timeline of Receiver's actions are undisputed. The original Receivership Order was entered on June 3, 2022. ECF No. 88. During the ten days that followed his appointment, Receiver did not file copies of the Appointment Order and Complaint in the District of Arizona—the location of the funds at issue here. ECF No. 275 at 5. The Receivership Order was amended on July 28, 2022. ECF No. 207. Eight days later, on August 5, 2022, Receiver filed a copy of the Complaint and the original order appointing Geoff Winkler as Receiver in the District of Arizona. ECF No. 295-2. The questions for the Court are: (1) did the Amended Receivership Order filed on July 28, 2022 reset the ten day clock set by § 754; and (2) if the clock was not reset, are there exceptions or bases upon which the Court properly finds Receiver is not divested of jurisdiction over the funds?

Ms. Dean acknowledges that an order reappointing a receiver resets the ten-day clock, while she avers an amended receivership order does not. Receiver respond that he "filed the Amended Appointment Order in Arizona seven days after it was entered and thus met the requisite Section 754 requirements." ECF No. 275 at 11. One of the cases cited by Receiver, *Ashmore v. Barber*, Case No. 8:15-cv-04487-JMC, 2016 WL 4555340 (D.S.C. Sept. 1, 2016), is instructive with respect to the issue raised by Ms. Dean. In *Ashmore*, the court found what was described as a "Fourth Amended Order of Appointment" restarted the ten-day clock under § 754. *Id.* at *5 *quoting S.E.C. v. Equity Serv. Corp.*, 632 F.2d 1092, 1096 (3rd Cir. 1980) ("[I]t seems most consistent with that purpose to permit a receiver who has failed to file within the ten-day period to reassume jurisdiction by a later filing, as long as the rights of others have not been prejudiced during the intervening period.").

Ms. Dean argues that *Ashmore* is distinguishable from the case at bar because, although referred to in the opinion itself as an "Amended Order of Appointment," the order at issue was a reappointment order.  ECF No. 295 at 3.  However, the Court's examination of the holding in *Ashmore* and the subsequent cases cited by Ms. Dean confirms Ms. Dean has not cited any case that makes a definitive distinction between an order that "reappoints" a Receiver and an order that "amends" an existing receivership order.[26]  In fact, Ms. Dean's words, when viewed in conjunction with the language used in the Amended Receivership Order here (ECF No. 207), reinforces this point.  Ms. Dean discusses how, in *Ashmore*, the original appointment order was "superseded" by the subsequent order and therein supposedly lies the distinction between *Ashmore* and the instant case.  However, upon review, the Amended Receivership Order at issue here clearly supersedes the original appointment order.  The Amended Receivership Order brings the personal assets of eight additional Defendants under the stewardship of Receiver and restates that "GEOFF WINKLER of AMERICAN FIDUCIARY SERVICES LLC (the "Receiver") is hereby appointed to serve without bond as receiver for the assets of the New Defendants."  ECF No. 207 at 3.

Based on the foregoing, the Court finds that the Amended Receivership Order resets the ten-day clock under § 754 rendering Receiver's August 5, 2022 Arizona filing timely.

Ms. Dean further argues that if the Court agrees with Receiver that the Amended Receivership Order (ECF No. 207) reset the ten-day clock under § 754, the Court was nonetheless divested of jurisdiction because Receiver filed the instant Motion to Compel four days prior to filing the Complaint and Appointment Order in Arizona.  ECF No. 295 at 4.[27]  Ms. Dean concludes that at the time of Receiver's filing, Receiver had not complied with the requirements of § 754 and, therefore, this Court does not have jurisdiction over Ms. Dean or the disputed funds.  *Id.*  Ms. Dean alternatively contends that since Receiver filed a copy of the original Appointment Order (ECF No. 88) and not the Amended Receivership Order (ECF No. 207) in the District of Arizona, he again failed to comply with § 754, which deprives the District of Nevada of the requisite jurisdiction over

---

[26]     The Court has found no controlling case law distinguishing an "amending order" from a "reappointment order" in the context of a court-ordered receivership and his or her jurisdiction under 28 U.S.C. § 754.

[27]     The instant Motion to Compel was filed on August 1, 2022.  ECF No. 210.  The Complaint and Appointment Order were filed in the District of Arizona on August 5, 2022.  ECF No. 295-2.

Ms. Dean. *Id.* Ms. Dean cites no authority for her contentions, and despite a search for such authority, the Court found none. In addition, these particular legal theories were not presented in Ms. Dean's Motion to Quash but in her Reply, which denied Receiver, or any other interested party, the ability to respond. For this reason, the Court declines to consider this argument. *Silva v. California*, Case No. CIV-S-05-0403 DFL KJM P., 2006 WL 2354764, at *5 n.3 (E.D. Cal. Aug. 14, 2006) (citing *United States v. Feinberg*, 89 F.3d 333, 340-41 (7th Cir. 1996)).

C.      There Are No Legal Grounds to Strike Receiver's Motion to Compel.

Ms. Dean's Motion to Strike repeats the arguments made in her Motion to Quash and Motion for Interpleader with the exception of two contentions relating to notice and opportunity to be heard. It is only the two new arguments the Court addresses here. First, Ms. Dean contends the Notice of Motion included in Receiver's Motion to Compel is defective because it fails to identify or give notice to Ms. Dean's five clients or join Kamille Dean P.C. Since these individuals claim ownership interests in the money in Ms. Dean's trust account, Ms. Dean says they were denied the opportunity to be heard, which in turn establishes a fatal due process violation. Second, Ms. Dean contends Receiver's failure to give "specific and particularized" notice of the identity and date of the Order that was violated, what funds are subject to turnover, the amount at issue, the basis for Receiver's claim, and whether this matter is civil or criminal, is jurisdictionally fatal to Receiver's Motion. ECF No. 258 at 8.

Receiver responds that Ms. Dean was properly served with the Motion to Compel and that through her three motions in response to the Motion to Compel she has demonstrated an opportunity to be heard. ECF No. 275 at 8. Receiver also contends that at this stage of the process, Receiver is only requesting an order to show cause, not a contempt order (an important distinction). *Id.* Receiver concludes Ms. Dean's complaints about notice relating to contempt are premature. *Id.*

The Court agrees with Receiver. "[N]otice reasonably calculated … to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" is sufficient in a case involving the mere determination of who is entitled to possession of funds. *Ross*, 504 F.3d at 1144 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652 (1950)). Notice of the Motion to Compel occurred here through the CM/ECF system provided

by the federal courts. Ms. Dean is among the attorneys listed on the docket of this case and, therefore, received service through CM/ECF. ECF No. 171. U.S. District Court for the District of Nevada Local Rule IC 4-1 states electronic service through CM/ECF constitutes consent to the service pleadings and other court papers. Ms. Dean cites, and the Court knows of, no special rule of service that applies to the instant Motion to Compel. Ms. Dean also does not cite, and the Court also knows of no special rule of service nor of any support for the proposition that her clients had to be served rather than effective service occurring through counsel.

D.    Plaintiff's Interpleader Action is Unnecessary.

Ms. Dean argues she must file an interpleader action in Arizona because the disputed funds are held in an Arizona attorney trust account. ECF No. 259 at 6. The Court finds that an interpleader action is not necessary because the District of Nevada is the proper overseer of property subject to Receiver's powers. The burden of proving the funds at issue are not property of the receivership estate is on Ms. Dean.[28] Ms. Dean has not met her burden. Although Ms. Dean provided certain documents indicating there was an agreement reached between herself and six members of the Judd family regarding legal services, there is no evidence—other than statements made in Ms. Dean's filing—that members of the Judd family are disputing the ownership of these funds. Ms. Dean's arguments in her pleadings are not evidence. *See United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995). In the absence of a dispute over ownership, as opposed to attorney argument that there is a dispute over the ownership of funds in an attorney trust fund account, the Arizona ethical rules cited by Ms. Dean are not applicable.

This Court is tasked with ensuring the orderly administration of the assets of this receivership estate.[29] Ninth Circuit precedent grants to the district court discretion to hold summary proceedings to administer the assets under the administrative control of the Receiver. *Arizona Fuels Corp.*, 739 F.2d at 458 ("[T]he traditional rule is that summary proceedings are appropriate and proper to protect

---

[28]    *Supra* Section III. A.

[29]    *Federal Trade Comm'n v. Productive Marketing, Inc.*, 136 F.Supp.2d 1096, 1105 (C.D. Cal. 2001) ("Upon imposition of a receivership, all property in the possession of the debtor passes into the custody of the receivership court, and becomes subject to its authority and control. In the exercise of its jurisdiction over the debtor's property, the court has power to issue injunctions and all other writs necessary to protect the estate from interference and to ensure its orderly administration.") (citations omitted).

equity receivership assets."); *S.E.C. v. American Capital Investments, Inc.*, 98 F.3d 1133, 1146 (9th Cir. 1996) ("For the claims of nonparties to property claimed by receivers, summary proceedings satisfy due process so long as there is adequate notice and opportunity to be heard.").

Ms. Dean has not adhered to the process two other attorneys in this case followed when moving for an order allowing them to retain attorneys' fees they argued were lawfully received. ECF No. 164 at 3. Instead, Ms. Dean asserts that there is a distinction between herself and these attorneys because the burden is on Receiver to demonstrate that the $201,060 at issue are in fact receivership property. ECF No. 259 at 11. Ms. Dean is incorrect, and the Court again rejects Ms. Dean's argument.[30]

E. Ms. Dean's Affidavit Objections are Denied.

Ms. Dean's Affidavit Objections lack merit. Ms. Hendricks and Mr. Zaro affidavits are signed and authenticated, and both contain statements that are supported by personal knowledge. The dispute before the Court relates solely to a Motion to Compel and not a contempt proceeding or evidentiary hearing. For those reasons, Ms. Dean's Affidavit Objections are without merit.

F. Receiver's Request for Attorneys' Fees is Granted.

In his moving papers, Receiver requests that the Court award to the receivership estate attorneys' fees and costs associated with bringing the subject Motion to Compel. ECF No. 210 at 11. Having considered the facts and positions of the parties, the Court agrees that fees and costs are warranted. *See Federal Trade Commission v. Consumer Defense LLC*, Case No. 2:18-cv-0030-JCM-PAL, 2019 WL 861385, at **2-3 (D. Nev. Feb. 22, 2019) (awarding attorneys' fees to replenish the receivership estate following the filing of unnecessary motions).

## IV. ORDER

IT IS HEREBY ORDERED that Receiver's Motion to Compel or Alternative Motion for Order to Show Cause Why Kamille Dean Should Not Be Held in Contempt for Failure to Comply with this Court's Order Appointing Receiver Due to Failure to Turn Over Assets (ECF No. 210) is GRANTED.

---

[30] *Supra* Section III. A.

IT IS FURTHER ORDERED that Ms. Dean must turn over the $210,060 to Receiver within 30 days of the date of this Order.

IT IS FURTHER ORDERED that Receiver's request for an award of fees and costs associated with bringing and succeeding on the Motion to Compel is GRANTED.

IT IS FURTHER ORDERED that Receiver's counsel must submit a memorandum of fees and costs associated with bringing the Motion to Compel detailing the activities, hours spent (in tenths of hours), and the rate charged by each attorney and non-attorney who worked on the Motion and related filings. Appropriate redactions from billing records for attorney client privilege and/or work product may be made for the public filing with non-redacted copies of such records filed under seal. Receiver shall submit its memorandum within 14 days of this Order. Ms. Dean has 14 days to file a response, if any is desired. No reply shall be permitted by Receiver.

IT IS FURTHER ORDERED that Non-Party Kamille Dean's Motion to Quash Jurisdiction Over Kamille Dean and Receiver's Motion for Order to Show Cause (ECF No. 257) and Motion to Strike Receiver's Motion for Order to Show Cause (ECF No. 258) are DENIED.

IT IS FURTHER ORDERED that Non-Party Kamille Dean's Motion for Leave of Court to File Interpleader Action Under 28 U.S.C Section 959(a) (ECF No. 259) is DENIED.

Dated this 17th day of November, 2022.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE