KARA B. HENDRICKS, Bar No. 07743
hendricksk@gtlaw.com
KYLE A. EWING, Bar No 014051
ewingk@gtlaw.com
CHRISTIAN T. SPAULDING, Bar No. 014277
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

JARROD L. RICKARD, Bar No. 10203
jlr@skrlawyers.com
KATIE L. CANNATA, Bar No. 14848
klc@skrlawyers.com
**SEMENZA KIRCHER RICKARD**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803
Facsimile: (702) 920-8669

DAVID R. ZARO*
dzaro@allenmatkins.com
JOSHUA A. del CASTILLO*
jdelcastillo@allenmatkins.com
MATTHEW D. PHAM*
mpham@allenmatkins.com
*admitted *pro hac vice*
**ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP**
865 South Figueroa Street
Suite 2800
Los Angeles, California 90017-2543
Telephone: (213) 622-5555
Facsimile: (213) 620-8816

*Attorneys for Geoff Winkler Receiver for J&J Consulting Services, Inc., J&J Consulting Services, Inc., J and J Purchasing LLC, The Judd Irrevocable Trust, and BJ Holdings LLC*

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

MATTHEW WADE BEASLEY et al.

Defendants;

THE JUDD IRREVOCABLE TRUST et al.

Relief Defendants.

Case No. 2:22-CV-00612-CDS-EJY

**MOTION FOR ORDER DIRECTING THE TURNOVER OF RECEIVERSHIP PROPERTY FROM AARON GRIGSBY**

/ / /

Comes now, Geoff Winkler, the Court-appointed Receiver (the "Receiver"), by and through his counsel of record the law firm of Greenberg Traurig, LLP, and hereby submits the following Motion for Order Directing the Turnover of Receivership Property From Aaron Grigsby (the "Motion").

This Motion is based upon the attached Memorandum of Points and Authorities, the exhibits hereto including the Declaration of Kara B. Hendricks, the pleadings and papers on file, and such other and further arguments and evidence as may be presented to the Court in connection with the Motion.

DATED this 9th day of October 2023.

**GREENBERG TRAURIG**, LLP

By: /s/ Kara B. Hendricks
KARA B. HENDRICKS, Bar No. 07743
KYLE A. EWING, Bar No. 014051
CHRISTIAN T. SPAULDING, Bar No. 014277

JARROD L. RICKARD, Bar No. 10203
KATIE L. CANNATA, Bar No. 14848
**SEMENZA KIRCHER RICKARD**

DAVID R. ZARO*
JOSHUA A. del CASTILLO*
MATTHEW D. PHAM*
**admitted pro hac vice*
**ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP**
*Attorneys for Receiver Geoff Winkler*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Aaron Grigsby, a Nevada licensed attorney has been the focus of multiple proceedings before this Court concerning his role in Paula Beasley's disposition of hundreds of thousands of dollars of Receivership Assets and his failure to turnover attorney fees he received that were sourced from tainted funds. Most recently, Mr. Grigsby was ordered to show cause why this Court should not find him in contempt for failure to comply with Court orders. Despite being granted every

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

conceivable opportunity to prove he did not violate prior orders and to voluntarily turnover funds to the Receiver, he has failed to do so.

As demonstrated herein, despite admitted knowledge of the alleged Ponzi scheme and the Asset Freeze controlling the assets in this case, Mr. Grigsby not only facilitated the sale of a vehicle worth more than $250,000 but also single handedly orchestrated the disposition of all proceeds derived from Mrs. Beasley's sale of three vehicles. Moreover, as counsel for both parties to the Beasley Divorce, Mr. Grigsby facilitated and accepted payment of $110,500 from Matthew Beasley's credits cards despite Mr. Grigsby's knowledge of Mr. Beasley's incarceration and inability to repay those debts.

Now, Mr. Grigsby has squandered all of his Court offered chances to redeem himself and is the subject of a pending Motion to Find Aaron Grigsby in Contempt. In conjunction therewith, the Receiver now comes before this Court seeking an order directing the immediate turnover of the equivalent value of all tainted funds which flowed into Mr. Grigsby's account and those funds of which he facilitated the disposition of.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This Motion is the result of the Receiver's efforts to locate and recover substantial Receivership assets that were transferred to and/or received by attorney Aaron Grigsby. As set forth more fully herein, Mr. Grigsby played an instrumental role in the transfer and dissipation of hundreds of thousands of dollars of Receivership assets despite his full knowledge and understanding of the Asset Freeze in place in this case. Moreover, Mr. Grigsby was the knowing recipient of $110,500.00 paid to him via charges on the credit cards of Matthew Beasley, after his arrest.

Initially, the Receiver sought to recover the funds in question without court involvement but, after being stonewalled, the Receiver was compelled to move this Court for an order compelling Mr. Grigsby's compliance with the terms of the Temporary Restraining Order and Preliminary Injunction (collectively, the "Asset Freeze") (ECF No. 56) as well as the terms of the Order Appointing Receiver (the "Appointment Order") (ECF No. 88). In April, 2023, after Mr. Grigsby failed to satisfy the Court's orders, the Receiver returned to this Court seeking an order to show

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

cause and, in August 2023, Mr. Grigsby was ordered to turn over the funds he had received or demonstrate the source of the funds to be from something other than the Ponzi-scheme. Mr. Grigsby was given one month to meet this mandate or face contempt. On September 29, 2023, Mr. Grigsby, through newly retained counsel, submitted a response to the Court's order which did nothing but re-argue positions already rejected by the Court. As a result, on October 6, 2023, the Receiver filed a Motion to Find Aaron Grigsby in Contempt for Failure to Comply With This Court's Orders (the "Motion for Contempt"). In conjunction with the Motion for Contempt, the Receiver now seeks an order directing the turnover of $405,302.40, representing the value of the receivership assets squandered and the attorney's fees received by Mr. Grigsby.

**A. Summary Of Prior Proceedings**

On October 21, 2022, the Receiver filed a Motion to Compel or Alternative Motion for Order to Show Cause Why Paula Beasley and Aaron Grigsby Should Not be Held in Contempt for Failure to Comply With This Court's Orders and Request for Turnover of Mercedes G-Wagon or Value of the Same (the "Motion to Compel"). ECF No. 333. The Motion to Compel centered on a number of violations of the Court's orders and a general failure to provide the Receiver with information related to the location and status of assets belonging to the Receivership Estate. The crux of the Motion to Compel involved significant questions regarding the factual background related to Mrs. Beasley's apparent disposition of various vehicles, including a 2020 Mercedes Benz G-63 (the "G-Wagon")[1], a 2016 Ferrari 488 GTB (the "Ferrari"), and a 2020 Aston Martin Vantage (the "Aston Martin").[2] Each of the vehicles in question were purchased with funds derived from the alleged Ponzi scheme.

**B. The Hearing on the Motion to Compel**

The Motion to Compel came on for hearing on December 16, 2022 (the "December 2022 Hearing") before Magistrate Youchah. ECF No. 416.[3] During the hearing, the Court focused on

[1] The Asset Freeze expressly listed the G-Wagon as an asset that could not be transferred, assigned or sold. ECF No. 3 at 10.

[2] The Motion to Compel discussed other matters, including the lack of information surrounding various properties that have since become moot.

[3] The transcript of the December 16, 2022 Hearing served as the order on the Motion to Compel.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

the lack of information surrounding Mrs. Beasley's disposition of the three vehicles, material misrepresentations made to third parties, including the Court, and a lack of information related to attorney's fees paid to Mr. Grigsby. Of particular concern to the Court was the lack of evidence demonstrating the location and/or status of approximately $173,000 that should have been turned over to the Receiver following the sale of the three vehicles.

> "I don't understand where that money went and the receiver has a right to know where it went."

ECF No. 416 at p. 21:11-12.

The Court also raised significant concern over an April 26, 2022 email from Mr. Grigsby to the SEC, wherein Mr. Grigsby expressly acknowledged that the G-Wagon was subject to the TRO and advised *"[i]n all candor, Ms. Beasley is hoping to sell the 2020 Mercedes and apply the proceeds to living and litigation expenses*." ECF No. 416 at p. 28:20-29:22. The Court noted in the April 26, 2022 email that Mr. Grigsby represented to the SEC that Mrs. Beasley intended to sell the vehicle when, in fact, the vehicle had already been sold.

> "You made a material misrepresentation to the SEC in writing that you provided to the Court . . . Your problem is misrepresentation in writing to the SEC and misrepresentations to the Court about what happened. And I don't hear you trying to explain that at all and that genuinely concerns me."

ECF No. 416 at p. 28:20-29:22.

Despite the clear violations of court orders, the Court gave Mr. Grigsby an opportunity to come clean with the SEC and reverse the course of action to avoid potential sanctions. ECF No. 416 at p. 42:3-6. The Court ultimately ordered Mr. Grigsby to produce evidence and information pertaining to the sale of the G-Wagon, the Ferrari, and the Aston Martin as well as an accounting "down to the penny" of the proceeds of each sale. ECF No. 416 at 42:14-45:1. Additionally, the Court ordered Mr. Grigsby to provide a full accounting of all attorney's fees he had received and, if any of those fees, came from credit cards belonging to Matthew Beasley, those funds were to be turned over. *Id*.

Mr. Grigsby's initial production, received January 20, 2023, fell woefully short of satisfying the Court's order. ECF No. 498 at pp. 6-19. However, because Mr. Grigsby appeared to have

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

devoted some effort to complying, the receiver corresponded with Mr. Grigsby, ultimately agreeing to a March 24, 2023 deadline for a supplemental response from Mr. Grigsby. ECF No. 498 at p. 6:10-17. However, Mr. Grigsby's second production likewise failed to meet this Court's order.

**C. The Motion for Order to Show Cause**

Following Mr. Grigsby's insufficient response to the Court's December 2022 order, the Receiver filed a Motion for Order to Show Cause Why Paula Beasley and Aaron Grigsby Should Not be Held in Contempt for Failure to Comply With This Court's Orders and Alternative Motion for Turnover (the "Motion for Order to Show Cause"). ECF Nos. 498, 499. The Motion for Order to Show Cause laid out for the Court, in significant detail the documents provided by Mr. Grigsby, advised the Court of what was missing, and further demonstrated that Mr. Grigsby and Mrs. Beasley had squandered hundreds of thousands of dollars which should have been turned over to the Receiver.

**D. The Hearing on the Motion for Order to Show Cause**

The Motion for Order to Show Cause came before this Court on August 25, 2023 (the "August 2023 Hearing"). During the August 2023 Hearing, the Court made it abundantly clear that more was needed to demonstrate that the $110,000 worth of attorney's fees Mr. Grigsby received and the proceeds of the sale of the Ferrari, Aston Martin, and G-Wagon was something other than Ponzi-scheme funds and not subject to turnover. ECF No. 568 at pp. 17:13-24; 19:10-24; 23:8-16; 28:7-14. Should Mr. Grigsby be unable to satisfy this directive, the Court ordered Mr. Grigsby to negotiate with the Receiver for the resolution of this dispute or to turn over the funds. ECF No. 568 at p. 28:7-14.[4]

> "I'm giving you now through [] September 29, nine full months to do something I ordered back in December. No more extensions. That's it. ***<u>You've had plenty of time</u>***."

ECF No. 568 at p. 25:1-3 (emphasis added).

---

[4] "Demonstrate the source of the funds to purchase the Mercedes was something other than the tainted funds. Presuming the source of the funds are tainted, then no later than that date, you must negotiate with the receiver regarding how the funds were used providing documentation. Not typed written on white pieced of paper. Either bills or records that can be independently verified of how that money was used."

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

During the August 2023 Hearing, the Court cautioned, in the event Mr. Grigsby failed to comply by September 29, contempt would follow and the Receiver could seek turnover of the assets in question.

> "If the parties either refuse or—to negotiate or no resolution is reached by the close of business on the 29th, the receiver may renew a turnover motion with Judge Silva, a motion for contempt with me (Magistrate Youchah), and any other motions such as disgorgement that the court – that the receiver deems appropriate. That is the order of the Court."

ECF No. 568 at p. 28:15-20.

On September 29, 2023, the Receiver received correspondence from Mr. Grigsby, through counsel Dean Kajioka, which purported to respond to the Court's order from the August 2023 Hearing.[5] However, the September 29, 2023 correspondence did very little to address the Court's concerns.[6] Additionally, the correspondence included, without reference or verification of any sort, apparent receipts for $110,500[7] in credit card payments made on credit cards held by Matthew Beasley which were received by the Grigsby Law Group.[8] Other than confirming that the payments were made on Mr. Beasley's credit cards, the documents submitted with Mr. Grigsby's September 29 Response failed to address any of the issues raised by the Court.[9] Instead, the September 29 Response asserted the very same arguments previously made by Mr. Grigsby, all of which had previously been rejected by the Court, and concluded with an apparent offer through which Mr. Grigsby would pay the Receiver $27,781.57 in exchange for a release of all claims against Mr. Grigsby.[10] In response, on October 2, 2023, counsel for the Receiver wrote to Mr. Kajioka wherein the Receiver rejected Mr. Grigsby's payment proposal, outlined for

---

5 **Exhibit 1**, Declaration of Kara Hendricks (the "Hendricks Decl.") at ¶ 10; **Exhibit 2**, September 29, 2023 Correspondence From Dean Kajioka (the "September 29 Response").

6 Exh. 1, Hendricks Decl. at ¶ 11.

7 Notably, the March 28, 2022 Stipulation called for $110,000 to be charged on Matthew Beasley's American Express Card. Yet, the documents produced with Mr. Grigsby's September 29 Response demonstrate that $100,000 was charged to Mr. Beasley's American Express and $10,500 was charged to a Visa card held by Mr. Beasley.

8 Exh. 1, Hendricks Decl. at ¶ 12.

9 Exh. 1, Hendricks Decl. at ¶ 13.

10 Exh. 1, Hendricks Decl. at ¶ 14.

Mr. Grigsby the numerous ways in which his response was deficient and advised that motions would be filed with the Court to address the outstanding issues.[11] As of the date of this Motion, the Receiver has not received any response.[12]

Given Mr. Grigsby's failure to comply with the Court's orders, the Receiver thereafter filed a Motion to Find Aaron Grigsby in Contempt for Failure to Comply With This Court's Orders (the "Motion for Contempt"). This Motion follows.

## III. LEGAL ARGUMENT

After finding Mr. Grigsby's role in the conveyance of Receivership assets concerning, this Court ordered Mr. Grigsby to demonstrate for the court that the funds he Received and the proceeds he distributed from the sale of the three vehicles to be something other than Receivership Assets. However, Mr. Grigsby has unquestionably failed to do so. Now, in conjunction with the Receiver's pending Motion for Contempt, the Receiver comes before this Court seeking turnover of (a) all amounts received by Mr. Grigsby as attorney's fees; (b) an amount equal to the value of the proceeds of the sale of the G-Wagon; (c) an amount equal to the proceeds from the sale of the Ferrari; and (d) an amount equal to the funds received from the sale of the Aston Martin. In total, the Receiver requests this Court order the turnover of $405,302.40 as set forth below:

| **Vehicle** | **Purported Proceeds** |
|---|---|
| 2020 Mercedes G63 G-Wagon | $170,000.00 |
| 2016 Ferrari 488 GTB | $55,563.15 |
| 2020 Aston Martin Vantage | $69,239.25 |
| **Attorney's Fees Source** | **Amount** |
| American Express 1005 | $100,000.00 |
| Visa 1540 | $10,500.00 |
| **TOTAL** | **$405,302.40** |

"Courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Indeed, Courts "are universally

[11] Exh. 1, Hendricks Decl. at ¶ 15.

[12] Exh. 1, Hendricks Decl. at ¶ 16.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and <u>*submission to their lawful mandates*</u>." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991) (quoting *Anderson v. Dunn*, 19 U.S. 204, 5 L. Ed. 242 (1821)) (emphasis added). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditions disposition of cases.'" *Id.* (quoting *Link* v. *Wabash R. Co.*, 370 U.S. 626, 630-631, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962)). The most prominent power is the contempt sanction, "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S. Ct. 2455 (1980). In exercising their inherent authority to enforce compliance, courts routinely find contempt in instances where a party fails to comply with turnover orders. *See e.g. Armstrong v. Guccione*, 470 F.3d 89, 100-02 (2d Cir. 2006) (incarcerating a corporate officer found to be in contempt of a court's turnover order for failing and/or refusing to turnover corporate records and assets); *see also Commodity Futures Trading Comm'n ex rel. Kelley v. Skorupskas*, 605 F. Supp. 923, 945, fn 23 (E.D. Mich. 1985) (In an action arising from a Ponzi scheme, the defendant was found to be in contempt of the court's order and the receivership order because the defendant established a new operation in the basement of her parents' home in which she developed clubs designed to circumvent the court's order. Additionally, the receiver permitted the defendant to retain a Mercedes Benz for her own personal use. However, immediately thereafter, the defendant used the Mercedes as collateral for a loan, in violation of the court order.); *see also SEC v. Res. Dev. Int'l*, 291 F. App'x 660, 661 (5th Cir. 2008) (In an action by the SEC arising out of an illegal Ponzi scheme, a non-party was found in contempt of the court's order to turn over assets to the receivership by refusing to either turn over the assets or to provide an accounting of the same.).

Disgorgement is an equitable remedy available to federal courts for the benefit of investors. *Liu v. S.E.C.*, 140 S. Ct. 1936, 1947, 207 L. Ed. 2d 401 (2020). Additionally, "[f]ederal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds and (2) does not have a legitimate claim to those funds. *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998); *see also SEC v. Colello*, 139

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

F.3d 674, 676 (9th Cir. 1998) ("This court has declared 'that federal courts have inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws.' [] This broad power extends over this parties to the action.").

Here, Mr. Grigsby violated the terms of the Asset Freeze, the Appointment Order and thereafter failed to Comply with the Court's orders stemming from the same. The plain language of the Appointment order is clear: "[a]ll persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver" and "[t]he Receiver is authorized to take immediate control of all personal property of the Receivership Defendants[.]" ECF No. 88 at ¶¶ 15-22. Indeed, further supporting the Receiver's position is the fact that the Appointment Order expressly defines "Receivership Property" as:

> "all property interests of the Receivership Defendants, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly."

ECF No. 88 at ¶ 7(A).

The record in this case demonstrates Mr. Grigsby's undeniable knowledge of the orders and evinces a knowing and willful violation thereof.

**A. Attorney's Fees**

As noted above, Mr. Grigsby represented both Mr. and Mrs. Beasley in the Beasley Divorce. Through the Beasley Divorce, the parties agreed:

> **IT IS HEREBY FURTHER STIPULATED** that as part of his agreement to indemnify Paula Beasley, Matthew Beasley agrees to provide her with funds for her future civil and/or criminal defense. Matthew Beasley hereby authorizes a charge of $110,000.00 on his American Express card to assist Paula with her defense. Payment for any charges on his American Express card subsequent to March 4, 2022, will be the sole responsibility of Matthew Beasley;

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

During the December 2022 Hearing, the Court took issue with this language, stating:

> "Doesn't the divorce decree say that Mr. Beasley is going to pay those – that American Express bill for $110,000? And isn't Mr. Beasley's source of funds the alleged Ponzi scheme, Mr. Grigsby? You need to be very careful about what you're saying today, sir, because you have duties to this Court…[Paula Beasley] disposed of her property when you knew [] there was criminal and civil proceedings coming."

ECF No. 416 at p. 28:3-19.

With this, the Court ordered—in December 2022—that Mr. Grigsby turnover all attorney's fees received from Matthew Beasley's credit cards. ECF No. 416 at p. 43:12-17. Yet, approximately ten (10) months later, Mr. Grigsby has failed to surrender even a single dollar. Mr. Grigsby's willful violation of the Court's directive alone is sufficient to warrant turnover.

In circumstances mirroring those at issue in this case, an attorney has an affirmative duty to act in a manner that adheres to, and upholds, the terms of a court's order. In fact, this Court has previously found, in a situation strikingly similar to this, "[a]n attorney is an 'officer of the court' who, by virtue of his or her professional position, undertakes certain 'special duties . . . to avoid conduct that undermines the integrity of the adjudicative process.'" *S.E.C. v. Fujinaga and MRI Int'l, Inc.*, No. 2-13-cv-1658-JCM-CWH, 2020 WL 3050713 at *3 (D. Nev. June 8, 2020) (quoting *F.T.C. v. Network Servs. Depot, Inc.*, 617 F.83d 1127 (9th Cir. 2010)). In *Fujinaga*, this Court considered whether funds paid to a law firm by a relief defendant in an action to recover ponzi scheme funds were subject to the terms of a temporary restraining order and preliminary injunction and emphasized the attorney's obligation to ensure compliance with a court's order. *Fujinaga*, 2020 WL 3050713 at *3. Ultimately the court found that the firm receiving the funds had an affirmative obligation to ensure those funds were not subject to the terms of the court's order and by failing to do so, the firm was in contempt of the court's order. *Id.*

During the December 2022 Hearing, this Court recognized Mr. Grigsby's obligations and stated:

> "If she's so flighty that she can't pay a gas bill, **then you have a fiduciary duty and a duty as an attorney to make sure that she's not violating the law**. And she sells a car, she signs a bill of sale on the 30th of April – not on the 30th of March – the 30th of April after you have written and said these

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

> words: 'In all candor, Mrs. Beasley is hoping – hoping to sell the 2020 Mercedes and apply the proceeds to living and litigation.' In all candor, hoping. She had sold it. You made a material misrepresentation to the SEC in writing that you provided to the Court. And you say you know both these vehicles are subject to the TRO. One is the Range Rover. But the other is the Mercedes. You say that. And yet, four days later, you let her sign a bill of sale, sir. You have a problem. If she does not, you do. And I am concerned about that. These are violations – knowing violations of federal court orders for a licensed attorney. That's a problem, sir, and I think you need to be really careful."

ECF No. 416 at p. 28:20-29:12 (emphasis added).

Once again, Mr. Grigsby's failure to ensure the funds he had received were untainted is, without more, sufficient to warrant a turnover order. Yet, even looking further, Mr. Grigsby would still not be entitled to retain the attorney's fees in question as he failed to seek approval from the Receiver or this Court to retain those fees.

It is well settled that a district court "may, within its discretion, forbid or limit payment of attorney fees" from frozen assets. *Commodity Futures Trading Comm'n v. Noble Metals, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995). Indeed, courts of the Ninth Circuit have regularly denied requests for payment of attorneys' fees out of frozen assets. *See e.g. FTC v. Digital Altitude, LLC*, No. LA CV18-00729 JAK (MRW), 2018 WL 4944419, at *6-9 (C.D. Cal. July 26, 2018) (denying request for payment of attorneys' fees out of frozen assets finding the evidence presented did not support directing the Receiver to release additional frozen funds to pay for the defendant's legal fees); *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989); *Commodity Futures Trading Comm'n v. Co Petro Mktg. Grp., Inc.*, 700 F.2d 1279, 1282 (9th Cir. 1983) (affirming the district court's order requiring a law firm to return $60,000 to a receiver). This is because "[w]hen funds are linked directly to the fraud, it would frustrate the purpose of the regulation to allow the defendants to use those funds for attorneys' fees." *United States CFTC v. Wilson*, No. 11cv1651 WQH (BLM), 2011 U.S. Dist. LEXIS 146153, at *7 (S.D. Cal. Dec. 20, 2011) (citing *CFTC v. Co Petro Marketing Group*, 680 F.2d 573, 584 (9th Cir. 1982)).

Here, Mr. Grigsby, having represented both Mr. and Mrs. Beasley in the Beasley Divorce was undeniably aware of the facts surrounding Mr. Beasley's arrest and further knowledgeable that

Mr. and Mrs. Beasley's source of income was the alleged Ponzi scheme. Thus, notwithstanding the fact that Mr. Grigsby drafted, signed, and filed the stipulation calling for his own payment in tainted funds, Mr. Grigsby was, at a bare minimum, required to seek approval from this Court to retain the funds he received. He did not.

Based on any of the foregoing, this Court can readily determine that Mr. Grigsby is not entitled to retain the $110,500.00 he received. There is no question that the funds Mr. Grigsby received as attorney's fees were derived from the alleged Ponzi scheme. Further, there is no question that Mr. Grigsby was aware of this fact. Yet, Mr. Grigsby knowingly accepted and retained those funds and further ignored Court orders calling for the turnover of the same. As such, the Receiver requests this Court order Mr. Grigsby to turnover all attorney's fees received from payments made through charges on Matthew Beasley's credit cards, totaling $110,500.00.

**B. Mercedes Benz G-63 G-Wagon**

As noted above, Mr. Grigsby played a fundamental role in Mrs. Beasley's disposition of the G-Wagon, a Receivership Asset valued at more than $250,000.00 at the time of sale.[13] Mr. Grigsby's involvement began with the Beasley Divorce wherein Mr. Grigsby drafted, filed, and signed court documents stating that the G-Wagon would be sold and the proceeds held "until the resolution of all pending legal matters." Despite acknowledging that the proceeds from the sale of the G-Wagon would be at issue in future litigation, Mr. Beasley thereafter facilitated the sale of the G-Wagon to a third-party. After purportedly transferring the vehicle to the third-party, Mr. Grigsby sent the April 26, 2022 email purporting to seek permission from the SEC to sell the G-Wagon, despite the fact that the vehicle was already sold.

The sale of the G-Wagon purportedly netted $170,000.00 which was allegedly paid as $100,000 in cash and two checks totaling $70,000.00. Despite this Court's orders for an accounting of the proceeds and the turnover of all remaining amounts, the Receiver has received nothing. As such, the Receiver requests this Court order Mr. Grigsby to turn over $170,000.00, the equivalent of the amount that the G-Wagon purportedly sold for.

[13] *See* ECF No. 333 at p. 8.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

**C. The Ferrari**

Through the records produced, the Receiver has been able to determine that Mrs. Beasley sold the Ferrari to Vegas Auto Gallery on March 21, 2022 and received a check in the amount of $55,563.15.[14] The records further demonstrate that amount was deposited into Mr. Grigsby's IOLTA account and one half of the Ferrari proceeds was thereafter transferred to Garret Ogata purporting to be for the representation of Matthew Beasley.[15] With respect to the disposal of the Ferrari, the Court noted:

> "I note that, Mr. Grigsby, you provided a copy of the retainer agreement, which shows a fee of $110,000 earned on retention that Mr. Beasley was supposed to pay in accordance with the stipulation entered into the divorce proceedings plus half of the value of the Ferrari that was sold in March of 202[2], which I understand was before the Court's – this process started but would not prevent a fraudulent conveyance action from being brought for turnover of the funds from that – the sale of that Ferrari unless it could be demonstrated by [Mr.] Grigsby that the source of the funds for that Ferrari was something other than the Ponzi scheme, which I find hard to believe would occur."

ECF No. 568 at p. 17: 13-24.

Here, Mr. Grigsby has done nothing to demonstrate that the funds that were deposited into his account from the sale of the Ferrari were untainted and has failed to turnover the same. As such, the Receiver requests this Court enter an order that Mr. Grigsby turnover the entire amount received from the sale of the Ferrari, $55,563.15.

**D. The Aston Martin**

The third vehicle which has, for all intents and purposes, vanished, is the Aston Martin.

> "The Aston Martin. That is Mrs. Beasley's declaration, Exhibit Number 8, ECF Number 501-8. There's a check from Vegas Auto Galley to Mrs. Beasley, which was then deposited into Mr. Grigsby's IOLTA account. Mrs. Beasley's declaration then provides a description of the payments made with the sale, proceeds through exhibits attached to her declaration . . . The problem, however, is that what exactly the charges are for on those credit cards are unknown. So we don't know what the funds

[14] ECF No. 498 at p. 11.

[15] ECF No. 498 at p. 13-14.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

> were used for . . . So whether the payment of those bills with the amount from the – from the Aston Martin are living expenses or are – that would have been approved, had they been negotiated with the receiver, or are subject to a fraudulent conveyance action because they were paid before the receiver was appointed but after the asset freeze was in place – but even if it was before the asset freeze was in place, the fraudulent conveyance action can be brought."

ECF No. 568 at p. 22:9-237.

Despite clear orders to demonstrate how, and for what, the funds were used, or alternatively, demonstrate that the purchase of the Aston Martin was with funds other than the Ponzi scheme funds (ECF No. 568 at p. 23:8-16), Mr. Grigsby has done nothing. Thus, what the Receiver—and this Court—are left with is the fact that Mr. Grigsby knowingly accepted funds derived from the sale of a vehicle purchased with tainted funds and that Mr. Grigsby knowingly dissipated those funds without approval from this Court or the receiver. As such, the Receiver requests this Court order Mr. Grigsby to turn over the entire amount received from the sale of the Aston Martin, $69,239.25.

Although the Receiver has pursued the recovery of these assets for more than a year, the Receiver has gained nothing other than an understanding of how Mr. Grigsby facilitated the dissipation of more than $400,000 worth of Receivership Assets despite an undeniable duty—as an office of the Court—to comply with Court orders. Indeed, the mis-dealings in this case and numerous unanswered questions arising therefrom have only grown more apparent as time has passed. Indeed, despite lacking a full understanding of where the funds were dissipated, the Receiver—and this Court—have come to conclusively understand:

(a) Mr. Grigsby facilitated, through the Beasley Divorce, payment to himself of $110,500.00 dollars on Matthew Beasley's credit cards;

(b) Facilitated the sale of the G-Wagon despite an admitted knowledge that the G-Wagon was subject to the Asset Freeze;

(c) Accepted, possessed, and controlled and dissipated 100% of the funds derived from the sale of the Ferrari and thereafter distributed one-half of the same to attorney Garret Ogata;

(d) Accepted, possessed, and controlled and dissipated 100% of the funds derived from the sale of the Aston Martin; and

(e) Permitted and/or guided Paula Beasley in the dissipation of nearly $300,000 of funds which unquestionably belonged to the Receivership Estate.

In total, Mr. Grigsby, as counsel for Mrs. Beasley, intricately involved in the dissipation of more than $400,000 worth of Receivership Assets despite a clear understanding of the impropriety in doing the same. As such, an order directing the turnover of $405,302.40 is warranted.

**E. The Receiver Should Be Awarded the Fees and Costs Incurred to Date**

Mr. Grigsby's dilatory actions have forced the Receiver to expend significant resources sifting through haphazardly produced documents only to be forced to move this Court for intervention on three separate occasions. Having reached the end of its rope, this Court can see that Mr. Grigsby has played a significant role in the diminution of the Receivership Estate through his dealings with Paula Beasley and through his refusal to comply with this Court's orders. As such, the Receiver requests, in addition to any other sanction the Court deems fit, an award of all attorney's fees and costs incurred in pursuing this matter against Mr. Grigsby.[16]

## IV. CONCLUSION

The issues before this Court have been thoroughly briefed, argued, and ruled upon. The Court has seen what it needs to see. The parties, and most specifically, the Receiver, have spent countless hours parsing through documents attempting to piece together the puzzle Mr. Grigsby created. But, to no avail.

The funds that Mr. Grigsby received and those that he passed through his account, were subject to the Receivership and, unless he could prove otherwise, would be subject to turn over. Demonstrating a presumption of good faith, this Court afforded Mr. Grigsby every opportunity conceivable to achieve compliance, but Mr. Grigsby continued to fail. Indeed, Mr. Grigsby even failed to heed this Court's warning during the August 2023 Hearing that should he fail to comply with the orders stated therein, a finding of contempt would follow.

/ / /

/ / /

[16] Should this Court grant the Receiver's requests, the Receiver requests an opportunity to supplementally submit a memorandum demonstrating the fees and costs actually incurred to date.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

Now that Mr. Grigsby has exhausted his last chance at compliance, the Receiver respectfully requests, for the foregoing reasons, this Court enter an order:

1) Directing the immediate turnover of $405,302.40, representing (a) the attorney's fees received by Mr. Grigsby; (b) the proceeds from the sale of the G-Wagon; (c) the proceeds from the sale of the Ferrari; and (d) the proceeds from the sale of the Aston Martin;

2) Awarding the Receiver the attorney's fees and costs incurred to date in pursuing this matter against Mr. Grigsby; and

3) For such other and further relief this Court deems just and proper.

DATED this 9th day of October, 2023.

**GREENBERG TRAURIG**, LLP

By: /s/ Kara B. Hendricks
KARA B. HENDRICKS, Bar No. 07743
KYLE A. EWING, Bar No. 014051
CHRISTIAN T. SPAULDING, Bar No. 014277

JARROD L. RICKARD, Bar No. 10203
KATIE L. CANNATA, Bar No. 14848
**SEMENZA KIRCHER RICKARD**

DAVID R. ZARO*
JOSHUA A. del CASTILLO*
MATTHEW D. PHAM*
**admitted pro hac vice*
**ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP**

*Attorneys for Receiver Geoff Winkler*

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002

**CERTIFICATE OF SERVICE**

I hereby certify that, on the **October 9, 2023**, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of filing will be served on all parties by operation of the Court's CM/ECF system, and parties may access this filing through the Court's CM./ECF system and by serving via email by United States first class mail, postage pre-paid on the parties listed below:

Aaron Grigsby
aaron@grigsbylawgroup.com
GRIGSBY LAW GROUP
2880 W. Sahara Avenue
Las Vegas, Nevada 89102

Dean Kajioka, Esq.
attorneys@kajiokalawlv.com
KAJIOKA & ASSOCIATE
8350 W. Sahara Avenue, Suite 110
Las Vegas, Nevada 89117
***Counsel for Aaron Grigsby***

*/s/ Evelyn Escobar-Gaddi*
An employee of GREENBERG TRAURIG, LLP

| INDEX OF EXHIBITS | |
|---|---|
| **EX NO.** | **DESCRIPTION** |
| **1** | Declaration of Kara B. Hendricks, Esq. |
| **2** | September 29, 2023 Correspondence From Dean Kajioka |
| **3** | October 2, 2023 Correspondence from Kara B. Hendricks to Dean Kajioka |

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773 Facsimile: (702) 792-9002