KARA B. HENDRICKS, Bar No. 07743
hendricksk@gtlaw.com
KYLE A. EWING, Bar No 014051
ewingk@gtlaw.com
**GREENBERG TAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

JARROD L. RICKARD, Bar No. 10203
jlr@skrlawyers.com
KATIE L. CANNATA, Bar No. 14848
klc@skrlawyers.com
**SEMENZA KIRCHER RICKARD**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803
Facsimile: (702) 920-8669

DAVID R. ZARO*
dzaro@allenmatkins.com
JOSHUA A. del CASTILLO*
jdelcastillo@allenmatkins.com
MATTHEW D. PHAM*
mpham@allenmatkins.com
*admitted *pro hac vice*
**ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP**
865 South Figueroa Street
Suite 2800
Los Angeles, California 90017-2543
Telephone: (213) 622-5555
Facsimile: (213) 620-8816

*Attorneys for Geoff Winkler Receiver for J&J Consulting Services, Inc., J&J Consulting Services, Inc., J and J Purchasing LLC, The Judd Irrevocable Trust, and BJ Holdings LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW WADE BEASLEY; et. al.<br><br>Defendants;<br><br>THE JUDD IRREVOCABLE TRUST; et. al.<br><br>Relief Defendants. | Case No. 2:22-cv-00612-CDS-EJY<br><br>**TENTH QUARTERLY REPORT OF RECEIVER GEOFF WINKLER** |

. . .

. . .

. . .

Geoff Winkler of American Fiduciary Services, LLC (the "Receiver"), the Court-appointed receiver for Defendants J&J Consulting Services, Inc., an Alaska corporation; defendant J&J Consulting Services, Inc., a Nevada corporation; and J and J Purchasing LLC (collectively, the "J&J Entities"), as well as the Wells Fargo Interest on Lawyers' Trust Account ending in 5598 in the name of defendant Beasley Law Group PC, and Relief Defendants the Judd Irrevocable Trust; PAJ Consulting Inc.; BJ Holdings LLC; Stirling Consulting LLC; CJ Investments, LLC; JL2 Investments, LLC; Rocking Horse Properties, LLC; Triple Threat Basketball, LLC; ACAC LLC; Monty Crew LLC, and the assets of Defendants and Relief Defendants Matthew Wade Beasley, Jeffrey J. Judd, Christopher R. Humphries, Shane M. Jager, Jason M. Jongeward, Denny Seybert, Roland Tanner, Larry Jeffery, Jason A. Jenne, Seth Johnson, Christopher M. Madsen, Richard R. Madsen, Mark A. Murphy, Cameron Rohner, Warren Rosegreen, and Anthony Michael Alberto, Jr. (collectively, the "Receivership Defendants" or "Receivership Entities")[1], submits this Tenth Quarterly Report ("Report") for the period from July 1, 2024 through September 30, 2024 ("Reporting Period") in accordance with the Orders of this Court and Local Rule 66-4(b).

I. **INTRODUCTION**

As reflected in the Court's record and discussed further in this Report, this Court authorized, empowered, and directed the Receiver to, among other things: (1) assume exclusive authority and control over the Receivership Entities; (2) conduct such investigation and discovery as necessary to identify and locate outstanding assets of the Receivership Entities; and (3) preserve and prevent the dissipation of such assets.

As detailed herein, since the entry of this Court's Order Appointing Receiver (ECF. No. 88) and Order Amending Receivership Order (ECF No. 207) (collectively, the "Appointment Order"), the Receiver has made substantial progress, particularly in connection with assuming control over the Receivership Entities, identifying and marshaling their assets for the benefit of the receivership estate and its creditors, including investors in the alleged Ponzi investment

---

[1] On July 29, 2022, this Court entered an order expanding the original receivership order to apply to additional defendants (*see* ECF No. 207).

scheme which precipitated the Receiver's appointment and the forensic accounting efforts. However, because the Receiver's work is ongoing, the conclusions presented in this Report are presently deemed to be preliminary and are subject to modification or amendment as more information becomes available to the Receiver.  As of the date of this Report, the Receiver's investigation and accounting are still in process and he has not arrived at any definitive conclusions, including as to certain allegations made by the Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") in the above-entitled matter.

II.     **SUMMARY OF THE RECEIVER'S OPERATIONS (LR 66-4(b)(1))**

   A.     THE RECEIVER'S INVESTIGATION AND MARSHALLING OF ASSETS

During the Reporting Period, the Receiver and his professionals continued to work with certain Defendants, their respective counsel, and third parties believed to be in possession of Receivership Entity assets or records, to arrange for the turnover of assets, as well as to recover critical documentation relating to the business and financial activities of the Receivership Entities (including bank statements and other financial documents), communications with investors, and other information pertinent to the Receiver's duties. Since the employment of special counsel and consultant for the purposes of prosecuting litigation against Wells Fargo Bank ("Wells Fargo") (see ECF Nos. 470 and 471)[2], the Receiver has worked diligently with his special litigation counsel to assemble critical evidence in support of the Receiver's claims, and otherwise assist in the prosecution of the claims against the banking institution ("Wells Fargo Action") including the preparation of an expert report as further detailed below.

The Receiver and his counsel have likewise continued to work to obtain full compliance with the Appointment Order, including, but not limited to, with respect to the turnover of funds transferred by the Receivership Defendants to attorneys in the pre-receivership period.  Although the majority of attorneys and defendants have complied with the Receiver's requests and this Court's orders, during a previous reporting period this Court entered orders finding Aaron

---

[2] *See also* ECF Nos.  455, 457, 458, 459, 460, 480, 482.

Grigsby in contempt and ordering him to turnover $405,302.40 to the Receiver and further indicated it was inclined to grant fees and costs associated with the Receiver's efforts that ultimately led to the contempt findings (ECF Nos. 671, 621, 625). Grigsby has filed an appeal with the Ninth Circuit which has been fully briefed. Additionally, the Receiver recently filed an Application for Judgment Debtor's Examination and Discovery in Aid of Execution Against Aaron Grigsby (ECF No. 719/720).

The Receiver continues to obtain and review documents provided by the Receivership Defendants in accordance with stipulations on file with the Court. Defendant Chris Humphries continues to timely submit required documentation. Other Receivership Defendants are not currently in compliance with existing stipulations. The Receiver will continue to press these parties to make timely productions of all required information but reserves the right to petition the Court for further instructions should additional unwarranted production delays continue.

As detailed in Section III, below, the Receiver has also successfully secured real and personal property.

The Receiver's ongoing investigation has resulted in the discovery of additional assets, which the Receiver believes can be successfully monetized for the benefit of the receivership estate. The Receiver and his counsel continue to work on valuations and negotiations for each of these assets, as well as investigating other assets of potential value to the estate.

### 1. Ongoing Discovery and Document Recovery Efforts

During the Reporting Period, the Receiver served additional document subpoenas and undertook continued follow-up efforts in connection with multiple outstanding subpoenas, notably to Wells Fargo. The Receiver's follow-up efforts required extensive secondary document review efforts, followed by specific, targeted discussions – directly and through counsel – with parties responding to existing subpoenas or making supplemental document productions. As a result of his efforts, the Receiver continues to secure new or additional materials from Wells Fargo and other financial institutions relating to the business and financial activities of the Receivership Entities. As previously noted, these efforts have yielded thousands of pages of additional materials for the Receiver's review and analysis which was necessary for the

Receiver's expert report in the Wells Fargo Action and will be utilized as part of the claims process herein.

### 2.     Recent Asset Recovery Efforts.

As reflected in the Receiver's prior submissions, the Receiver's efforts to identify and recover available assets for the benefit of the receivership estate have been remarkably successful. As of the date of this Report, the Receiver has recovered assets worth an estimated aggregate of as much as $196,316,960. His efforts to identify and recover additional outstanding assets continue. Among other things, the Receiver has identified at least four significant insurance policies held for the benefit of one of the individual defendants, which policies were purchased and paid for with funds diverted from investors.

Earlier this year, the Receiver submitted turnover demands to Mass Mutual, Forethought Insurance, and Prudential Insurance for the surrender value of those policies. Based on the information presently available to the Receiver, he believes the aggregate surrender value of the policies in issue to be more than $3 million. As of the date of this report, Mass Mutual has turned over the value of the policies it was administering, totaling approximately $483,000. Forethought Insurance has committed to making the requested turnover and the Receiver is in discussions regarding the mechanics of the anticipated turnover, as some of the company's policies and procedures have proved to be cumbersome given the nature of the turnover. Nonetheless, the Receiver remains confident that the turnover will be forthcoming in the near term.

The Receiver's efforts to streamline the turnover process with Prudential Insurance has been met with unnecessary procedural obstructionism. The Receiver has authorized his counsel to make a final effort with Prudential Insurance to facilitate the turnover but, in the event that Prudential Insurance continues to be un insufficiently responsive, he reserves the right to petition this Court for an order to show cause re: civil contempt for violation of the Appointment Order.

. . .

. . .

. . .

. . .

### B.   INVESTOR AND CREDITOR COMMUNICATION

The Receiver has maintained and regularly updated the receivership website (http://www.jjconsulting-receivership.com) for investors and creditors to access information regarding this case. Additionally, the Receiver and his professionals have continued to review investor lists provided by the Receivership Defendants and have collected additional registration forms directly from investors. An updated investor list will be submitted to the court, in camera, contemporaneously with the submission of this Report. The total number of investors identified by the Receiver is 1,149[3]. Any investors that have not yet registered to receive updates on the receivership may do so by visiting www.jjconsulting-receivership.com/register. The Receiver's team will continue to send monthly updates regarding the receivership to all registrants.

### C.   THE RECEIVER'S FORENSIC ACCOUNTING ACTIVITIES

As of the date of this report, the Receiver continues a comprehensive review of 606 bank and brokage accounts covering the five-year pre-receivership period to date. The number of accounts decreased from 616 in the prior reporting period due to this review and the identification of non-related accounts and entities. The Receiver's team review includes compiling and digitizing statements and supporting materials, analyzing, and categorizing digitized bank transactions, bank statements, check images, and wire details, amongst other bank documentations, and then comprehensively compiling audited transactions into an accounting environment with a unitary chart of accounts.

Of the 606 accounts identified to date, 95.8% have been reviewed and analyzed, 1.3% are in process and 2.8% are pending additional documentation to proceed. The Receiver's forensic accounting team has identified investor flows and transfers between defendants in 173 of these accounts and is using this data set as the basis for the findings used to prepare the Forensic Accounting Report. The Receiver's forensic accounting team is currently cross-referencing all bank data with defendants' investor lists, investor questionnaires and interviews with defendants and has completed interviews with 13 of the 16 named defendants.

---

[3] This number is inclusive of self-reported information from investors and does not currently contain forensic accounting estimates of new investors.

In total, the Receiver believes that over 1,250 investors invested over $530 million in the J&J investment scheme and anticipates over 900 claims totaling in excess of $240 million.

As noted in prior reports, in addition to facilitating his identification and recovery of available assets, the Receiver also anticipates that his forensic accounting will provide a foundation for an eventual claims process in this matter and enable him to identify with improved accuracy which investors lost money because of their investments in the Receivership Entities, and which did not. The Receiver will address a prospective claims process in a future report.

### D.   ADDITIONAL RECEIVERSHIP ADMINISTRATION ACTIVITIES

#### 1.   Personal Property Sales

The Car Consultant, Inc. is employed by the Receiver to safely store and sell personal property of the receivership. No personal property sales were closed during the Reporting Period.

#### 2.   Real Property Sales

This Court has granted the Real Property Sale Motion (ECF No. 224), and the Receiver was given authorization from the court to employ professionals to assist in the sale of real properties (ECF No. 302). Properties in Nevada are being listed by Joe DiRaffaele, and properties in California and Utah are being listed by Todd Wohl. The Receiver was given authorization to employ a new professional, Zar Zanganeh, for the sale of the real property at 16 Paradise Valley (ECF No. 626), which was finalized in the Reporting Period. After closing costs, the net proceeds were $2,645,577.87.

### III.   INVENTORY OF ASSETS AND ESTIMATE OF VALUE (LR 66-4(b)(2))[4]

From July 1, 2024, to September 30, 2024, the Receiver was able to recover approximately $2,872,981.59 in cash. The Receiver holds multiple types of assets ranging in value at the end of the Reporting Period. These include $12,951,293 in real property, $752,622 in personal property, $100,551,889 in estimated litigation value, and $11,178,427 in private equity investments.

. . .

---

[4] This is not an all-inclusive list of the real properties to which the Receiver has secured possession during this period. The Receiver has secured possession of additional properties that are not public at this time because they are inhabited or cannot be publicly disclosed for other privacy reasons.

The Standardized Fund Accounting Report for the Reporting Period is attached to this report as **Exhibit A**.

### IV. SCHEDULE OF RECEIVER'S RECEIPTS & DISBURSEMENTS (LR 66- 4(b)(3))

See **Exhibit B**, **Exhibit C**, and **Exhibit D** for complete lists of transactions.

In addition to the foregoing, please see the Standardized Financial Accounting Report attached as **Exhibit A**, and the Summary Cash Flow Statement and Summary Balance Sheet attached as **Exhibit E.**

### V. CURRENT AND FUTURE LITIGATION

#### A. *Ninth Circuit Appeal Relating to Aaron Grigsby*

As referenced in prior status report, attorney Aaron Grigsby filed an appeal with the Ninth Circuit, Case No. 24-628, relating to this Court's order finding him in civil contempt for failing to comply with court orders and requiring the turnover of Receivership Assets ("Grigsby Appeal"). The Receiver filed an answering brief on August 23, 2024 and Mr. Grigsby filed a reply brief on September 16, 2024. The Grigsby Appeal is fully briefed.

Mr. Grigsby also filed a motion to stay this Court's December 28, 2023 Order. On May 23, 2024, the Ninth Circuit denied the motion to stay.

Mr. Grigsby has yet to turnover any funds to the Receiver and/or pay the fines imposed by the Court that continue to accrue due to his noncompliance. As a result of the same, the Receiver recently filed an Application for Judgment Debtor's Examination and Discovery in Aid of Execution Against Aaron Grigsby (ECF No. 719/720).

#### B. *Wells Fargo Litigation*

On May 24, 2023, the Receiver brought suit against Wells Fargo Bank. The Receiver claims that Wells Fargo aided and abetted Beasley's fraud and his breach of fiduciary duties under the Beasley Law Firm IOLTA. The Receiver alleges that Wells Fargo had knowledge of the fraud but nonetheless continued to substantially assist Beasley. Wells Fargo filed an answer to the Complaint denying the claims. Mediation sessions with Wells Fargo were held October 24, 2023, and February 29, 2024. No agreement was reached. The case is now nearing the end of the . . .

discovery phase, with depositions actively being taken and expert reports exchanged. The case schedule indicates a 2025 trial.

### C.   Future Third Party Litigation and Clawback Actions

The Receiver continues to evaluate additional avenues to recover funds for the Receivership Estate and continues to investigate potential targets where third party litigation and/or claw-back proceedings would be appropriate. As additional information is reviewed and developed and third parties identified, the Receiver will update the Court regarding his findings and intended next steps.

### D.   Monitoring of Proceedings Brought Against Named Defendants

At various times throughout this proceeding, the Receiver has been notified of actions brought against several of the Individual Defendants seeking recovery based on claims similar to those asserted by the Commission herein. In such circumstances, the Receiver has reached out the attorneys involved and requested those matters be stayed based on the preliminary injunction order appointment order entered herein. At this juncture, the parties involved have worked cooperatively with the Receiver to ensure stays in other proceedings.

## VI.   CONTEXT FOR THE RECEIVER'S APPLICATION FOR PAYMENT OF FEES AND EXPENSES FOR THE REPORTING PERIOD

The Receiver has addressed the high workload needed in previous status reports and encourages review of the previous reports for additional details. In summary, there is an unprecedented lack of data available to aid in the forensic accounting in this case. The J&J Enterprises had essentially no books of account nor database that identifies investors and provides information on the amount and timing of their "investments" and any distributions returning funds to investors; and there is not a dedicated operational or "clearing" account through which investor funds flowed. American Fiduciary Services was required to obtain documents from primary sources before the Receiver could understand the structure of the J&J side of the picture before forensic accounting could meaningfully start.

. . .

. . .

Although the Receiver has completed a tremendous amount of work on the forensic accounting, there is work remaining, as described in Section II.C above. The Receiver estimates that the forensic accounting report will be completed by no later than March 31, 2025. While the Receiver anticipates that expenses associated with the accounting will begin to taper off in the next reporting period, the forensic accounting and associated expert services for the Wells Fargo Litigation will continue to be a material expense for the Estate.

### VII.   RECOMMENDATION OF THE RECEIVER (LR 66-4(b)(5))

At this juncture, the Receiver initially concluded that J&J Consulting was not operating a viable business and was quickly dissipating investor funds. So that the Receiver can continue to identify assets and claims and pursue them for the benefit of the receivership estate, the Receiver recommends that the receivership continue.

### VII.   CONCLUSION AND REQUESTED RELIEF

Assuming the Court authorizes the Receiver to undertake the actions recommended herein, as well as to continue those actions provided for in the Appointment Order, any amendments thereto and any subsequent orders, the Receiver proposes submitting further interim reports to this Court, addressing his progress, findings, final conclusions, and additional recommendations, approximately every 90 days. Accordingly, and based on the foregoing, the Receiver respectfully requests that the Court enter an order:

1. Accepting this Report;

2. Authorizing the Receiver to continue to administer the Receivership Entities and their estate in accordance with the terms of the Appointment Order;

3. Authorizing the Receiver to undertake the recommendations presented herein, including a continued engagement of those professionals he deems necessary for the proper administration of the Receivership Entities and their estate; and

. . .

. . .

. . .

. . .

4. Providing such other and further relief as the Court deems necessary and appropriate.

I, Geoff Winkler, verify under penalty of perjury that the statements made in the foregoing report are true and correct to the best of my knowledge.

DATED this 6th of November, 2024

_____
Geoff Winkler, Receiver

Submitted this 6th day of November, 2024.

**GREENBERG TRAURIG**, LLP

/s/ Kara B. Hendricks
_____
KARA B. HENDRICKS, Bar No. 07743
KYLE A. EWING, Bar No. 014051

JARROD L. RICKARD, Bar No. 10203
KATIE L. CANNATA, Bar No. 14848
SEMENZA KIRCHER RICKARD

DAVID R. ZARO*
JOSHUA A. del CASTILLO*
MATTHEW D. PHAM*
*admitted pro hac vice
ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

*Attorneys for Receiver Geoff Winkler*

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 6th day of November, 2024, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF NO. system. Notice of filing will be served on all parties by operation of the Court's CM/ECF NO. system, and parties may access this filing through the Court's CM/ECF NO. system.

/s/ Evelyn Escobar-Gaddi
An employee of GREENBERG TRAURIG, LLP

| | INDEX OF EXHIBITS | |
|---|---|---|
| **EXHIBIT** | **DESCRIPTION** | |
| A | STANDARDIZED FUND ACCOUNTING REPORT | |
| B | EAST WEST BANK RECEIVERSHIP ACCOUNT REGISTER (A/E 0050) | |
| C | EAST WEST BANK RECEIVERSHIP ACCOUNT REGISTER (A/E 0064) | |
| D | EAST WEST BANK RECEIVERSHIP ACCOUNT REGISTER (A/E 0043) | |
| E | SUMMARY OF CASH FLOW STATEMENT | |