SUE FAHAMI
Acting United States Attorney
Nevada Bar Number 5634
DANIEL R. SCHIESS
RICHARD ANTHONY LOPEZ
Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: 702-388-6336/ Fax: 702-388-6418
dan.schiess@usdoj.gov
tony.lopez@usdoj.gov

*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MATTHEW WADE BEASLEY et al.,<br><br>　　　　　Defendants. | Case No. 2:22-cv-612-CDS-EJY |

### GOVERNMENT'S MOTION TO INTERVENE AND STAY PROCEEDINGS

The government moves to intervene in and to stay the proceedings in the above-captioned civil case (the "SEC Case") pending resolution of a parallel criminal case, *United States v. Matthew Wade Beasley*, No. 2:23-cr-66-JAD-DJA (the "Criminal Case").[1] The Court should stay the SEC Case pending the outcome of the Criminal Case because of the substantial factual and legal overlap of these cases. The SEC's complaint here and the

---

[1] This motion is unopposed by at least the following parties: Plaintiff Securities and Exchange Commission; the Receiver; defendant Christopher Humphries; defendant Richard Madsen; defendant Christopher Madsen; and defendant Cameron Rohner.

indictment in the Criminal Case both contain allegations regarding Beasley's investment fraud scheme. The allegations are based on much of the same evidence and witnesses, and the SEC Case raises the same or very similar legal questions as the charges in the Criminal Case.

Proceeding with the SEC Case could force Beasley (and other scheme participants) to choose between setting aside Fifth Amendment rights, on the one hand, or invoking those rights but then suffering the adverse evidentiary inference such silence often carries in civil litigation. Discovery in the SEC Case could turn into an unfair, one-sided affair if the scheme participants invoke Fifth Amendment rights; Defendants in the SEC Case could take affirmative civil discovery but stand silent when other parties sought answers about the scheme participants' conduct.

As described in more detail below, these reasons, as well as judicial economy, support a stay of the SEC Case pending the resolution of the Criminal Case.

I. **STATEMENT OF FACTS**

   A. <u>The Criminal Case</u>

On March 29, 2023, a federal grand jury returned an indictment against Matthew Wade Beasley alleging that he conducted a Ponzi scheme that solicited investors in fake investment contracts. (Criminal Case ECF 1 ("Indictment") ¶ 2.) The scheme involved Beasley falsely and fraudulently representing that he could find plaintiffs in personal injury lawsuits who wanted to borrow money against their pending settlements with insurance companies and were willing to pay high interest rates to borrow the money for 90 days. (*Id.* ¶ 4) Beasley arranged for Individual-1 to loan money to these purported plaintiffs and created fake contracts (known as Purchase Agreements) between Individual-1 and these purported plaintiffs. (*Id.* ¶ 5.)

Beasley caused Individual-1 to find investors to invest in these Purchase Agreements. (*Id.* ¶ 6.) As the number of investors greatly multiplied, Beasley caused Individual-1 to recruit investors to become "promoters" to recruit new investors. (*Id.* ¶ 8.)

Beasley caused Individual-1 and promoters to make numerous misrepresentations, including the following, to induce investors to invest in Purchase Agreements:

(1) Beasley had access to personal injury plaintiffs who wanted to borrow money against their settlements with insurance companies and would pay high interest rates to borrow money for 90 days;

(2) Beasley had arranged for Individual-1 to lend money to personal injury plaintiffs, and Beasley drafted the Purchase Agreements between personal injury plaintiffs and Individual-1;

(3) Investors could invest in Purchase Agreements;

(4) Investments were available in $80,000 or $100,000 increments;

(5) Investments lasted 90 days and returned high rates of interest;

(6) At the end of 90 days, Beasley would receive principal and interest payments from personal injury plaintiffs and would send them to Individual-1 and promoters who would distribute them to investors;

(7) Investors could reinvest in new Purchase Agreements; and

(8) The investments carried no apparent risk because personal injury plaintiffs always paid the principal and interest on time.

(*Id.* ¶ 9.) As part of the scheme, Beasley caused investors (either themselves or through promoters) to wire transfer their investments to Beasley's IOLTA account. (*Id.* ¶ 10) From 2017 to 2022, Beasley caused hundreds of investors to "invest" more than $460 million into the scheme. (*Id.* ¶ 11.)

Based on these allegations, Beasley faces five counts of wire fraud, in violation of 18 U.S.C. § 1343, and three counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A). (*Id.* ¶¶ 14-19.)

B. <u>The SEC Case</u>

In April 2022, the SEC filed a lawsuit against Beasley, his law firm, Jeffrey Judd, three entities Judd controlled ("the Judd entities"), and several "promoters" based on allegations overlapping with the Criminal Case. The SEC complaint alleges that, from 2017 to 2022, the Judd entities offered investments in contracts with tort plaintiffs called "purchase agreements." (ECF 1 ("SEC Complaint") ¶ 2). According to the SEC complaint, "[d]uring that time, Beasley and Judd acted as business partners in the [Judd] Entities and Beasley purported to act as an attorney for the [Judd] Entities." (*Id.* ¶ 3.)

The complaint further alleges that Judd and others told investors:

(1) that they could purchase interests in insurance tort settlements, and that the invested money was used to make advance payments to tort plaintiffs who had reached settlements with insurance companies for tort claims and who were willing to pay a premium to receive a portion of their settlement in advance rather than wait for payment from the insurance companies;

(2) that investors would receive returns on their investments of at least 12.5% every 90 days, for an annualized return of 50%, sometimes more, and that the investment had almost zero risk; and

(3) that Beasley and [Beasley's law firm] managed relationships with numerous personal injury attorneys around the country to maintain a supply of purchase agreements to the [Judd] Entities and their investors.

(*Id.* P 2.) "In fact, the purchase agreements were fictitious, a fact which Beasley, Judd, and Humphries [one of the promoters] knew or were reckless in not knowing." (*Id.* ¶ 4.)

"From at least 2017 to March 2022, over 600 investors invested in the scheme, and it appears that at least $449 million in investor funds flowed into the scheme through [Beasley's Law Firm's] attorney trust ("IOLTA") account at Wells Fargo, N.A." (*Id.* ¶ 3.)

### C. The Proposed Stay

The government requests that the Court stay this case with respect to discovery (including written discovery, depositions, and motion practice related to discovery), discovery deadlines, motions deadlines, and the deadline to submit a joint pretrial order. However, the stay would not prohibit any of the Defendants in the above-entitled action from entering into settlements with the SEC, including but not limited to settlements that may require settling defendants to make payments or turnover to the court-appointed receiver, Geoff Winkler (the "Receiver").

In addition, the government is only seeking to limit the activities of the Receiver in one respect: precluding the Receiver from propounding written discovery and/or taking the depositions of the Defendants. Otherwise, the government is not seeking to stay or limit the activities of the Receiver, as clarified in the proposed order on this motion.

## II. ARGUMENT

### A. Intervention is Appropriate Under Federal Rule of Civil Procedure 24

#### 1. Legal Standard

Under Federal Rule of Civil Procedure 24(b)(1)(B), the Court may permit intervention when the applicant's "claim or defense…shares with the main action a common question of law or fact." A court may grant permissive intervention under Rule 24(b)(1)(B) if the application "shows (1) independent grounds for jurisdiction, (2) the

5

motion is timely, and (3) the applicant's claim or defense, and the main action, have a question of law or question of fact in common." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009).

Further, Rule 24(b)(1)(3) requires the Court to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

Indeed, "[i]t is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding which is anticipated or already underway that involved common questions of law or fact." *Bureerong v. Uvawas*, 167 F.R.D. 83, 86 (C.D. Cal. 1996) (quoting *SEC v. Mersky*, No. Civ. A. 93-5200, 1994 WL 22305, at *1 (E.D. Pa. Jan. 25, 1994)); *see also SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980). Courts have allowed the United States "to intervene in a civil case for the purpose of moving to stay discovery and other proceedings until the resolution of a related criminal case." *SEC v. Giguiere*, 18-CV-1530-WQH-JLB, 2018 WL 9516058, at *2 (S.D. Cal. Oct. 24, 2018).

   2. *Permissive Intervention is Warranted Under Rule 24(b)(1)(B)*

Permissive intervention under Rule 24(b)(1)(B) is appropriate here. First, no independent jurisdictional grounds are required because the United States is not seeking to litigate any claim in this case on the merits, but is seeking intervention for the limited purpose of moving for a stay pending resolution in the Criminal Case. *See Beckman Indus., Inc. v Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992); *SEC v. Sripetch et al.*, No. 20-CV-1864-H-AGS, 2021 WL 165012, at *3 (S.D. Cal. Jan. 19, 2021).

Second, the motion here is timely. The United States is seeking to intervene before the parties have completed discovery, before the parties have litigated dispositive motions, and before a trial date has been set. *See Agua Caliente Band of Cahuilla Indians v. Coachella*

*Valley Water Dist.*, 162 F. Supp. 3d 1053 (C.D. Cal. 2014) (granting United States' motion to intervene as of right); *Sripetch*, 2021 WL 165012, at *3 (granting motion to intervene under Rule 24(b)(1)(B), and to stay SEC case, and noting that "the motion is timely because the civil action is still in the pleading stage with the parties having engaged in little, if any, discovery, and a trial schedule has not yet been set"). The discovery cut-off in the SEC case is currently set for July 7, 2025, with dispositive motions not due until August 18, 2025. (ECF 728 (granting extensions requested in ECF 721).)

Third, the SEC Case and Criminal Case involve common questions of law and fact. Beasley is a defendant in the SEC Case and the defendant in the Criminal Case. Beasley's fraudulent scheme, and his material misstatement and omissions, are at the core of the SEC Case and the Criminal Case. The cases thus substantially overlap and involve common questions. *See Sripetch*, 2021 WL 165012, at *3.

Finally, intervention will cause no undue delay or prejudice to the parties in the Civil Cases. *See* Fed. R. Civ. P. 24(a)(3). Rather, as discussed below, the SEC and the United States would be prejudiced without intervention and a stay here.

Accordingly, this Court should grant the United States' motion to intervene.

B.   <u>This Court Should Stay the SEC Case in the Interests of Justice</u>

   1.   *Legal Standard*

This Court has the inherent power to stay any action when "the interests of justice seem to require such action." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (quoting *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)); *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The determination whether to stay a civil proceeding turns on context, and should be reached "in light of the particular circumstances and competing interests" implicated by a given case. *Keating*, 45 F.3d at 324 (quoting *Fed. Sav. & Loan Ins.*

7

*Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)). The Court should consider the extent to which the defendant's (and any potential defendants') Fifth Amendment rights are implicated, *id.*, and the following factors:

    (1)    The interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;

    (2)    the burden which any particular aspect of the proceedings may impose on defendants;

    (3)    the convenience of the court in the management of its cases, and the efficient use of judicial resources;

    (4)    the interests of persons or entities not parties to the civil litigation; and

    (5)    the interest of the public in the pending civil and criminal litigation.

*Id.* at 325. These factors weigh strongly in favor of a stay.

    2.    *The Parties' Interests Support a Stay of the SEC Case*

First, civil discovery would burden both the SEC and the defendants in the SEC Case. For example, discovery demands would force the scheme participants facing potential criminal liability into a difficult choice. They could invoke their rights under the Fifth Amendment but would suffer potentially severe consequences: a negative inference, which can and often does attach to silence in civil proceedings. *See, e.g.*, *SEC v. Colello*, 139 F.3d 674, 677-78 (9th Cir. 1998) (affirming summary judgment in civil case based largely on defendant's invocation of his Fifth Amendment rights, even when result "may seem harsh" (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *United States v. Solano–Godines*, 120 F.3d 957, 962 (9th Cir. 1997)); *SEC v. Premier Holding Corp.*, No. 21-55249, 2022 WL 541194 (9th Cir. Feb. 23, 2022) (affirming preclusion order against defendant who invoked Fifth Amendment). To avoid an adverse inference in the civil case, the scheme

8

participants who are defendants in the civil cases would have to answer questions about precisely the same conduct for which they stand criminally charged—a result that runs up against their Fifth Amendment rights against self-incrimination.

The SEC would suffer significant prejudice, too. This is because defendants could take advantage of the discovery tools available under the Federal Rules of Civil Procedure, including third party subpoenas, documents requests, depositions (including expert depositions), and interrogatories. At the same time, the scheme participants could resist the SEC's discovery demands by, among other things, asserting Fifth Amendment rights. They could therefore pursue a full range of civil discovery but refrain from providing relevant and even critical information and materials to the SEC. Discovery thus would fail to further the litigation in any real sense: one side (the civil defendants) could further their fact-finding interests, while the other side (the SEC) is left in the dark. *See Giguiere*, 2018 WL 9516048, at *3 ("The claims of Fifth Amendment rights made by parties and witnesses in this civil case will render civil discovery complicated, costly, and one-sided.").

        3.    *A Stay Promotes the Efficient use of Judicial Resources*

During civil discovery, the scheme participants likely will be asked by the SEC about their conduct regarding the Purchase Agreements and their alleged fraudulent scheme in soliciting investments in those agreements. However, if history and experience (and Judd's court filings) are any indication, the scheme participants are likely to assert their Fifth Amendment rights. Without information from these participants, those with the most knowledge about the charged scheme—information that is critical to the SEC Case— there is little advantage in allowing the SEC Case to go forward.

9

1    Moreover, the lack of a stay will require the Court's attention. As described above,
2   the parties have begun litigating discovery issues.[2] In summary, "[c]ivil discovery will . . .
3   require the devotion of substantial resources both by the parties, in reviewing documents,
4   propounding and responding to discovery, and taking and defending depositions, and by
5   the Court in resolving the myriad of disputes that are likely to arise." *SEC v. Nicholas*, 569
6   F. Supp. 2d 1065, 1069 (C.D. Cal. 2008).

7    On the other hand, criminal cases can and often do progress all the way through
8   conviction or acquittal without statements by defendants. And after conviction or acquittal,
9   it is unlikely for a civil trial to take place in a parallel SEC case, as the quick resolution of
10  SEC proceedings after (or even before) a criminal trial is the norm, mostly because a
11  criminal conviction usually results in collateral estoppel, and an acquittal (or hung jury)
12  forces the SEC to rethink its settlement position. *E.g., Nicholas*, 569 F. Supp. 2d at 1070
13  ("[C]ollateral estoppel in the criminal case may expedite the resolution of the civil case.");
14  *SEC v. Offill*, No. 07-CV-1643-D, 2008 WL 958072, at *3 (N.D. Tex. Apr. 9, 2008) ("Due
15  to differences in the standards of proof between civil and criminal prosecutions, the
16  possibility always exists for a collateral estoppel or res judicata effect on some or all of the
17  overlapping issues." (citations omitted)). Further, in the unlikely event a trial occurs in this
18  case, the parties could prepare for trial and try the SEC Case in relatively short order after
19  the criminal proceedings terminate. *See Trs. of Plummers & Pipefitters Nat'l Pension Fund v.*
20  *Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995) ("resolution of the
21  Criminal Case may reduce the scope of discovery in the civil case and the evidence
22  gathered during the criminal prosecution can later be used in the civil action").

---

[2] *See, e.g.*, Receiver's Motion to Compel (ECF 698) in Case No. 2:22-cv-612.

In sum, staying the SEC Case would allow the Courts here to focus on the Criminal Case, and after it terminates, the SEC Case can proceed or (as often happens) be resolved without the expenditure of significant judicial resources.

4. *A Stay Will Prevent Unfair Prejudice to the Government*

A stay of the civil proceedings is appropriate to prevent scheme participants from taking unfair advantage of broad civil discovery rules in the SEC Case, and thereby avoid the restrictions that would otherwise pertain to a defendant in the Criminal Case. The likelihood of scheme participants invoking Fifth Amendment rights would make civil discovery "largely one-sided" because "the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from [d]efendants." *Nicholas*, 569 F. Supp. 2d at 1070; *see also Campbell v. Eastland*, 307 F.2d 478, 488 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit.").

The Court of Appeals for the Second Circuit, informed by its long history of presiding over parallel SEC and criminal cases, has also recognized that the government has "a discernible interest in intervening in order to prevent discovery in [a] civil case from being used to circumvent the more limited scope of discovery [available] in [a] criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988). The vastly different rules that apply to discovery in civil and criminal cases are important reasons for staying civil proceedings and discovery in cases where there are parallel criminal proceedings. *See, e.g.*, *Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6, 10 (D. Conn. 2002) ("Courts are very concerned about the differences in discovery afforded to parties in a civil case and

those of a defendant in a criminal case."); *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992) (granting stay, in part, because "[a]llowing civil discovery to proceed . . . may afford defendants an opportunity to gain evidence to which they are not entitled under the governing criminal discovery rules"); *SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting request for civil stay of discovery due to pending criminal investigation, "the principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Philip Morris Inc. v. Heinrich*, No. 95 Civ. 0328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (without stay, defendants "may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules").

Unlike in a civil case, criminal defendants ordinarily are not entitled to depose prosecution witnesses, much less engage in the type of far-ranging inquiry permitted by the civil rules. *See, e.g.*, Fed. R. Crim. P. 15(a). Nor are they able to obtain documents reflecting prior statements of witnesses before trial. *See* 18 U.S.C. § 3500; Fed. R. Crim. P. 16(a). Discovery in criminal cases is narrowly circumscribed for important reasons entirely independent of any generalized policy of restricting the flow of information to defendants. The criminal discovery rules "are purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witness[es] from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment." *Nicholas*, 569 F. Supp. 2d at 1071–72 (citing *Campbell*, 307 F.2d at 487 n.12).

These concerns apply here. Beasley's ability to take depositions, serve interrogatories, and issue third party subpoenas, for example, could provide him (and other

scheme participants) with information not otherwise discoverable in the Criminal Case, thus enhancing their ability to manufacture evidence or tailor testimony—and otherwise seriously hampering the United States' ability to conduct an orderly investigation and prosecution.

Because the United States will suffer irreparable prejudice if Defendants are permitted to obtain broad civil discovery prior to the conclusion of the criminal proceeding, the requested stay should be granted.

### 5. *The Interests of the Public in the Pending Cases Support a Stay*

Advancing the Criminal Case should take precedence over the SEC Case, which seeks injunctive relief, professional bars, and disgorgement and penalties, primarily because the Criminal Case implicates the defendant's liberty interests. *Nicholas*, 569 F. Supp. 2d at 1073; *see Kordel*, 397 U.S. at 12 n.27 ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution"); *Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 532 (S.D. W. Va. 2005) (interest in litigating civil case "pales in comparison to the public interest as a whole in unraveling the criminal . . . scheme and punishing those responsible for that scheme."); *Bureerong*, 167 F.R.D. at 87 ("the interests of the Government in protecting its criminal investigation are clearly the paramount concern here"); *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003) (stating that the "public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant"); *Giguiere*, 2018 WL 9516048, at *3 ("The public interest in protecting the integrity of the criminal actions and advancing the speedy resolution of the criminal actions weighs in favor of staying this civil action.").

A stay is especially appropriate here because, as set forth above, there is an indictment filed against Beasley, one of the defendants in the SEC Case, for engaging in the same activities (and based on the same conduct) that are the subject of the complaints in the SEC Case. The prosecution in the Criminal Case will therefore vindicate substantially the same public interest that underlies the SEC's civil action—preventing fraud.

III. **CONCLUSION**

For the foregoing reasons, the United States requests that this Court grants its motion to intervene in and to stay the SEC Case pending resolution in the pending Criminal Case, *United States v. Matthew Wade Beasley*, No. 2:23-cr-66-JAD-DJA.

Respectfully submitted this 14th day of February, 2025.

    SUE FAHAMI
    Acting United States Attorney

    *s/ Richard Anthony Lopez*
    DANIEL R. SCHIESS
    RICHARD ANTHONY LOPEZ
    Assistant United States Attorneys

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW WADE BEASLEY et al.,<br><br>Defendants. | Case No. 2:22-cv-612-CDS-EJY |

**[PROPOSED] ORDER GRANTING
GOVERNMENT'S MOTION TO INTERVENE AND STAY PROCEEDINGS**

Based on the government's motion to intervene and stay proceedings, good cause appearing, and the best interest of justice being served;

IT IS THEREFORE ORDERED that the government's request to intervene is GRANTED.

IT IS FURTHER ORDERED that the government's request to stay this case is GRANTED as follows:

The discovery deadline, motions deadline, and deadline to submit a proposed joint pretrial order in this case are hereby vacated and stayed.

Discovery, including written discovery, depositions, and motion practice regarding discovery, is hereby stayed.

The stay shall have no effect upon nor limit the pendency of the receivership established pursuant to this Court's June 3, 2022 Order Appointing Receiver (the "Appointment Order") [ECF No. 88], as reaffirmed by this Court's July 29, 2022 Order Amending Receivership Order (the "Amendment Order") [ECF No. 207], nor the duties

15

and powers of the Court-appointed permanent receiver in the above-entitled action, Geoff Winkler (the "Receiver") other than precluding the Receiver from propounding written discovery and/or taking the depositions of the named Defendants.

The Receiver's right and authority to obtain turnover and possession of assets subject to the Appointment Order and Amendment Order shall not be stayed, nor shall any of his other duties and powers, as defined in those Orders be stayed.

The stay shall not prohibit any of the Defendants in the above-entitled action from entering into settlements with the Plaintiff Securities and Exchange Commission, including but not limited to settlements that may require settling defendants to make payments or turnover to the Receiver.

DATED this ____ day of _____, 2025.

_____
HONORABLE CRISTINA D. SILVA
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the above document to be served via CMECF on the represented parties in this case and mailed to the pro se defendants at the addresses below.[3]

> Matthew Wade Beasley
> Nevada Southern Detention Center
> 2190 East Mesquite Avenue
> Pahrump, Nevada 89060
>
> Larry Jeffrey
> ██████████████
> Laguna Beach, California ████████
>
> Jason M. Jongeward
> ██████████████
> Washington, Utah ████
>
> Roland Tanner
> ██████████████
> Henderson, Nevada ████

s/ Richard Anthony Lopez
RICHARD ANTHONY LOPEZ
Assistant United States Attorney

---

[3] The home addresses are redacted pursuant to Fed. R. Civ. P. 5.2 and Local Rule IC 6-1. An unredacted version will be submitted under seal pursuant to those Rules.