UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:22-cv-00612-CDS-EJY |
| Plaintiff, | |
| v. | **ORDER APPOINTING HON. CARL W. HOFFMAN (RET.) AS SPECIAL MASTER** |
| MATTHEW WADE BEASLEY, et al., | |
| Defendants. | |

Pursuant to Rule 53(b) of the Federal Rules of Civil Procedure, IT IS HEREBY ORDERED THAT:

### *Appointment*

1.      Under Federal Rule of Civil Procedure 53(a)(1)(C), the Court finds that, due to the Court's other commitments, the below matters cannot be effectively and timely addressed by the Court.

2.      All parties having received ample notice and opportunities to be heard regarding the appointment of a special master, and by virtue of agreement to such appointment by Defendant Jeffrey J. Judd[1] (ECF Nos. 815, 826), U.S. Magistrate Judge Carl W. Hoffman (Ret.) is appointed as the Special Master in this matter.

3.      The Special Master will determine whether (a) the Fifth Amendment privilege, (b) the attorney-client privilege, or (c) the attorney work-product doctrine applies to "Contested Documents" (defined below) withheld from production by Defendant and, therefore, whether documents withheld must be produced to Receiver in compliance with the Court's Appointment Order and Subpoena to Produce Documents.  ECF Nos. 88; 698-3.  The Court's Appointment Order and Subpoena to Produce Documents (sometimes the "Subpoena") are attached to this Order as Exhibits 1 and 2.

---

[1]      Defendant Jeffrey Judd is referred to herein as "Defendant" or "Mr. Judd."

4.    The term "Contested Documents" is defined as all documents previously withheld from production by Defendant based on assertions of (a) the Fifth Amendment or (b) documents appearing on the privilege log (the "Log") previously produced by Defendant to Receiver designated as attorney-client privilege or work-product, but which Receiver has determined were not, based on a good faith review of the Log, properly withheld.  Therefore, the Contested Documents include all documents withheld based on the assertion of the Fifth Amendment and,  potentially, a portion of the documents that appear on the Log.  These documents are contained within the more than 300,000 documents described by counsel for Mr. Judd[2] in the declaration filed with the Court at ECF No. 703-1 (attached as Exhibit 3).

5.    Designation of attorney-client privilege or work-product may properly apply to documents created by or reflecting communication between and among (a) Defendant and present or past Defense Counsel (or such counsel's staff) in this matter,[3] or (b) Defendant and Matthew Wade Beasley who Defendant states represented him individually sometime prior to the commencement of this case and in relation to subject matters other than this litigation.[4]  For purposes of any communication or documents related to the instant litigation, Receiver holds the privilege which he has waived.  ECF No. 88 ¶ 44.

### *Materials to be Provided to Special Master*

6.    Within seven (7) days of the entry of this Order, Defense Counsel **must** deliver to the Special Master (a) a copy of this Order, (b) a copy of the Log produced to Receiver, and (c) a complete copy of the database referenced in the declaration at ECF No. 703-1.  Within this same seven day period, Receiver **must** deliver to the Special Master a list of all documents appearing on the Log that, in good faith, are contested by Receiver.  Once Receiver delivers his list regarding

---

[2]    Counsel for Mr. Judd is referred to herein as "Defense Counsel."
[3]    Prior to present counsel, Mr. Judd was represented by Nick Oberheiden of Oberheiden P.C., and Trevor White of Elite Law Group.
[4]    No formal retention of Mr. Beasley by Mr. Judd has been produced in this matter; however, none is necessarily required to create an attorney-client relationship.  The Special Master is to use his expertise and experience to determine whether communication or documents involving Mr. Beasley contain sufficient indicia of an attorney-client relationship such that the attorney-client privilege or the work-product doctrine properly apply.

documents appearing on the Log the designation of which are contested (if any),[5] Defense Counsel and Receiver must work cooperatively with the Special Master to identify those documents on the database that do not need to be reviewed for purposes of determining whether they should be produced as such documents will be agreed upon as protected by attorney-client privilege or the work-product doctrine.

### *Commencement of Review*

7.     The Special Master will designate a commencement date for his review of the materials described herein (the "Commencement Date") from which date the deadlines set forth below must be calculated.

### *Scope of Review*

8.     The Special Master will review the documents to determine whether (a) they are responsive to the Appointment Order and or Subpoena to Produce Documents, and (b) such documents are protected by the Fifth Amendment privilege, attorney-client privilege, or qualify as attorney work-product.  The Special Master will designate each document (or portion thereof) as responsive and to be produced, responsive and withheld as protected by privilege or the work-product doctrine, or nonresponsive.  Any document not identified as responsive are deemed nonresponsive.

9.     The following cases are offered to the Special Master for purposes of providing guidance regarding the application of the Fifth Amendment: *United States v. Hubbell*, 530 U.S. 27 (2000); *Braswell v. United States*, 487 U.S. 99 (1988); *United States v. Doe*, 465 U.S. 605 (1984); *In re Twelve Grand Jury Subpoenas*, 908 F.3d 525 (9th Cir. 2018); *United States v. MacKey*, 647 F.2d 898 (9th Cir. 1981); *Armstrong v. Guccione*, 470 F.3d 89 (2nd Cir. 2006); and *Commodities Futures Trading Commission*, 2022 WL 5186233 (E.D. Cal. 2022).

### *The Initial Report*

10.     Within 60 days of the Commencement Date, or as soon after the Commencement Date as reasonably possible, the Special Master will deliver an initial report (the "Initial Report") to

---

[5]     The parties are not to debate whether contested documents are properly designated as the determination of whether privilege and or work-product protects such documents from production is the responsibility of the Special Master.

the parties. The Initial Report must include two lists: (a) a list of documents responsive to the Appointment Order and or Subpoena that are not protected by any privilege or the work-product doctrine and, therefore, must be produced; and (b) a list of documents responsive to the Appointment Order and or Subpoena that are properly withheld based on the Fifth Amendment privilege, attorney-client privilege, or the work-product doctrine. Documents on each list must be identified by a control number,[6] date, and type of document (letter, email, memorandum, or other designation). For documents withheld based on the "Fifth Amendment Privilege" only that additional designation must be added. For documents withheld based on the Attorney-Client Privilege and/or Attorney Work-Product, information generally required to be included on a privilege log must be provided (for attorney-client privileged documents: the to/from, author, date, and basic contents qualifying as a privileged communication; for documents withheld based on work-product: the date, type of document, author, and sufficient subject matter to demonstrate the document is work-product).

*Objections*

11.    Documents designated by the Special Master to be produced will first be submitted to Defense Counsel either as a separate production or by identifying each such document by control number so that such counsel may review the documents for potential objections. The production to Defense Counsel should occur simultaneously or near simultaneously with the delivery of the Initial Report.

12.    Upon receiving the documents to be produced, Defense Counsel will have fourteen (14) days to submit written objections to the Special Master challenging the designation of documents as properly produced. Proper objections to production are limited to the application of the Fifth Amendment privilege, attorney-client privilege, or the work-product doctrine. If Defense Counsel asserts that privilege or work-product should prevent production of a document, Defense Counsel must, within the same fourteen (14) day period, submit to Receiver a log in which the objections to production of documents are described in sufficient detail to allow Receiver to respond.

---

[6]    If the documents provided to the Special Master are not Bates numbered or otherwise designated by a control number, the Special Master is permitted to apply a numbering system to each page of the documents on the database. If a subset of documents are already identified by control numbers because they are listed on the privilege log, those numbers should continue to be used and only documents with no control numbers should be given a designated number.

Receiver will have fourteen (14) days after receipt of the log to submit a written response to the Special Master. Any dispute over the sufficiency of the log provided by Defense Counsel must first be mediated by the Special Master. If resolution cannot be reached, Receiver may file a request for hearing together with the log explaining, briefly (no more than three pages), why the log is insufficient. Defendant will have seven days to file a response (no more three pages) to Receiver's submission. No reply may be filed.

### The Final Report

13.     After considering the Defendant's objections and Receiver's response, the Special Master will make a final determination as to production of documents and issue a final written report (the "Final Report") in which the documents to be produced and those to be withheld based on privilege or work-product are identified. The Special Master will submit a copy of the Final Report to each party within twenty-one (21) days of receiving the objections and responses described above. Any extension to the twenty-one day period requested by the Special Master is granted without further contact with the Court.

### Objections to Final Report

14.     Objections to the Final Report (if any) must be filed with the Court and served on the opposing party no later than seven (7) days after the Final Report is received. No responses to objections are permitted without leave of Court. No documents are to be submitted *in camera* to the judge's chambers or under seal on the docket unless ordered by the Court.

### Defendant's Document Production

15.     If no objection to the Final Report is filed with the Court, Defendant must produce to Receiver all documents found to be responsive bearing neither a privilege nor work-product designation. If a timely objection to the Final Report is filed, Defendant must produce only those responsive documents determined by the Special Master as properly produced not subject to objection.

Documents to be produced must be delivered to Receiver no later than seven (7) days after the objection due date. The documents produced must be exactly as they appeared when delivered to the Special Master unless a portion of a document is withheld or redacted.

*Scope of Special Master's Authority*

16.     The Special Master has all the powers granted under Rule 53(c) of the Federal Rules of Civil Procedure, except that, absent a further order from the Court, the Special Master's determinations are limited to the issues described herein.

*Ex Parte Communications*

17.     Ex parte communication between the Special Master and either party is permitted to the extent necessary to effect the purpose of this Order.  The Special Master may also have ex parte communications with the Court.

*Payment*

18.     For his services in this matter, the Special Master will be paid the fee agreed upon by and between Defendant and the Special Master.  Remuneration for all work performed by the Special Master is Defendant's responsibility.  The fees and expenses paid by Defendant to the Special Master must be disclosed to Receiver in the Final Report.  The Special Master must submit his bills to Defendant and Defendant must promptly comply with all payment terms.  In the absence of compliance, the Special Master may cease all work and notify the Court of the non-compliance.

IT IS SO ORDERED this 23rd day of July, 2025.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 1

TRACY S. COMBS (California Bar No. 298664)
Email: combst@sec.gov
CASEY R. FRONK (Illinois Bar No. 6296535)
Email: fronkc@sec.gov
SECURITIES AND EXCHANGE COMMISSION
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel: (801) 524-5796
Fax: (801) 524-3558

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 2:22-cv-00612 |
| Plaintiff, | |
| vs. | Judge: James C. Mahan |
| | Magistrate Judge: Elayna J. Youchah |
| MATTHEW WADE BEASLEY; BEASLEY LAW GROUP PC; JEFFREY J. JUDD; CHRISTOPHER R. HUMPHRIES; J&J CONSULTING SERVICES, INC., an Alaska Corporation; J&J CONSULTING SERVICE, INC., a Nevada Corporation; J AND J PURCHASING LLC; SHANE M. JAGER; JASON M. JONGEWARD; DENNY SEYBERT; and ROLAND TANNER; | **ORDER APPOINTING RECEIVER** |
| Defendants; | |
| THE JUDD IRREVOCABLE TRUST; PAJ CONSULTING INC; BJ HOLDINGS LLC; STIRLING CONSULTING, L.L.C.; CJ INVESTMENTS, LLC; JL2 INVESTMENTS, LLC; ROCKING HORSE PROPERTIES, LLC; TRIPLE THREAT BASKETBALL, LLC; ACAC LLC; ANTHONY MICHAEL ALBERTO, JR.; and MONTY CREW LLC; | |
| Relief Defendants. | |

**WHEREAS** this matter has come before this Court upon motion of the Plaintiff U.S. Securities and Exchange Commission ("SEC", "Commission" or "Plaintiff") to appoint a receiver in the above-captioned action and for related relief;

**WHEREAS** the Court has found based on the evidence presented and record in this case that the Commission has made a proper *prima facie* showing that Defendants directly and indirectly engaged in violations of the federal securities laws as alleged in the Complaint, and thus, the equity jurisdiction of this Court has been properly invoked and the Court possesses the power and authority to fashion appropriate remedies and relief;

**WHEREAS** the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Defendants and those assets of certain Relief Defendants that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; (c) were fraudulently transferred by the Defendants; and/or (d) may otherwise be includable as assets of the estates of the Defendants;

**WHEREAS** this Court has subject matter jurisdiction over this action and personal jurisdiction over the Defendants and Relief Defendants, has jurisdiction to determine the applicability of the automatic stay to this action, and venue properly lies in this district; and

**WHEREAS**, the Court finds that the Commission has brought this action to enforce the federal securities laws, in furtherance of the Commission's police and regulatory powers, and the relief sought by the Commission and provided in this Order is in the public interest by preserving the illicit proceeds of fraudulent conduct, penalizing past unlawful conduct and deterring future wrongdoing, and is not in furtherance of a pecuniary purpose, and therefore, the Court concludes that the entry of this Order is excepted from the automatic stay pursuant to Section 362(b)(4) of the Bankruptcy Code, 11 U.S.C. §362(b)(4).

//

//

//

//

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following Defendants and/or Relief Defendants: J&J Consulting Services, Inc., an Alaska corporation; J&J Consulting Services, Inc., a Nevada corporation; J and J Purchasing LLC; The Judd Irrevocable Trust; and BJ Holdings LLC (collectively, the "J&J Receivership Defendants").

2.     Subject to further order of the Court, the Court shall not take exclusive jurisdiction and possession of the assets of Defendant Beasley Law Group PC, except for the Wells Fargo Interest On Lawyers' Trust Account ("IOLTA") No. XXXXXX5598 in the name of Beasley Law Group PC (the "Beasley IOLTA").

3.     This Court hereby takes exclusive jurisdiction and possession of the personal assets, of whatever kind and wherever situated, of the following Defendants:  Matthew Wade Beasley; Jeffrey J. Judd; Christopher R. Humphries; Shane M. Jager; Jason M. Jongeward; Denny Seybert; and Roland Tanner  (collectively, the "Individual Receivership Defendants", and together with the J&J Receivership Defendants and the Beasley IOLTA, the "Receivership Defendants").

4.     Until further Order of this Court, **GEOFF WINKLER** of **AMERICAN FIDUCIARY SERVICES LLC** (the "Receiver") is hereby appointed to serve without bond as receiver for the estates of the J&J Receivership Defendants, the assets of the Beasley IOLTA, and the assets of the Individual Receivership Defendants (collectively, the "Receivership Estate").  In addition to and independent of his appointment as Receiver, pursuant to the Court's equitable powers and inherent authority, the Court further appoints **GEOFF WINKLER** as the sole and exclusive officer, director and managing member of each of the J&J Receivership Defendants.

//

//

//

## I. **GENERAL POWERS AND DUTIES OF RECEIVER**

5.      The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the J&J Receivership Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Federal Rule of Civil Procedure 66.

6.      The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the J&J Receivership Defendants shall have no authority with respect to the J&J Receivership Defendants' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver.  The Receiver shall assume control of the J&J Receivership Defendants' assets and any affiliated entities owned or controlled by the J&J Receivership Defendants and shall pursue and preserve all of their claims.

7.      Subject to the specific provisions in Sections III through XIV, below, the Receiver shall have the following general powers and duties:

   A.      To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Defendants, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly (collectively, "Receivership Property");

   B.      To take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership Defendants; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;

C. To manage, control, operate and maintain the Receivership Estate and hold in his possession, custody and control all Receivership Property, pending further Order of this Court;

D. To use Receivership Property for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E. To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees and agents of the Receivership Defendants;

F. To engage and employ persons in his discretion, subject to approval of the Court, to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

G. To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H. To issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure, without further Court order;

I. To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J. To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate; and,

K. To take such other action as may be approved by this Court.

## II.  **ACCESS TO INFORMATION**

8.     The Individual Receivership Defendants and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants and employees of the J&J Receivership Defendants, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Defendants and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

9.     Within fourteen (14) days of the entry of this Order, the Individual Receivership Defendants shall file with the Court and serve upon the Receiver and the Commission a sworn statement, listing: (a) the identity, location and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of the Receivership Defendants; and, (c) the names, addresses and amounts of claims of all known creditors of the Receivership Defendants.

10.    Within thirty (30) days of the entry of this Order, the Individual Receivership Defendants shall file with the Court and serve upon the Receiver and the Commission a sworn statement and accounting, with complete documentation, covering the period from January 1, 2016 to the present:

        A.     Of all Receivership Property, wherever located, held by or in the name of the Receivership Defendants, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry and other assets, stating the location of each; and/or (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage or other financial institution held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect

beneficial interest, including the account statements from each bank, brokerage or other financial institution, and/or law or professional firm holding a retainer;

B. Identifying every account at every bank, brokerage or other financial institution: (a) over which Receivership Defendants have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Defendants;

C. Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Receivership Defendant or for which such Receivership Defendant may be liable, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

D. Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;

E. Of all funds received by the Receivership Defendants, and each of them, in any way related, directly or indirectly, to the conduct alleged in the Commission's Complaint.  The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

F. Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

G. Of all transfers of assets made by any of them.

11. Within thirty (30) days of the entry of this Order, the Receivership Defendants shall provide to the Receiver and the Commission copies of the Receivership Defendants' federal income tax returns for January 1, 2016 to the present with all relevant and necessary underlying documentation.

12.     The Individual Receivership Defendants and the J&J Receivership Defendants' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Defendants, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Defendants.  In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

13.     The Receiver may issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of Federal Rule of Civil Procedure 26(d)(1), concerning any subject matter within the powers and duties granted by this Order, without further order of the Court.

14.     The Receivership Defendants are required to assist the Receiver in fulfilling his duties and obligations.  As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

### III.  ACCESS TO BOOKS, RECORDS AND ACCOUNTS

15.     The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to the J&J Receivership Defendants.  The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments for the Individual Receivership Defendants upon application to the Court.  All persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

16.     The Receivership Defendants, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Defendants, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having

possession of the property, business, books, records, accounts or assets of the Receivership

Defendants are hereby directed to deliver the same to the Receiver, his agents and/or employees.

17.     All banks, brokerage firms, financial institutions, and other persons or entities

which have possession, custody or control of any assets or funds held by, in the name of, or for

the benefit of, directly or indirectly, and of the Receivership Defendants that receive actual

notice of this Order by personal service, facsimile transmission or otherwise shall:

A.     Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities,
       funds, or accounts in the name of or for the benefit of the Receivership
       Defendants except upon instructions from the Receiver;

B.     Not exercise any form of set-off, alleged set-off, lien, or any form of self-help
       whatsoever, or refuse to transfer any funds or assets to the Receiver's control
       without the permission of this Court;

C.     Within five (5) business days of receipt of that notice, file with the Court and
       serve on the Receiver and counsel for the Commission a certified statement
       setting forth, with respect to each such account or other asset, the balance in the
       account or description of the assets as of the close of business on the date of
       receipt of the notice; and,

D.     Cooperate expeditiously in providing information and transferring funds, assets
       and accounts to the Receiver or at the direction of the Receiver.

### IV.  ACCESS TO REAL AND PERSONAL PROPERTY

18.     The Receiver is authorized to take immediate control of all personal property of

the Receivership Defendants, including jewelry, artwork, and other valuables.

19.     The Receiver is authorized to take immediate control of all real property of the

Receivership Defendants, wherever located, including but not limited to all ownership and

leasehold interests and fixtures.  Upon receiving actual notice of this Order by personal service,

facsimile transmission or otherwise, all persons other than law enforcement officials acting

within the course and scope of their official duties, are (without the express written permission of

the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

20.    In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to any premises used by the J&J Receivership Defendants. The Receiver shall have exclusive control of the keys. The J&J Receivership Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

21.    The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the J&J Receivership Defendants, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

22.    Upon the request of the Receiver and direction of the Court, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

## V. <u>NOTICE TO THIRD PARTIES</u>

23.    The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of the Receivership Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

24.    All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

25.    In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he

deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate.   All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

26.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the J&J Receivership Defendants (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the J&J Receivership Defendants.  The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail.  The J&J Receivership Defendants shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver.  The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by the J&J Receivership Defendants. The J&J Receivership Defendants shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

27.     Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Receivership Defendants shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

28.     The Receiver is authorized to assert, prosecute and/or negotiate any claim under any insurance policy held by or issued on behalf of the Receivership Defendants, or their officers, directors, agents, employees or trustees, and to take any and all appropriate steps in connection with such policies.

//

//

//

11

## VI.  **INJUNCTION AGAINST INTERFERENCE WITH RECEIVER**

29.     The Receivership Defendants and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

A.     Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B.     Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

C.     Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property; or,

D.     Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

30.     The Receivership Defendants shall cooperate with and assist the Receiver in the performance of his duties.

31.     The Receiver shall promptly notify the Court and Commission counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

### VII.  <u>STAY OF LITIGATION</u>

32.     As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:  All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings (except as provided in Paragraphs 47—48), arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

33.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

34.     All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.  Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

//

//

//

## VIII.  **MANAGING ASSETS**

35.     For each of the Receivership Estate, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

36.     The Receiver's deposit account shall be entitled "Receiver's Account, Estate of SEC v. Beasley, et al. Receivership Defendants" together with the name of the action.

37.     The Receiver may, without further Order of this Court, incur expenses in the ordinary course of business, except for professional fees, in an amount not to exceed $25,000, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate.

38.     Upon appropriate order of the Court, subject to Paragraph 40, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real or personal property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real or personal property.

39.     Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estate.  The Receiver shall take all legal steps necessary to obtain authority to obtain control over real or personal property including making any necessary filings in the counties where such properties are located.

40.     The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estate, including making legally required payments to creditors, employees, and agents of the Receivership Estate and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate, subject to Paragraph 38.

41.     If appropriate, the Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the

meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable, whether proposed, temporary or final, or pronouncements thereunder, including the filing of the elections and statements contemplated by those provisions.  The Receiver shall be designated the administrator of the Settlement Fund, pursuant to Treas. Reg. § 1.468B-2(k)(3)(i), and shall satisfy the administrative requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to (a) obtaining a taxpayer identification number, (b) timely filing applicable federal, state, and local tax returns and paying taxes reported thereon, and (c) satisfying any information, reporting or withholding requirements imposed on distributions from the Settlement Fund.  The Receiver shall cause the Settlement Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as a "Qualified Settlement Fund."  The Receivership Defendants shall cooperate with the Receiver in fulfilling the Settlement Funds' obligations under Treas. Reg. § 1.468B-2.

## IX.  **INVESTIGATE AND PROSECUTE CLAIMS**

42.     Subject to the requirement, in Section VII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Property.

43.     Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to

enforce this Order. Where appropriate, the Receiver should provide prior notice to Counsel for the Commission before commencing investigations and/or actions.

44.     The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all J&J Receivership Defendants.

45.     The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## X. **BANKRUPTCY MATTERS**

46.     Effective immediately, the Receiver, as sole and exclusive officer, director and managing member, of Defendant J & J Consulting Services, Inc. (a Nevada corporation) and J and J Purchasing LLC (together, "the J&J Debtors") shall possess sole and exclusive authority and control over the J&J Debtors, as debtors-in-possession, in their respective Chapter 11 cases (the "Bankruptcy Cases") pending in the U.S. Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"). The employment of any and all other officers, directors, managers or other employees of either of the J&J Debtors (including Peter Kravitz, as Chief Restructuring Officer) is and are hereby terminated by the Court. All such persons shall comply with the applicable provisions of this Order.

47.     Within thirty (30) days of the entry of this Order, the Receiver shall report to this Court as to whether the Bankruptcy Cases should continue in Chapter 11, or be converted to Chapter 7, dismissed or suspended during the course of the receivership. The Receiver shall file the appropriate pleadings with the Court and the Bankruptcy Court effectuating this Order.

48.     The Receiver may seek authorization of this Court to file petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for other Receivership Defendants. If a J&J Receivership Defendant is placed in Chapter 11 bankruptcy proceedings, the Receiver, pursuant to the powers provided herein, shall become, and shall be empowered to operate each of the J&J Receivership Defendants as a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 4 above, the Receiver

is vested with management authority for all J&J Receivership Defendants and may therefore file and manage a Chapter 11 petition.

49.     All persons and entities, other than the Receiver, are barred from commencing any bankruptcy proceedings against any of the Receivership Defendants.

## XI.  LIABILITY OF RECEIVER

50.     Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

51.     The Receiver and his agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree.  In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

52.     This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

53.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor.  The Receiver shall then follow such instructions as the Court may provide.

## XII.  RECOMMENDATIONS AND REPORTS

54.     The Receiver is authorized, empowered and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

55.     Within ninety (90) days of the entry date of this Order, the Receiver shall file a preliminary plan for the liquidation of assets in the above-captioned action, with service copies to counsel of record.  This time may be altered based on appropriate motion to the Court.

56.     Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate.

57.     The Quarterly Status Report shall contain the following:

A.     A summary of the operations of the Receiver;

B.     The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.     A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.     A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.     A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.     A list of all known creditors with their addresses and the amounts of their claims;

G.     The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H.     The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

58.     On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting

requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

## XIII.  FEES, EXPENSES AND ACCOUNTINGS

59.     Subject to Paragraphs 61—67 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

60.     Subject to Paragraph 62 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order.  The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

61.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estate as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court.

62.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estate (the "Quarterly Fee Applications").  At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

63.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

64.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court.  The total amounts

held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

65.     Each Quarterly Fee Application shall:

A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.     Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

66.     At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

**IT IS SO ORDERED**.

Date: _June 3, 2022_____

_James C. Mahan_

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE

Presented by:
Tracy S. Combs
Casey R. Fronk
Attorneys for Plaintiff
Securities and Exchange Commission

# EXHIBIT 2

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### District of Nevada

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   2:22-CV-00612-CDS-EJY |
| MATTHEW WADE BEASLEY, et al., | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                        JEFFREY J. JUDD
c/o Kevin N. Anderson, Fabian VanCott, 411 E. Bonneville Avenue,Suite 400, Las Vegas, Nevada 89101
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

SEE EXHIBIT 1 ATTACHED HERETO

| Place: Greenberg Traurig, LLP<br>        10845 Griffith Peak Dr., Suite 600<br>        Las Vegas, NV 89135 | Date and Time:<br><br>        04/26/2024 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   04/12/2024

                *CLERK OF COURT*
                                                OR
                                                        /s/ Kara B. Hendricks
        _____                _____
        *Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Geoff Winkler,
Court-Appointed Receiver                                    , who issues or requests this subpoena, are:
Kara B. Hendricks, Esq., Greenberg Traurig, LLP, 10845 Griffith Peak Dr. Las Vegas, NV 89135; hendricksk@gtlaw.com

## Notice to the person who issues or requests this subpoena                702-792-3773
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.    2:22-CV-00612-CDS-EJY

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                            *Server's signature*

                                                            _____
                                                            *Printed name and title*

                                                            _____
                                                            *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## **EXHIBIT 1**

(Subpoena to Produce Documents, Information, or Objects to Geoff Winkler,
Court-Appointed Receiver)

PLEASE TAKE NOTICE that you <u>will not</u> be required to appear should the requested records be provided by mail or hand delivery to:  Kara Hendricks, Greenberg Traurig, LLP, 10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada  89135 or by email to <u>hendricksk@gtlaw.com</u> on or before April 26, 2024.

### **DOCUMENTS TO BE PRODUCED**

For the purpose of this Subpoena, the terms "You" and "Your" shall mean Jeffrey J. Judd.

1.      Please produce any and all communications, text messages, emails, letters or other correspondence for the period January 2017 – December 2022, between You and Matthew Wade Beasley.

2.      Please produce any and all communications, text messages, emails, letters or other correspondence for the period January 2017 – December 2022, between You and any individual and/or entity that promoted the J&J Settlement Scheme including, but not limited to, Shane Jager, Warren Rosegreen, Chris Madsen, Chris Humphries, and Mark Murphy.[1]  This request includes any and all such communications between You and any individual or entity identified as a party to the above-captioned matter other than Mr. Beasley.

3.      Please produce any and all communications, text messages, emails, letters or other correspondence for the period January 2017 – December 2022, between You and any individual and/or entity in which You acted as a promoter of the J&J Settlement Scheme.  For the purpose of this request, the term "promoter" shall mean an individual who solicits, advertises, induces, or otherwise garners investments and/or contributions to the J&J Settlement Scheme regardless of whether any such promotion resulted in an actual investment and/or contribution.

4.      Please produce any all any and all communications, text messages, emails, letters or other correspondence for the period January 2017 – December 2022, between You and any bank or financial institution in which funds from the J&J Settlement Scheme were deposited, attempted to be deposited

---

[1]  "J&J Settlement Scheme" refers to the alleged scheme giving rise to, and as summarized in, the Security and Exchange Commission's Amended Complaint.  *See e.g.* ECF No. 118 ¶¶ 2-6.

and/or in which an account was opened or attempted to be opened on behalf of J&J Consulting Service, Inc. (Alaska), J&J Consulting Services, Inc. (Nevada), and/or J and J Purchasing, LLC.

5.    Please produce any and all communications, text messages, emails, letters or other correspondence for the period January 2017 – December 2022, between You and any individual and/or entity regarding any actual or potential investment in the J&J Settlement Scheme.

GREENBERG TRAURIG, LLP
10845 Griffith Peak

ACTIVE 697251697v2

# EXHIBIT 3

KEVIN N. ANDERSON, ESQ.
Nevada State Bar No. 4512
**FABIAN VANCOTT**
411 E. Bonneville Ave., Suite 400
Las Vegas, NV 89101
Telephone:     (702) 233-4444
E-Mail:     kanderson@fabianvancott.com

*Attorneys for Jeffrey J. Judd*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Case No. 2:22-cv-0612-JCM-EJY |
| v. | |
| MATTHEW WADE BEASLEY; BEASLEY LAW GROUP PC; JEFFREY J. JUDD; CHRISTOPHER R. HUMPHRIES; J&J CONSULTING SERVICES, INC., an Alaska Corporation; J&J CONSULTING SERVICES, INC., a Nevada Corporation; J AND J PURCHASING LLC; SHANE M. JAGER; JASON M. JONGEWARD; DENNY SEYBERT; ROLAND TANNER; LARRY JEFFERY; JASON A. JENNE; SETH JOHNSON; CHRISTOPHER M. MADSEN; RICHARD R. MADSEN; MARK A. MURPHY; CAMERON ROHNER; AND WARREN ROSEGREEN, | **DECLARATION OF KEVIN N. ANDERSON IN SUPPORT OF JUDD'S OPPOSITION TO RECEIVER'S MOTION TO COMPEL AND ORDER TO SHOW CAUSE** |
| Defendants, | |
| THE JUDD IRREVOCABLE TRUST; PAJ CONSULTING INC; BJ HOLDINGS LLC; STIRLING CONSULTING, L.L.C.; CJ INVESTMENTS, LLC; JL2 INVESTMENTS, LLC; ROCKING HORSE PROPERTIES, LLC; TRIPLE THREAT BASKETBALL, LLC; ACAC LLC; ANTHONY MICHAEL ALBERTO, JR.; and MONTY CREW LLC, | |
| Relief Defendants. | |

I, Kevin N. Anderson, hereby declare as follows:

1. I am over 18 years of age and have personal knowledge of all facts stated herein, and if called as a witness could and would testify competently to these facts.

2. I am counsel to Defendant Jeffrey J. Judd ("**Judd**") in the above captioned case. I am a shareholder at Fabian VanCott, but I am not an officer or director of the firm. I am a member in good standing of the State Bar of Nevada, among others.

3. I or Fabian VanCott also represented Judd in other matters.

4. I first entered my appearance in the above captioned matter on April 19, 2022, when Judd responded to the *Ex Parte* Motion for Entry of Temporary Restraining Order and Orders, filed by the Securities and Exchange Commission ("**SEC**").

5. Prior to this case being filed, counsel for Judd had discussions with the SEC and Assistant U.S. Attorneys at the Department of Justice regarding liquidating hard assets to create liquidity for a "potential victims fund." *See* Ostler Decl. ECF No. 2-5, ¶¶ 8-11, Ex. 3 & 4 thereto.

6. Prior to this case being filed, other attorneys who worked at Fabian VanCott then— but no longer—assisted Judd in gathering documents and information within Judd's possession. The available information was limited. Judd did not possess or have access to his computers, phones, other electronic devices, and physical records. Prior to my representation of Judd, according to a Search and Seizure Warrant, the Federal Bureau of Investigations ("**FBI**"), on March 3, 2022, seized all of Judd's electronic devices, paper records, and other personal property Judd had in his possession. *See* **Exhibit A**, Search and Seizure Warrant.

7. Because Judd did not have his electronic devices and paper records, the other attorneys at Fabian VanCott worked with Consilio Legal Services ("**Consilio**") to assist in collecting what electronically stored information was available and could be collected from

alternative sources. Consilio began maintaining a database for us to store and process what limited records that were able to be retrieved by Consilio.

8.    After the Court entered its *Order Entering Preliminary Injunction, Asset Freeze, and Other Equitable Relief* in the above referenced matter on April 21, 2022 (ECF No. 56), Judd, through counsel, began working with the SEC and the chief restructuring officer for J&J Bankruptcy Debtor entities, Peter Kravitz, appointed by the U.S. Bankruptcy Court ("CRO"). ECF No. 2-1, at p. 22, for the CRO to provide documents and information he had in his possession regarding assets and business affairs of the Receivership Entities to the SEC.

9.    For instance, Judd, through counsel, provided detailed lists of assets he held, including the value and location. Judd and counsel willingly continued to cooperate with the SEC.

10.    Additionally, Judd, through counsel, provided approximately 4,000 pages of documents and records in his possession to the CRO in March and May 2022. *See* **Exhibit B**, emails with CRO. Judd was actively participating with and providing the SEC and others with records that were requested and in his possession.

11.    After Geoff Winkler was appointed as the Receiver ("**Receiver**") on June 3, 2022, in the above referenced matter, Judd continued to work with the Receiver and provided information and documents related to Receivership Property as required by the Court and pursuant to the Receiver's Request.

12.    On June 7, 2022, the Receiver's counsel, Kara Hendricks, sent me a letter regarding the appointment of the Receiver and a requested meeting with Judd and counsel. *See* **Exhibit C**, Letter from K. Hendricks to K. Anderson.

13.    Pursuant to the Receivership Order, Judd began providing the required information to the Receiver.

14.    Specifically, I or Fabian VanCott, provided the following to the Receiver:

a. List of funds held by Judd's counsel on June 5, 2022. *See* **Exhibit D**;

b. The required 17C Statement on June 10, 2022. *See* **Exhibit E**;

c. Judd's Statement Regarding Receivership Property, Asset List, and Investor Information on June 17, 2022. *See* **Exhibit F**; and

d. On June 30, 2022, I advised Ms. Hendricks that the process of locating J&J Consulting and J and J Purchasing documents had been halted because payment of Fabian VanCott's fees was put in doubt. *See* **Exhibit G**. I advised her that once there was an adequate procedure in place for payment of attorney fees and the database costs, we would be willing to resume this effort. *Id*. We were advised to work with counsel for the SEC in this regard. Counsel for the SEC failed to respond to numerous telephone calls, voice messages, text messages and emails for several months. No such procedure has ever been put in place.

e. Pursuant to Ms. Hendricks' request, *Id.*, I emailed Amanda Deering the documents and information previously provided to the SEC and the CRO, which included tax returns, bank statements, and business records. *See* **Exhibit H**.

15.    On July 1, 2022, I met with Kara Hendricks, Receiver's counsel, via telephone to discuss the Receivership Order, transfer of assets held by Judd, and other information related to assets in Judd's possession. During the telephone I informed the Receiver and his counsel of the FBI's seizure and the fact that Judd did not have access to his electronic devices, including computers and phones, and had only limited access to his records as a result. During the telephone call, the Receiver only requested documents and information related to assets, location of assets, and Judd's possession of the same.

16.    That same day, I sent the Receiver and his counsel a copy of the search warrant return, which set forth all of the items and property seized by the FBI. *See* **Exhibit I**.

17.     I also provided the Receiver with updated asset information as additional assets were identified by Judd. *See* **Exhibit J**.

18.     In addition to providing information regarding assets to the Receiver, Judd, through me, provided the Receiver with information regarding the sale or pending purchase of certain assets. *See* **Exhibit K**.

19.     As a result of the injunction and asset freeze entered by the Court, Fabian VanCott filed a Motion for Attorney Fees or Alternatively for Leave to Withdraw on July 6, 2022. *See* ECF No. 142. At that point in time, Fabian VanCott had provided services valued at $329,160.50 (as of May 31, 2022), and incurred costs in the amount of $16,218.23. *Id*. Fabian VanCott has not been paid for these services and was not reimbursed for these costs.

20.     Despite filing the motion for fees or to withdraw, I continued working with the Receiver and providing information or assisting in the transfer of assets. On July 7, 2020, I caused my office to send the Receiver titles to property held by Judd, over $800,000 of cashier's checks, and the location of another vehicle. *See* **Exhibit L** and **Exhibit M**.

21.     On July 20, 2022, I provided the Receiver with information regarding an offer to purchase real property worth more than $800,000. *See* **Exhibit N**.

22.     On July 28, 2022, I continued providing information requested by the Receiver regarding Receivership Assets, including information related to an aircraft worth approximately $2 million. *See* **Exhibit O**.

23.     I spoke with the Receiver's counsel on August 4, 2022, regarding Judd's continued willingness to work with the Receiver, despite the Receiver's counsel misguided assumption otherwise, as confirmed by the Receiver's counsel. *See* **Exhibit P**.

24.     On August 8, 2022, after the Court denied Judd's request for payment of attorney fees from funds held in attorney trust accounts and granted my and Fabian VanCott's request to

withdraw. I caused the remaining funds[1] held in Fabian VanCott's trust account to be transferred to the Receiver. *Id.*

25.     Because I and Fabian VanCott paid for the significant hours and resources expended in representing Judd, I and Fabian VanCott had ceased work on the above referenced case, including the gathering of additional documents and information, and archived the database of documents that was compiled. Fabian VanCott paid the fees and cost for preserving the database.

26.     On August 8, 2022, I notified the Receiver's counsel of the termination of work and that I and Fabian VanCott would not be participating in the matter going forward. I reminded counsel for the Receiver that Judd was still represented by counsel in his criminal matter and that although he was still a party to the SEC action he should be treated as a represented party. *Id.*

27.     At the time of my withdrawal, it was my understanding that we compiled with the obligations under the Receivership Order and all requests made from the Receiver. The only item outstanding at the time of my withdrawal was the transfer of assets identified.

28.     I understand that Judd continued communicating and working with the Receiver to transfer assets.

29.     More than a year later, I reentered my appearance in the above referenced matter on September 23, 2023. *See* ECF No. 579.

30.     After my reentered appearance in the matter, I had little communication with the Receiver or his counsel. Prior to the Subpoena, neither the Receiver nor his counsel made any requests to me for any additional information or transfer of assets from Judd.

---

[1] Fabian VanCott had previously stipulated with the Receiver for a return of the portion of the retainer that was not the subject of Judd's motion for payment of attorney fees from funds held in attorney trust accounts.

31.     The only request for additional documents or information by the Receiver began when the Receiver delivered a subpoena[2] addressed to Judd to Fabian VanCott's Las Vegas office.

32.     On April 15, 2024, I received an email from my legal assistant, Anita Montoya. *See* **Exhibit Q**. Attached to the email was a copy of a subpoena to produce documents issued to Judd. Anita nor I were authorized to accept service of the subpoena on behalf of Judd.

33.     On April 16, 2024, I received an email from Evy Escobar-Gaddi, a legal support specialist with Greenberg Traurig, LLP, the firm representing the Receiver, with a notice of intent to issue a subpoena to Judd. *See* **Exhibit R**.

34.     It was my understanding that as of April 16, 2024, Judd was not personally served the subpoena received by my office.

*35.*     In response to the notice of intent to serve the subpoena, I emailed counsel and inquired why the Receiver intended to issue a subpoena, instead of issuing discovery requests pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure. *See* **Exhibit Q**. There were several emails back and forth regarding the scope of the subpoena and the position that the issuance of the subpoena upon Judd, a party to the case, was not the proper procedure. The emails also contained several objections regarding the subpoena and the Receiver's response. *Id.*

36.     On June 12, 2024, I met with the Receiver and Kyle Ewing, the Receiver's counsel, regarding the subpoena and the email exchanges. During that meeting I reiterated our position that the subpoena was not proper, was objectionable on several grounds, and the fact that documents were previously provided to the Receiver. I also reiterated that Judd had limited ability to gather, review, and produce documents given the FBI seizure of Judd's electronic devices and had not return the devices.

---

[2] As discussed in the Opposition, the Receiver's counsel failed to follow the proper procedure for requesting documents from Judd, and the subpoena was defective for failing to comply with the Federal Rules of Civil Procedure, among other reasons outlined in the Opposition.

37.    I also indicated that we were working on reactivating the database to determine if any additional documents were responsive and suspected that the documents would be subject to review for attorney client privilege, given Judd was represented individually by Mr. Beasley in the past. During the meeting I further discussed that other attorneys at Fabian VanCott, who were no longer with the firm, and Judd's criminal counsel, were involved in the prior gathering of documents and that reactivating the database would be necessary to determine what documents were gathered. I indicated that the reactivation and review for privilege would be expensive and given the seizure of Judd's funds and denial of payment of legal fees and places an undue burden on Judd.

38.    I also discussed the scope of the documents and information requested by the Subpoena and explained that the information sought is beyond the duties of the receiver and goes to the merits of the SEC's complaint. Mr. Ewing explained that the Receiver is attempting to determine who the "winners and losers" are among the investors. However, the Receiver nor Mr. Ewing did not offer or propose any means of narrowing the scope of the Subpoena or otherwise attempt in good faith to resolve the objections raised.

39.    During the meeting, we also discussed the fact that the Receiver, an attorney, met with Judd on numerous occasions – even after my reappearance in the matter – without any attorney present, and that Judd provided all of the information that was within his knowledge and possession. The information provided also allowed the Receiver to recover additional assets.

40.    Despite the lack of available funds from Judd, Fabian VanCott has incurred costs in connection with reactivating the database to determine what documents were previously collected in order to determine whether the database contains response documents. A cursory review, conducted in July and August 2024 shows there are over 300,000 documents contained in the database and of those more than 120,000 documents require a privilege review because the

8

documents contain communications between Judd and his attorneys. Fabian VanCott and Judd have incurred the costs of reactivating the database and conducting an initial and cursory review of the documents. I have estimated the cost to reactivate and maintain the database review the documents for responsive documents as well as review for privilege to exceed $50,000.

41.     The first time I saw a return of service of the subpoena was when Exhibit 3, ECF No. 698-4, was filed with the Court.

42.     As of the time of the Receiver's filing of his motion to compel and my filing tis Opposition, Judd has not been served the Subpoena. As noted above, neither my office nor I was authorized to accept service of the subpoena.

I declare under penalty of perjury under the laws of the United States of America and the State of Nevada that the foregoing is true and correct.

Executed on this 13th day of September, 2024.

 /s/ Kevin N. Anderson
                    Kevin N. Anderson, Esq.