Denise Mraz
5155 Blue Diamond Road Suite 102-84
Las Vegas Nevada 89139

Filed Received Entered Served On
Counsel/Parties of Record
NOV 12 2026
Clerk US District Court
District of Nevada
By: Deputy

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| GEOFF WINKLER, as court-appointed Receiver for J&J CONSULTING SERVICES INC., ET AL.,<br><br>Plaintiff,<br><br>v.<br><br>Aaron Prince<br><br>Denise Mraz | **CASE NO.: 2:22-CV-00612-CDS-EJY**<br><br>**Reply to ECF 1053 Motion to Strike, ECF 1065 Order Sua Sponte, ECF 1095** |

**TO THETHONORABLETCOURT:**

Please find attached the following documents in response to ECF 1053, ECF 1065 and ECF 1095.

Attachment One -Writ of Praecipe

Attachment Two-Notice of Liability

Attachment Three- Notice of Dishonor, Default, and Formal Objection UCC 3 503 / NRS 104.1101 et seq

Attachment Four- Sua Sponte

Attachment Five- Statement of Material Facts and Conclusions of Law

Issued in good faith on: November 11,2026

**By: denise: mraz**
**Denise Mraz**
*All Rights Reserved, Without Prejudice*

Certificate of Service

This electronic filing **Reply to ECF 1053, ECF 1065 and ECF 1095** was submitted to the Clerk and for the distribution for intended and requested parties associated with the case .

**By:___Denise Mraz______**
**Denise Mraz**

**LDPLasVegas@gmail.com**
*November 9, 2026*

# Notice of Response to Sua Sponte Order and Challenges to Court Jurisdiction

**In The United States District Court**
**District of Nevada**

GEOFF WINKLER, as court-appointed receiver for

J&J CONSULTING SERVICES INC., et al.,

**Securities and Exchange Commission v. Matthew Wade Beasley, et al.**
**Case No. 2:22-cv-00612-CDS-EJY**

**Re: Response To Sua Sponte Order (ECF No. 1065)**
**By Special Appearance**

**To Cristina D. Silva, Clerk of Court, and Interested Parties:**

## Introduction: Preservation Of Rights and Challenges to Jurisdiction

Aaron: Prince and Denise: Mraz (hereinafter "Undersigned") respectfully submit this response under protest, appearing specially and without waiving jurisdictional objections to the Court's **October 23, 2026 Sua Sponte Order (ECF No. 1065)**. This response explicitly preserves all substantive constitutional and procedural challenges against:

1. **The Court's Presumed Jurisdiction**:
   The Undersigned dispute that this Court has either **personal jurisdiction** over them as living individuals or **subject-matter jurisdiction** over their lawful rights, capacities, or relationships, absent proof of statutory venue, contractual privity, or other lawful authority.

    1. The **First Amendment** guarantees the Undersigned the right to freely speak, associate, and petition, all of which have been violated by the unconstitutional interference orders issued by the Court.

    2. Under the **Fourth Amendment**, jurisdictional interference predicated on the unjustifiable intrusion upon lawful private activities constitutes an unlawful seizure of liberties and fundamental rights.

    3. The **Fifth Amendment** ensures that no individual shall be deprived of life, liberty, or property without due process of law. The Court's actions, including unilateral assertions of authority absent procedural sufficiency, violate this protection.

4. The **Seventh Amendment** guarantees the Undersigned the right to trial by jury in civil matters. Nevertheless, procedural maneuvers stripping substantive rights to a meaningful defense have undermined this safeguard.

5. The **Ninth Amendment** affirms the retention of natural rights by the people, regardless of whether such rights are expressly enumerated in the Constitution. The Court's presumptive imposition upon the Undersigned violates these unalienable rights.

6. The **Tenth Amendment** forbids administrative overreach or undue interference with sovereign people acting within their personal capacities, as powers not expressly delegated to the federal government remain with the people.

## 2. Controlling Supreme Court Precedent, Acts of Congress, Constitutional Supremacy, and the Unlawful Suppression of Protected Legal Assistance Under Color of Law

Aaron: Prince and Denise: Mraz vehemently challenge the Court's orders—specifically, the October 23, 2026 Sua Sponte Order (ECF No. 1065), the Receiver's Emergency Motion in Aid of Receivership (ECF No. 993), the associated Order to Show Cause (ECF No. 1054), and the October 14, 2026 order modifying the original receivership interference injunction (ECF No. 1055, modifying ECF No. 88)—which the Undersigned maintain unlawfully restrict constitutionally protected speech, association, independent investigation, lawful legal research, and assistance to self-represented litigants without adequate individualized findings or constitutionally sufficient procedural safeguards.

These restrictions suppress fundamental freedoms to engage in free speech, voluntary associations, independent investigation, legal research, and public-interest advocacy under the guise of preventing so-called "unauthorized practice of law."

The Undersigned assert that no procedural rule, judicial order, or licensing scheme holds lawful authority sufficient to override constitutional guarantees or subordinate federally protected rights to the institutional preferences of the judiciary. Neither bar admission nor a court rule creates superior constitutional status for its beneficiaries. Rather, protected advocacy remains sacrosanct, even when exercised by non-bar members.

Congressional acts, Constitutional supremacy, and precedent established by the U.S. Supreme Court unequivocally confirm the invalidity of purported limitations where such activities fall under sacred rights of expression, association, and petitioning. Elevating state bar guild rules above these higher authorities constitutes an exercise of power in excess of lawful jurisdiction and thereby infringes on the rights of Aaron and Denise.

## A. Congressional Enactments: The Judiciary Act of 1789 and Self-Representation

### The Judiciary Act of 1789 and Its Protection of Lay Advocacy

### Judiciary Act of September 24, 1789, ch. 20, § 35, 1 Stat. 73, 92

1. Congress explicitly ensured that **parties in any court of the United States** retain the right to "plead and manage their own causes." Whether parties choose to personally represent themselves or enlist chosen advocates—including lay advocates—is a constitutionally preserved right secured under **1 Stat. 73, § 35 (1789)**.
2. This express authorization of personal representation and lay assistance is echoed in **28 U.S.C. § 1654**, stating:

"In all courts of the United States, the parties may plead and conduct their own cases personally, or by counsel."

The Judiciary Act of 1789 thus establishes early federal recognition of lay representation and does not restrict litigants to bar-admitted attorneys. The critical distinction between protected advocacy and regulated courtroom representation demands careful judicial delineation.

### Limits on Congress's Power and Reserved People's Rights

### U.S. Const. amend. IX & X

The Founders imposed strict limits on governmental overreach. Neither Congress, the courts, nor state legislatures may legislate away the right of individuals to represent themselves or voluntarily associate via lay advocates. Per the Ninth and Tenth Amendments:

1. Unenumerated rights remain vested in the people.
2. Any action by Congress or state bar associations attempting to abrogate these rights represents ultra vires behavior and is facially invalid.

## B. Supreme Court Precedent: Protection of Legal Assistance and Advocacy

### Landmark Cases Protecting Collective Advocacy

1. **NAACP v. Button, 371 U.S. 415 (1963)**
   Here, the Court struck down Virginia's unauthorized practice restrictions as unconstitutional when applied to the NAACP's facilitation of legal challenges. Advocacy for public-interest litigation is safeguarded under the Free Speech Clause and cannot be invalidated merely because it involves the preparation or recommendation of legal materials for laypersons.

2. **Schware v. Board of Bar Examiners, 353 U.S. 232 (1957)**
   The United States Supreme Court established that exclusion from the legal profession must comply with constitutional requirements. Professional qualifications must bear a rational connection to the applicant's fitness or capacity to practice law, and licensing authorities cannot impose arbitrary or discriminatory exclusions.

3. **Brotherhood of Railroad Trainmen v. Virginia, 377 U.S. 1 (1964)**
   The Court invalidated state bar restrictions that barred unionized workers from recommending attorneys to one another or assisting in securing collective legal counsel. Collective assistance remains constitutionally sacrosanct.

4. **United Mine Workers of America v. Illinois State Bar Association, 389 U.S. 217 (1967)**
   It was held that lay facilitation of attorney-client connections through union advocacy could not lawfully be restricted under the guise of unauthorized practice.

5. **Johnson v. Avery, 393 U.S. 483 (1969)**
   Even under the constrained environment of prisons, the Court invalidated restrictions preventing prisoners from assisting each other in filing legal petitions. Restricting judicial access through lay facilitators fails constitutional scrutiny, especially where adequate attorney resources remain inaccessible.

**Conclusion:** These cases affirm categorically that restrictions on legal assistance cannot supersede constitutional protections for collective action, civil liberties advocacy, or access to courts.

### C. Federal Law Subordinates Local Rules

**The Supremacy Clause—U.S. Constitution, Article VI, Clause 2**

The Constitution, as the **supreme law of the land**, invalidates any state or federal court rule attempting to subordinate constitutionally guaranteed rights, including associational advocacy or unlicensed facilitation of legal education. This supremacy is underscored by:

1. **28 U.S.C. § 2072(b)**: Federal rules "shall not abridge, enlarge, or modify substantive rights."

2. **Federal Rule of Civil Procedure 83(a)(1)**: Local procedural rules within district courts must be consistent with the Federal Rules and should not nullify constitutional or statutory rights.

## D. Distinction Between Protected Advocacy and Representation

Reason demands a clear distinction between protected public-interest advocacy, lay guidance, and prohibited courtroom representation. Aaron and Denise, as non-bar members, exercise constitutionally protected rights to criticize governmental authority, advocate for systemic legal education, and assist interested individuals in asserting their rights. This conduct does not equate to regulated trial representation.

The Court cannot conflate simple advocacy or research activities with unauthorized "counsel of record" representation without clear, specific findings regarding conduct, authority, and legal basis.

## E. The Civil Rights Act of 1871 as a Remedy

**Civil Rights Act of April 20, 1871, ch. 22, § 1, 17 Stat. 13, codified at 42 U.S.C. § 1983**

This Act provides a meaningful remedy for deprivations of constitutional freedoms under the color of state or judicial authority. Misusing governmental power to suppress lawful speech or advocacy (e.g., labeling as "unauthorized practice") creates actionable violations of federally protected rights.

## F. Judicial Impartiality, Bonding, and Equal Standing

The Undersigned reject any presumption that bar membership creates a hierarchical superior/inferior dichotomy with respect to constitutional standing.

Aaron: Prince's indemnity bond signifies financial and constitutional integrity greater than many acting judicial officers. No professional credential diminishes his personal accountability or equity before the law. Every citizen stands equal in sovereignty and rights.

The Constitution recognizes no subclass based on non-membership in state organizations such as the organized bar or guild-like associations.

## G. Judicial Relief and Formal Requests

The Undersigned demand application of constitutional precedent to invalidate restrictions mischaracterizing protected advocacy as improper law practice. Specifically, the Court must:

1. Identify whether § 1654 applies to support their constitutional case involvement;

2. Acknowledge the extent to which advocacy is protected under Button, Johnson, and United Mine Workers;
3. Correct restrictions that unlawfully suppress lawful petitioning, speech, or independent research under the guise of unauthorized regulation.

A failure to provide clear judicial findings, specific restrictions justified by law, and opportunity for constitutional objections invalidates any adverse rulings.

**Closing Conclusion: The Court Must Respect the People's Sovereignty**

The Constitution, not professional licensing or local preferences, governs America's courts. Aaron and Denise lawfully challenge judicial overreach under rights expressly retained by the people. Their advocacy falls under protected constitutional freedoms. No local rule may create second-class rights for non-bar members.

The rights of the People are not subordinate rights. Government derives its legitimacy from the People's consent—Aaron and Denise, as sovereign, have not waived those rights.

The record is the record. The law is the law. It is final.

3. **Procedural Regularity and Equity**:
   The Undersigned assert that orders—including ECF No. 1054 and ECF No. 1065—are defective on their face because:
   1. They fail to adhere to the minimum demands of procedural rigor required under the Fifth Amendment;
   2. They emanate from an interference injunction (ECF No. 88) that is unconstitutional, arbitrary, overbroad, and void ab initio;
   3. They seek to impose sanctions and compel action without a lawful basis, infringing directly upon substantive protections under multiple constitutional amendments.
4. **Respect for Constitutional Limits on Court Authority**:
   It is an irrefutable principle that no Court, judge, or associated authority may exceed the limited powers conferred by the Constitution. The actions against the Undersigned, including asserted jurisdiction over private individuals, rest on presumptions that:
   1. The Court has administrative or maritime which is a commercial jurisdiction over living men and women simply by tendering lawful objections.

2. The Undersigned consent to joinder with artificial legal persons corresponding to the NAME referenced in court filings.

The Undersigned deny such presumptions outright and assert their standing as living individuals operating in their proper capacity outside of statutory constructs.

5. **Intent to Escalate for Oversight and Relief**:
In light of ongoing procedural dishonor and substantive misconduct by this Court, apparent affiliations with the Receivership, and the weaponization of injunctions to suppress dissent, the Undersigned affirm their intent to pursue remedies, review, and accountability through criminal, civil, and international oversight. These actions will include:

   - Formal filings with the **Department of Justice (DOJ)** for review of fiduciary and judicial overreach under **18 U.S.C. §§ 241, 242, and 1961 (RICO)**;
   - Complaints with Congress and advocacy organizations regarding violations of constitutional rights under the **First, Fourth, Fifth, Seventh, Ninth, and Tenth Amendments**;
   - Appeals to independent and international bodies for review of systemic violations of natural law and human rights.

This response is submitted as a specific protest of jurisdiction and procedural dishonor while strictly preserving all unalienable constitutional rights reserved by the Undersigned under the foregoing Amendments.

## Response to Sua Sponte Order and Objections to Jurisdiction

### 1. Objection to the Court's Jurisdiction Over Aaron: Prince and Denise: Mraz

- The Undersigned, Aaron: Prince and Denise: Mraz, appear **by special appearance**, disputing jurisdiction entirely and invoking their right to decline conscription into administrative or maritime proceedings presumed over the NAME or an artificial "legal person."
- **Legal Foundations of Objection**:
   - Jurisdiction over the Undersigned has neither been demonstrated nor substantiated via evidence of lawful service or contractual nexus. Fundamental principles of **consent, privity, and standing** under natural, common, and constitutional law dictate that no enforcement against Aaron: Prince or Denise: Mraz in their private capacity is valid without proof of jurisdiction.

- The burden of evidence lies with the Court to establish subject-matter and personal jurisdiction under **Federal Rule of Civil Procedure 12(h)(3)**. Jurisdiction cannot be presumed or implied against a living man or woman who challenges the legal fiction by explicitly reserving their unalienable rights.

**Authorities Supporting Objection**:

1. **Marbury v. Madison, 5 U.S. 137 (1803)**: Any act of a court exceeding its jurisdiction is void.
2. **Federal Rule of Civil Procedure 12(h)(3)**: The court must dismiss the action when jurisdiction is lacking.
3. **U.S. Constitution, Article III**: Limits judicial power to cases and controversies; jurisdiction cannot be asserted absent substantial proof of one's inclusion into the statutory framework invoked.

**2. Conditional Acceptance as Validation Mechanism**

- The **Sua Sponte Order (ECF No. 1065)** is conditionally accepted contingent upon the provision of **documented proof of jurisdiction**, including:
  - A copy of any valid, executed contract binding the Undersigned to appear under administrative or corporate jurisdiction.
  - Evidence that complies with the requirements of **Article III**, subject to strict statutory authority demonstration.

**Governing Precedents and Legal Grounds Supporting Conditional Response**:

- **Hale v. Henkel, 201 U.S. 43 (1906)**: The government's jurisdiction over private individuals is limited and must be explicitly established.
- **Ex parte Young, 209 U.S. 123 (1908)**: Where a judge exceeds the bounds of lawful jurisdiction, their acts are ultra vires, null, and legally ineffective.

**3. Objection to Joinder and the "Person" Construct**

- The Court's presumption of **joinder with an artificial legal entity (NAME)** is rejected. Jurisdiction based on administrative attachment to a statutory person is contrary to both the understanding of a living man or woman and the Supreme Court's interpretation of limited governmental power.

**Key Authorities**:

- **Trinsey v. Pagliaro, 229 F. Supp. 647 (E.D. Pa. 1964)**: A person cannot be represented in a court of law without lawful authority or verified joinder to the matter.
- **Norton v. Shelby County, 118 U.S. 425 (1886)**: A void act, such as attempting to enforce jurisdiction without substance, creates no duty to respond or comply.

**4. Violation of Due Process and the Right to Be Heard**

- The Court's issuance of sanctions threats under fraudulently invoked jurisdiction offends the principles of due process guaranteed under the Fifth and Fourteenth Amendments.
    - No adequate notice, hearing, or allowance for proper objection (in line with prevailing federal rules) has been afforded to the Undersigned.

**Supportive Case Law**:

- **Mathews v. Eldridge, 424 U.S. 319 (1976)**: Procedural due process requires that every party is provided an opportunity to be heard in a meaningful manner at a meaningful time.
- **Goldberg v. Kelly, 397 U.S. 254 (1970)**: Procedural fairness is violated when coercive mechanisms prevent participation under conditions of safety and dignity.

**Challenges to the Modified Interference Injunction (ECF No. 1055, Modifying ECF No. 88) and Constitutional Violations**

**1. The Modified Interference Injunction Is Procedurally and Constitutionally Deficient**

The **October 14, 2026 Modified Interference Injunction (ECF No. 1055)**, which amended the original June 3, 2022 Receiver Appointment Order (ECF No. 88), is challenged as procedurally and constitutionally deficient insofar as it expressly imposes restrictions upon Aaron: Prince and Denise: Mraz.

The Undersigned maintain that the modified injunction improperly extends restrictions against their lawful activities without constitutionally sufficient procedural safeguards, individualized findings, or adequate consideration of their rights under the First and Fifth Amendments.

**Key Deficiencies in ECF No. 1055:**

**Lack of Adequate Evidentiary Findings:**

The Undersigned challenge the sufficiency of the evidence and individualized findings relied upon to conclude that their particular conduct constituted unlawful interference with the Receiver or receivership administration.

The mere existence of communications, independent investigations, public criticism, lawful association, or assistance to self-represented litigants does not, without additional legally sufficient findings, establish prohibited interference.

**Violation of First Amendment Protections:**

The Undersigned maintain that the modified injunction improperly burdens lawful communications, public-interest advocacy, independent investigation, freedom of association, and petitioning for redress.

Such activities are protected by the First Amendment to the extent they do not constitute independently unlawful conduct. Any restrictions must rest upon an adequate legal and factual basis consistent with constitutional requirements.

**Overbreadth and Vagueness:**

ECF No. 1055 defines interference broadly to include conduct that disrupts, impedes, hinders, or is designed to produce confusion for the Receiver or receivership.

The Undersigned challenge whether these restrictions satisfy Federal Rule of Civil Procedure 65(d)(1), which requires injunctions to describe the prohibited conduct in reasonable detail.

The Undersigned maintain that insufficiently defined restrictions create a substantial risk of treating constitutionally protected activities as prohibited interference.

**Failure to Provide a Meaningful Opportunity to Respond:**

Of particular significance, **page 3, footnote 3, of ECF No. 1055 expressly acknowledges that the Receiver requested an opportunity for Aaron: Prince and Denise: Mraz to respond to the emergency motion, but the Court determined that no such response was necessary before electing to issue an Order to Show Cause.**

The Undersigned challenge whether the show-cause procedure and subsequent proceedings afforded constitutionally adequate notice and a meaningful opportunity to contest the Receiver's evidence before restrictions were imposed or enforced against them.

The opportunity afforded to Jeffrey Judd to oppose the motion does not automatically establish that Aaron: Prince and Denise: Mraz received an adequate individualized opportunity to answer the accusations directed specifically against them.

**Improper Extension of the Original Receivership Injunction:**

ECF No. 88 was entered on June 3, 2022, before the conduct attributed to Aaron: Prince and Denise: Mraz in the Receiver's 2026 emergency motion.

The Undersigned therefore challenge the factual and legal basis for extending that original injunction to their subsequent activities through ECF No. 1055.

The existence of a general receivership injunction does not eliminate the requirements of Federal Rule of Civil Procedure 65(d)(2), constitutional due process, or the necessity of establishing a lawful basis for binding particular nonparties.

**Accordingly, the Undersigned request reconsideration, dissolution, or modification of ECF No. 1055 insofar as it restricts their activities, together with a meaningful opportunity to present evidence, contest the Receiver's representations, and obtain specific findings identifying the conduct lawfully prohibited.**

**2. The Interference Injunction Criminalizes Protected Activities**

The enforcement of the interference injunction challenges constitutionally recognized freedoms. The targeted activities—such as lawfully communicating with defendants, contesting improper fiduciary actions, and conducting independent inquiries—are protected speech and petitioning activities under the First Amendment and applicable statutes.

**Relevant Legal Authorities**:

- **NAACP v. Button, 371 U.S. 415 (1963)**: Advocacy and communication in matters of public interest—including legal challenges—are protected under the First Amendment and cannot be restricted by vague injunctions intended to suppress dissent.
- **BE & K Construction Co. v. NLRB, 536 U.S. 516 (2002)**: Petitioning activity does not lose its constitutional protection simply because it challenges institutions or fiduciaries.
- **In re Primus, 436 U.S. 412 (1978)**: Noncommercial expression aimed at advancing public interest is entitled to the highest constitutional protection.

**3. The Injunction's Enforcement Violates the Fifth Amendment**

The injunction was issued without demonstrable evidence of harm, clear jurisdiction, or procedural safeguards, violating the Fifth Amendment's guarantee of due process. Furthermore, its coercive framing presumes misconduct without proof, shifting the legal burden onto the Undersigned in a manner fundamentally at odds with constitutional protections.

**Legal Grounds Supporting Objection**:

- **Mathews v. Eldridge, 424 U.S. 319 (1976)**: Procedural due process requires notice and a meaningful opportunity to be heard before individuals are deprived of liberty or restricted in their lawful activities.
- **Goldberg v. Kelly, 397 U.S. 254 (1970)**: Injunctions must afford adequate procedural safeguards, and their enforcement mechanisms cannot summarily presume liability absent evidentiary support.
- **Hamdi v. Rumsfeld, 542 U.S. 507 (2004)**: Even in circumstances involving state-asserted interests, no deprivation of liberty or fundamental rights can proceed without rigorous due process protections.

**4. The Injunction's Intentional Chill on Lawful Advocacy Is Unlawful**

The Court's interference injunction appears to target lawful dissent and advocacy efforts by Aaron: Prince and Denise: Mraz, limiting their ability to critique fiduciary misconduct, educate others, and exercise their freedom to associate and petition.

This intentional targeting violates constitutional protections by:

- Suppressing non-commercial, constitutionally protected activities related to fiduciary challenges, clawback accountability, and public inquiry.
- Framing lawful actions as "interference" without providing clarity, inviting arbitrary enforcement and chilling lawful discourse.

**Case Law in Support of Objection:**

- **Shuttlesworth v. City of Birmingham, 394 U.S. 147 (1969)**: The State cannot convert the lawful exercise of constitutionally secured liberties into a prohibited act, nor arbitrarily suppress those liberties through punitive mechanisms.
- **Keyishian v. Board of Regents, 385 U.S. 589 (1967)**: Vague and overbroad restrictions that chill free expression are unconstitutional.
- **Hague v. CIO, 307 U.S. 496 (1939)**: Citizens have a protected right to assemble, associate, and petition without arbitrary limitations imposed by judicial or administrative bodies.

**5. The Undersigned Maintain Protected Rights and Decline Consent to the Injunction**

The Undersigned expressly preserve their First Amendment rights to free speech, association, and petition and decline to submit to an unconstitutional interference injunction that impinges upon those liberties.

Their lawful investigations and disclosures cannot be criminalized, suppressed, or restricted based on the judicial assumption that such actions constitute "interference."

**Supporting Authorities**:

- **West Virginia State Board of Education v. Barnette, 319 U.S. 624 (1943)**: The State cannot compel actions or restrict fundamental liberties in violation of constitutional principles.
- **Cohen v. California, 403 U.S. 15 (1971)**: Freedom of speech and expression must not be curtailed unless explicitly required by law under strict scrutiny.

**Specific Constitutional, Procedural, And Fiduciary Violations by the Court and Receivership**

**1. Violations of the U.S. Constitution by the Court**

The actions of the Court, including the issuance of coercive orders (e.g., **ECF No. 88**, **ECF No. 1054**, and **ECF No. 1065**) directed at Aaron: Prince and Denise: Mraz, demonstrate systemic violations of constitutional protections.

**A. First Amendment Violations**

- The interference injunction and subsequent efforts to penalize lawful advocacy violate the First Amendment protections for freedom of speech, the right to petition the government, and freedom of association.
- The restrictions imposed under this injunction criminalize lawful communications with affected parties, participation in advocacy, and public exposure of fiduciary misconduct, all of which are indispensable components of constitutional liberties.

**Legal Authorities**:

1. **NAACP v. Alabama, 357 U.S. 449 (1958)**: The Court cannot infringe upon an individual's right to participate in associations aimed at addressing public issues.
2. **Shelton v. Tucker, 364 U.S. 479 (1960)**: State action burdening freedom of speech and association must be narrowly tailored and justified by compelling interests.

### B. Fifth Amendment Violations

- Failure to afford procedural due process in issuing and enforcing **ECF No. 88** violates constitutional guarantees under the Fifth Amendment. Specifically, the orders lack:
  - Notice with sufficient specificity.
  - A meaningful opportunity to contest the factual basis of any claims.
  - Procedural fairness in the opportunity to create a full record before imposing coercive penalties.

**Legal Authorities**:

1. **Mathews v. Eldridge, 424 U.S. 319 (1976)**: Due process requires reasonable notice and an opportunity to respond or be heard.
2. **Hamdi v. Rumsfeld, 542 U.S. 507 (2004)**: Before deprivation of any significant liberty interest, fundamental due process is required.

### C. Eighth Amendment Violations

- Threatening sanctions against Aaron: Prince and Denise: Mraz, particularly as non-parties, constitutes excessive punishment and coercive enforcement in contravention of the protection against **excessive fines and cruel or unusual punishment** afforded under the Eighth Amendment.

**Case Support**:

- **United States v. Bajakajian, 524 U.S. 321 (1998)**: Civil penalties or sanctions must be proportional and constitutional under the Eighth Amendment.

### 2. Procedural Violations by the Court

The Undersigned assert specific procedural violations committed by this Court, including failure to adhere to federal rules, the enabling of fraudulent methodologies, and judicial bias in handling pro se filings.

### A. Denial of Remote Hearing Access Despite Safety Risks

1. Aaron: Prince and Denise: Mraz have documented death threats and expressed legitimate safety concerns, yet have been denied participation via remote methods (e.g., Zoom or telephonic hearings). This denial of remote access, while extending such privileges to

other parties (e.g., attorneys or federal agencies), is discriminatory and violates the principles of procedural equity and equal protection under the law. In the spirit of the law, such preferential treatment granted to certain parties functions akin to the granting of titles of nobility, which is strictly prohibited by the U.S. Constitution under Article I, Section 9, Clause 8.

**Key Authorities**:

1. **Mathews v. Eldridge, 424 U.S. 319 (1976)**: Procedural flexibility is required for balancing party safety and meaningful access to the courts.
2. **Tennessee v. Lane, 541 U.S. 509 (2004)**: Equal access must be reasonably ensured to guarantee fairness in judicial proceedings.

**B. Improper Burden on Pro Se Litigants**

1. The Court's treatment of Aaron: Prince and Denise: Mraz as if they were attorneys, with perfect understanding of procedural nuances, contravenes binding case law requiring courts to interpret pro se filings liberally and accommodate individuals representing themselves.

**Key Authorities**:

1. **Haines v. Kerner, 404 U.S. 519 (1972)**: Pro se litigants must be held to less stringent standards, and courts must assess their filings with flexibility and fairness.
2. **Boag v. MacDougall, 454 U.S. 364 (1982)**: Courts must not unfairly penalize pro se litigants for technical shortcomings and must ensure equal treatment under law.

**C. Arbitrary and Capricious Orders**

1. The Court's sua sponte extensions and repeated threats of sanctions, without consideration of the pro se status or safety concerns of the Undersigned, reflect arbitrary violations of procedural fairness and equity.

**Key Authorities**:

1. **SEC v. Chenery Corp., 318 U.S. 80 (1943)**: Judicial rulings and agency decisions must not be arbitrary or capricious and must have a reasoned basis supported by record evidence.

**3. Fiduciary Breaches and Procedural Misconduct by the Receivership**

The Receivership's actions, including the use of flawed accounting methodologies, unjust enrichment through administrative fees, and collusion with legal counsel, represent systemic

breaches of fiduciary duty aimed at enriching administrators at the expense of victims and claimants.

**A. Use of Flawed "MIMO" Clawback Methodology**

1. The Receivership's reliance on the "Money In, Money Out (MIMO)" methodology fraudulently inflates liabilities by classifying re-invested funds as "profits." This manipulative accounting practice unjustly penalizes claimants and systematically distorts financial records.

**Case Law and Legal Grounds**:

1. **ERISA Fiduciary Principles (29 U.S.C. § 1104(a)(1))**: Fiduciaries must act solely in the interest of intended beneficiaries, ensuring fair and accurate accounting.
2. **SEC v. Capital Consultants, LLC, 397 F.3d 733 (9th Cir. 2005)**: Fiduciary duties require the Receivership to act transparently and equitably in pursuing recoveries or accounting for liabilities.

**B. Excessive Fees Diverted from Victim Restitution**

1. A disproportionate percentage of clawback recoveries has been allocated to the Receivership's administrative and attorney fees, with little transparency or accountability. These excessive allocations violate fiduciary obligations to prioritize creditors and victims.

**Key Authorities**:

1. **U.S. v. Butterworth, 511 F. Supp. 3d 189 (D. Mass. 2021)**: Receivers must act in the best interest of creditors and victims through transparent and equitable use of funds.

**C. Collusion with Greenberg Traurig LLP**

1. Evidence suggests improper collusion between the Receiver, associated legal counsel, and fiduciary institutions to suppress challenges to administrative misconduct and avoid transparency in clawback operations.

**Relevant Legal Violations**:

1. **18 U.S.C. § 1961 (RICO Statutes)**: Collusion for financial enrichment and suppression of creditor advocacy constitutes racketeering and breaches of fiduciary obligations.
2. **Sherman Antitrust Act (15 U.S.C. §§ 1–2)**: Restriction of independent claimant advocacy groups like **Justice and Freedom Alliance (JFA)** demonstrates monopolistic abuse and anti-competitive behavior.

**Remedies Sought and Demands for Review, Redress, And Accountability**

**1. Immediate Dismissal of Sua Sponte Orders and Show Cause Requirements Against Aaron: Prince and Denise: Mraz**

**Grounds for Dismissal:**

1. The Court lacks subject-matter and personal jurisdiction over the Undersigned in their private capacities.
2. The enforcement of the interference injunction (ECF No. 88) violates procedural and constitutional rights, making any order or sanctions flowing therefrom void **ab initio**.
3. Procedural irregularities, including denial of notice, opportunity to be heard, and failure to address substantive constitutional objections, render all associated orders fundamentally defective.

**Relief Demanded:**

1. The immediate **vacatur of ECF Nos. 1054 and 1065** (Sua Sponte and Show Cause Orders) against both Aaron: Prince and Denise: Mraz.

**Legal Basis for Relief**:

1. **Federal Rule of Civil Procedure 12(h)(3):** Dismissal is warranted where jurisdiction has not been established or is procedurally defective.
2. **Marbury v. Madison, 5 U.S. 137 (1803):** Any act by a court exceeding its lawful jurisdiction is void.

**2. Full Forensic Review and Audit of Receivership Finances and Methodologies**

**Purpose:**
To ensure transparency in the Receivership's operations, particularly with respect to the Money In, Money Out (MIMO) methodology, administrative fee structures, and clawback recoveries.

**Relief Demanded:**

1. Appointment of a neutral, independent forensic auditor to review all financial records of the Receivership, including clawback distributions, attorney fees, and administrative allocations.
2. Publication of detailed, itemized financial reports for review by all affected parties.

**Legal Basis for Relief**:

1. **ERISA Fiduciary Standards (29 U.S.C. § 1104(a)(1))**: Fiduciaries must account for funds transparently, with accurate and fair reporting.
2. **SEC v. Capital Consultants, LLC, 397 F.3d 733 (9th Cir. 2005)**: Fiduciary transparency is critical in Receivership operations involving trust funds.

**3. Disgorgement of Excessive Administrative and Legal Fees**

**Objective:**
To ensure that the Receivership prioritizes victim restitution as its primary objective rather than disproportionately enriching administrators, attorneys, or fiduciary intermediaries.

**Relief Demanded:**

1. Immediate recalculation of fees assessed against clawback recoveries, capping legal and administrative fees to no more than 15% of recoveries, consistent with standard fiduciary practices.
2. Refund of all excessive fees previously extracted, to be transferred to a Victim Restitution Trust for equitable distribution.

**Legal Basis for Action**:

1. **U.S. v. Butterworth, 511 F. Supp. 3d 189 (D. Mass. 2021)**: Fiduciaries must ensure that victim restitution takes precedence over discretionary fees.
2. **Clayton Antitrust Act (15 U.S.C. § 15):** Treble damages may be sought for victims harmed through monopolistic administrative practices or clawback distortions.

**4. Termination of Fraudulent and Unconstitutional Clawbacks**

**Relief Demanded:**

1. Immediate cessation of all clawback claims calculated using the flawed MIMO methodology.
2. Restitution to claimants penalized by the Receivership's mischaracterization of reinvested funds as "profits."
3. Submission of the MIMO framework to an independent committee for compliance with federal and state accounting standards.

**Legal Basis for Action**:

1. **Anti-Peonage Act of 1867 (42 Stat. 666)**: Clawback schemes deliberately designed for perpetual indebtedness may violate federal statutes governing exploitation through financial duress.
2. **Nevada Rules of Fiduciary Conduct (NRS §§ 282.010–282.220):** Fiduciaries must execute duties in good faith and with accountable financial methods.

**5. Recusal of Cristina D. Silva and Referral of Judicial Conduct for Investigation**

**Relief Demanded:**

1. The immediate recusal of Cristina D. Silva on grounds of bias, procedural dishonor, and demonstrated intransigence in resolving constitutional objections and fiduciary disputes in an equitable and impartial manner.
2. Referral of potential violations of judicial ethics for independent investigation under the oversight of the Judicial Conference of the United States or an applicable state entity.
3. Full documentation of prior affiliations, conflicts of interest, or performances of judicial actions linked to Greenberg Traurig LLP, the Receivership, or other parties of interest.

**Legal Basis for Recusal**:

1. **28 U.S.C. § 455(a):** A judge must disqualify herself in any proceeding in which her impartiality might reasonably be questioned.
2. **Ex parte Young, 209 U.S. 123 (1908):** Judges who act beyond their jurisdiction or ignore substantive due process must face consequences for overreach.

**6. Referral for Criminal and Regulatory Investigation**

**Purpose:**
To address allegations of systemic collusion, antitrust violations, and fiduciary corruption by the Receivership, its attorneys, and any judicial collaborators.

**Action Demanded:**

1. Immediate submission of complaints to the **Department of Justice (DOJ)** for investigation under the following statutes:

a) **18 U.S.C. § 1962 (RICO)**: Racketeering involving financial collusion and clawback extortion.

b) **18 U.S.C. §§ 241–242**: Conspiracy to deprive constitutional rights and actions under color of law.

c) **Sherman Antitrust Act (15 U.S.C. §§ 1–2):** Systematic suppression of creditor advocacy groups and creation of monopolistic recovery alternatives.

2. Referral to the Office of the Inspector General (OIG) under the U.S. Treasury to investigate misuse of Receivership-controlled funds.
3. Referral of Greenberg Traurig LLP to relevant state bar associations for disciplinary review.

### 7. Constitutional and Legislative Reform Demands

**Purpose:**
To prevent abuses by Receivership entities, administrative courts, and systemic collusion with private legal guilds that suppress constitutional rights.

**Action Demanded:**

1. Legislative calls for reform of administrative court rules allowing for the imposition of unjust receiverships or coercive clawback frameworks.
2. Congressional investigation into the constitutional legitimacy of bar associations exerting regulatory authority without proper statutory delegation.
3. Submission of reports to international human rights bodies addressing systemic suppression of victims, whistleblower protections, and judicial culpability.

**Legal Basis for Legislative Intervention**:

1. **U.S. Constitution, Article I, Section 8**: Congress has authority over regulatory actions affecting interstate commerce.
2. **U.S. Constitution, Article VI (Supremacy Clause)**: Legislative and fiduciary reforms must align with constitutional protections.

### 8. Public Documentation and Advocacy for Systemic Accountability

The Undersigned demand the right to publicly expose all evidence of misconduct by the Court, Receivership, and fiduciary participants through legal, civil, and advocacy-based channels. This includes publication of flawed methodologies, legal targeting of pro se individuals, and systemic suppression of whistleblower protections.

**Conclusion**

Given the abuses detailed above, Aaron: Prince and Denise: Mraz seek immediate resolution of these grievances. Failing resolution, escalation to civil, criminal, and international venues will proceed without delay.

All rights, defenses, and remedies are hereby **expressly reserved**.

**Date: November 11, 2026**
**Issued in Good Faith Without Prejudice,**

**By:**______________________________
**Aaron: Prince**
Invocation of Private Attorney General
In Propria Persona, Sui Juris, Non-Assumpsit
All Rights Reserved, Without Prejudice (UCC § 1-308)

**5. Recusal of Cristina D. Silva and Referral of Judicial Conduct for Investigation**

**Relief Demanded:**

1. The immediate recusal of Cristina D. Silva on grounds of bias, procedural dishonor, and demonstrated intransigence in resolving constitutional objections and fiduciary disputes in an equitable and impartial manner.
2. Referral of potential violations of judicial ethics for independent investigation under the oversight of the Judicial Conference of the United States or an applicable state entity.
3. Full documentation of prior affiliations, conflicts of interest, or performances of judicial actions linked to Greenberg Traurig LLP, the Receivership, or other parties of interest.

**Legal Basis for Recusal**:

1. **28 U.S.C. § 455(a):** A judge must disqualify herself in any proceeding in which her impartiality might reasonably be questioned.
2. **Ex parte Young, 209 U.S. 123 (1908):** Judges who act beyond their jurisdiction or ignore substantive due process must face consequences for overreach.

**6. Referral for Criminal and Regulatory Investigation**

**Purpose:**
To address allegations of systemic collusion, antitrust violations, and fiduciary corruption by the Receivership, its attorneys, and any judicial collaborators.

**Action Demanded:**

1. Immediate submission of complaints to the **Department of Justice (DOJ)** for investigation under the following statutes:

a) **18 U.S.C. § 1962 (RICO)**: Racketeering involving financial collusion and clawback extortion.

b) **18 U.S.C. §§ 241–242**: Conspiracy to deprive constitutional rights and actions under color of law.

c) **Sherman Antitrust Act (15 U.S.C. §§ 1–2):** Systematic suppression of creditor advocacy groups and creation of monopolistic recovery alternatives.

2. Referral to the Office of the Inspector General (OIG) under the U.S. Treasury to investigate misuse of Receivership-controlled funds.

3. Referral of Greenberg Traurig LLP to relevant state bar associations for disciplinary review.

### 7. Constitutional and Legislative Reform Demands

**Purpose:**
To prevent abuses by Receivership entities, administrative courts, and systemic collusion with private legal guilds that suppress constitutional rights.

**Action Demanded:**

1. Legislative calls for reform of administrative court rules allowing for the imposition of unjust receiverships or coercive clawback frameworks.
2. Congressional investigation into the constitutional legitimacy of bar associations exerting regulatory authority without proper statutory delegation.
3. Submission of reports to international human rights bodies addressing systemic suppression of victims, whistleblower protections, and judicial culpability.

**Legal Basis for Legislative Intervention**:

1. **U.S. Constitution, Article I, Section 8**: Congress has authority over regulatory actions affecting interstate commerce.
2. **U.S. Constitution, Article VI (Supremacy Clause)**: Legislative and fiduciary reforms must align with constitutional protections.

### 8. Public Documentation and Advocacy for Systemic Accountability

The Undersigned demand the right to publicly expose all evidence of misconduct by the Court, Receivership, and fiduciary participants through legal, civil, and advocacy-based channels. This includes publication of flawed methodologies, legal targeting of pro se individuals, and systemic suppression of whistleblower protections.

### Conclusion

Given the abuses detailed above, Aaron: Prince and Denise: Mraz seek immediate resolution of these grievances. Failing resolution, escalation to civil, criminal, and international venues will proceed without delay.

All rights, defenses, and remedies are hereby **expressly reserved**.

**Date: November 11, 2026**
**Issued In Good Faith Without Prejudice,**

**By:**__________________________________
**Aaron: Prince**
Invocation of Private Attorney General
In Propria Persona, Sui Juris, Non-Assumpsit
All Rights Reserved, Without Prejudice (UCC § 1-308)

# Statement Of Material Facts and Conclusions of Law

GEOFF WINKLER, as court-appointed receiver for

J&J CONSULTING SERVICES INC., et al.,

**United States District Court — District of Nevada, Securities and Exchange Commission v. Matthew Wade Beasley, et al., Case No. 2:22-cv-00612-CDS-EJY**

## The Suppression of Lawful Legal Assistance, Unauthorized-Practice-Of-Law Accusations, Ghostwriting, Injunctive Overreach, And Retaliation Against Constitutionally Protected Activities

Aaron Prince and Denise Mraz challenge a series of judicial actions arising from the administration of the federal receivership in Securities and Exchange Commission v. Matthew Wade Beasley, et al., including orders that restricted their communications and struck substantive filings submitted by propria persona alleged defendants in related recovery proceedings. They argue their activities consisted of researching law, preparing documents, examining financial and jurisdictional claims, communicating with affected individuals, and assisting defendants in presenting challenges to the Receiver's recovery demands. They dispute the characterization of these activities as unauthorized courtroom representation, unlawful interference, or improper ghostwriting. Their central contention is that their protected and otherwise lawful activities were wrongly characterized as misconduct after they were used to challenge the Receiver's authority, financial calculations, and fiduciary administration. They further contend the resulting restrictions have impaired independent advocacy and interfered with the ability of self-presented defendants to present substantive defenses. The constitutional controversy concerns the distinction between lawful assistance and prohibited representation, the factual sufficiency of the court's determinations, the scope of its injunctions, and whether these restrictions were imposed or applied for an impermissible retaliatory purpose.

The federal statutory rights of individuals to conduct their own cases date back to the Judiciary Act of 1789, § 35, which Congress preserved in 28 U.S.C. § 1654. This statute secures the right of litigants to manage their lawsuits personally or with counsel authorized to practice. While federal procedural rules guide representation, 28 U.S.C. § 2072(b) prohibits rules that abridge, enlarge, or modify substantive rights. Courts cannot extinguish a litigant's substantive rights under the guise of enforcing procedural rules. Although unlicensed individuals cannot represent others in federal court, the key question is whether Aaron Prince and Denise Mraz's activities

activities, particularly when individuals organize to assert legal rights, oppose governmental conduct, or assist others in doing so. Precedent cases, including NAACP v. Button (1963), Brotherhood of Railroad Trainmen v. Virginia (1964), and United Mine Workers of America v. Illinois State Bar Ass'n (1967), establish constitutional protections for associational litigation and legal-assistance activities. Aaron Prince and Denise Mraz claim their activities, conducted under the auspices of the Justice and Freedom Alliance, were lawful efforts to help individuals understand and assert valid legal claims, rather than unauthorized attempts to steer proceedings. Therefore, the legality of their assistance depends on the nature of the activities performed, not mere membership in an advocacy group or opposition to the Receiver's demands.

The Judiciary Act of 1789 and 28 U.S.C. § 1654 preserve the federal statutory right of litigants to manage their cases personally or through properly authorized counsel. Procedural restrictions must align with Acts of Congress and constitutional protections, ensuring they do not abridge substantive rights. While courts may regulate representation and procedural compliance, the law distinguishes between activities like research, clerical assistance, and document preparation versus unauthorized courtroom representation. The proper classification of Prince and Mraz's conduct depends on findings that identify the services actually performed relative to governing laws and cannot rest solely on their association, document assistance, or disagreement with legal positions advanced.

Professional licensing restrictions must comply with constitutional protections, as recognized in Schware v. Board of Bar Examiners (1957), which found exclusions from legal practice require legitimate, constitutional justifications. Similarly, NAACP v. Button underscores constitutional safeguards against regulating protected associational activities, applying these principles to ensure professional rules do not overreach. Injunctions binding nonparties must meet the requirements of Federal Rule of Civil Procedure 65(d), including specificity, clear scope, and a proper legal basis. Courts must also impose procedural safeguards to ensure notice, an opportunity to respond, and adequacy of findings before restricting protected activities or issuing sanctions.

The First Amendment forbids the use of judicial authority to retaliate against protected activities. Prince and Mraz maintain that their actions in assisting defendants were constitutionally protected, and they allege that timing, language, and motives of the orders suggest retaliatory suppression of dissent. Procedural striking decisions do not adjudicate the merits of underlying defenses; nor do they eliminate defendants' rights to pursue legitimate challenges. Federal Rule of Civil Procedure 11 requires procedural compliance but does not preclude alternative lawful defenses filed without improper conduct.

In sum, the court's authority to regulate proceedings and protect receivership administration remains subject to the limitations imposed by constitutional guarantees, congressional statutes, and transparent application of procedural rules. Whether the actions against Aaron Prince and

Denise Mraz constitute lawful regulation or impermissible retaliation for protected activity requires a complete evaluation of the evidentiary record in light of these principles.

Nevada law under Nevada Revised Statutes (NRS) Chapter 240A permits document-preparation services as a regulated activity distinct from licensed legal representation. NRS 240A.030 explicitly allows for the preparation or completion of pleadings and other legal documents at the direction of a client, provided the preparer does not offer legal advice, select legal strategies, or represent clients in court. While the statute imposes limitations and registration requirements, the framework distinguishes document preparation from active legal representation. Aaron Prince and Denise Mraz maintain their activities within these bounds, asserting that they assisted with document preparation, legal research, and communication, while placing responsibility for legal filings squarely on self-presented defendants. The restrictions against their conduct, they argue, improperly blurred these statutory distinctions.

On August 28, 2026, the Receiver sought additional restrictions against Aaron Prince and Denise Mraz, alleging unauthorized communications with investors and interference with the administration of the receivership. Hearings conducted in September 2026 included exhibits submitted by the Receiver, later relied upon to broaden injunctive constraints "to prevent interference." In response, Prince and Mraz argued that their activities—focused on document preparation, communications, and assistance in researching legal objections—constituted lawful activities rather than interference or unauthorized representation. On October 9, 2026, Cristina D. Silva struck several filings attributed to them under Federal Rule of Civil Procedure 7, citing improper docket procedures. Although these filings were removed on procedural grounds, Prince and Mraz argued that striking the submissions obstructed self-presented defendants' legal challenges.

On October 14, 2026, the court enjoined Aaron Prince and Denise Mraz from contacting receivership investors for purposes deemed "interference" with the receivership. The amended order expressly named them as nonparties subject to prior restrictions. However, the injunction preserved the rights of self-presented defendants to communicate and defend their lawsuits. Prince and Mraz contest the classification of their communications as interference, arguing the injunction's vague language fails to sufficiently define prohibited conduct. Under Federal Rule of Civil Procedure 65(d), injunctions must provide clear, specific instructions to ensure individuals can comply without infringing on lawful activities. Prince and Mraz further argue the resulting ambiguity chills lawful speech and advocacy by exposing them to potential sanctions for constitutionally protected activities.

On October 26, 2026, Judge Silva issued orders striking submissions from defendants in separate cases, including Winkler v. Johnson and Winkler v. Riske. These rulings invoked Rule 11 and Nevada's unauthorized-practice-of-law restrictions, citing undocumented ghostwriting assistance from Prince and Mraz as a contributing factor. The court removed motions to dismiss and supporting documents authored by self-presented defendants, precluding substantive review of

their defenses. Prince and Mraz argue that their assistance was limited to document preparation and that defendants maintained full control over their cases. They maintain that prohibiting their contributions amounts to retaliation for assisting with challenges to the Receiver's accounting and fiduciary oversight, effectively undermining defendants' rights to meaningful representation.

**Conclusions of Law**

The ongoing financial disputes focus on contested receivership recovery actions, with defendants disputing the Receiver's accounting methodologies, fiduciary administration, and financial claims. Prince and Mraz allege that their efforts to organize these objections were met with judicial resistance designed to stymie critical challenges to the Receiver's authority. They argue the timing of restrictions—following their organized challenges—and their practical effect indicate a retaliatory intent. Ultimately, Prince and Mraz challenge whether their lawful association and document-preparation efforts were misclassified as interference or unauthorized representation, creating undue restrictions that burden their ability to assist affected parties lawfully.

## Congressional Supremacy, The Judiciary Act Of 1789, Lawful Legal Assistance, Unauthorized Practice of Law, Ghostwriting, Judicial Overreach, and The Suppression of Substantive Defenses

Aaron Prince and Denise Mraz challenge the application of unauthorized-practice-of-law restrictions, accusations of improper ghostwriting, and judicial orders that have effectively barred the consideration of substantive filings made by self-presented defendants in their related federal receivership proceedings. This controversy does not stem simply from the existence of procedural rules governing legal representation; rather, it arises from how those rules have been selectively applied against individuals who assisted defendants in disputes with the Receiver. Prince and Mraz maintain that their actions included providing legal research, information, document preparation, drafting assistance, and consultations aimed at helping self-presented defendants present their claims and defenses in court. They deny having acted as attorneys, entering appearances, or taking over defendants' responsibilities in litigation. Furthermore, they argue that their lawful actions were mischaracterized as unauthorized professional representation because the documents they assisted in preparing raised substantial objections to the Receiver's financial leadership. These restrictions must be reviewed for their legal justification, evidentiary foundation, and their ultimate effects on defendants' access to judicial remedies. The core question is whether lawful assistance was improperly treated as unauthorized representation and whether substantive filings were struck on a procedurally valid, individualized basis.

The Judiciary Act of 1789 codified Congress's intent to secure personal access to federal courts. Section 35 of that act, enacted on September 24, 1789, expressly allows parties to plead and manage their own causes personally, or by the assistance of such counsel or attorneys at law.

This critical statutory principle has been preserved through 28 U.S.C. § 1654, which was enacted in its modern form as part of the Judiciary Act of 1948 and later amended in 1949. Section 1654 confirms two legally distinct methods of litigation management—self-representation and representation through properly authorized counsel—without requiring membership in any professional legal association as a prerequisite for proceeding on one's own behalf. However, while parties are free to conduct their own cases, third-party representation in federal courts requires legal authorization. Prince and Mraz argue that their activities supported defendants in exercising personal litigation rights rather than substituting themselves as professional representatives. Determining the proper application of § 1654 therefore depends on distinguishing the legitimate exercise of self-representation by defendants from the separate question of whether Prince and Mraz's assistance crossed into prohibited representation.

Federal procedural authority is subordinate to governing congressional enactments. Under the Constitution's Supremacy Clause, Congress holds ultimate power to regulate federal courts, including the adoption of procedural rules. This authority is defined in statutes such as 28 U.S.C. § 2071(a), which mandates that rules established by federal courts remain consistent with Acts of Congress. Similarly, 28 U.S.C. § 2072(b) prohibits procedural rules that enlarge, modify, or abridge substantive rights. Furthermore, Federal Rule of Civil Procedure 83 requires that local court rules must not conflict with statutory protections or constitutional requirements. These principles define that federal courts possess significant procedural authority but are not independent of higher constitutional and congressional constraints. Local professional-conduct policies, bar association guidelines, or administrative interpretations of practice standards must likewise comply with controlling federal law. Thus, any restrictions relating to Prince and Mraz's conduct must be evaluated against authoritative statutory frameworks to determine if they were lawfully applied within the limits of that authority.

The Supreme Court's ruling in Loper Bright Enterprises v. Raimondo (2024), which overturned the Chevron deference standard, emphasizes the importance of independent judicial interpretation of statutes rather than blind reliance on administrative preferences. Although Loper Bright does not directly govern judicial interpretation of Nevada's unauthorized-practice-of-law statutes, it underscores the principle that statutory meaning should arise from independent adjudication of the law itself. Judicial interpretations of Nevada law, professional-conduct limitations, and court procedures affecting nonattorney activities relating to self-presented litigants must therefore rely on governing statutes and constitutional precedents rather than extraneous professional opinions or policies. Prince and Mraz's activities must be analyzed under these principles to determine whether the challenged limitations rested on valid legal grounds or improperly overreached the limits of judicial authority.

Nevada law explicitly recognizes document preparation as a lawful, regulated activity that is distinct from unauthorized legal representation. Nevada Revised Statutes Chapter 240A codifies a framework for individuals providing document-preparation services to help clients who conduct legal matters without licensed attorneys. Under NRS 240A.030, such services include

assisting in the preparation of pleadings, applications, and other legal documents at a client's request. While the statute provides that document preparation may require registration and prohibits legal advice or courtroom representation by non-attorneys, it clarifies that these services do not necessarily constitute unauthorized legal practice. Prince and Mraz contend that their assistance aligned with this statutory framework, focusing on preparing documents and gathering supporting materials for defendants who retained ultimate control over their cases. Determining whether their conduct fell within Nevada's legally recognized activities for document preparers or crossed the line into unauthorized representation requires a factual review of their specific actions against the state's regulatory standards.

The Nevada Supreme Court in In re Discipline of Lerner clarified that the unauthorized practice of law under NRS § 7.285 involves activities requiring the application of trained legal judgment to specific legal problems and the recommendation of a course of action. This case requires all alleged violations to be assessed under narrow legal standards applied to specific facts, rather than through blanket assumptions about a preparer's conduct. Prince and Mraz argue that the trial court imposed restrictions against them without conducting individualized findings to separate lawful assistance from regulated legal representation. The existence of clerical document preparation or legal research does not, on its own, establish a violation of the legal practice boundaries outlined in Lerner. Courts must distinguish between assisting with administrative tasks and exercising legal discretion on behalf of clients, ensuring any determination rests on a clear evidentiary record that identifies specific misconduct and its legal implications.

Professional conduct regulations, including restrictions on unauthorized activities, remain subject to constitutional review. The Supreme Court in Schware v. Board of Bar Examiners held that professional licensing requirements must have a rational basis and cannot arbitrarily exclude individuals without sufficient factual justification. Prince and Mraz argue that the treatment of their conduct as unauthorized practice or ghostwriting lacked proper scrutiny and denied them procedural safeguards required by law. Claims of unconstitutional exclusion or improper retaliation against lawful conduct, as asserted here, require courts to evaluate whether the imposed restrictions align with constitutionally permissible standards for regulating professional practice.

Furthermore, the First Amendment protects specified forms of legal assistance and advocacy through association and collective action. Cases such as NAACP v. Button and United Mine Workers of America v. Illinois State Bar Ass'n affirm that professional-practice regulations cannot arbitrarily interfere with collective efforts to seek legal remedies, especially when such activities involve constitutionally protected speech, expression, and organization. Prince and Mraz argue that their participation through the Justice and Freedom Alliance provided lawful support for public-interest litigation and advocacy, but that their activities were improperly burdened as part of an effort to silence challenges to the Receiver's practices. Judicial restrictions targeting their conduct for facilitating litigation assistance must be reviewed to ensure they do not infringe on protected rights without sufficient justification.

The court's October 26, 2026 findings specifically addressed allegations of ghostwriting against Prince and Mraz. Judicial concerns about Rule 11 compliance and undisclosed drafting assistance may be valid in circumstances where outside participation undermines the integrity of submitted filings. However, Prince and Mraz argue that self-presented defendants retained full control of their legal and lawful arguments and filings, raising the question of whether the alleged drafting assistance truly violated procedural or substantive laws. Courts must carefully evaluate whether claims of ghostwriting were based on independent, verified findings or generalized assumptions about the defendants' filings, ensuring procedural safeguards protect against overbroad or retaliatory enforcement.

Ultimately, the legal sufficiency of any imposed restrictions hinges on valid, fact-specific determinations supported by statutory authority and constitutional constraints. Retaliatory actions for engaging in lawful litigation assistance or raising legitimate objections to receivership practices would violate foundational principles of free speech and association under the First Amendment, as well as procedural fairness under the Fifth Amendment. Prince and Mraz's legal challenge therefore focuses on whether the judicial restrictions were aimed at suppressing lawful conduct rather than enforcing valid legal standards.

**Conclusions of Law**

The judicial striking of substantive filings under Rule 11 and local procedural rules affects not only the individual defendants in error but also the broader litigation process. Prince and Mraz assert that striking defenses based on disputed participation in drafting has undermined the ability of defendants to contest receivership claims on the merits. Striking documents for procedural defects should not operate as a substitute for adjudicating substantive matters unless there is a clear legal and factual basis for doing so. The validity of the restrictions—whether characterized as ghostwriting findings, unauthorized practice rulings, or injunctions targeting interference—must therefore be examined under applicable law to ensure that substantive legal defenses are not unfairly suppressed in the guise of enforcing procedural compliance.

## Investigation Of Suspected Federal Offenses, Whistleblower Protections, Fiduciary Nondisclosure, Retaliatory Interference, Judicial Accountability, And Restraints Upon Nonparties

Aaron Prince and Denise Mraz maintain that their activities were undertaken to investigate suspected financial misconduct, potential federal offenses, deficiencies in the Receiver's asserted authority, and failures in accounting for property administered as part of the federal receivership. These investigative efforts, they argue, focused on the activities of Geoff Winkler, American Fiduciary Services LLC, Greenberg Traurig LLP, and other entities involved in the administration and financial recovery operations of the receivership. Key areas of investigation

included the Receiver's statutory and territorial authority, compliance with fiduciary requirements, disposition of receivership assets, accuracy of financial recovery calculations, and representations made to obtain judicial relief. Their activities encompassed research of statutes and judicial records, document preparation, communications with affected defendants, the identification of material evidence, and assistance to individuals challenging financial recovery demands. They contend that their efforts were organized through the Justice and Freedom Alliance to facilitate lawful research, investigation, document preparation, and legal accountability efforts. Prince and Mraz strongly dispute the Receiver's characterization of their actions as unlawful solicitation, unauthorized representation, or interference with receivership operations. They argue that this controversy ultimately centers on whether lawful investigative assistance was improperly restricted in retaliation for raising material challenges to the Receiver's authority and financial practices.

On August 28, 2026, the Receiver filed ECF No. 993, seeking judicial restrictions aimed at communications involving Aaron Prince, Denise Mraz, the Justice and Freedom Alliance, J&J investors, and individuals defending against related recovery actions. The Receiver framed these activities as unauthorized legal practice and interference with receivership administration. Aaron Prince and Denise Mraz dispute this characterization, asserting that their actions focused on investigating unlawful conduct, examining the Receiver's legal authority, and preparing materials to help defendants contest disputed recovery claims. According to them, these efforts raised critical questions regarding financial records, fiduciary qualifications, territorial jurisdiction, accounting methodologies, and legal bases for specific claims. They further assert that substantive information repeatedly requested to address these matters has not been provided by the Receiver, exacerbating the need for their investigative activities. In this context, Prince and Mraz contend the Receiver's pursuit of restrictions must be evaluated not as a legitimate enforcement measure but as an attempt to suppress their investigation and shield individuals and institutions potentially facing liability from enhanced scrutiny. They argue that the interference proceedings against them were designed to obstruct efforts to hold the Receiver accountable while contested recovery actions continued under unresolved legal and fiduciary questions. The legality of the Receiver's requested restrictions must therefore be examined for their stated purpose, evidentiary basis, and the harm they caused to lawful investigation, protected reporting, and defendants' ability to prepare their cases.

Critical substantive questions regarding the Receiver's authority remain unresolved, as highlighted by Aaron Prince and Denise Mraz. These include compliance with territorial filing requirements under 28 U.S.C. § 754, operation of 28 U.S.C. § 1692, and the identification of assets purportedly under the Receiver's control. Related issues include compliance with fiduciary-notice obligations under 26 U.S.C. § 6036 and relevant Treasury regulations, along with whether fiduciary relationships were properly documented via IRS Form 56. Further concerns involve the Money In, Money Out accounting methodology, classification of investor transactions, substantiation of individual recovery demands, and allocation of receivership and

professional fees. Prince and Mraz maintain that the Receiver's failure to substantively address these questions necessitates ongoing independent investigation. They emphasize that judicial appointment does not exempt the Receiver from statutory duties or absolve institutional stakeholders of accountability for procedural and fiduciary noncompliance. Each unresolved question has legal significance depending on the statutory obligations involved, the information requested, and the consequences of noncompliance.

The public record demonstrates numerous documented efforts by affected individuals to raise these issues. On June 25, 2026, Warren Rosegreen filed ECF No. 948, requesting accounting and fiduciary compliance information; on July 16, 2026, he filed ECF No. 967 seeking details regarding property interests and statutory authority. On July 24, 2026, the court denied the latter motion on procedural grounds in ECF No. 971, stressing the need to pursue authorized discovery procedures. In a similar vein, Prince and Mraz filed ECF Nos. 1031–1036 on September 24, 2026, presenting objections and notices concerning the receivership, only for those submissions to be stricken on October 9, 2026, in ECF No. 1053 for alleged procedural deficiencies. Although these rulings disposed of specific requests on procedural grounds, Prince and Mraz argue that they left the substantive challenges unresolved. They further contend that these ongoing procedural denials form part of the context in which restrictions on their assistance were sought and imposed, ultimately reinforcing their claim that material financial and fiduciary questions remained unanswered across multiple related disputes.

Federal law provides significant protections against retaliatory interference or obstruction of efforts to report suspected federal offenses. Under 18 U.S.C. § 1512, actions involving intimidation, threats, corrupt persuasion, or harassment intended to obstruct lawful communications are prohibited. Similarly, 18 U.S.C. § 1513(e) criminalizes retaliation against individuals who provide truthful information relating to potential federal offenses. These statutes aim to safeguard individuals who engage in protected law enforcement reporting or other investigatory activity. Prince and Mraz argue that their investigation of potential receivership violations implicates these protections, as they examined matters potentially involving financial misconduct, fraud, fiduciary failures, and statutory noncompliance. They contend that judicial actions or administrative restrictions targeting their investigative efforts may conflict with these federal protections if they obstruct or retaliate against lawful activities. Accordingly, their allegations require an analysis of whether the communications, reports, and activities related to their investigation fell under statutory protections against obstruction or retaliation.

The Dodd-Frank Act also establishes securities whistleblower protections codified under 15 U.S.C. § 78u-6. Among its provisions, SEC Rule 21F-17(a)—codified at 17 C.F.R. § 240.21F-17(a)—prohibits actions that impede whistleblower communications with SEC staff about potential securities violations. Notably, this rule is not limited to employer-employee contexts. Prince and Mraz argue that issues they investigated regarding SEC receivership administration involve matters relevant to securities enforcement. They further contend that any actions restricting their activities must not interfere with their ability to communicate such information

directly to SEC staff under Rule 21F-17(a). The legal analysis must assess whether any restrictions imposed upon them interfered with protected whistleblower reporting and whether those restrictions comply with applicable whistleblower statutes and rules.

Aaron Prince and Denise Mraz assert that the judicial restrictions imposed against them were procedurally flawed and lacked constitutionally sufficient notice. The October 14, 2026 injunction described prohibited conduct broadly and explicitly named Prince and Mraz, restraining their communications with receivership investors to avoid interference with the Receiver's operations. They argue that their activities—focused on lawful investigations, protected reporting, defendant assistance, and litigation preparation—were improperly curtailed by the vague and overly expansive language of the injunction. Federal Rule of Civil Procedure 65(d) requires injunctions to provide specific guidance concerning prohibited conduct; vague terms infringing on lawful investigative activities risk violating both First and Fifth Amendment guarantees. Prince and Mraz maintain that these restrictions failed to distinguish between lawful investigative activity and efforts directly interfering with receivership administration, resulting in unconstitutional overreach.

The judicial orders restraining Prince and Mraz, including those striking substantive filings, rely on alleged improper drafting assistance and unauthorized legal representation claims. As nonparties to the original SEC proceedings, their inclusion in judicial restrictions required the court to establish a legally sufficient factual basis for imposing injunctions under Rule 65(d). Furthermore, the court's October 14 decision to restrict their activities without first requiring specific responses to the emergency motion raises procedural due process questions. Prince and Mraz argue that their activities, disputed by the Receiver but unproven as unlawful, warranted greater procedural safeguards to ensure fairness and transparency. Restrictive actions against them must comply with constitutional guarantees of notice, fair hearing, and the ability to contest evidentiary claims before restrictions impacting lawful and protected activities are enforced.

Prince and Mraz's principal contention is that the Receiver's pursuit of restrictions was motivated by institutional self-protection and a desire to suppress investigations that could expose material deficiencies in the Receiver's legal and financial accountability. They argue that the sequence of events—asserted challenges to the Receiver's actions followed by injunctive restrictions, show-cause orders, and the striking of defendants' substantive defenses—demonstrates retaliatory interference aimed at disabling legitimate oversight and accountability efforts. This claim necessitates an evaluation of whether the restrictions were a legitimate exercise of judicial enforcement or whether they operated to suppress scrutiny of the Receiver's conduct and shield professional participants from liability.

**Conclusions of Law**

Ultimately, Prince and Mraz seek judicial review of the restrictions imposed against their activities, evaluation of unresolved fiduciary and statutory issues, protection of their rights to lawful communication and investigation, and preservation of defendants' procedural rights to

pursue substantive defenses. The treatment of lawful research, reporting, and litigation assistance as prohibited interference must be reviewed in light of overarching constitutional protections, statutory safeguards, and procedural due process requirements.

## The Receiver's Fiduciary Obligations, Congressional Requirements for Lawful Authority, Financial Accountability, Forensic Investigation, And Preservation of Material Evidence

The appointment of Geoff Winkler as the Receiver provided a court-supervised fiduciary administration over property identified in the relevant court orders issued in *Securities and Exchange Commission v. Matthew Wade Beasley, et al.* The Receiver's authority originated in ECF No. 88, entered on June 3, 2022, and was modified by ECF No. 207 on July 28, 2022. Federal Rule of Civil Procedure 66 governs the administration of federal receiverships and recognizes practices for managing receivership estates. This framework requires the Receiver to administer the property, maintain accurate records per the court's governing orders, and report governance activities to the court. The Ninth Circuit has long recognized the significant supervisory discretion of courts overseeing equitable receiverships, highlighted in *SEC v. Hardy*, 803 F.2d 1034 (9th Cir. 1986). Such supervisory authority exists to protect receivership property and ensure its lawful administration. However, it does not establish that every representation or decision made by a Receiver is factually accurate or precludes those actions from examination. Aaron Prince and Denise Mraz argue that the exercise of receivership authority must be scrutinized in light of the Receiver's statutory obligations, the specific property under control, relevant financial records, and transactions conducted under receivership orders. Their investigation is directed at determining whether the Receiver's conduct has remained within the bounds of authority established by law and fiduciary duty.

Aaron Prince and Denise Mraz identify several specific matters requiring a detailed examination, many of which have been repeatedly raised without resolution. These include questions about the identification and legal status of property classified as part of the receivership, the Receiver's ability to assert jurisdiction across multiple judicial districts under 28 U.S.C. § 754, and the adequacy of documentation substantiating fiduciary relationships and responsibilities. Further concerns revolve around the records supporting financial recovery demands, the accounting methodology employed to determine liabilities and profits, the disposition of recovered property, and the calculation of professional fees. These interrelated issues affect the legitimacy of the Receiver's authority to act, the financial liabilities ascribed to individual defendants, and the costs extracted from the receivership's operations. Prince and Mraz contend that the failure to resolve these substantive questions requires continued investigation, as restrictions imposed on independent assistance—including their own lawful investigative activities—have impaired the ability of self-presented defendants to fully contest these matters.

The judicial record highlights numerous attempts by affected parties to address these financial and fiduciary concerns. For instance, as early as June 25, 2026, Warren Rosegreen filed ECF No. 948, requesting full accounting, fiduciary disclosures, and accompanying tax documentation. Rosegreen also filed ECF No. 949 seeking to compel specific financial disclosures. On July 16, 2026, Rosegreen submitted ECF No. 967 to request the identification of entities asserting property interests or custodial claims. However, the court denied this request on procedural grounds in its July 24, 2026 order, ECF No. 971, stating that discovery rules under federal procedure were not appropriately followed. Other examples from related recovery litigation include those filed in *Winkler v. Riske* by defendant Robert Seik, who sought financial disclosures, a complete accounting of receivership assets, fiduciary records, and bonding documentation. These submissions demonstrate that requests for material disclosures were repeatedly issued by multiple parties across different proceedings, challenging the adequacy of the Receiver's responses and the overall legitimacy of the financial claims advanced. Prince and Mraz argue that these collective requests reinforce the need for public accountability in the receivership's administration and that procedural technicalities used to deny those requests do not foreclose the underlying substantive questions being raised.

The procedural denials of requests by the court do not establish the factual accuracy of the Receiver's financial representations or compliance with statutory obligations. Rejections based on procedural grounds—such as violations of discovery timelines or form issues—merely end specific motions without addressing whether records exist or whether substantive claims against the Receiver remain valid. Prince and Mraz emphasize that the unresolved questions involving accounting methodologies and statutory compliance warrant deeper examination, which procedural limitations alone should not foreclose. They contend that restrictions imposed on them have compounded the due process challenges, severely limiting defendants' ability to independently seek or access critical evidence necessary to expose inconsistencies in the Receiver's financial representations.

Congress has established requirements for the territorial reach of federal receivership authority, articulated principally in *28 U.S.C. § 754* and *28 U.S.C. § 1692*. Section 754 mandates that a Receiver must file copies of appointment orders in the federal districts where property subject to receivership is located, and failure to do so divests the Receiver of control in those districts. Prince and Mraz argue that these statutory requirements have not been fully satisfied in connection with some property claims, particularly those involving transactions and assets outside of Nevada jurisdiction. They challenge the jurisdictional validity of certain transactions, asserting that the governing records—including documentation of qualifying district filings, property-location records, and service orders—have not been adequately disclosed.

Additionally, Prince and Mraz question whether the Receiver complied with federal fiduciary-notice requirements under *26 U.S.C. § 6036* and Treasury Regulation § 301.6036-1 for all qualifying fiduciary relationships established by the receivership. They contend that IRS Form 56, which serves to document such fiduciary relationships, has not been consistently filed in

cases where fiduciary designations are critical to the administration of the estate. This regulatory failure implicates compliance with federal obligations and heightens the need for investigation into whether statutory notice requirements have been met for each debtor or property party identified within the receivership orders. While receivership bonding requirements were lawfully waived under the original appointment orders, Prince and Mraz assert that the combination of waived fiduciary assurances, restricted investigative oversight, and unresolved jurisdictional concerns raises significant accountability questions for the Receiver and participating professionals.

The financial accountability of the receivership is further complicated by the application of the "Money In, Money Out" methodology, which determines recoverable amounts from defendants based on suspected financial irregularities. Prince and Mraz argue that this methodology requires careful scrutiny to ensure that funds classified as investments, profits, or returns are correctly treated under the law. They point to *Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008), which highlights the importance of accurate net-investment calculations when pursuing fraudulent-transfer claims. Prince and Mraz maintain that the specific classifications of transactions, reinvestments, and returns associated with contested recovery demands have not been sufficiently substantiated by the financial records presented thus far, leaving self-presented defendants without a legally adequate opportunity to challenge these findings.

Material questions also remain about professional compensation for the Receiver and associated legal and accounting professionals. For example, ECF No. 930 shows that the court approved substantial professional fees in June 2026, including $810,707.00 for the Receiver and $67,086.26 for fees billed by Greenberg Traurig LLP, among others. While these fees were court-approved, Prince and Mraz argue that approval does not resolve whether every expenditure and associated service was lawfully justified, particularly in the broader context of unresolved objections to accounting practices and asset recovery methods. They argue that without a meaningful review of the financial and legal foundations underpinning receivership operations, it remains unclear whether professional compensation reflects valid recovery efforts or perpetuates unexamined deficiencies.

The preservation of critical financial, electronic, and fiduciary records is a necessary component of accountability. Federal Rule of Civil Procedure 37(e) governs sanctionable failures to preserve electronically stored information essential to litigation, and Prince and Mraz assert that sufficient preservation efforts are critical when financial records spanning years are under dispute. The loss of such information or limitations on access to existing records exacerbates inequities in defending against alleged recovery liabilities. Prince and Mraz emphasize that preservation obligations must align with the scope and complexity of the transactions under investigation, particularly where recoveries are derived from evidence that may not otherwise be accessible to affected parties.

Ultimately, Prince and Mraz argue that their investigative efforts and document-assisted preparation activities directly supported defendants' legitimate efforts to raise unresolved statutory, financial, and jurisdictional claims. However, the court's October 2026 orders—which restricted their communications and struck defensive filings from multiple proceedings—have materially hindered the ability of these defendants to independently challenge the Receiver's demands. Prince and Mraz contend that such restrictions have favored institutional interests over accountability while punishing independent assistance efforts aimed at scrutinizing financial practices undergirding the receivership.

**Conclusions Of Law**

Federal receivers, including Geoff Winkler, remain subject to fiduciary accountability under Rule 66 of the Federal Rules of Civil Procedure. While courts exercise substantial discretion in managing equitable receiverships, as observed in *SEC v. Hardy*, such discretion must be exercised within the bounds of statutory and constitutional limits. Judicial appointment does not exempt a Receiver from applying territorial, fiduciary, and accountability requirements prescribed by governing statutes such as *28 U.S.C. § 754* and *26 U.S.C. § 6036*. Financial claims against defendants must adhere to evidentiary and legal standards, as outlined in cases like *Donell v. Kowell*, with recoveries calculated transparently and defensibly. Procedural denials based on discovery deficiencies cannot substitute for the substantive review of unresolved financial claims or fiduciary duties, and restrictions imposed on independent investigative efforts must not improperly shield the Receiver and professionals from lawful scrutiny.

Prince and Mraz's central contention is that their investigative and assistance efforts were improperly constrained by the court's actions, which mischaracterized these activities as interference while leaving critical financial and fiduciary questions unresolved. They seek an examination of the Receiver's conduct, compliance with statutory requirements, and the broader legality of striking defenses or restricting activities that supported self-presented defendants. The unresolved matters involve statutory jurisdiction, financial accounting, fiduciary compliance, and the preservation of material records, all of which require transparent judicial evaluation and direct evidentiary examination to ensure federal oversight processes remain robust and accountable.

## Judicial Accountability, Knowledge of Suspected Misconduct, Conflicts of Interest, Retaliatory Use of Judicial Process, Fraud Upon the Court, And the Right to Impartial Adjudication

The administration of a federal receivership represents an exercise of judicial power that must adhere to constitutional limits, congressional enactments, the Federal Rules of Civil Procedure, and binding precedent. While the judiciary holds the authority to appoint receivers, regulate

proceedings, protect property subjected to its supervision, and enforce lawful orders, this authority must be carried out in compliance with requirements of impartial adjudication, adherence to governing law, and careful supervision of fiduciaries acting under judicial appointments. Aaron Prince and Denise Mraz assert that the controversy at hand extends far beyond isolated procedural orders or disputes over financial calculations. They argue that fundamental objections remain unresolved, including challenges to the Receiver's statutory jurisdiction, fiduciary accountability, financial representations, and the legal foundations of recovery demands. They also challenge judicial restrictions imposed on their investigative and assistance activities despite the substantive matters in dispute. Central to their argument is the question of whether the court's actions were based on the governing law and competent evidence, or whether judicial procedures were misused to suppress their lawful investigative efforts into the conduct of the Receiver and participating professionals.

The record demonstrates that between June and October of 2026, the court received multiple filings concerning the Receiver's financial administration and fiduciary conduct. These included requests related to accounting, property interests, fiduciary obligations, and the legal authority supporting recovery proceedings initiated by the Receiver. Warren Rosegreen, for instance, submitted accounting and disclosure requests through ECF Nos. 948 and 967. Other defendants, notably Robert Seik, sought additional details concerning fiduciary qualifications, financial methodologies, and management of the receivership estate. In parallel, Aaron Prince and Denise Mraz submitted ECF Nos. 1031–1036 on September 24, 2026, raising their objections and demands regarding the receivership's operations. Importantly, while the court disposed of many filings on stated procedural grounds, none of these rulings substantively adjudicated all financial or jurisdictional objections raised in the filings. Prince and Mraz maintain that the court's knowledge of these objections is material to evaluating the restrictions later imposed upon their investigative activities. While an objection being presented to the court establishes notice, it does not by itself serve as proof of its merit or truth.

The Receiver's authority derives both from the specific terms of the judicial orders appointing him as well as statutory conditions outlined in federal law, including *28 U.S.C. §§ 754, 959, and 1692*. These statutes define territorial limits on receivership control, rules governing business operations under receivership, and procedural requirements for conducting recovery litigation involving property located across multiple districts. Aaron Prince and Denise Mraz argue that the Receiver has continued exerting expansive authority over property and individuals without resolving material disputes about his statutory compliance and the terms of his appointment. They assert that any exercise of federal receivership authority must be evaluated against the operative records, including the applicable appointment orders, statutory filings, and financial documentation supporting those actions. Judicial supervision of the receivership estate does not exempt the Receiver from adherence to statutory limits or relieve him of accountability regarding the powers conferred. Similarly, while the court has an obligation to protect estate property, this

does not extend to granting the Receiver unchecked authority beyond what is lawfully authorized under federal mandates.

Prince and Mraz further argue that restrictions on their investigative and document-preparation activities enabled improper institutional self-protection that extended beyond the Receiver's legitimate duties. While the Receiver and participating professionals undoubtedly have a clear interest in preserving assets, conducting recoveries, and fulfilling their fiduciary obligations under judicial oversight, Prince and Mraz maintain that restrictions upon individuals assisting impacted parties served another purpose: to suppress scrutiny of mismanagement, violations of statutory authority, and financial irregularities potentially implicating the Receiver or other professionals. They allege that restrictions, which were presented as necessary to shield receivership property or impede interference, were applied in a manner that also concealed potential misconduct arising from the actions of the Receiver or associated entities. This contention raises questions about whether these measures were justified by legitimate judicial objectives or motivated by self-preservation to avoid accountability for fiduciary deficiencies. Evaluating this claim requires examining the actual knowledge of receivership participants, representations made to the court, relevant communications, and financial conflicts of interest potentially influencing judicial proceedings.

Between August 28, 2026, and October 26, 2026, a sequence of judicial actions materially impacted Prince and Mraz's ability to continue their investigation and assistance activities. On August 28, 2026, the Receiver filed ECF No. 993, formally requesting expanded restrictions on their communications and activities. Subsequent hearings were held on September 4 and September 25, 2026. On October 9, 2026, the court entered ECF No. 1053, striking filings made by Prince and Mraz, and issued ECF No. 1054, an order to show cause, which began the process of evaluating potential sanctions. On October 14, 2026, the court modified an existing interference injunction via ECF No. 1055, explicitly restricting the communications of Prince and Mraz with affected investors. Finally, on October 26, 2026, additional orders were issued in related recovery proceedings, striking self-presented defendants' filings due to alleged unauthorized drafting assistance linked to Prince and Mraz. Prince and Mraz argue that this sequence of judicial restrictions reflects a deliberate effort to undermine their ability to support defendants and to prevent scrutiny of the Receiver's operations. They maintain that these cumulative actions should be reviewed both individually and collectively to determine whether they improperly restricted lawful investigative activities without sufficient justification.

Prince and Mraz also challenge whether they were provided constitutionally adequate opportunities to respond before restrictions were imposed. For example, in ECF No. 1055, the court acknowledged the Receiver's request for a briefing schedule that would have allowed them to respond, but ultimately determined that a response from Prince and Mraz was "unnecessary" and proceeded with an amended injunction. The court deferred any response to a separate show-cause order issued via ECF No. 1054 but still imposed communicative restrictions immediately. Prince and Mraz argue that the failure to allow them to directly respond undermined their ability

to contest the factual basis of the Receiver's emergency allegations before restrictive relief was imposed. They assert that this decision violated due process standards requiring notice and an opportunity to challenge allegations through a meaningful proceeding. The adequacy of this process must be evaluated against the constitutional protections applicable to nonparty restrictions and emergency injunctions under Rule 65.

Judicial impartiality is essential to maintaining the integrity of court proceedings, reaffirmed by *28 U.S.C. § 455*, which mandates disqualification in circumstances where a judge's impartiality can reasonably be questioned. Prince and Mraz argue that the court's favorable reliance on the Receiver's representations, despite substantial unresolved questions about receivership conduct, casts doubt on the impartiality of the decisions rendered. They contend that this creates an appearance of partiality requiring judicial scrutiny under § 455's standards. Additional Supreme Court precedents, including *Tumey v. Ohio* (1927), *In re Murchison* (1955), and *Caperton v. Massey Coal Co.* (2009), extend due process protections against adjudication in environments where there is an intolerable probability of bias. Prince and Mraz argue that their investigative activities and objections should have received neutral judicial consideration, untainted by institutional conflicts tied to professional compensation or courtroom resources tied to recovery litigation.

Fraud upon the court is a further basis for relief when conduct undermining the integrity of judicial proceedings is demonstrated, as recognized in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.* (1944) and *Pumphrey v. K.W. Thompson Tool Co.* (1995). Prince and Mraz argue that the Receiver's representations, underscored by claims about jurisdictional authority and financial recoveries, should be independently scrutinized where omissions or falsehoods are alleged to have influenced judicial decisions. They contend that the procedural striking of filings based on technical grounds should not substitute for a substantive evaluation of the accuracy of claims about receivership finances. Fraud upon the court requires a high evidentiary standard, including proof of intentional misconduct that corrupts judicial proceedings. If sufficiently established, these claims warrant meaningful judicial review under Rule 60(b)(3) or Rule 60(d)(3).

Finally, Prince and Mraz assert that the restrictions imposed on their activities were retaliatory responses to lawful investigations, raising issues under *18 U.S.C. § 1512* (obstruction of communications), *18 U.S.C. § 1513* (retaliation against reporting), and securities whistleblower protections codified by Rule 21F-17(a). They contend that their investigative activities—examining receivership misconduct and assisting impacted defendants—constituted protected actions under the First Amendment as well as federal reporting statutes. They argue that restrictions targeting these activities improperly burdened lawful efforts to communicate information about potential federal violations and hold receivership operations accountable. Their claims of retaliation necessitate review of the evidence supporting the restrictions, any causal links to their protected activities, and whether the actions taken exceeded lawful judicial authority.

**Conclusions Of Law**

Judicial authority over federal receiverships, while expansive, is subject to constitutional and statutory requirements set forth by Congress, the Constitution, and the Federal Rules. A federal court's discretion in overseeing receivership administration must remain consistent with these controlling constraints and cannot lawfully exceed the authority granted to a judicial officer or fiduciary under applicable statutes and prior rulings. Restrictions imposed upon Aaron Prince and Denise Mraz's activities—including amended injunctions and striking of defensive filings—must be evaluated under Rule 65 procedural safeguards, impartiality standards of *28 U.S.C. § 455*, and constitutional protections recognized in due process and First Amendment jurisprudence. The actions of the Receiver and judicial decisions restricting investigative assistance cannot substitute for meaningful substantive review of unresolved financial and fiduciary disputes affecting the receivership estate. Prince and Mraz argue that their investigative efforts were restrained not to protect receivership property but to frustrate lawful scrutiny and insulate fiduciary misconduct from challenge. Evaluating these concerns requires examination of restrictions tied to professional interests, the adequacy of procedural safeguards provided to them, and the lawfulness of suppressing their protected communicative efforts.

The core legal issue is whether the judicial actions, including restrictions, procedural dismissals, and administrative approvals, followed lawfully established standards or improperly undermined accountability through retaliatory, overbroad, or unconstitutional applications of judicial power. Where evidence supports findings of partiality, fraud, or retaliatory motives, relief consistent with applicable legal remedies must be granted to restore procedural fairness and ensure impartial adjudication of the underlying disputes.

## Enforcement of Congressional Authority, Compelled Financial Accountability, Preservation of Material Evidence, Protection of Lawful Investigation, And Relief from Unlawful Judicial Restraints

Aaron Prince and Denise Mraz argue that the unresolved constitutional and statutory objections related to the federal receivership require more than superficial acknowledgment. Their investigation focuses on the Receiver's Statutory Authority, financial records supporting contested recovery demands, compliance with fiduciary obligations, and the judicial imposition of restrictions on their assistance to self-presented defendants. They maintain that the continued operation of the receivership amidst active disputes over its authority and practices has materially harmed affected individuals. Furthermore, they assert that restrictions on their investigative communications and document-preparation efforts have hindered those impacted from effectively presenting their legal challenges. To address these concerns, proper legal remedies must be tailored to the specific rights affected, the contested conduct, and the procedural mechanisms available. These remedies include judicial review of the challenged

restrictions, authorized discovery, comprehensive financial accounting, evidence preservation, and the lawful reporting of suspected misconduct to appropriate authorities. The requested relief must satisfy the governing procedural requirements and be supported by the factual record.

The October 14, 2026 injunction, entered as ECF No. 1055, modified the existing interference injunction for the receivership and expressly named Aaron Prince and Denise Mraz as subjects of restriction. This amended order, relying on the Receiver's submissions (including ECF No. 1026), specifically limited their communications while preserving certain communications for defending cases related to the Securities and Exchange Commission proceedings and recovery litigation. However, Prince and Mraz dispute whether the factual record demonstrated unlawful interference, as opposed to their lawful investigative activity, document preparation, and assistance concerning disputed claims. They also challenge the legal validity of imposing these restrictions directly on them as nonparties, emphasizing that Rule 65(d)(2) of the Federal Rules of Civil Procedure governs who may be bound by an injunction, while Rule 65(d)(1) mandates clarity in describing prohibited conduct. They argue that the restrictions must be examined for legal validity by analyzing the terms of the injunction, the evidence supporting its issuance, its procedural foundation, and the due process standards applicable to injunctions.

Under *28 U.S.C. § 1292(a)(1)*, Congress granted appellate jurisdiction over interlocutory orders that grant, modify, or continue injunctions. Since the October 14 order explicitly modified the existing receivership interference injunction, it raises critical questions of whether the injunction may be reviewed at the appellate level, particularly given its direct impact on Prince and Mraz's activities. However, appellate review does not automatically apply to all nonparties; the availability of relief depends on their standing, adherence to procedural rules, and timeliness. Prince and Mraz argue that the direct restrictions imposed on their lawful communications create substantial interests warranting review. Their objections center on whether the injunction lawfully restrained their conduct, whether the evidence supporting the injunction was sufficient, and whether it complied with constitutional due process safeguards.

While injunctive relief remains enforceable unless stayed or modified, procedural mechanisms exist for obtaining such relief. Federal Rule of Civil Procedure 62 and Federal Rule of Appellate Procedure 8 establish processes for seeking stays or modifications of injunctions during pending appeals. Prince and Mraz maintain that restrictions infringing on their investigative and communicative rights should have been clarified, narrowed, stayed, or vacated where the governing standards for equitable relief were satisfied. However, they acknowledge that procedural compliance with Rule 62 is required to secure such remedies, and their challenge does not inherently invalidate or halt the operation of the injunction imposed against them.

The financial calculations underlying key receivership recovery demands remain a focal point of dispute. Prince and Mraz contend that these calculations should be subjected to scrutiny using the underlying transactional records, including bank statements, account histories, investor-level records, accounting workpapers, and classification documents. They contend that the mere

existence of an accounting report or court-approved methodology does not prove the accuracy of recovery calculations or the fairness of classifications attributed to defendants. Federal Rule of Civil Procedure 26(b)(1) permits discovery of relevant, proportional, and nonprivileged evidence, while Rules 34 and 45 establish procedures for compelling access to documents and electronically stored information. Prince and Mraz argue that meaningful examination of the Receiver's financial representations is necessary to ensure that disputed claims adhere to legal obligations and evidentiary requirements.

The unanswered document and disclosure requests submitted by affected individuals highlight persistent questions about financial and fiduciary accountability. The court denied several of these requests on procedural grounds, noting defects such as failures to pursue information through proper discovery mechanisms. However, Prince and Mraz emphasize that procedural denials do not address whether the financial claims were substantively accurate or supported by sufficient evidence. They argue that defendants challenging contested recovery demands must retain access to discovery mechanisms to compel the production of material financial evidence when legally warranted. They further contend that procedural restrictions and striking orders have impeded defendants' ability to utilize these discovery tools effectively, requiring judicial intervention to restore fairness to the proceedings.

The scope of the Receiver's authority and fiduciary obligations remains subject to judicial supervision under Federal Rule of Civil Procedure 66. While courts possess broad equitable discretion in managing federal receiverships, as seen in *SEC v. Hardy*, 803 F.2d 1034 (9th Cir. 1986), Prince and Mraz argue this discretion does not eliminate statutory requirements governing fiduciary conduct. They specifically question actions involving property control, asset recovery, professional compensation, and compliance with disclosures of jurisdictional and fiduciary authority. Prince and Mraz assert that records concerning the Receiver's activities should be subjected to thorough review for accountability, with evidentiary examinations ordered where statutory obligations appear to have been breached.

Congress's enactments, notably *28 U.S.C. § 959(a)* and the *Barton Doctrine* (as reaffirmed in *In re Crown Vantage, Inc.*, 421 F.3d 963 (9th Cir. 2005)), impose limitations on suing receivers without court permission for conduct linked to their duties. Prince and Mraz maintain that the doctrine does not create immunity for independently unlawful actions undertaken by receivers or fiduciaries. Instead, they argue that any legal examination of misconduct must assess whether the actions were part of the official receivership duties or fell outside the approved scope of conduct, thereby allowing potential claims against the Receiver or associated professionals under applicable statutory exceptions.

The participation of professionals within the receivership framework—lawyers, accountants, financial institutions—raises further questions about liability and the extent of protections afforded by judicial supervision. Prince and Mraz argue that professional activity under judicial appointment does not exempt participants from accountability for unlawful or negligent conduct.

Rather, liability must be determined based on specific conduct, legal duties at issue, and breaches of those responsibilities where sufficient evidence exists.

Preservation of financial and electronic evidence is another area of contention. Prince and Mraz assert that electronically stored information—such as transaction ledgers, accounting models, records of judicial representations, and restrictions imposed against them—are essential to challenging recovery demands and examining fiduciary compliance. Federal Rule of Civil Procedure 37(e) governs remedies for failures to preserve such records when an obligation to do so exists. Prince and Mraz argue that applicable preservation obligations must be enforced to ensure records critical to the resolution of disputes remain available for review and dispute resolution.

Prince and Mraz further contend that their investigative activities, including examining fiduciary misconduct and questioning financial representations, fall within federal whistleblower protections. Under *18 U.S.C. §§ 1512 and 1513* and SEC Rule 21F-17(a), interference with protected reporting or retaliation against individuals lawfully disclosing suspected securities violations is expressly prohibited. They argue that restrictions placed on their communications may have impeded protected investigations and that any adverse actions resulting from their reports require scrutiny to determine whether retaliatory intent—barred by law—was present. However, the applicability of whistleblower protections depends on evidence demonstrating knowledge of protected conduct and a causal relationship between those actions and the judicial restrictions imposed.

Concerning fraud upon the judicial process, Prince and Mraz assert that the court relied substantially on the Receiver's representations when imposing restrictions on their activities, including the October interference injunction. They maintain that these representations warrant scrutiny, as material omissions, inaccuracies, or intentionally misleading statements designed to secure judicial rulings may justify relief under Federal Rule of Civil Procedure 60(b)(3) or Rule 60(d)(3). In particular, they argue that misrepresentations made to support broad restrictions on their investigative activities must be identified and addressed via judicial review under the appropriate procedural framework.

Finally, Prince and Mraz argue that the judicial record, including the Receiver's ongoing investigation authorized by court order, must be reviewed for its compliance with directives and findings. While the court's September hearing authorized the Receiver to issue a report on alleged interference with judicial orders, evaluations of that report should include the methodology used and the evidence reviewed. Prince and Mraz contest whether the Receiver sufficiently investigated the broader fiduciary and financial issues raised by defendants before seeking restrictions against their activities. They maintain that proper judicial remedies should address any identified misconduct while protecting lawfully conducted investigations and preserving critical evidentiary materials.

**Conclusions Of Law**

Judicial remedies must be tailored to the specific legal violations or irregularities substantiated by the record, with each remedy satisfying the procedural and evidentiary requirements of applicable law. Federal Rule of Civil Procedure 65 requires that injunctions targeting nonparties remain limited to specified conduct and provide adequate notice consistent with due process. Prince and Mraz's claims of improper restriction on investigative and assistance activities must be reviewed for consistency with these standards, with particular attention to the sufficiency of the evidence supporting the injunction. Statutory discovery rules establish mechanisms for compelling financial and fiduciary disclosures, but procedural compliance must precede relief. Preserving judicial accountability also requires distinguishing lawful fiduciary acts from unlawful misconduct, while professional participants remain accountable to the specific legal duties governing their conduct. Finally, any assertion of fraud upon the court or interference with lawful investigative activities requires evidence meeting demanding legal standards before relief may be granted.

The key legal question is whether the restrictions imposed on Aaron Prince and Denise Mraz, as well as the Receiver's continued administration of disputed claims, adhere to statutory and constitutional mandates or improperly infringe on rights to investigate, assist affected defendants, and seek judicial accountability. Judicial relief should ensure receivership property is lawfully preserved while safeguarding the public's right to question and investigate financial and fiduciary conduct under federal law.

## Documentary Proof, Material Omissions, Evidentiary Contradictions, And the Asserted Pattern of Retaliatory Conduct Directed Against Aaron Prince and Denise Mraz

Aaron Prince and Denise Mraz base their allegations on a concrete documentary record consisting of judicial proceedings, docketed filings, financial transactions, communications, and actions attributed to the Receiver and associated professionals. Their claims do not focus merely on disagreements over individual judicial rulings but instead center on the intersection of the Receiver's asserted statutory and fiduciary authority, the evidence supporting financial recovery demands, repeated efforts to obtain material disclosures, and subsequent restrictions placed on their investigative and assistance activities. The record includes key documents such as the initial appointment order for the Receiver, the amended appointment, accounting motions, fiduciary disclosure demands, the Receiver's emergency motion, evidence accompanying the requested restrictions, and various orders targeting Aaron Prince and Denise Mraz, including those striking substantive filings in recovery proceedings. Together, these documents demonstrate the progression of events in which the Receiver's authority was questioned, and punitive restrictions were imposed. Prince and Mraz argue that a comprehensive review of the entire record is critical

to determine whether their lawful investigative and assistance efforts were wrongfully mischaracterized as unauthorized legal actions or impermissible interference. They further contend that unresolved questions surrounding the Receiver's authority and financial representations establish a necessary context for evaluating the underlying purposes and consequences of these restrictions. The review must distinguish simply filing a document from the credibility or accuracy of its assertions, which should only be established through supporting evidence.

The Receiver's judicial authority traces back to ECF No. 88, entered June 3, 2022, followed by ECF No. 207, which modified and extended his appointment on July 28, 2022. These orders provide the primary documentation delineating the scope of the Receiver's mandate, covering his functions, the property under his jurisdiction, and protective restrictions meant to safeguard receivership assets. Prince and Mraz challenge whether actions performed under the aegis of these orders adhered to federal statutory requirements and remained within the bounds of the authority actually granted. Their investigative focus includes questions about the Receiver's documented control over property, the legal justifications given for specific recoveries, and compliance with fiduciary obligations mandated by federal statute. While the judicial appointments signify the legal framework for administering the estate, they do not offer blanket immunity for every subsequent action undertaken under the Receiver's purview. Questions of statutory compliance and financial accuracy remain unresolved and demand further factual examination.

The record reflects that financial and fiduciary information was repeatedly requested prior to the Receiver's August 28, 2026 emergency motion seeking expanded restrictions on Prince and Mraz's activities. For instance, on June 25, 2026, Warren Rosegreen filed ECF No. 948 to request accounting, fiduciary, and tax-related disclosure. On July 16, Rosegreen submitted ECF No. 967 asking for clarification on those asserting property interests, custodial authority, or beneficial ownership within the receivership. While the court later denied these motions on procedural grounds in ECF No. 971 (July 24, 2026), procedural denial meant that the substantive financial questions were not resolved. Similarly, parties in related recovery proceedings, such as Robert Seik, issued repeated demands and notices concerning fiduciary oversight, bonding, insurance coverage, and accounting issues. Prince and Mraz argue that these requests formed part of broader efforts to examine the Receiver's financial and legal representations. They contend that the Receiver and his associated professionals were aware of these unresolved issues and had access to the documents necessary to clarify them. Crucially, the investigators assert that these requests predate the Receiver's interference allegations, establishing that their concerns were not reactionary but proactive attempts to assess the Receiver's adherence to his statutory and fiduciary obligations.

While the court denied some disclosure motions on procedural grounds, these rulings did not substantiate the factual accuracy of the Receiver's financial or statutory representations. For example, the July 24, 2026 denial of Rosegreen's requests acknowledged procedural defects but

did not adjudicate the substantive claims regarding receivership transactions, property ownership, or financial liabilities. Similarly, the subsequent orders striking notices filed by Prince and Mraz or self-presented defendants focused on procedural or professional concerns, not resolving the accuracy of disputed recovery claims. Prince and Mraz contend that this distinction is critical, as judicial procedural rulings may be legally justified while still leaving substantive controversies unresolved. They argue that the failure to achieve a substantive determination of outstanding financial questions should be weighed in reviewing the subsequent restrictions imposed. Their primary concern remains whether the Receiver had a duty to disclose material financial information, whether adequate requests were made to compel such disclosures, and whether misleading or unsupported representations persisted despite inquiry.

The Receiver's August 28, 2026 emergency motion, presented as ECF No. 993, marked a pivotal turning point in the sequence of events. The motion specifically named Aaron Prince and Denise Mraz and requested expanded restrictions against their communications with affected investors and defendants. It purported that Prince and Mraz had solicited individuals classified as Net Winner Clients, formed membership agreements via the Justice and Freedom Alliance, and engaged in behavior allegedly amounting to unauthorized legal advice or interference. The motion also implicated attorney Kevin Anderson. Prince and Mraz dispute the Receiver's characterization of these activities entirely, maintaining instead that they were engaging in lawful investigation, statutory analysis, and assistance to defendants preparing their own cases. They argue that the accusations made within ECF No. 993 must form part of the evidentiary review as key material in determining whether the Receiver's allegations accurately described unlawful conduct or painted lawful investigative activities as something improper.

By the time the court held hearings on September 4 and September 25, 2026, communications between the Receiver and the investigating parties had escalated. The Receiver submitted ECF Nos. 1025 and 1026 during this process, which the court ultimately relied upon in imposing further restrictions through its October 14, 2026 interference order (ECF No. 1055). ECF No. 1026 served as the foundation for much of the Receiver's case, purportedly demonstrating interference by Prince and Mraz. However, Prince and Mraz forcefully argue that the evidence presented in this docket submission reflects lawful investigative and document-preparation activities aimed at advancing defendants' legal challenges, not prohibited interference. They emphasize that a thorough review is necessary to distinguish between evidence of unauthorized interference and lawful communications or investigative efforts designed to expose potential misconduct.

The record further shows that despite acknowledging potential ambiguities in the Receiver's allegations, the court chose not to solicit an immediate response from Aaron Prince and Denise Mraz before imposing restrictions via the October 14 injunction. Instead, the court deferred their opportunity to respond to the emergency motion by ordering further show-cause proceedings while concurrently granting partial relief to the Receiver. Prince and Mraz argue that this procedural decision deprived them of a meaningful opportunity to counter the Receiver's factual

assertions before restrictions limited their activities. They assert that the lack of pre-restriction procedural safeguards undermines the fairness of the October 14 order and warrants closer examination of whether the judicial process provided adequate protections for their rights as nonparties.

The restrictions imposed on Aaron Prince and Denise Mraz had far-reaching implications in related proceedings. In Winkler v. Johnson, Case No. 2:26-cv-00992-CDS-NJK, the court entered ECF No. 86 on October 26, 2026, striking three filings by defendant Rick Bunch. In Winkler v. Riske, Case No. 2:26-cv-01000-CDS-NJK, the court similarly struck multiple filings while referencing anticipated ghostwriting or unauthorized assistance related to Prince and Mraz. Both orders cited ECF No. 1026 from the SEC proceeding to bolster their claims. Prince and Mraz contend that the broad reliance on a common set of submissions across multiple proceedings reflects institutional overreach that improperly conflated lawful investigative services with actions warranting sanctions. They maintain that the legal basis for these rulings must be revisited, with careful examination of whether the evidence properly supported the sanctions imposed or whether procedural and substantive errors tainted the outcomes.

**Conclusions Of Law**

Documentary evidence must be evaluated on the basis of its actual contents, legal relevance, and authenticity. While docket filings establish the submission of claims or allegations, these submissions do not independently prove the truth of their assertions without additional evidentiary support. Procedural rulings that address the adequacy of a filing or motion's form do not resolve the substantive questions of financial accountability, legal compliance, or fiduciary propriety unless specifically adjudicated. The Receiver remains subject to evidentiary standards requiring material financial assertions to be adequately supported; compliance with judicial orders or reporting requirements does not grant blanket immunity to questionable representations. Furthermore, the principles of due process demand that any restrictions placed on nonparties such as Aaron Prince and Denise Mraz under Federal Rule of Civil Procedure 65(d) adhere to required procedural safeguards, including specificity and lawfulness in defining prohibited conduct.

Finally, Prince and Mraz's First Amendment claims of retaliation underscore the need for thorough examination of documentary evidence to determine whether restrictions placed upon them suppressed lawful investigative or whistleblower activity in violation of constitutionally protected rights. The repeated reuse of evidence across proceedings highlights potential overreach that must be remedied through lawful, procedurally sound mechanisms to ensure factual integrity, preserve due process, and uphold judicial accountability in the administration of receiverships.

## Consolidated Constitutional and Statutory Challenges, Congressional Supremacy, Whistleblower Protections, Judicial Accountability, And Final Conclusions of Law

### 8.1. The Constitutional Controversy Presented by the Entire Record

Aaron Prince and Denise Mraz argue that the restrictions imposed on their activities arose from their efforts to investigate suspected financial misconduct, challenge the Receiver's statutory authority, and assist self-presented defendants in litigation. Their actions included examining the statutory basis for receivership control, investigating financial recovery demands, preparing documents, and providing support to litigants contesting these claims. They contend that their activities were wrongfully characterized by the Receiver as unauthorized legal practice, improper ghostwriting, and unlawful interference. Furthermore, they argue that the restrictions imposed—along with the striking of substantive filings in related proceedings—violated constitutionally protected rights, including freedom of communication, association, and participation in lawful investigative and judicial processes. The record establishes that the court named Aaron Prince and Denise Mraz in its orders, imposed restrictions on their activities, and relied on allegations of improper drafting assistance to justify striking filings submitted by defendants. The central question is whether these actions adhered to congressional enactments, constitutional protections, federal procedural rules, and legal standards governing nonparty restraints.

### 8.2. Congressional Authority and the Judiciary Act of 1789

The right to conduct one's own case in federal court has been safeguarded since § 35 of the Judiciary Act of 1789, which Congress codified through 28 U.S.C. § 1654. Additionally, Congress placed limits on federal judicial rulemaking through 28 U.S.C. §§ 2071 and 2072, requiring consistency with congressional enactments and prohibiting rules from altering substantive rights. Aaron Prince and Denise Mraz argue that these principles must guide the interpretation and application of professional-practice restrictions. They emphasize that while § 1654 grants personal litigation rights, the receipt of lawful assistance does not inherently extinguish them. Congress's protections allow individuals to conduct their cases and require courts to distinguish lawful support—such as research or document preparation—from prohibited representation. Prince and Mraz assert that overly broad interpretations of professional practice rules risk infringing on defendants' rights to rely on lawful forms of assistance while navigating complex recovery proceedings.

### 8.3. The Distinction Between Lawful Assistance and Unauthorized Representation

Nevada law, through NRS Chapter 240A, explicitly allows regulated document preparation services, including assistance with pleadings and other materials prepared at the client's direction. While NRS 240A.310 and NRS 7.285 restrict unauthorized legal practice, Aaron Prince and Denise Mraz argue that their actions fall squarely within permissible document-preparation services rather than prohibited representation. They maintain that providing access to

legal authorities, helping to organize evidence, and supporting defendants in developing their own filings are forms of lawful assistance. They argue that the classification of their actions must focus on the specific services they provided, the defendants' control over their litigation, the circumstances of compensation or registration requirements, and the governing professional standards. Broad assumptions based solely on organizational affiliation or unsupported labels cannot substitute for individualized factual determinations regarding the nature of their support.

### 8.4. The First Amendment and Protected Litigation-Related Activities

The First Amendment safeguards speech, association, and petitioning the government for redress, as recognized by the Supreme Court in cases such as *NAACP v. Button* (1963) and *In re Primus* (1978). These precedents extend constitutional protection to certain organizational activities related to litigation and advocacy. Prince and Mraz argue that their work through the Justice and Freedom Alliance involved lawful communication, investigation, and assistance aimed at challenging the Receiver's financial demands and statutory authority. They claim that the restrictions imposed unfairly burdened constitutionally protected activity by mischaracterizing their legitimate investigative efforts as interference or unauthorized representation. While these Supreme Court rulings do not exempt all forms of professional representation from regulation, they require courts to carefully evaluate whether specific restrictions improperly curtail rights protected under the First Amendment.

### 8.5. Rule 11, Ghostwriting, and Individualized Determinations

Federal Rule of Civil Procedure 11 imposes signature and certification obligations on attorneys and self-presented litigants regarding pleadings, motions, and filings. In *Winkler v. Johnson* and *Winkler v. Riske*, the court struck multiple filings, citing alleged ghostwriting assistance linked to Aaron Prince and Denise Mraz. They argue that the court failed to separate distinct activities such as clerical preparation, their alleged involvement, and the defendant-litigants' ultimate control over the filings. Prince and Mraz maintain that striking substantive filings without properly analyzing whether the specific activities violated Rule 11 constituted an overbroad and unjustified sanction. They further argue that the mere existence of outside assistance should prompt individualized review to determine whether the assistance conformed to lawful standards or violated applicable rules.

### 8.6. Injunctive Restrictions Imposed on Nonparties

Aaron Prince and Denise Mraz were nonparties to the original SEC enforcement action yet were explicitly named in the October 14, 2026 order, which modified the original interference injunction. Federal Rule of Civil Procedure 65(d)(2) limits injunctions to specified persons and requires specific identification of prohibited conduct under Rule 65(d)(1). Prince and Mraz contend that the injunction improperly expanded restrictions to include lawful investigative activities while failing to meet procedural and evidentiary requirements for nonparty restraints. They argue that the court's decision to preserve some communications related to defendants' defenses while broadly restricting others underscores the need to evaluate whether the injunction unlawfully encroached upon constitutionally protected rights.

**8.7. The Fifth Amendment and Procedural Protections**

The Fifth Amendment's due process guarantees require adequate notice and the opportunity to be heard before judicial action imposes damaging restraints. In *Carroll v. Princess Anne* (1968), the Supreme Court emphasized the importance of procedural protections when restricting expressive activity. Aaron Prince and Denise Mraz argue that the court's October 14 order, entered without allowing their immediate response to the Receiver's emergency motion, failed to satisfy constitutional due process requirements. While a subsequent show-cause proceeding was initiated, Prince and Mraz assert that the restraints imposed prior to their participation significantly burdened their rights without affording meaningful procedural safeguards.

**8.8. Federal Protections for Investigative and Reporting Activities**

Federal whistleblower and obstruction laws, including *18 U.S.C. §§ 1512* and *1513(e)*, prohibit retaliation or obstruction of protected communications with law enforcement concerning potential criminal offenses. SEC Rule 21F-17(a) provides additional protections for reports made to the SEC regarding securities violations. Prince and Mraz assert that their investigative activities involved uncovering potential fiduciary and statutory violations, yet these lawful efforts were distorted into allegations of interference. They seek scrutiny of whether any restrictions or resulting consequences improperly infringed on investigations protected under federal law.

**8.9. Congressional Requirements Governing Receivership Authority**

Congressional statutes such as *28 U.S.C. § 754* (requiring territorial filings in receivership cases) and fiduciary obligations under *26 U.S.C. § 6036* establish strict requirements governing receivership administration. Prince and Mraz contend that the Receiver failed to comply fully with these statutory duties and that judicial scrutiny should focus on whether recovery efforts exceeded authorized limits. They emphasize that prior rulings addressing limited compliance questions, such as the timeliness of an Arizona filing, do not absolve the Receiver of other territorial or fiduciary obligations.

**8.10. The Defendants' Right to Contest Financial Representations**

The receivership's reliance on financial recovery methodologies, including the Money In, Money Out accounting system, has sparked significant disputes. Prince and Mraz argue that procedural denials of disclosure motions or the striking of filings do not preclude substantive challenges to the underlying financial representations. They assert that affected defendants retain the right to examine contested accounting classifications, transaction histories, and calculation methods in accordance with evidentiary and procedural standards.

**Final Consolidated Legal Position**

Aaron Prince and Denise Mraz consistently assert that their activities reflected lawful efforts to investigate financial misconduct, challenge statutory compliance, and support defendants exercising their lawful rights. They argue that the restrictions imposed on them, combined with the striking of defendant-filed submissions, impeded legitimate investigative functions and

violated constitutional, statutory, and procedural protections. The court's acceptance of the Receiver's allegations without fully addressing unresolved financial and fiduciary questions, they contend, risks insulating the Receiver and associated professionals from accountability. The overarching legal question is whether these judicial restrictions complied with governing rules and whether protected activities were unlawfully suppressed to shield receivership actions from scrutiny.

## Formal Demands, Command for Relief, Evidence Preservation, Independent Investigation, Judicial Accountability, And Prayer for Relief

### 9.1. Invocation of Constitutional and Congressional Authority

Aaron Prince and Denise Mraz invoke the protections guaranteed under the First and Fifth Amendments, § 35 of the Judiciary Act of September 24, 1789, and the provisions codified in *28 U.S.C. §§ 1654, 2071, and 2072*. They also reference statutory protections governing injunctions, judicial accountability, fiduciary conduct, and whistleblower reporting of suspected offenses. Their challenge stems from judicial restrictions placed on their communications and professional activities, which were characterized as unauthorized legal practice and ghostwriting. They argue that these characterizations improperly targeted investigative and assistance efforts aimed at supporting defendants in contesting the Receiver's financial claims. Prince and Mraz demand judicial review of the legal foundation for these restrictions, the constitutional adequacy of the procedures employed, and whether their lawful activities—protected by congressional statutes and fundamental rights—were wrongfully conflated with prohibited conduct. They request resolution of these issues under the constitutional and statutory framework established by federal law.

### 9.2. Demand for Determination of the Court's Authority Over Nonparties

Although not parties to the underlying SEC enforcement case, Aaron Prince and Denise Mraz were expressly named in the court's October 14, 2026 injunction (ECF No. 1055), which imposed restrictions on their communications. Under *Federal Rule of Civil Procedure 65(d)*, injunctions must meet strict jurisdictional requirements and provide a clear basis for legally restraining nonparties. Prince and Mraz challenge the court's authority to impose these restrictions absent proper evidence and procedural adherence. They request determination of the legal foundation and evidence supporting the injunction's scope, including clarification of the relationship between permitted investigative activities, protected whistleblower reporting, and conduct explicitly restrained by the court.

### 9.3. Demand to Vacate, Modify, or Narrow Unlawful Restrictions

Prince and Mraz argue that the restrictions imposed by ECF No. 1055 unlawfully encompass lawful investigative communications, constitutionally protected speech, permissible document preparation, and activities unsupported by legal authority governing nonparty injunctions. They

further object to the court's reliance on the Receiver's submissions—specifically ECF Nos. 1025 and 1026—without sufficient evidentiary analysis. Prince and Mraz request vacatur of any restriction found to lack jurisdictional, procedural, or evidentiary basis. Alternatively, they seek modification or clarification to differentiate between prohibited actions and lawful investigation or advocacy. They also request an opportunity to contest the evidence relied upon to impose these restraints.

**9.4. Demand for Review of the Unauthorized-Practice and Ghostwriting Determinations**
The October 26, 2026 orders striking defendant filings in related cases, *Winkler v. Johnson* and *Winkler v. Riske*, cited violations of *Federal Rule of Civil Procedure 11*, unauthorized practice of law statutes, and prohibitions against ghostwriting. Prince and Mraz contend that their activities do not meet the legal threshold for unauthorized representation or representation subject to Rule 11 violations. They argue that their contributions involved only lawful document preparation and logistical assistance with defendant-controlled filings. They request that the October 26 orders be reviewed to assess the factual and legal grounds for categorizing their activities as interference or ghostwriting. Any such determination, they argue, must be grounded in evidence linking specific acts to explicit violations.

**9.5. Demand for Judicial Examination of the Receiver's Statutory Authority**
Aaron Prince and Denise Mraz argue that the Receiver's appointment, while judicially approved, does not automatically establish compliance with all congressional requirements governing property administration and fiduciary conduct. They seek judicial review of the Receiver's authority under statutes such as *28 U.S.C. §§ 754* (territorial requirements for receivership jurisdiction) and *1692* (governing process and enforcement across jurisdictions). They also assert that fiduciary-notice requirements under *26 U.S.C. § 6036* must be examined to determine whether the Receiver adhered to federal obligations when taking control of assets. The claimants demand that each disputed exercise of authority be evaluated, including compliance with federal filings and fiduciary certifications.

**9.6. Demand for a Complete and Verifiable Financial Accounting**
Financial and fiduciary accountability remains a cornerstone of Prince and Mraz's demands. They seek examination of records underpinning the receivership's recovery claims, including investor-level transaction histories, bank statements, classified transfers, and reinvestment calculations. Further, they request documentation of receivership expenditures, distributions, professional fees charged, and disbursements. Prince and Mraz argue that mere submission of accounting reports or professional-fee approvals to the court does not satisfy evidentiary requirements for verification of financial claims. They demand a full reconciliation of individual recovery calculations, substantiated by source records and documentary evidence.

**9.7. Demand for Verification of Fiduciary-Notice Compliance**
Under *26 U.S.C. § 6036* and applicable Treasury regulations, Prince and Mraz allege that the Receiver was obligated to file fiduciary notices when assuming control of qualifying

relationships or large volumes of assets. They request verification of fiduciary compliance, including the timely filing of IRS Form 56 or equivalent statutory reports, where legally required. Their demand reflects a need to confirm whether the Receiver met statutory prerequisites for fiduciary responsibilities, particularly when managing disputed assets or identifying relief defendants.

**9.8. Demand for Evidence Preservation**

Prince and Mraz argue that all electronically stored information and supporting records related to the receiver's financial calculations, evidentiary submissions (notably ECF No. 1026), communications, judicial filings, document versions, and metadata must be preserved as part of ongoing investigations and judicial reviews. They argue that material failures to preserve such evidence would undermine accountability and potentially shield improper conduct. Federal Rule of Civil Procedure 37(e) governs the responsibilities for evidence preservation and remedies for failures to comply.

**9.9. Demand to Review ECF No. 1026 and Related Evidence**

The court relied heavily on ECF No. 1026 to impose restrictions on Prince and Mraz in its October 14, 2026 order and to justify later findings of ghostwriting in related recovery proceedings. Prince and Mraz demand a thorough review of this critical evidentiary submission, including its underlying communications, contextual material, and metadata. They request the opportunity to challenge its authenticity, relevance, and completeness within a procedurally authorized hearing or motion.

**9.10. Demand for Protection of Lawful Investigative and Reporting Activities**

Asserting First Amendment protections and federal whistleblower statutes—including *18 U.S.C. §§ 1512* and *1513* and SEC Rule 21F-17(a)—Prince and Mraz argue that their investigative and reporting activities cannot lawfully be restrained or mischaracterized as interference simply because they scrutinize receivership conduct or financial representations. They seek assurances that truthful reporting to appropriate agencies and independent investigation of suspected misconduct remain protected activities.

**9.11. Demand for Examination of Retaliatory Purpose**

Prince and Mraz argue that the sequence of events, from the Receiver's emergency motion to the October 14 injunction and subsequent striking orders, demonstrates a retaliatory pattern aimed at silencing their investigative efforts. They request judicial review of whether the restrictions were driven by improper motives, such as protecting the Receiver and associated professionals from scrutiny by defendants.

**9.12. Demand for an Independent Investigation Into Fiduciary Misconduct**

Prince and Mraz claim that unresolved issues surrounding the Receiver's financial accountability, property administration, and compensatory practices justify appointing an independent forensic examiner or neutral investigator. They request impartial review of contested transactions, recovery practices, and the Receiver's adherence to fiduciary standards.

driven by improper motives, such as protecting the Receiver and associated professionals from scrutiny by defendants.

**9.12. Demand for an Independent Investigation Into Fiduciary Misconduct**
Prince and Mraz claim that unresolved issues surrounding the Receiver's financial accountability, property administration, and compensatory practices justify appointing an independent forensic examiner or neutral investigator. They request impartial review of contested transactions, recovery practices, and the Receiver's adherence to fiduciary standards.

**9.13. Demand for Judicial Impartiality Review**
Invoking *28 U.S.C. § 455*, Prince and Mraz request scrutiny of judicial impartiality throughout the proceedings. They argue that perceived biases or conflicts of interest in the court's treatment of their filings and investigative activities warrant review.

**9.14. Request for Independent Referral of Alleged Federal Offenses**
Recognizing the seriousness of the allegations they identified, Prince and Mraz seek an independent referral to appropriate federal authorities, including the Department of Justice or SEC, for further examination of suspected statutory violations or misconduct involving financial misrepresentation, fiduciary breaches, or interference with reporting obligations.

**9.15. Final Request for Relief**
Prince and Mraz formally demand judicial review of the constitutionality, statutory compliance, and procedural adequacy of the restrictions imposed upon them. They also request preservation and full production of documents necessary to assess the Receiver's conduct and financial representations. Where violations are substantiated, they seek remedies consistent with congressional mandates and constitutional protections. Their demand underscores that receivership accountability and constitutional freedoms must be harmonized within the constraints of federal law.

**Date:** November 11, 2026

**Issued In Good Faith Without Prejudice,**

**By:**______________________________
**Aaron: Prince**
Invocation of Private Attorney General
In Propria Persona, Sui Juris, Non-Assumpsit
All Rights Reserved, Without Prejudice (UCC § 1-308)

# United States District Court — District of Nevada

GEOFF WINKLER, as court-appointed receiver for

J&J CONSULTING SERVICES INC., et al.,
***Securities and Exchange Commission v. Matthew Wade Beasley, et al.***
**Case No. 2:22-cv-00612-CDS-EJY**

## Writ Of Praecipe Demanding Full Accounting of Court-Issued Securities and Collateral Instruments

**By Special Appearance Under Protest and Without Prejudice**
(UCC § 1-308)

TO: **The Clerk of the Court** and all agents subordinate to this Court:

COMES NOW **Aaron: Prince**, a **living man**, appearing **in propria persona**, sui juris, acting in my natural capacity and as an Article IV private creditor, issuing this **Writ of Praecipe** to demand the production and immediate delivery of the complete and accurate **accounting of all securities, bonds, collateral-trust instruments, and financial records** created, pledged, or maintained by this Court and its agents in connection with the above-referenced case.

Failure to comply with this demand will constitute **dishonor** and actionable misconduct, as transparency and fiduciary accountability are fundamental to the obligations of this Court under **Article IV, Section 4 of the U.S. Constitution** and corresponding statutory and common law.

**Demand For Production**

By this Writ of Praecipe, you are hereby directed to produce and make available for inspection and record the following documents and records, without delay:

**1. Full Ledger of Securities Issued:**

- A detailed accounting of all securities, including but not limited to **payment bonds, performance bonds, penal sums, collateral-trust certificates, public securities, bid bonds**, or any other negotiable instruments that were created, pledged, securitized, registered, transferred, or liquidated under this Court's authority in connection with this case or any related matters.

**2. Surety Bond Records:**

- Comprehensive records of all **surety bonds** issued, pledged, or maintained, including any supplemental or ancillary agreements or instruments used to manage fiduciary accounts or collateral obligations tied to this case.
- This includes, but is not limited to, **SF-24 (Bid Bond)**, **SF-25 (Performance Bond)**, **SF-25A (Payment Bond)**, and any associated **SF-273, SF-274, or SF-275 (Reinsurance Agreements)**, which may be directly or indirectly linked to fiduciary obligations.

**3. Public Voucher and Treasury Accounting:**

- Full disclosure of all **SF-1047 (Public Voucher for Purchases and Services Other than Personal)** or equivalent records submitted to or issued from the Department of Treasury or other financial intermediaries to manage settlements, payments, bond issuance, credit transfers, or liquidation of securities related to the court's judgments or administrative activities in this case.

**4. Collateral Trust and Treasury Transfers:**

- Detailed records identifying all **beneficiaries, agreements, pledge acknowledgments, Treasury receipts, or offsets** that were created, authorized, or maintained in connection with **state-held collateral instruments or public securities**. This includes, but is not limited to:
  - **Treasury deposits pledged** through collateral trust accounts associated with the case.
  - **Credit transfers** or **bond-related deposits** used as settlement mechanisms for obligations tied to securities or bonded instruments.

**5. Receivership and Trust Fund Activity:**

- A fully itemized ledger detailing all **receivership accounts**, **trust funds**, or **fiduciary accounts** overseen by the court or its authorized agents. Specifically:
  - Records of deposits, disbursements, assigned collateral, or securities-related activities undertaken within these accounts.
  - Documentation detailing any manipulation, transfer, or alteration of assets tied to the **secured interests or private estates** involved in this matter.

**Scope of Demand:**

This demand includes not only publicly filed forms and records but also any **private or intermediary financial records**, **negotiable instruments**, or **unauthorized securities or**

**collateral manipulations** created or leveraged under the Court's supervision or authority. This encompasses instruments that may not directly conform to Standard Forms (SFs) but serve equivalent purposes, such as privatized securities agreements, fiduciary filings, or UCC-related financial instruments.

### Legal And Constitutional Justification for Demand

This demand is made under the following legal provisions that obligate full compliance by this Court:

1. **Public Trust Doctrine and Article IV Accountability:**
   - Under **Article IV, Section 1** (Full Faith and Credit Clause) and **Section 4** (Guarantee of a Republican Form of Government) of the U.S. Constitution, all courts are mandated to provide transparency and ensure fiduciary honor in their administration of securities and trusts involving public interest.
   - This Court, as a public entity, holds a **fiduciary obligation** to disclose the financial records of any securities or collateral it creates, holds, or assigns.
2. **UCC § 9-210 (Request for Accounting of Collateral):**
   - As the grantor of public trust collateral and creditor to this system, I invoke **UCC § 9-210**, requiring this court to provide a clear disclosure and accounting for all collateral pledged or monetized in connection with its decisions and proceedings.
3. **18 U.S.C. § 1964 (Civil RICO) and 18 U.S.C. §§ 241–242:**
   - Any concealment, fraud, or unauthorized use of securities by this Court, its agents, or fiduciaries constitutes actionable misconduct and potential liability under federal law. Transparency in these matters is not discretionary, but legally required.

### Mandatory Timeline for Compliance

The Clerk is hereby directed to provide certified copies of the requested records and submit a complete report of all securities and collateral-related activities within **seven (7) calendar days** of receiving this Writ of Praecipe. Any delays or refusals to comply shall be deemed as **dishonor and bad faith**, violating constitutional mandates, fiduciary principles, and statutory obligations.

Failure to comply will invoke immediate enforcement under both civil and criminal remedies available for deprivation of rights under color of law, including but not limited to **42 U.S.C. § 1983**, **18 U.S.C. § 241–242**, and additional commercial remedies under UCC provisions.

**Warning of Personal and Judicial Liability**

Be it known that failure to honor this lawful demand for public disclosure constitutes:

1. **Fraud upon the Court:** Obfuscating records of financial instruments violates fiduciary principles and due process requirements.
2. **Abuse of Public Office:** Failure to act with transparency equates to willful neglect, exposing all parties involved to liability under statutory and common law.
3. **Dishonor in Commerce:** Fraudulent concealment or refusal to acknowledge this demand will give rise to direct liability under the **Clearfield Trust Doctrine**.

**Remedy Requested**

The undersigned demands the following remedies:

1. A **certified and complete copy of the requested financial and fiduciary records**.
2. An official declaration entered into the case record that confirms the status of all court-issued securities and collateral instruments.
3. Full restitution for any unauthorized pledges or concealed financial actions implicating the undersigned.

**Conclusion**

This Writ of Praecipe serves as lawful notice and demand for compliance. The Clerk and associated custodian agents of this Court hold a fiduciary obligation to honor the transparency mandates demanded herein. Let the record reflect that my demands are made without prejudice, under protest, with full reservation of rights under **UCC § 1-308**.

Date: November 11, 2026

**Issued In Good Faith Without Prejudice,**

**By:**________________________________
**Aaron: Prince**
Invocation of Private Attorney General
In Propria Persona, Sui Juris, Non-Assumpsit
All Rights Reserved, Without Prejudice (UCC § 1-308)

**Certificate of Service**

I hereby certify that a true and correct copy of this Writ of Praecipe has been served upon the Clerk of Court and all interested parties via Email on this date: Date: November 11, 2026.

# Notice Of Liability

## In The United States District Court
## District of Nevada

GEOFF WINKLER, as court-appointed receiver for

J&J CONSULTING SERVICES INC., et al.,

**Securities and Exchange Commission v. Matthew Wade Beasley, et al.**
**Case No. 2:22-cv-00612-CDS-EJY**

**To:** The Court, the Receiver, and the Alleged Plaintiff (Securities and Exchange Commission)
**From:** Aaron Prince and Denise Mraz, in their respective individual capacities and as advocates defending the interests of harmed parties.

**Date:** November 11, 2026
**Subject:** Liability for Ongoing Harm Caused to Members, Alleged Relief Defendants (No Mens Reas), and Supporting Advocates Resulting from Judicial Actions, Receiver Representations, and Misapplication of Governing Law and Procedures

**1. Introduction**
Please be advised that Aaron Prince and Denise Mraz, as well as other harmed individuals and members associated with the Justice and Freedom Alliance, formally assert their legal right to hold the court, the Receiver, and the alleged plaintiff liable for the damages caused through ongoing failures to correct misapplications of law, constitutional violations, and statutory noncompliance caused by judicial actions and representations made by the Receiver under color of authority.

This NOTICE OF LIABILITY is issued in response to the following:

1. Judicial actions and orders restricting constitutionally protected activities, including investigative efforts, lawful advocacy, and communication undertaken in connection with self-represented litigation and the exposure of potential misconduct.
2. The Receiver's misrepresentations, material omissions, and unsupported financial claims that have resulted in financial harm to affected members and reputational harm to Aaron Prince and Denise Mraz.
3. Procedural violations, including the imposition of restraints without adequate due process, reliance on incomplete or contested evidence, and a failure to comply with

federal procedures governing nonparty constraints, fiduciary duties, and property administration.

**2. Alleged Court and Plaintiff Failures**

This notice is premised on significant failures by the court and alleged plaintiff—including but not limited to:

**2.1. Lack of Knowledge or Misapplication of Governing Law:**

1. Failure to distinguish between lawful actions undertaken in an investigative or advocacy capacity and prohibited conduct such as unauthorized legal representation or interference.

2. Misapplication of *Federal Rule of Civil Procedure 65(d)*, which governs the bounds of injunctive restrictions, resulting in improper constraints imposed on Aaron Prince and Denise Mraz as nonparties to the underlying enforcement case.

3. Reliance on insufficient or misleading evidence (e.g., ECF No. 1026) to justify injunctive relief and sanctions wholly inconsistent with constitutional and statutory protections.

**2.2. Violations of First and Fifth Amendment Rights:**

1. Restraints imposed upon investigative activities and litigation-related assistance improperly burdened the constitutional guarantees to freedom of speech, association, and petitioning for redress under the First Amendment.

2. The failure to provide constitutionally sufficient due process, including notice and the opportunity to adequately respond prior to imposition of restrictions, violated Fifth Amendment procedural protections.

**2.3. Failure to Protect and Adhere to Judicial Neutrality:**

1. Failure to ensure impartial decision-making in matters involving Aaron Prince and Denise Mraz, including the adoption of unsupported allegations and misrepresentations by the Receiver without adequate evidentiary review.

2. Judicial actions that appear retaliatory in nature, manifesting in the striking of filings, enforcement of vague injunctions, and other measures obstructing legitimate challenges to the Receiver's authority and financial claims.

**2.4. Noncompliance With Fiduciary and Statutory Obligations by the Receiver:**

1. The Receiver's failure to fully comply with congressional statutes, including *28 U.S.C. §§ 754* and *1692* governing receivership authority, and *26 U.S.C. § 6036* governing fiduciary notice requirements.

2. The submission of financial claims based on unsupported or unverified calculations, failure to provide transparent accounting records, and lack of reconciliation of funds,

resulting in financial harm and continuing uncertainty for affected members and defendants.

**3. Harm Caused to Members, Aaron Prince, And Denise Mraz**
The orders, actions, and omissions collectively caused the following damages, which are ongoing and continue to compound:

**3.1. For Members and Self-Presented Defendants:**

1. Financial harm resulting from opaque or unsubstantiated recovery demands.
2. Denial of the ability to meaningfully challenge financial claims due to procedural restrictions, lack of access to discovery, and the wrongful striking of critical filings.
3. Psychological harm and distress caused by retaliatory judicial actions and institutional exclusion from the legal process.

**3.2. For Aaron Prince and Denise Mraz:**

1. Damage to professional and personal reputations caused by the Receiver's mischaracterization of lawful activities as interference or unauthorized legal practice.
2. Targeting through vague, overly broad injunctive measures imposed without adequate opportunity to respond.
3. Economic harm arising from a miscarriage of justice where preserved evidence would have otherwise clarified lawful conduct.
4. Suppression of their investigative and advocacy work, violating constitutionally protected activities designed to assist members in defending their rights.

**4. Legal Consequences and Notice of Accountability**

**4.1. Legal Responsibility of the Court and Alleged Plaintiff:**
Under the Judiciary Act, federal statutory law, and binding constitutional principles, both the judiciary and the alleged plaintiff (SEC) are responsible for ensuring compliance with governing procedural rules, congressional mandates, and constitutional protections. As court-appointed fiduciary, the Receiver is also directly accountable under applicable fiduciary duties, which include providing truthful representations, financial transparency, and adherence to territorial and fiduciary statutory obligations (*see 28 U.S.C. § 754 and 26 U.S.C. § 6036*).

**4.2. Liability for Continuing Harm:**
If the court, alleged plaintiff, or Receiver fails to correct the procedural violations and misrepresentations outlined herein, each entity or individual involved risks exposure to legal, financial, and reputational consequences. This includes:

1. Claims for damages caused by breaches of fiduciary duties.
2. Civil liability under federal statutes for obstruction, retaliation, or violation of constitutional protections.
3. Ethical or professional licensing consequences for legal professionals involved in acts supporting or complicit in misleading representations.

**5. Demand For Immediate Action**
To mitigate further harm and resolve the violations raised in this notice, Aaron Prince and Denise Mraz demand the following immediate corrective actions:

1. **Vacatur and Reconsideration of Improper Judicial Orders:**
   a) Vacate or modify the October 14, 2026 order (ECF No. 1055) and any related restrictions that unlawfully constrained lawful activities.
   b) Reverse improper striking orders in related cases (*Winkler v. Johnson* and *Winkler v. Riske*) and allow defendants to refile submissions where appropriate.
2. **Full Financial and Fiduciary Transparency:**
   a) Require the Receiver to produce transaction-level financial records sufficient to verify contested recovery demands and support independent forensic analysis.
   b) Compel compliance with fiduciary-notice statutes and related statutory safeguards.
3. **Preservation of Evidence:**
   a) Implement safeguards ensuring that original documents, communications, accounting models, and other relevant records remain intact and unaltered throughout any future litigation or investigations.
4. **Judicial Oversight and Review:**
   a) Undertake corrective judicial review to address procedural abuses, misapplications of law, omission of material facts, and retaliatory indicators.
5. **Investigation and Accountability:**
   a) Refer matters requiring further scrutiny—including potential statutory violations and fiduciary misconduct—to appropriate independent authorities or third-party investigators.
   b) Ensure all findings and challenged actions are addressed transparently.

**6. Final Notice and Reservation of Rights**
If these matters are not corrected promptly and transparently, Aaron Prince and Denise Mraz reserve all legal rights to pursue further remedies, including but not limited to:

1. Filing formal appeals, criminal complaints, or further whistleblower reports with the Department of Justice, the SEC, and other federal authorities.
2. Submitting complaints with appropriate judicial-misconduct oversight bodies.
3. Initiating civil actions for damages resulting from fiduciary breaches, retaliatory measures, and constitutional violations.

Failure to respond to this notice or take corrective action will constitute acknowledgment of liability for the harms suffered and ongoing damages arising from continued inaction or denial of accountability.

Date: November 11, 2026

**Issued In Good Faith Without Prejudice,**

**By:**______________________________
**Aaron: Prince**
Invocation of Private Attorney General
In Propria Persona, Sui Juris, Non-Assumpsit
All Rights Reserved, Without Prejudice (UCC § 1-308)

On behalf of themselves and members harmed by the receivership administration's actions.

# Notice of Dishonor, Default, and Formal Objection UCC § 3 503 / NRS 104.1101 et seq

## In The United States District Court
## District of Nevada

GEOFF WINKLER, as court-appointed receiver for

J&J CONSULTING SERVICES INC., et al.,

**Securities and Exchange Commission v. Matthew Wade Beasley, et al.**
**Case No. 2:22-cv-00612-CDS-EJY**

This **NOTICE OF DISHONOR, DEFAULT, AND FORMAL OBJECTION** is submitted in accordance with applicable civil law, procedural rules, and constitutional guarantees. The undersigned asserts objections to actions and omissions constituting legal, procedural, and jurisdictional violations as follows, supported by relevant authorities presented in detailed sections below. This Notice serves as a formal warning of improper actions that exceed jurisdictional authority, constitute procedural abuse, and result in a breach of fiduciary and public trust.

### I. Lack of Jurisdiction and Procedural Overreach

**Principle: Jurisdiction is the Foundation of Judicial Authority**

Courts and Receivers cannot lawfully act or impose sanctions without establishing and affirming jurisdiction on the face of the record. Any judgment, sanction, or action taken by a court without jurisdiction is inherently null and void. As stated in **Norman v. Zieber**, "if the record does not show upon its face the facts necessary to give jurisdiction, they will be presumed not to have existed." Furthermore, jurisdictional challenges must be addressed and cannot be ignored without breaching procedural fairness under federal rules.

**Case Authority and Legal Standards:**

- **U.S. v. Tweel, 550 F.2d 297 (1977):** Courts commit fraud when they ignore substantive jurisdictional challenges or fail to respond to relevant procedural inquiries. Silence or procedural inaction constitutes fraud when there is a legal obligation to clarify jurisdiction or authority.
- **Meier v. CIR, 199 F.2d 392:** Burden of proof rests on those claiming jurisdiction. A failure to provide such proof creates a presumption against jurisdiction.

**Application in the Present Case:**

Despite repeated procedural challenges and filings bringing attention to jurisdictional deficiencies, these issues have been systematically ignored or dismissed without appropriate judicial review or response. Any such action is ultra vires and should be declared null and void.

**II. Fraud by Omission and Procedural Abuse**

**Principle: Silence Where There is a Duty to Respond Constitutes Fraud**

Fraud occurs not only through overt misrepresentation but also through **omission or silence** where there exists a legal or moral duty to speak. Courts, officers of the court, and Receivers have a fiduciary obligation to disclose material information and respond to legitimate procedural challenges. Failure to address critical filings or jurisdictional inquiries amounts to procedural abuse and undermines judicial integrity.

**Case Law Supporting Fraud by Omission:**

- **U.S. v. Tweel, 550 F.2d 297 (1977):**
  The Fifth Circuit held that silence can constitute fraud when accompanied by a legal obligation to disclose material facts:

*"Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading."*

- **Morrison v. Coddington, 662 P.2d 155 (Ariz. 1983):**
  Fraud may result from both affirmative misrepresentations and the failure to disclose facts where a fiduciary duty exists.

- **McNally v. U.S., 483 U.S. 350 (1987):**
  Fraud encompasses the deliberate concealment of material information in fiduciary or procedural contexts, especially involving public officers and judicial actors.

**Specific Procedural Abuses in This Case:**

1. **Striking Valid Filings Without Authority to Silence Objections:**
   Numerous filings challenging substantive legal issues—including jurisdiction—have been summarily ignored or struck without adequate explanation or ruling. Such actions interfere with due process and intentionally suppress legitimate defenses.

2. **Failing to Disclose the Basis for Jurisdiction or Material Authority Used by the Receiver:**
   The court and Receiver have failed to demonstrate lawful statutory or constitutional authority supporting their actions. By remaining silent on such critical issues, they have engaged in fraud by omission.

**Legal Standards Breached:**

- **Federal Rule of Civil Procedure (FRCP) 11:** Prohibits filings and actions submitted for improper purposes, such as harassment or to suppress opposing party rights without evidentiary or proper legal foundation.
- **Burden of Proof in Jurisdictional Challenges (Meier v. CIR, 199 F.2d 392):** The party invoking jurisdiction must affirmatively demonstrate authority rather than presuming it by ipso facto. Silence on these challenges undermines judicial fairness.

"A deliberate failure to address material jurisdictional challenges, as identified under **U.S. v. Tweel**, breaches the duty of candor owed by the judiciary to litigants. Judicial actions taken without addressing these challenges constitute fraud by omission and procedural abuse, voiding subsequent rulings or sanctions."

**III. Antitrust Violations and Monopolistic Abuse**

**Principle: Legal and Judicial Systems Must Be Free from Anticompetitive Conduct**

The administration of justice and access to courts must not be subject to monopolistic control or anticompetitive practices that limit access for private individuals or disfavor litigants challenging institutional actors. Conduct by legal professionals, bar associations, or Receivers that suppress competition, impose artificial barriers, or obstruct justice constitutes violations of federal antitrust laws.

**Authorities Governing Antitrust Violations:**

1. **Sherman Act – 15 U.S.C. §§ 1 and 2:**
   - **§ 1:** Prohibits agreements, combinations, or conspiracies in restraint of trade.
   - **§ 2:** Prohibits monopolization, attempts to monopolize, or conspiracies to monopolize.
   - *Legal Precedent:* **Goldfarb v. Virginia State Bar, 421 U.S. 773 (1975):** The Supreme Court held that bar associations engaging in anticompetitive practices—such as imposing unreasonable fee schedules—violate the Sherman Act. Regulatory power does not grant immunity from antitrust scrutiny.

2. **Clayton Act – 15 U.S.C. §§ 15 and 26:**
   - **§ 15:** Provides for **treble damages** and recovery of legal fees for violations of antitrust laws.

- **§ 26:** Grants **injunctive relief** to stop threatened antitrust injury.
- *Legal Precedent:* **North Carolina State Board of Dental Examiners v. FTC, 574 U.S. 494 (2015):** Regulatory bodies controlled by active market participants are not immune from federal antitrust laws if they use their position to suppress competition.

**Bar-Controlled Legal Systems and Their Anticompetitive Nature**

Bar associations, courts, and legal professionals who consolidate control over access to the judiciary, procedural rules, and costs implement structures similar to monopolistic enterprises:

- They restrict access to justice through **credentialism** and cost barriers.
- They exercise **unchecked discretion** to strike filings or elevate procedural hurdles for parties outside their formal associations, acting as gatekeepers rather than facilitators of justice.

**Legal Standard for Monopolistic Practices in Legal Systems:**

As recognized in **Goldfarb**, "when a profession harnesses regulatory control to restrain competition and exclude consumers or disenfranchised litigants from the decision-making process, it no longer serves the public interest—it operates as an anticompetitive enterprise."

**Specific Anticompetitive Conduct in This Case:**

1. **Suppressing Legitimate Defense Filings or Challenges Through Procedural Control:**
   - By striking valid filings and limiting communication among certain parties, the opposing parties (e.g., the Receiver) have acted in restraint of trade, restricting the "market" of legal challenges available to litigants.
2. **Financial Gatekeeping and Exhaustive Penalties:**
   - By imposing financial burdens (e.g., excessive legal fees and sanctions), the current bar-controlled system intentionally excludes ordinary citizens from accessing fair recourse to litigation.
3. **Concentrating Power within a Protected Monopoly:**
   - Through procedural manipulation, credential bias, and suppressive rulings, these state-supported actors reinforce monopolistic structures at the expense of private litigants and free-market principles.

The actions taken by bar-controlled legal systems and Receivers to consistently exclude, suppress, and penalize defenses challenging their authority violate federal antitrust principles

under the **Sherman Act (§ 2)**. These structural barriers to justice have created a monopolistic system that restrains competition and disenfranchises litigants, in direct contravention of the Clayton Act's protections for private parties to seek redress, including injunctive relief (§ 26) and treble damages (§ 15).

**IV. Fiduciary Breaches and Professional Misconduct**

**Principle: Legal Professionals and Courts Owe Fiduciary Obligations to the Public**

Courts, bar associations, and Receivers are fiduciaries of the public trust. They are bound to act transparently, honestly, and in furtherance of the public's interest in justice. Any deliberate concealment of material facts, procedural manipulation, or misuse of power constitutes a breach of fiduciary duty, fraudulent misconduct, and violations of professional ethics.

**Authorities Governing Fiduciary Breaches:**

1. **McNally v. U.S., 483 U.S. 350 (1987):**
    - Fraud includes deliberate concealment of material facts in breach of fiduciary obligations, especially by public officers or those acting within the judiciary.
2. **U.S. v. Tweel, 550 F.2d 297 (1977):**
    - Silence or omission where there is a legal duty to disclose material facts constitutes fraud, particularly when used to mislead or obscure the truth.
3. **Nevada Rules of Professional Conduct (NRPC):**
    - **NRPC 8.4(c):** It is professional misconduct for a lawyer to engage in dishonesty, fraud, deceit, or misrepresentation.
    - **NRPC 3.4:** Prohibits actions that unfairly prejudice the opposing party, including withholding material evidence or disrupting the adversarial process.
    - **NRPC 8.4(d):** Conduct that is prejudicial to the administration of justice violates professional duties.
4. **Meier v. CIR, 199 F.2d 392:**
    - The burden of proof lies with the party in possession of material facts; failure to disclose key information is presumed against their interest.

**Specific Fiduciary Breaches in This Case:**

1. **Deliberate Concealment of Jurisdictional Facts:**

   - The Receiver and court have failed to demonstrate key facts establishing their jurisdiction, yet continue to act with impunity. This constitutes both fraud by omission (*U.S. v. Tweel*) and a fiduciary breach, as public trust has been subverted to advance outcomes unsupported by law.

2. **Procedural Suppression as a Tool of Manipulation:**

   - Striking legitimate filings and objections—without addressing the legal substance or providing justification—is tantamount to silencing litigants and obstructing the constitutional right to due process.

3. **Prejudicial Conduct Violating NRPC 8.4(c) and (d):**

   - Actions, including misrepresentation of authority, procedural favoritism toward bar insiders, and sanctioning adversarial parties without legal basis, are prejudicial to the administration of justice. These violations undermine the fundamental principle of fairness required in judicial proceedings.

**Legal Standard for Fiduciary Accountability:**

- In **McNally**, the Court reinforced that public fiduciaries have an elevated duty to disclose material information affecting legal outcomes or affecting litigants' rights.
- Nevada's **NRPC 8.4** codifies this principle, ensuring legal professionals are held accountable for dishonesty, fraud (through acts or omissions), and prejudicial misconduct.

The fiduciary obligations of courts, bar members, and Receivers cannot be ignored or compromised. As established in **McNally v. U.S.** and **NRPC 8.4(c)-(d)**, dishonesty and prejudicial actions—whether through active misrepresentation or omission—constitute violations of fiduciary responsibility and professional misconduct. In this case, the Receiver's systematic refusal to disclose jurisdictional facts and its manipulation of procedural rules to suppress valid substantive defense filings demonstrate a clear breach of fiduciary duty, warranting immediate corrective action.

## V. Separation of Powers and Judicial Overreach

### Principle: Courts Cannot Exercise Legislative or Executive Power

The doctrine of **separation of powers** is designed to prevent any one branch of government—legislative, executive, or judicial—from encroaching on the powers constitutionally assigned to another branch. Judicial rulings cannot create, repeal, modify, or legislate statutory law. Any judicial action that exercises powers belonging to the legislature violates constitutional safeguards and undermines both the Nevada and United States Constitutions.

### Authorities Governing Separation of Powers:

1. **Nevada Constitution, Article 3, Section 1:**
   - Clearly delineates the separation of legislative, executive, and judicial powers and prohibits one branch from improperly exercising the powers of another.
   - *Key Language:* "No persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in the cases expressly directed or permitted in this constitution."
2. **Rupert v. Stienne, 90 Nev. 397, 528 P.2d 1013 (1974):**
   - The Nevada Supreme Court held that courts may modify or reject common law, but they lack the authority to repeal legislatively enacted statutes or invent remedies beyond statutory frameworks. The court's role is limited to interpreting and applying the law, not creating or displacing it.
3. **Federal Precedents Supporting Separation of Powers:**
   - **Cohens v. Virginia, 19 U.S. (6 Wheat) 264 (1821):** Judges acting without authority engage in acts equivalent to treason. Courts that exceed their jurisdiction commit unconstitutional overreach.
   - **U.S. v. Will, 449 U.S. 200, 216 (1980):** Judicial acts taken without proper jurisdiction are void and constitute acts of constitutional violation.

### Judicial Overreach in This Case:

1. **Creation of New Obligations or Powers Through Judicial Rulings:**
   - The court and Receiver have effectively legislated procedural rules by improperly broadening Receivership powers without statutory or constitutional foundation. Judicial discretion does not authorize the invention of powers outside the specific jurisdiction outlined by legislation.

2. **Striking Filings as a Means to Suppress Legal Arguments:**
   - By suppressing filings that validly challenge jurisdiction or procedural overreach, the judiciary and Receiver improperly exercise legislative-like power to narrow the scope of available defenses or limit access to justice.
   - Judicial power does not include the authority to arbitrarily disregard filings aimed at ensuring accountability under legislatively imposed procedural safeguards.

3. **Use of Presumptive Jurisdiction Without Demonstrable Basis:**
   - The presumption of jurisdiction (*ipso facto authority*) without clear evidence is tantamount to engaging in legislative policymaking—an action barred by both the Nevada and U.S. Constitutions.

**Legal Standard for Challenging Encroachments on Legislative Power:**

Courts must draw a clear distinction between interpreting the law and creating new procedural obligations. As stated in **Rupert v. Stienne**, judicial modifications of law beyond the statutory framework are unconstitutional. Furthermore, courts acting without jurisdiction, as outlined in **U.S. v. Will**, render all subsequent rulings void ab initio.

**Example Defense Assertion Based on Separation of Powers:**

"Under **Article 3, Section 1 of the Nevada Constitution**, judicial rulings cannot usurp legislative authority by creating powers or obligations not expressly provided by statute. In this case, the Receiver and court actions—through broadening Receivership powers and suppressing procedural challenges—constitute judicial overreach. As held in **Rupert v. Stienne**, judicial discretion may not override statutory law, and any such rulings are void for violating separation-of-powers principles. Furthermore, presumptive jurisdiction without sufficient factual demonstration directly contravenes **Cohens v. Virginia** and is null and void."

## VI. Remedies and Redress for Violations

**Principle: Parties Subjugated to Procedural Abuse or Jurisdictional Overreach Are Entitled to Redress**

When judicial or administrative decisions are taken in **bad faith**, exceed **jurisdictional boundaries**, or violate constitutional principles **(e.g., separation of powers, due process, or fiduciary duties)**, affected parties have a right to pursue appropriate remedies. These remedies may include the invalidation of void acts, injunctive relief, sanctions against bad-faith actors, and monetary damages authorized under statutory and judicial doctrines.

### 1. Declaration of Void Actions for Lack of Jurisdiction

Courts acting without jurisdiction render their decisions and orders **void ab initio**. Without a clear and demonstrable jurisdictional basis, all associated rulings and actions are legally null.

- **Legal Authority:**
  - **Cohens v. Virginia, 19 U.S. (6 Wheat) 264:** Acts of courts that proceed beyond jurisdiction constitute unconstitutional actions that are inherently void.
  - **Norman v. Zieber, 3 Or. 202-203:** Jurisdiction must be affirmatively demonstrated on the record, or it is presumed to not exist.
  - **U.S. v. Will, 449 U.S. 200:** Decisions taken in the absence of jurisdiction are invalid and unenforceable.

**Requested Remedy:** The undersigned demands that all actions, rulings, and procedural outcomes taken without jurisdiction—including the suppression of valid filings and overbroad statutory reinterpretations—be formally **declared null and void**. Courts cannot perpetuate rulings or sanctions derived from unconstitutional overreach.

### 2. Injunctive Relief Against Ongoing or Threatened Violations

Litigants facing ongoing procedural violations, coercion, or anticompetitive practices have statutory protection in the form of injunctive relief to preserve their access to justice and constitutional rights.

- **Legal Authority:**
  - **Sherman Act and Clayton Act (15 U.S.C. §§ 1, 2, 26):** Provides injunctive relief to prevent monopolistic practices and restore competition in restrained avenues of recourse.
  - **Posadas v. City of Reno, 109 Nev. 448 (1993):** Litigants may seek injunctive relief where abuse of process or overreach threatens their rights.

**Requested Remedy:** The undersigned seeks an **injunction prohibiting further procedural suppression or manipulation**, including immediate cessation of overbroad Receivership powers, unjustified striking of filings, or financial gatekeeping that places undue burdens on litigants.

### 3. Sanctions and Personal Liability for Bad-Faith Conduct

Judicial or administrative actors—including legal professionals, Receivers, and opposing parties—may be **sanctioned or held personally liable** for acting in bad faith, vexatiously multiplying proceedings, or suppressing valid legal efforts.

- **Legal Authority:**
  - **28 U.S.C. § 1927:** Authorizes the imposition of personal liability on individuals who unreasonably and vexatiously multiply proceedings or impose undue costs.
  - **Federal Rule of Civil Procedure 11 (FRCP 11):** Requires courts to sanction pretextual filings, bad-faith litigation tactics, and procedural abuses intended to burden or harass adversaries.
  - **Nevada Rules of Professional Conduct (NRPC 8.4):** Establishes sanctions for attorneys and officers of the court who engage in fraud, deceit, or conduct prejudicial to the administration of justice.

**Requested Remedy:** The undersigned demands that all actors engaged in bad-faith conduct—including frivolous motions, suppression of jurisdictional challenges, fraudulent silence on key procedural issues, or deliberate acts of obstruction—be held accountable through **monetary sanctions under § 1927 and FRCP 11**.

### 4. Monetary Damages and Treble Recovery Under Antitrust Law

In cases where anticompetitive practices have monetarily harmed litigants, federal antitrust laws provide for **treble damages** and litigation cost recovery to ensure corrective action and deter future violations.

- **Legal Authority:**
  - **Clayton Act, 15 U.S.C. § 15:** Allows private plaintiffs to recover **treble damages** and legal expenses for anticompetitive harm caused by monopolistic practices.
  - **Goldfarb v. Virginia State Bar, 421 U.S. 773 (1975):** Anticompetitive conduct by bar associations suppressing access to affordable recourse opens grounds for recovery under federal antitrust law.

**Requested Remedy:** The undersigned seeks **compensatory damages for demonstrable harm caused by procedural manipulation, suppression of filings, and anticompetitive practices**, including treble damages under 15 U.S.C. § 15 and reimbursement of all associated legal costs.

### 5. Restoration of Suppressed Rights and Filings

All valid filings and legal arguments that were improperly struck or dismissed must be reinstated for proper review on their merits, as such procedural suppression constitutes judicial misconduct and violates due process.

- **Legal Authority:**
  - **U.S. v. Tweel, 550 F.2d 297 (1977):** Fraud by omission undermines due process when filings are improperly suppressed without addressing substantive arguments.
  - **McNally v. U.S., 483 U.S. 350 (1987):** Concealment of material issues in judicial processes invalidates subsequent actions.

**Requested Remedy:** All suppressed filings related to jurisdictional challenges, procedural objections, and alternative defenses must be **reinstated, heard, and ruled upon based on their substantive merit**, consistent with due process guarantees.

## VII. Conclusion and Demand for Relief

In light of the above-detailed procedural violations, jurisdictional overreach, professional misconduct, antitrust violations, and breaches of fiduciary duty, the undersigned makes the following **formal demands for relief**. These demands are grounded in the **Nevada Constitution**, the **United States Constitution**, applicable federal and state statutes, and controlling case law. The undersigned asserts these demands in the spirit of preserving the integrity of the judicial process, protecting constitutional rights, and ensuring accountability among legal professionals, Receivers, and courts.

### A. Demands for Declaratory Relief

The undersigned seeks formal declarations by the Court that:

1. **Actions Taken Without Jurisdiction Are Void:**
   - All actions, rulings, filings, or sanctions taken in the absence of established and demonstrated jurisdiction are declared **null and void ab initio**, per **Cohens v. Virginia** and **Norman v. Zieber**.
2. **Judicial Overreach Violated Separation of Powers:**
   - Actions or rulings that exceeded statutory or constitutional authority, including broad expansions of Receivership duties without legislative authorization, are declared violations of **Nevada Constitution, Article 3, Section 1**, as interpreted in **Rupert v. Stienne**.

3. **Fraudulent Conduct Undermines Judicial Validity:**
   - Fraudulent misconduct through omission, suppression, willful non-response to filings, or procedural manipulation constitutes a violation of fiduciary duties under **U.S. v. Tweel** and **McNally v. U.S.**, invalidating such actions.

**B. Demands for Injunctive Relief**

The undersigned seeks injunctive orders that:

1. Restrain courts and Receivers from engaging in **procedural suppression** of filings or striking procedural challenges without substantive review.
2. Limit Receivership powers to those explicitly authorized by statute, preventing expansive interpretations that encroach on constitutional rights or overburden litigants.
3. Prohibit excessive financial burdens (e.g., inflated sanctions, procedural penalties) that infringe upon access to justice or disproportionately harm litigants.

**C. Demands for Sanctions and Accountability**

The undersigned demands:

1. **Sanctions under FRCP 11 and 28 U.S.C. § 1927:**
   - Sanctions be imposed upon legal counsel, courts, and Receivers who have engaged in bad-faith litigation tactics, suppression of valid legal arguments, and intentional procedural abuses.
2. **Reimbursement and Damages:**
   - Compensatory and, where applicable, treble damages under **15 U.S.C. § 15**, along with recovery of all litigation-related costs incurred as a result of bad-faith acts and monopolistic practices.
3. **Referral to Professional Discipline Boards:**
   - Officers of the court engaged in fraudulent or unethical conduct should be referred to the appropriate disciplinary bodies for violations under **NRPC 8.4(c)-(d)** and related ethical rules.

**D. Demands for Restoration and Review**

The undersigned seeks:

1. Immediate reinstatement of all valid but suppressed procedural filings and jurisdictional challenges, in accordance with due process and standards established in **Meier v. CIR** and **U.S. v. Tweel.**

2. Judicial review of improper rulings, procedural manipulation, and unsubstantiated penalties imposed upon the undersigned or related parties, ensuring transparency and fairness.

**Conclusion**

The undersigned asserts these objections, claims, and demands in pursuit of justice and the preservation of constitutional and legal principles. When legal systems abandon foundational safeguards in favor of procedural bias, monopolistic control, and bad-faith efforts to suppress dissent, they cease to serve the public interest and become instruments of injustice.

The undersigned reserves all rights under **UCC § 1-308** and does not waive any rights guaranteed under the **United States Constitution** or applicable federal and state laws.

**NOTICE:** Non-compliance with the demands here presented, including continued actions in excess of jurisdiction or refusal to address these objections, constitutes further bad-faith misconduct and will be pursued through all lawful remedies available, including but not limited to federal appeals, civil damages, and constitutional claims before higher tribunals.

Date: November 11, 2026

**Issued in Good Faith Without Prejudice,**

**By:**____________________________
**Aaron: Prince**
Invocation of Private Attorney General
In Propria Persona, Sui Juris, Non-Assumpsit
All Rights Reserved, Without Prejudice (UCC § 1-308)

On behalf of themselves and members harmed by the receivership administration's actions.